**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

RANDY MCLEOD, Individually and On Behalf of All Others Similarly Situated,

       Plaintiff,

   v.

INNOVAGE HOLDING CORP.,
MAUREEN HEWITT,
BARBARA GUTIERREZ,
J.P. MORGAN SECURITIES LLC,
BARCLAYS CAPITAL INC.,
GOLDMAN SACHS & CO. LLC,
CITIGROUP GLOBAL MARKETS INC.,
ROBERT W. BAIRD & CO. INCORPORATED,
WILLIAM BLAIR & COMPANY, L.L.C.,
PIPER SANDLER & CO.,
CAPITAL ONE SECURITIES, INC.,
LOOP CAPITAL MARKETS LLC,
SIEBERT WILLIAMS SHANK & CO., LLC, and
ROBERTS & RYAN INVESTMENTS, INC.,

       Defendants,

---

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES
LAWS**

---

Plaintiff Randy McLeod ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by InnovAge Holding Inc. ("InnovAge" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by InnovAge; and (c) review of other publicly available information concerning InnovAge.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired InnovAge common stock pursuant and/or traceable to the registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's March 2021 initial public offering ("IPO" or the "Offering"). Plaintiff pursues claims against the Defendants under the Securities Act of 1933 (the "Securities Act").

2.      InnovAge operates a healthcare delivery platform that purportedly takes a "patient-centered care approach" to improve the quality of care that participants receive.

3.      On March 5, 2021, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold approximately 18,995,901 shares of common stock at a price of $21.00 per share. The Company received proceeds of approximately $373.6 million from the Offering, net of underwriting discounts and commissions. The proceeds from the IPO were purportedly to be used to repay

certain debt and for general corporate purposes, including working capital, operating expenses, and capital expenditures.

4. On September 21, 2021, after the market closed, InnovAge revealed that the Centers for Medicare and Medicaid Services ("CMS") had "determined to freeze new enrollments at [the Company's] Sacramento center based on deficiencies detected in [a recent] audit." It stated that these "deficiencies relate to failures to provide covered services, provide accessible and adequate services, manage participants' medical situations, and oversee use of specialists, among others."

5. On this news, the Company's stock price fell $2.90 per share, or 25%, to close at $8.75 per share on September 22, 2021, on unusually heavy trading volume.

6. By the commencement of this action, the Company's stock was trading as low as $6.61 per share, a nearly 69% decline from the $21 per share IPO price.

7. The Registration Statement was materially false and misleading and omitted to state: (1) that certain of InnovAge's facilities failed to provide covered services, provide accessible and adequate services, manage participants' medical situations, and oversee use of specialists; (2) that, as a result, the Company was reasonably likely to be subject to regulatory scrutiny, including by the Centers for Medicare and Medicaid Services; (3) that, as a result, there as a significant risk that CMS would suspend new enrollments pending an audit of the Company's services; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o).

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 22 of the Securities Act (15 U.S.C. § 77v).

11.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b).

12.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13.     Plaintiff Randy McLeod, as set forth in the accompanying certification, incorporated by reference herein, purchased InnovAge common stock pursuant or traceable to the Registration Statement issued in connection with the Company's IPO, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14.     Defendant InnovAge is incorporated under the laws of the Delaware with its principal executive offices located in Denver, Colorado. InnovAge's shares trade on the NASDAQ exchange under the symbol "INNV."

15.     Defendant Maureen Hewitt ("Hewitt") was, at all relevant times, the Chief Executive Officer ("CEO"), President, and director of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

16.     Defendant Barbara Gutierrez ("Gutierrez") was, at all relevant times, the Chief Financial Officer ("CFO") of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

17.     Defendants Hewitt and Gutierrez are collectively referred to hereinafter as the "Individual Defendants."

18.     Defendant J.P. Morgan Securities LLC ("J.P. Morgan") served as an underwriter for the Company's IPO. In the IPO, J.P. Morgan agreed to purchase 4,488,334 shares of the Company's common stock, exclusive of the over-allotment option.

19.     Defendant Barclays Capital Inc. ("Barclays") served as an underwriter for the Company's IPO. In the IPO, Barclays agreed to purchase 3,388,333 shares of the Company's common stock, exclusive of the over-allotment option.

20.     Defendant Goldman Sachs & Co. LLC ("Goldman Sachs") served as an underwriter for the Company's IPO. In the IPO, Goldman Sachs agreed to purchase 3,388,333 shares of the Company's common stock, exclusive of the over-allotment option.

21.     Defendant Citigroup Global Markets Inc. ("Citigroup") served as an underwriter for the Company's IPO. In the IPO, Citigroup agreed to purchase 1,693,333 shares of the Company's common stock, exclusive of the over-allotment option.

22.     Defendant Robert W. Baird & Co. Incorporated ("Baird") served as an underwriter for the Company's IPO. In the IPO, Baird agreed to purchase 958,333 shares of the Company's common stock, exclusive of the over-allotment option.

23.     Defendant William Blair & Company, L.L.C. ("William Blair") served as an underwriter for the Company's IPO. In the IPO, William Blair agreed to purchase 958,333 shares of the Company's common stock, exclusive of the over-allotment option.

24.     Defendant Piper Sandler & Co. ("Piper Sandler") served as an underwriter for the Company's IPO. In the IPO, Piper Sandler agreed to purchase 958,333 shares of the Company's common stock, exclusive of the over-allotment option.

25.     Defendant Capital One Securities, Inc. ("Capital One") served as an underwriter for the Company's IPO. In the IPO, Capital One agreed to purchase 666,667 shares of the Company's common stock, exclusive of the over-allotment option.

26.     Defendant Loop Capital Markets LLC ("Loop Capital") served as an underwriter for the Company's IPO. In the IPO, Loop Capital agreed to purchase 55,556 shares of the Company's common stock, exclusive of the over-allotment option.

27.     Defendant Siebert Williams Shank & Co., LLC ("Siebert Williams") served as an underwriter for the Company's IPO. In the IPO, Siebert Williams agreed to purchase 55,556 shares of the Company's common stock, exclusive of the over-allotment option.

28.     Defendant Roberts & Ryan Investments, Inc. ("Roberts & Ryan ") served as an underwriter for the Company's IPO. In the IPO, Roberts & Ryan agreed to purchase 55,556 shares of the Company's common stock, exclusive of the over-allotment option.

29.     Defendants J.P. Morgan, Barclays, Goldman Sachs, Citigroup, Baird, William Blair, Piper Sandler, Capital One, Loop Capital, Siebert Williams, and Roberts & Ryan are collectively referred to hereinafter as the "Underwriter Defendants."

## CLASS ACTION ALLEGATIONS

30.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired InnovAge common stock issued in connection with the Company's IPO.  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

31.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, InnovAge's shares actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by InnovAge or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

32.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

33.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

34.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of InnovAge; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

35.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Background

36.     InnovAge operates a healthcare delivery platform that purportedly takes a "patient-centered care approach" to improve the quality of care that participants receive.

**The Company's False and/or Misleading**

**Registration Statement and Prospectus**

37.    On February 8, 2021, the Company filed its Registration Statement on Form S-1 with the SEC, which forms part of the Registration Statement.

38.    On March 3, 2021, the Company filed its final amendment to the Registration Statement with the SEC on Form S-1/A, which forms part of the Registration Statement. The Registration Statement was declared effective the same day.

39.    On March 5, 2021, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold approximately 18,995,901 shares of common stock at a price of $21.00 per share. The Company received proceeds of approximately $373.6 million from the Offering, net of underwriting discounts and commissions. The proceeds from the IPO were purportedly to be used to repay certain debt and for general corporate purposes, including working capital, operating expenses, and capital expenditures.

40.    The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

41.    Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

42.     The Registration Statement stated that InnovAge is "responsible for the totality of [its] participants' medical and social needs, ***including primary and specialist care***, in-home care, hospital visits, nutrition, transportation to [its] care centers and other medical appointments, pharmacy and behavioral health support." Specifically, the Registration Statement claimed that a "key attribute[]" of the InnovAge Platform includes interdisciplinary care teams (or "IDTs"):

- *Our interdisciplinary care teams.*    Our IDTs are the core of our comprehensive clinical model. They design, manage and coordinate all aspects of each participant's customized care plan. Our IDT structure is designed to enhance access to care for our participants and eliminate the information silos and gaps in care that often occur in traditional fee-for-service models. We are responsible for the totality of our participants' medical and social needs, including primary and specialist care, in-home care, hospital visits, nutrition, transportation to our care centers and other medical appointments, pharmacy and behavioral health support.

43.     The Registration Statement also stated that the Company receives "approximately 99.5% of [its] revenue . . . from capitation agreements with government payors," such as Medicare and Medicaid. It further stated:

We directly contract with Medicare and Medicaid on a per member, per month ("PMPM") basis, which creates recurring revenue streams and provides significant visibility into our revenue growth trajectory. ***We receive 100% of the pooled capitated payment to directly provide or manage the healthcare needs of our participants. By proactively providing high-quality care and addressing risks related to social determinants of health, we have demonstrated our ability to reduce avoidable utilization of high-cost care settings***, such as hospitals and nursing homes. As a result, we create a surplus that can be used to invest in refining our care model and providing even greater social supports for our participants. These investments further improve participants' experiences and health outcomes, which we believe will result in more savings that will drive our profitable growth. The virtuous cycle we have created enables us to consistently deliver high-quality care, achieve high participant satisfaction and retention, and attract new participants.

44.     Therefore, the Registration Statement warned that InnovAge's operations are "dependent upon a limited number of government payors, particularly Medicare and Medicaid." It stated:

> ***Our revenues and operations are dependent upon a limited number of government payors, particularly Medicare and Medicaid.***
>
> Our operations are dependent on a limited number of government payors, particularly Medicare and Medicaid, with whom we directly contract to provide services to participants. We generally manage our contracts on a state by state basis, entering into a separate contract in each state. When aggregating the revenue associated with Medicare and Medicaid by state, Colorado, California and Virginia accounted for a total of approximately 81.5% and 81.8% of our capitation revenue for the year ended June 30, 2020 and the six months ended December 31, 2020, respectively. A majority of our revenues will continue to be derived from a limited number of key government payors, which may terminate their contracts with us upon the occurrence of certain events. The sudden loss of any of our government contracts or the renegotiation of any of our contracts could adversely affect our operating results. In the ordinary course of business, we engage in active discussions and renegotiations with government payors in respect of the services we provide and the terms of our agreements. As the states respond to market dynamics and financial pressures, and as government payors make strategic budgetary decisions in respect of the programs in which they participate, certain government payors may seek to renegotiate or terminate their agreements with us. Any reduction in the budgetary appropriations for our services, whether as a result of fiscal constraints due to recession, emergency situations such as the COVID-19 pandemic, changes in policy or otherwise, could result in a reduction in our capitated fee payments and possibly loss of contracts.

45.     The Registration Statement was materially false and misleading and omitted to state: (1) that certain of InnovAge's facilities failed to provide covered services, provide accessible and adequate services, manage participants' medical situations, and oversee use of specialists; (2) that, as a result, the Company was reasonably likely to be subject to regulatory scrutiny, including by the Centers for Medicare and Medicaid Services; (3) that, as a result, there as a significant risk that CMS would suspend new enrollments pending an audit of the Company's services; and (4) that, as a result of the foregoing, Defendants' positive statements

about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

**The Subsequent Disclosures**

46.    On September 21, 2021, after the market closed, InnovAge revealed that the Centers for Medicare and Medicaid Services ("CMS") had "determined to freeze new enrollments at [the Company's] Sacramento center based on deficiencies detected in [a recent] audit." It stated that these "deficiencies relate to failures to provide covered services, provide accessible and adequate services, manage participants' medical situations, and oversee use of specialists, among others." Specifically, during a conference call to discuss InnovAge's fourth quarter and full year 2021 financial results, Defendant Hewitt stated:

> In early May, the Centers for Medicare and Medicaid Services began a routine scheduled audit of our Sacramento center. CMS completed their audit fieldwork on May 21 and requested additional information which we supplied promptly. This past Friday, September 17, we were notified the CMS has determined to freeze new enrollments at our Sacramento center based on deficiencies detected in the audit. ***The deficiencies relate to failures to provide covered services, provide accessible and adequate services, manage participants' medical situations, and oversee use of specialists among others.*** The freeze will remain in effect until we correct these deficiencies and we are working on developing a corrective action plan to submit to CMS.
>
> In addition, we have a right to provide a rebuttal and requested hearing. At this time given how recent the notice is, we are assessing options and are unable to estimate the duration of the freeze, or the final outcome of this process. This freeze is limited to our Sacramento center and does not extend to our San Bernardino center in California. For context, there were less than 200 participants at Sacramento as of the beginning of this month, we are committed to quality improvement and comprehensive care coordination at each of our centers.

47.    On this news, the Company's stock price fell $2.90 per share, or 25%, to close at $8.75 per share on September 22, 2021, on unusually heavy trading volume.

48.     By the commencement of this action, the Company's stock was trading as low as $6.61 per share, a nearly 69% decline from the $21 per share IPO price.

### FIRST CLAIM

**Violation of Section 11 of the Securities Act**

**(Against All Defendants)**

49.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

50.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against the Defendants.

51.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

52.     InnovAge is the registrant for the IPO.  The Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

53.     As issuer of the shares, InnovAge is strictly liable to Plaintiff and the Class for the misstatements and omissions.

54.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement was true and without omissions of any material facts and were not misleading.

55.     By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

56.     Plaintiff acquired InnovAge shares pursuant and/or traceable to the Registration Statement for the IPO.

57.     Plaintiff and the Class have sustained damages.  The value of InnovAge shares has declined substantially subsequent to and due to the Defendants' violations.

## SECOND CLAIM

### Violation of Section 15 of the Securities Act

### (Against the Individual Defendants)

58.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

59.     This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

60.     The Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of InnovAge within the meaning of Section 15 of the Securities Act.  The Individual Defendants had the power and influence and exercised the same to cause InnovAge to engage in the acts described herein.

61.     The Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

62.     By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  October 14, 2021                **GLANCY PRONGAY & MURRAY LLP**

By:   */s/ Robert V. Prongay*
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email:  rprongay@glancylaw.com

*Counsel for Plaintiff Randy McLeod*

**SWORN CERTIFICATION OF PLAINTIFF**
**InnovAge Holding Corp. (INNV) SECURITIES LITIGATION**

I, Randy McLeod, certify that:

1.     I have reviewed the Complaint, adopt its allegations, and authorize its filing and/or the filing of a lead plaintiff motion on my behalf.

2.     I did not purchase the InnovAge Holding Corp. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.     I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.     My transactions in InnovAge Holding Corp. securities during the period set forth in the Complaint are as follows:

       (See attached transactions)

5.     I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6.     I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.


10/14/2021                              *Randy McLeod*
_____                        _____
      Date                                   Randy McLeod

**Randy McLeod's Transactions in InnovAge Holding Corp. (INNV)**

### Account 1

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 9/14/2021 | Bought | 1,031 | $14.0000 |
| 9/15/2021 | Bought | 469 | $13.8300 |
| 9/20/2021 | Bought | 1,500 | $14.0060 |
| 9/22/2021 | Bought | 120 | $8.7500 |
| 9/22/2021 | Sold | -100 | $9.1401 |
| 9/22/2021 | Sold | -120 | $9.1000 |
| 9/22/2021 | Sold | -120 | $8.8000 |
| 9/22/2021 | Sold | -300 | $9.1200 |
| 9/22/2021 | Sold | -305 | $9.1400 |
| 9/22/2021 | Sold | -355 | $9.0900 |
| 9/22/2021 | Sold | -1,820 | $9.0753 |

### Account 2

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 9/23/2021 | Bought | 225 | $8.0000 |
| 9/28/2021 | Sold | -225 | $6.7501 |