**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 21-cv-02770-SKC

RANDY MCLEOD, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

INNOVAGE HOLDING CORP.,
MAUREEN HEWITT,
BARBARA GUTIERREZ,
J.P. MORGAN SECURITIES LLC,
BARCLAYS CAPITAL INC.,
GOLDMAN SACHS & CO. LLC,
CITIGROUP GLOBAL MARKETS INC.,
ROBERT W. BAIRD & CO. INCORPORATED,
WILLIAM BLAIR & COMPANY, L.L.C.,
PIPER SANDLER & CO.,
CAPITAL ONE SECURITIES, INC.,
LOOP CAPITAL MARKETS LLC,
SIEBERT WILLIAMS SHANK & CO., LLC, and
ROBERTS & RYAN INVESTMENTS, INC.,

    Defendants.

**MOTION OF THE TEXAS AND INDIANA PENSION FUNDS FOR APPOINTMENT AS
LEAD PLAINTIFF AND FOR APPROVAL OF SELECTION OF COUNSEL**

**TABLE OF CONTENTS**

Table of Contents ...................................................................................................................... i
Table of Authorities ................................................................................................................. ii
Introduction .............................................................................................................................. 1
Factual Background ................................................................................................................. 3
Argument .................................................................................................................................. 6
I.   The Texas and Indiana Pension Funds Should Be Appointed Lead Plaintiff Because They Are the Most Adequate Plaintiffs Under the PSLRA ................................................. 6
   A.  The Texas and Indiana Pension Funds Satisfied the Procedural Requirements of the PSLRA ............................................................................................................................. 6
   B.  The Texas and Indiana Pension Funds Have the Largest Financial Interest in the Action .............................................................................................................................. 7
   C.  The Texas and Indiana Pension Funds Satisfy the Requirements of Rule 23 .................... 8
   D.  The Texas and Indiana Pension Funds Will Fairly and Adequately Represent the Interests of the Class and Are Not Subject to Unique Defenses ....................................... 11
II.  The Texas and Indiana Pension Funds' Selection of Counsel Should Be Approved ............. 12
Conclusion ............................................................................................................................. 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re BP Sec. Litig.*,
  No. 4:10-MD-02185 (S.D. Tex.) ..............................................................................12

*City of Birmingham Firemen's and Policemen's Supp. Pension Sys. v. Pluralsight, Inc.*,
  No. 1:19-CV-128, 2020 WL 1452136 (D. Utah Mar. 25, 2020) ........................10, 12

*Mariconda v. Farmland Partners Inc.*,
  No. 18-cv-02104, 2018 WL 6307868 (D. Colo. Dec. 3, 2018) ...............................10

*Medina v. Clovis Oncology, Inc.*,
  No. 15-CV-2546-RM-MEH, 2016 WL 660133 (D. Colo. Feb. 18, 2016) ..........8, 11

*In re Millennial Media, Inc. Sec. Litig.*,
  87 F. Supp. 3d 563 (S.D.N.Y. 2015) .......................................................................10

*Mishkin v. Zynex, Inc.*,
  No. 09-cv-00780-REB-KLM, 2010 WL 749864 (D. Colo. Mar. 3, 2010) ..............10

*In re Molycorp, Inc. Sec. Litig.*,
  No. 12-CV-0292-WJM-KMT, 2012 WL 13013602 (D. Colo. May 29, 2012) .......10

*In re Oppenheimer Rochester Funds Group Sec. Litig.*,
  No. 09-MD-02063, 2009 WL 4016635 (D. Colo. Nov. 18, 2009) ..........................12

*In re Razorfish, Inc. Sec. Litig.*,
  143 F. Supp. 2d 304 (S.D.N.Y. 2001).......................................................................11

*In re SandRidge Energy, Inc. Sec. Litig.*,
  No. CIV-12-1341-G, 2019 WL 4752268 (W.D. Okla. Sept. 30, 2019) ....................2

*In re SemGroup Energy Partners, L.P. Sec. Litig.*,
  No. 08-CV-425, 2008 WL 4826318 (N.D. Okla. Oct. 27, 2008) ..............................9

*In re Spectranetics Corp. Sec. Litig.*,
  No. 08-CV-02048, 2009 WL 1663953 (D. Colo. June 15, 2009).............................7

*Subramanian v. Watford*,
  No. 20-CV-2652, 2021 WL 1697147 (D. Colo. Apr. 29, 2021)................................2, 7, 8, 10

*United Food and Com. Workers Int'l Union Loc. 464A v. Pilgrim's Pride Corp.*,
    No. 20-CV-01966-RM-MEH, 2021 WL 1022704 (D. Colo. Mar. 17, 2021) ........................8, 9

*Vaitkuviene v. Syneos Health, Inc.*,
    No. 5:18-CV-29-H-KS, 2018 WL 3460409 (E.D.N.C. May 29, 2018)......................................9

*Wolfe v. AspenBio Pharma, Inc.*,
    275 F.R.D. 625 (D. Colo. 2011) ...............................................................................................6

**Statutes**

Private Securities Litigation Reform Act of 1995 .................................................................. *passim*

**Other Authorities**

Christopher Osher, *Colorado Attorney General launches probe of Denver-based
    home health provider,* Colorado Gazette (Oct. 9, 2021)............................................................5

Movants El Paso Firemen & Policemen's Pension Fund, San Antonio Fire & Police Pension Fund, and Indiana Public Retirement System (together, the "Texas and Indiana Pension Funds") move this Court, under Section 27(a)(3)(B) of the Securities Act of 1933, 15 U.S.C. § 77z-1(a)(3))(b), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for an order: (i) appointing the Texas and Indiana Pension Funds as Lead Plaintiff to oversee this putative class action on behalf of all persons and entities that purchased or otherwise acquired InnovAge Holding Corp. ("InnovAge" or the "Company") common stock pursuant and/or traceable to the Registration Statement issued in connection with InnovAge's March 2021 initial public offering ("IPO"); and (ii) approving proposed Lead Plaintiff the Texas and Indiana Pension Funds' selection of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Lead Counsel for the Class and Fairfield and Woods, P.C. as Liaison Counsel.

## INTRODUCTION

Under the PSLRA, the Court must appoint as lead plaintiff the movant who timely moves for appointment, possesses the largest financial interest in the outcome of the action, and satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). Under these standards, the Texas and Indiana Pension Funds should be appointed. Their motion is timely, as it is filed within 60 days of the notice required by the PSLRA. The Texas and Indiana Pension Funds also suffered combined losses of approximately $2,121,667 as a result of the alleged misconduct and are unaware of any other movant with a greater loss. The Texas and Indiana Pension Funds also otherwise satisfy Rule 23. Thus, the Texas and Indiana Pension Funds are presumptively the "most adequate plaintiffs" and should be appointed as lead

1

plaintiff because they have "the largest financial interest in the relief sought by the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb).

Along with claiming the largest financial interest, the Texas and Indiana Pension Funds satisfy the relevant requirements of Rule 23 because their claims are typical of those of the Class, and they will fairly and adequately represent all Class members. As explained in the accompanying Joint Declaration, *see* Ex. D to the Declaration of S. Douglas Bunch ("Bunch Decl."), the El Paso Firemen & Policemen's Pension Fund and San Antonio Fire & Police Pension Fund have a close, longstanding relationship that precedes this litigation and together with the Indiana Public Retirement System, have substantial successful joint service with other pension funds as lead plaintiff in other securities class actions. They are highly motivated to oversee counsel and to vigorously prosecute the action in the best interests of all Class members. *See Subramanian v. Watford*, No. 20-CV-2652, 2021 WL 1697147, at *3 (D. Colo. Apr. 29, 2021) (explaining that the "PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff"). Indeed, the Texas and Indiana Pension Funds are precisely the type of lead plaintiff that Congress favored when it enacted the PSLRA, because they are sophisticated institutional investors with both the incentive and ability to supervise and monitor counsel. *In re SandRidge Energy, Inc. Sec. Litig.*, No. CIV-12-1341-G, 2019 WL 4752268, at *4 (W.D. Okla. Sept. 30, 2019) (noting that the PSLRA "was designed to increase the likelihood that institutional investors will serve as lead plaintiffs"). The Texas and Indiana Pension Funds have selected Cohen Milstein, moreover, a law firm with substantial experience in successfully prosecuting securities class actions, to serve as Lead Counsel for the Class, and Fairfield and Woods, P.C. as Liaison Counsel.

Thus, the Texas and Indiana Pension Funds request that the Court appoint them Lead Plaintiff and approve their selection of Cohen Milstein as Lead Counsel and Fairfield and Woods, P.C. as Liaison Counsel.

## FACTUAL BACKGROUND

As alleged in the Complaint, InnovAge operates a healthcare delivery platform that the Company claims takes a "patient-centered care approach" to improve its participants' quality of care. ¶ 36.[1] On February 8, 2021, InnovAge filed its Registration Statement on Form S-1 with the Securities & Exchange Commission, filing its final amendment and prospectus one month later. ¶¶ 38-39. In the IPO, InnovAge sold approximately 18,995,901 shares of common stock at $21.00 per share, receiving $373.6 million in proceeds from the offering. ¶ 39.

In the Registration Statement, InnovAge told investors that the Company was responsible for the "totality" of its "participants' medical and social needs, including primary and specialist care," as well as in-home care, hospital visits, nutrition, transportation to its care centers and medical appointments, and pharmacy and behavioral health support. ¶ 42. InnovAge touted its "interdisciplinary care teams" (or "IDTs") as the "core" of the Company's "comprehensive clinical model":

> *Our interdisciplinary care teams*. Our IDTs are the core of our comprehensive clinical model. They design, manage and coordinate all aspects of each participant's customized care plan. Our IDT structure is designed to enhance access to care for our participants and eliminate the information silos and gaps in care that often occur in traditional fee-for-service models. We are responsible for the totality of our participants' medical and social needs, including primary and specialist care, in-home care, hospital visits, nutrition, transportation to our care centers and other medical appointments, pharmacy and behavioral health support.

---

[1] Citations in the form "¶ __" are to the Complaint (Dkt. No. 1).

¶ 42. InnovAge also claimed in its Registration Statement that "capitation agreements with government payors," such as Medicare and Medicaid, are the source of nearly all of the Company's revenue ("approximately 99.5%"):

> We directly contract with Medicare and Medicaid on a per member, per month ("PMPM") basis, which creates recurring revenue streams and provides significant visibility into our revenue growth trajectory. We receive 100% of the pooled capitated payment to directly provide or manage the healthcare needs of our participants. By proactively providing high-quality care and addressing risks related to social determinants of health, we have demonstrated our ability to reduce avoidable utilization of high-cost care settings, such as hospitals and nursing homes. As a result, we create a surplus that can be used to invest in refining our care model and providing even greater social supports for our participants. These investments further improve participants' experiences and health outcomes, which we believe will result in more savings that will drive our profitable growth. The virtuous cycle we have created enables us to consistently deliver high-quality care, achieve high participant satisfaction and retention, and attract new participants.

¶ 43. As a result, the Company explained, InnovAge's "revenues and operations are dependent upon a limited number of government payors," particularly Medicare and Medicaid:

> Our operations are dependent on a limited number of government payors, particularly Medicare and Medicaid, with whom we directly contract to provide services to participants. We generally manage our contracts on a state by state basis, entering into a separate contract in each state. When aggregating the revenue associated with Medicare and Medicaid by state, Colorado, California and Virginia accounted for a total of approximately 81.5% and 81.8% of our capitation revenue for the year ended June 30, 2020 and the six months ended December 31, 2020, respectively. A majority of our revenues will continue to be derived from a limited number of key government payors, which may terminate their contracts with us upon the occurrence of certain events. The sudden loss of any of our government contracts or the renegotiation of any of our contracts could adversely affect our operating results. In the ordinary course of business, we engage in active discussions and renegotiations with government payors in respect of the services we provide and the terms of our agreements. As the states respond to market dynamics and financial pressures, and as government payors make strategic budgetary decisions in respect of the programs in which they participate, certain government payors may seek to renegotiate or terminate their agreements with us. Any reduction in the budgetary appropriations for our services, whether as a result of fiscal constraints due to recession, emergency situations such as the COVID-19 pandemic, changes in policy or otherwise, could result in a reduction in our capitated fee payments and possibly loss of contracts.

¶ 44. But on September 21, 2021, after the market closed, InnovAge revealed that the Centers for Medicare and Medicaid Services ("CMS") had "determined to freeze new enrollments" at the Company's Sacramento center because of "deficiencies" detected in a recent audit. ¶ 46. Those deficiencies related to, among other things, "failures to provide covered services, provide accessible and adequate services, manage participants' medical situations, and oversee use of specialists." *Id.* InnovAge had omitted any mention of these issues in its Registration Statement; indeed, the risks the Company warned about above were not merely hypothetical, but imminent. On this news, InnovAge's stock price fell by $2.90 per share, one fourth of the Company's price at the time, closing at $8.75 per share on September 22, 2021. ¶ 47.

Two weeks later, on October 9, 2021, the *Colorado Gazette* reported that the Colorado Attorney General had launched an investigation of InnovAge, explaining that the Company had "paid back $13.6 million this year to Colorado's Medicaid program amid audits by state and federal regulators."[2] In the wake of the news in Colorado, a state that generated half of InnovAge's revenue for the fiscal year that ended in June 2021, the Company's spokesman issued a statement acknowledging that they could not "predict the outcome of this investigation." *Id.* Noting that the recent concerns mirrored ones raised internally at the Company since 2017, the *Colorado Gazette* quoted a former executive who described InnovAge's business practices as "a horror show." *Id.*

By the time this action was filed, the Company's stock was trading at $6.61 per share, representing a 69% decline from the $21 per share IPO price. ¶ 48. As a result of Defendants'

---

[2] Christopher Osher, *Colorado Attorney General launches probe of Denver-based home health provider*, Colorado Gazette (Oct. 9, 2021), https://gazette.com/colorado-watch/colorado-attorney-general-launches-probe-of-denver-based-home-health-provider/article_e63bc8bc-2883-11ec-be09-eb2a86b003cc.html.

wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, the Texas and Indiana Pension Funds and other Class members have suffered significant losses and damages.

## ARGUMENT

### I. The Texas and Indiana Pension Funds Should Be Appointed Lead Plaintiff Because They Are the Most Adequate Plaintiffs Under the PSLRA

The Texas and Indiana Pension Funds should be appointed Lead Plaintiff because they are the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 77z-1(a)(3)(B)(I). The PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the "person or group of persons" that (i) timely moved for appointment, (ii) possesses the "largest financial interest" in the relief sought by the class, and (iii) otherwise satisfies the requirements of Rule 23. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); *see also Wolfe v. AspenBio Pharma, Inc.*, 275 F.R.D. 625, 628 (D. Colo. 2011). The Texas and Indiana Pension Funds satisfy all three criteria.

#### A. The Texas and Indiana Pension Funds Satisfied the Procedural Requirements of the PSLRA

Consistent with the requirements of the PSLRA, the Texas and Indiana Pension Funds timely moved for appointment as lead plaintiff by filing this motion within sixty days of the publication of notice that this action had been filed. 15 U.S.C. § 77z-1(a)(3)(A). On October 14, 2021, counsel for the plaintiff in this case published a notice over *Business Wire*, announcing that a securities class action had been filed against the defendants and advising that Class members had until December 13, 2021 to move to be appointed as Lead Plaintiff. *See* Bunch Decl., Ex. A. Consistent with that notice, the Texas and Indiana Pension Funds then filed this motion and

6

submitted certifications attesting to their willingness to serve as representative for the Class. Bunch Decl., Ex. B. The Texas and Indiana Pension Funds thus satisfy the PSLRA's procedural requirements to serve as Lead Plaintiff for the Class.

### B. The Texas and Indiana Pension Funds Have the Largest Financial Interest in the Action

As of the filing of this motion, the Texas and Indiana Pension Funds believe that they have the largest financial interest in the outcome of this action. "Though the statute gives no guidance as to how a plaintiff's financial interest should be calculated, courts routinely look to the movant's financial loss as the most significant factor." *Subramanian*, 2021 WL 1697147, at *2 (citing cases). Indeed, "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period." *Id.* (quoting *In re Bally Total Fitness Sec. Litig.*, No. 04-cv-3530, 2005 WL 627960, at *4 (N.D. Ill. Mar. 15, 2005)); *see also In re Spectranetics Corp. Sec. Litig.*, No. 08-CV-02048, 2009 WL 1663953, at *1 (D. Colo. June 15, 2009).

The Texas and Indiana Pension Funds qualify for appointment as Lead Plaintiff, collectively incurring losses of approximately $2,121,667 from their purchases of InnovAge common stock pursuant or traceable to the Registration Statement. *See* Bunch Decl., Ex. C. Further, in addition to their sizable collective losses, each of the three members of the group likewise has a large financial interest in this litigation, which shows that they are both collectively and individually prepared to protect the interests of the Class. *See* Bunch Decl., Ex. C. The Texas and Indiana Pension Funds are also unaware of any other individual or group who purchased more shares or incurred greater losses pursuant or traceable to the Registration Statement. Because the Texas and Indiana Pension Funds possess the largest financial interest in the outcome of this

litigation, they may be presumed to be the "most adequate" plaintiffs. 15 U.S.C. 77z-1(a)(3)(B)(iii)(I)(bb).

### C. The Texas and Indiana Pension Funds Satisfy the Requirements of Rule 23

Along with possessing the largest financial interest in the outcome of the litigation, the Texas and Indiana Pension Funds likewise "satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. 77z-1(a)(3)(B)(iii)(I)(cc). To assess whether a movant satisfies these requirements, courts have recognized that "[o]nly Rule 23's typicality and adequacy requirements are pertinent for determining a lead plaintiff." *Medina v. Clovis Oncology, Inc.*, No. 15-CV-2546-RM-MEH, 2016 WL 660133, at *3-4 (D. Colo. Feb. 18, 2016) (citing *Wolfe*, 275 F.R.D. at 627-28). The Texas and Indiana Pension Funds satisfy both.

*First*, the Texas and Indiana Pension Funds' claims are typical of those of the purported Class. *Medina*, 2016 WL 660133, at *4. "Typicality exists where the 'injury and the conduct are sufficiently similar.'" *United Food and Com. Workers Int'l Union Loc. 464A v. Pilgrim's Pride Corp.*, No. 20-CV-01966-RM-MEH, 2021 WL 1022704, at *2 (D. Colo. Mar. 17, 2021). Here, the Texas and Indiana Pension Funds, "like other proposed class members," bought stock pursuant or traceable to the Registration Statement "at a price bolstered by Defendants' misrepresentations and omissions, causing damages when the illegal activity was exposed." *Id.*; *see also Subramanian*, 2021 WL 1697147, at *3 (finding investor group met typicality requirement because the group "purchased or otherwise acquired" the common stock at issue "during the Class Period at prices alleged to have been artificially inflated because of Defendants' false and misleading statements").

*Second*, the Texas and Indiana Pension Funds likewise satisfy the adequacy requirement, because they will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

8

This requirement is met when the presumptive lead plaintiff can show (i) "the absence of potential conflict between the named plaintiffs and the class members," and (ii) "that counsel chosen by the representative parties is qualified, experienced and able to vigorously conduct the proposed litigation." *Pilgrim's Pride*, 2021 WL 1022704, at *2. The Texas and Indiana Pension Funds are adequate representatives because there is no conflict between their interests and those of the Class, and their losses show that they have a sufficient interest in the outcome of this litigation. To further demonstrate their adequacy, the Texas and Indiana Pension Funds have accompanied their motion with a Joint Declaration that affirms their understanding of the duties they owe to the Class and their commitment to oversee the prosecution of this action in the best interests of the Class. *See* Joint Declaration ¶¶ 7-15; *see also In re SemGroup Energy Partners, L.P. Sec. Litig.*, No. 08-CV-425, 2008 WL 4826318, at *2 (N.D. Okla. Oct. 27, 2008) (declaration from movant attesting that it will "oversee the activities of counsel to secure the best possible recovery for the class" supports finding of adequacy). The Texas and Indiana Pension Funds intend to fulfill these duties by maximizing the potential recovery for all Class members, actively participating in litigation decisions, consulting their chosen counsel about litigation strategy, and ensuring counsel conducts the litigation in a vigorous, cost-effective matter. *See* Joint Declaration ¶¶ 7-15. Indeed, the two Texas funds have a close, longstanding relationship and history of working together successfully, including their joint service as lead plaintiffs in prior federal securities class actions. *See Vaitkuviene v. Syneos Health, Inc.*, No. 5:18-CV-29-H-KS, 2018 WL 3460409, at *1 (E.D.N.C. May 29, 2018) (appointing the San Antonio Fire & Police Pension Fund and the El Paso Firemen & Policemen's Pension Fund as lead plaintiff in securities class action).

Indeed, the "PSLRA contemplates specifically that a 'group of persons' may serve as lead plaintiff." *Mishkin v. Zynex, Inc.*, No. 09-cv-00780-REB-KLM, 2010 WL 749864, at *2 (D. Colo. Mar. 3, 2010) (the PSLRA "allows a small group of related investors to consolidate their individual losses in seeking designation as lead plaintiff"); *Mariconda v. Farmland Partners Inc.*, No. 18-cv-02104, 2018 WL 6307868, at *3 (D. Colo. Dec. 3, 2018) (noting the "generally accepted proposition that a group of persons may aggregate their losses in calculating a plaintiff's financial interest in the litigation"). Indeed, "[s]mall, cohesive groups," like the Texas and Indiana Pension Funds, "offer public policy advantages over a single individual because groups can share resources, offer a diversity of views, and protect against reliance on one individual." *Subramanian*, 2021 WL 1697147, at *3. For this reason, numerous courts in this District and Circuit have appointed as lead plaintiff groups of investors that have a substantial financial stake in the case and are cohesive enough to oversee counsel—including groups that included the Texas and Indiana Pension Funds. *See City of Birmingham Firemen's and Policemen's Supp. Pension Sys. v. Pluralsight, Inc.*, No. 1:19-CV-128, 2020 WL 1452136, at *2 (D. Utah Mar. 25, 2020) (concluding that Indiana Public Retirement System, together with the Public School Teachers' Pension and Retirement Fund of Chicago, were "two sophisticated institutional investors that are adequate representatives of the class"); *see also In re Molycorp, Inc. Sec. Litig.*, No. 12-CV-0292-WJM-KMT, 2012 WL 13013602, at *2 (D. Colo. May 29, 2012) (collecting cases appointing groups of investors as lead plaintiff).

Furthermore, as sophisticated institutional investors, the Texas and Indiana Pension Funds are precisely "the type of investor Congress prefers as lead plaintiff" in securities class actions. *In re Millennial Media, Inc. Sec. Litig.*, 87 F. Supp. 3d 563, 570 (S.D.N.Y. 2015). Courts have

10

consistently recognized that the PSLRA favors institutional investors because they are the "most likely to have expertise in the securities market and real financial interests in the integrity of the market." *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308-09 (S.D.N.Y. 2001).

Finally, the Texas and Indiana Pension Funds have demonstrated their adequacy by selecting Cohen Milstein to serve as Lead Counsel to represent the Class. *See* Joint Declaration ¶¶ 13-14. As discussed more fully below, Cohen Milstein is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated an ability to conduct complex securities class action litigation effectively.

### D. The Texas and Indiana Pension Funds Will Fairly and Adequately Represent the Interest of the Class and Are Not Subject to Unique Defenses

The presumption in favor of appointing the Texas and Indiana Pension Funds as Lead Plaintiff may be rebutted only upon "proof" by another class member that the presumptively most adequate plaintiff (i) "will not fairly and adequately protect the interest of the class," or (ii) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 77z-1(a)(3)(b)(iii)(I). "As the class member with the largest loss," the Texas and Indiana Pension Funds "have at least as much incentive as the other class members to pursue a recovery vigorously." *Medina*, 2016 WL 660133, at *3 (appointing group of investors as lead plaintiff in securities class action). Further, the Texas and Indiana Pension Funds are unaware of any unique defenses that defendants could raise that would render it inadequate to represent the Class. The Texas and Indiana Pension Funds should thus be appointed Lead Plaintiff. *Medina*, 2016 WL 660133, at *3-4 (finding lead plaintiff movant to be adequate because there was "nothing on the record" showing that the movant or its counsel "suffer from any conflicts of interest with other class members").

## II. The Texas and Indiana Pension Funds' Selection of Counsel Should Be Approved

Under the PSLRA, the lead plaintiff selects lead counsel subject to the Court's approval. 15 U.S.C. § 77z-1(a)(3)(B)(v). In general, though, courts should not disturb a proposed lead plaintiff's choice unless "necessary to protect the interests of the plaintiff class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa). The Texas and Indiana Pension Funds have selected Cohen Milstein to serve as Lead Counsel for the Class. Cohen Milstein, a highly experienced firm in the area of securities litigation and class actions, has successfully prosecuted many securities class actions on behalf of investors, as detailed in the firm's resume. Bunch Decl., Ex. E. *See, e.g.*, *New Jersey Carpenters Health Fund v. The Royal Bank of Scotland Grp., plc*, No. 08-cv-05310 (S.D.N.Y.) ($275 million settlement in mortgage-backed securities class action against the Royal Bank of Scotland); *In re BP Sec. Litig.*, No. 4:10-MD-02185 (S.D. Tex.) ($175 million settlement in securities class action against BP). Due to its qualifications and vigorous advocacy for investors, courts in this Circuit have recognized Cohen Milstein as adequate and qualified class counsel in securities class actions. *Pluralsight*, 2020 WL 1452136, at *2 (appointing Cohen Milstein to serve as lead counsel because the firm is "experienced and there is no reason for the court to presume they will not vigorously pursue this litigation"); *In re Oppenheimer Rochester Funds Group Sec. Litig.*, No. 09-MD-02063, 2009 WL 4016635, at *9 (D. Colo. Nov. 18, 2009) (appointing Cohen Milstein as lead counsel). As a result of Cohen Milstein's extensive experience in litigation involving issues like those raised in this case, Cohen Milstein has the skill and knowledge to enable it to prosecute this action effectively.

## CONCLUSION

For these reasons, the Texas and Indiana Pension Funds request that the Court appoint them as Lead Plaintiff for the Class and approve their selection of Cohen Milstein as Lead Counsel and Fairfield and Woods, P.C. as Liaison Counsel.

Date: December 13, 2021					Respectfully submitted,

						*s/ Jason B. Robinson*
						Jason B. Robinson
						Scott T. Rodgers
						Cecil E. Morris
						FAIRFIELD AND WOODS, P.C.
						1801 California Street, Suite 2600
						Denver, CO 80202
						Tel.: (303) 830-2400
						Fax: (303) 830-1033
						jrobinson@fwlaw.com
						srodgers@fwlaw.com
						cmorris@fwlaw.com

						*Proposed Liaison Counsel for the Class*

						Steven J. Toll (admission pending)
						Julie G. Reiser (admission pending)
						S. Douglas Bunch
						Jan E. Messerschmidt (admission pending)
						COHEN MILSTEIN SELLERS & TOLL PLLC
						1100 New York Avenue, N.W. │ Fifth Floor
						Washington, D.C. 20005
						Tel.: (202) 408-4600
						Fax: (202) 408-4699
						stoll@cohenmilstein.com
						jreiser@cohenmilstein.com
						dbunch@cohenmilstein.com
						jmesserschmidt@cohenmilstein.com

						Carol V. Gilden (admission pending)
						COHEN MILSTEIN SELLERS & TOLL PLLC
						190 South LaSalle Street
						Suite 1705
						Chicago, IL 60603
						Tel.: (312) 357-0370
						Fax: (312) 357-0369
						cgilden@cohenmilstein.com

						Manuel J. Dominguez (admission pending)
						COHEN MILSTEIN SELLERS & TOLL PLLC
						2925 PGA Boulevard, Suite 200

Palm Beach Gardens, FL 33410
Tel.: (561) 515-1400
Fax.: (561) 515-1401
jdominguez@cohenmilstein.com

*Counsel for the Texas and Indiana Pension Funds and Proposed Lead Counsel for the Class*

15

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of December, 2021, I electronically filed a true and correct copy of the foregoing **MOTION OF THE TEXAS AND INDIANA PENSION FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF SELECTION OF COUNSEL** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties via the CM/ECF system.

*s/ Jason B. Robinson*
Jason B. Robinson