**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 21-cv-02770-WJM-SKC

EL PASO FIREMEN & POLICEMEN'S PENSION FUND, SAN ANTONIO FIRE & POLICE PENSION
FUND, and INDIANA PUBLIC RETIREMENT SYSTEM, individually and on behalf of all others
similarly situated,

      Plaintiffs,

v.

INNOVAGE HOLDING CORP.,
MAUREEN HEWITT,
BARBARA GUTIERREZ,
JOHN ELLIS BUSH,
ANDREW CAVANNA,
CAROLINE DECHERT,
EDWARD KENNEDY, JR.,
PAVITHRA MAHESH,
THOMAS SCULLY,
MARILYN TAVENNER,
SEAN TRAYNOR,
RICHARD ZORETIC,
WELSH, CARSON, ANDERSON & STOWE,
APAX PARTNERS, L.P.,
J.P. MORGAN SECURITIES LLC,
BARCLAYS CAPITAL INC.,
GOLDMAN SACHS & CO. LLC,
CITIGROUP GLOBAL MARKETS INC.,
ROBERT W. BAIRD & CO. INCORPORATED,
WILLIAM BLAIR & COMPANY LLC,
PIPER SANDLER & CO.,
CAPITAL ONE SECURITIES, INC.,
LOOP CAPITAL MARKETS LLC,
SIEBERT WILLIAMS SHANK & CO. LLC,
ROBERTS & RYAN INVESTMENTS, INC.

      Defendants.

(Caption continues on following page)

**DECLARATION OF JAN E. MESSERSCHMIDT IN SUPPORT OF LEAD PLAINTIFFS' OMNIBUS OPPOSTION TO DEFENDANTS' MOTIONS TO DISMISS AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

I, Jan E. Messerschmidt, declare under penalty of perjury under the laws of the United States of America:

1.  I am an attorney with the law firm of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein"), am duly admitted to practice in the United States District Court for the District of Colorado and am counsel for Lead Plaintiffs El Paso Firemen & Policemen's Pension Fund, San Antonio Fire & Police Pension Fund, and Indiana Public Retirement System. I submit this declaration in support of Lead Plaintiffs' Omnibus Opposition to Defendants' Motions to Dismiss Amended Class Action Complaint for Violations of the Federal Securities Laws, have personal knowledge of the following facts and could testify accordingly if called upon to do so.[1]

2.  On June 21, 2022, Lead Plaintiffs filed their Amended Class Action Complaint for Violations of the Federal Securities Laws ("Compl." Or "Complaint"), ECF No. 54. In the Complaint, Lead Plaintiffs alleged that "Indiana purchased shares of InnovAge common stock in the Offering from Defendant J.P. Morgan."  Compl. ¶24. In addition, Lead Plaintiffs submitted a sworn certification from Indiana's Executive Director, Stephen R. Russo, verifying the date, amount, and price of their stock purchases. ECF No. 54-2.

3.  In preparing the Complaint, Lead Counsel reviewed, among other sources, articles from *The Capitol Forum,* a subscription-only investigative news organization who published a series of 21 articles about InnovAge from March 29, 2021, to May 7, 2022. For marketing and promotional purposes, *The*

---

[1] Capitalized terms not otherwise defined in this Declaration have the same meaning ascribed to them in the Complaint.

*Capitol Forum* "unlocks" a small number of their articles, making them publicly available on their website. For instance, *The Capitol Forum* unlocked 6 of the 21 articles it published about InnovAge:

a. "InnovAge: Regulators, Former Employees Raise Quality of Care Concerns at Company's PACE Facilities," originally published on March 29, 2021, and available at: https://thecapitolforum.com/innovage-quality-of-care-concerns/.

b. "InnovAge: Current and Former Employees Say Company's Understaffing of Facilities and Lack of Providers is Resulting in Months and Years of Delayed Care for Elderly Patients," originally published on May 10, 2021, and available at: https://thecapitolforum.com/innovage-current-and-former-employees/.

c. "InnovAge: Colorado Regulators Conduct Surprise Audit of PACE Facilities in Coordination with CMS; Sacramento Facility Also Under Scrutiny," originally published on May 27, 2021, originally published on https://thecapitolforum.com/innovage-colorado-regulators-conduct-surprise-auditof-pace-facilities-in-coordination-with-cms-sacramento-facility-also-under-scrutiny/.

d. "InnovAge: Company to Undergo Rare Focused Audit; Penalties Can Vary Depending on the Severity of the Findings," originally published on June 10, 2021, and available at: https://thecapitolforum.com/innovage-company-to-undergo-rare-focused-audit-penalties-canvary-depending-on-the-severity-of-the-findings/.

e. "InnovAge: Citing CMS Audit, Company Management Notifies Staff of At Least a Dozen Areas in Need of Improvement," originally published on September 10, 2021, and available at: https://thecapitolforum.com/innovage-citing-cms-audit-company-management-notifies-staff-ofat-least-a-dozen-areas-in-need-of-improvement/.

f. "InnovAge: CMS Currently Auditing Albuquerque Center; California Suspends Medicaid Enrollments at Troubled Sacramento Center," originally published on November 11, 2021, and available at: https://thecapitolforum.com/innovage-cms-currently-auditing-albuquerque-centercalifornia-suspends-medicaid-enrollments-at-troubled-sacramento-center/.

4. Most articles published by *The Capitol Forum,* however, are available only to paying subscribers, including 15 of the 21 articles the outlet published about InnovAge. To gain access to those 15 articles, Lead Counsel paid *The Capitol Forum*'s annual subscription fee, which ranges from $35,000 to $80,000 per year. In the Complaint, Lead Plaintiffs reference 6 of these 15 articles.

a. "InnovAge: Assisted Living Operators Voice Concerns Regarding Company's Management of Residents' Health, Cite Overwhelmed Staff and Lack of Proactive Care; Company Acknowledges Understaffing Issues in Letter to Patients," originally published on April 23, 2021, and referenced in the Complaint, including at paragraphs 184 to 189

b. "InnovAge: Home Care Scrutinized by Colorado Regulators as Employees Say Home Care Was Often Lacking; CMS Begins Separate Audit as Employees Return to Centers Full Time," originally published on June 23, 2021, and referenced in the Complaint, including at paragraphs 136 to 141.

c. "InnovAge: Driven by High Quotas and Focus on Revenue, Representatives Overpromised Level of Care Seniors Could Receive When Joining Program," originally published on July 9, 2021, and referenced in the Complaint, including at paragraphs 118, 124 to 125, and 141

d. "InnovAge: Unfilled Positions Increased 55% Since May, According to TCF Analysis; HR Employees Point to Low Pay, High Workloads as Cause for Increased Turnover," originally published on July 15, 2021, and referenced in the Complaint, including at paragraphs 202 to 203

e. "InnovAge: Company Requires Contractors to Direct Most Emergencies Towards PACE Centers Instead of 911, But Contractors Say Low Staffing of Centers is Allowing Emergent Conditions to Worsen," originally published on August 26, 2021, and referenced in the Complaint, including at paragraphs 204 and 205.

f. "InnovAge: Government Audits Enter Fourth Month as Company Adjusts Some Practices," originally published on September 2, 2021, and referenced in the Complaint, including at paragraphs 206 and 207.

5. Lead Plaintiffs are not submitting the above articles as exhibits in an abundance of caution because *The Capitol Forum* has not authorized republication by Lead Counsel. In the event the Court believes that reviewing those articles would aid its resolution of the Motions to Dismiss, Lead Counsel will endeavor to obtain permission to file the articles on the public docket or request leave to file them under seal.

6. On August 26, 2022, Underwriters' Counsel contacted Lead Counsel to inquire about their anticipated motion to dismiss and in a telephone conversation that day, conveyed their belief that Lead Plaintiffs did not adequately allege that they had standing to allege their claim under Section 12(a)(2) of the Securities Act against the Underwriter Defendants because they did not allege that they bought shares of InnovAge common stock from the Underwriter Defendants in the IPO. Partner Julie Reiser responded that we were confident that Lead Plaintiffs had alleged such facts and said that she would confirm that belief was accurate.

7.   Later that day, she emailed Underwriters' Counsel to confirm that Lead Plaintiffs alleged that they had standing to allege their claim under Section 12(a)(2), explaining that in paragraph 24 of the Complaint, Lead Plaintiffs alleged that "Indiana Public Retirement System ("Indiana") is a $45.8 billion pension fund operated for the benefit of members and retirees of public universities, schools, municipalities, and state agencies in the State of Indiana. Indiana purchased shares of InnovAge common stock in the Offering from Defendant J.P. Morgan (as defined below)." She also noted that on page 189 of the Complaint, we provide a list of purchases for Indiana that includes a March 4, 2021, purchase of InnovAge stock at $21.00 per share, the offering price, thus conveying that Indiana's transaction records confirmed their purchase of shares directly from one of the Underwriter Defendants in the IPO. She suggested to Underwriters' Counsel that the parties should conduct another meet and confer after they had reviewed those allegations to better understand the basis for their opposition to Plaintiffs' Section 12(a)(2) claim.

8.   That day, Underwriters' Counsel replied via email and stated: "On the 12(a)(2) issue, I have been checking and I do not believe that allegation is correct.  Could you please send a redacted account statement?  That might clear things up."

9.   After receiving this email, Lead Counsel and its internal financial analysts then undertook another review of Indiana's account statement, which they completed that same day, confirming that Indiana's account statement was consistent with the facts alleged in the Complaint. That evening, Julie Reiser informed Underwriters' Counsel about Lead Counsel's review, stating that "We have reviewed the account statement and believe it is accurately represented in our complaint.  Let's set a time to discuss the basis for your argument, please."

10. The next week, on August 30, 2022, Lead Counsel and counsel for the Underwriter Defendant's participated in a telephonic meet and confer in accordance with the Court's Standard

III.D.1 of the Practice Standards for Civil and Criminal Matters. During the call, Lead Counsel told Underwriters' Counsel they had filed certifications of their stock purchases, alleged that Indiana had bought on the offering from J.P. Morgan in the Amended Complaint, and confirmed during the meeting that they were concurrently looking at documentary evidence substantiating that J.P. Morgan sold InnovAge stock to Indiana in the Offering. Underwriters' Counsel responded by asking Lead Counsel to produce a redacted account statement. Reiterating that they were looking at the account documents that confirmed the facts alleged, Lead Counsel asked Underwriters' Counsel to accept a representation that Lead Counsel had reviewed the account statements and other documentary evidence and those documents supported the facts alleged. Underwriters' Counsel refused to accept that representation, suggesting that their records were not consistent with Lead Counsel's account, but refused to explain what the basis for her belief, the records that Underwriters' Counsel had reviewed or to otherwise elaborate on the information in her possession that would suggest the facts alleged in the Complaint were not accurate. Underwriters' Counsel asked Lead Counsel to disclose the name of the entity from whom Indiana bought its shares. Lead Counsel confirmed that the information reflected that Indiana purchased its shares from J.P. Morgan Securities LLC. When Lead Counsel asked Underwriters' Counsel if the records they reviewed showed that Indiana purchased from a different entity, Underwriters' Counsel again refused to disclose what records they had reviewed. Lead Counsel concluded the call by explaining that they would confer internally but believed they had disclosed more than enough information to confirm the facts alleged in the Complaint. Underwriters' Counsel then reiterated the request that Lead Counsel produce a redacted account statement. At no point during the August 30 call did Underwriters' Counsel dispute that the facts alleged in the Complaint were insufficient to plead standing to assert a Section 12(a)(2) claim or indicate that Lead Plaintiffs could resolve the dispute by alleging additional facts.

11. On September 13, 2022, the Underwriter Defendants filed their Motion & Brief to Dismiss Amended Class Action Complaint for Violations of the Federal Securities Laws, ECF No. 75 ("Underwriters' Motion"). In their motion, the Underwriter Defendants included the following footnote

> Pursuant to Standard III.D.1 of the Practice Standards for Civil and Criminal Matters before this Court, the undersigned counsel conferred with counsel for Plaintiffs via email and telephone regarding the relief requested in this motion. Plaintiffs' counsel did not agree to the relief sought herein and declined to file a further amended complaint to correct the deficiencies. During the meet and confer, the undersigned counsel sought confirmation that Plaintiff Indiana Public Retirement System purchased InnovAge stock directly from J.P. Morgan Securities LLC (the only J.P. Morgan entity named in the Complaint), either by sharing a redacted copy of Indiana's brokerage account statement reflecting such purchase or by confirming the name of the legal entity from whom the shares were allegedly bought. Plaintiffs' counsel declined to provide the requested confirmation.

Underwriters' Mot. 1 n.1. Underwriter Defendants made these statements even though Underwriters' Counsel never identified any "deficiencies" in the Complaint, did not suggest that amendments could correct deficiencies, and despite Lead Counsel's repeated confirmations that their review of Indiana's brokerage account statement and other records reflected that they purchased shares directly from J.P. Morgan Securities LLC.

12. On September 13, 2022, Defendants also filed their Joint Motion and Brief to Dismiss Amended Class Action Complaint for Violations of the Federal Securities Laws, ECF No. 73 ("Motion" or "Mot."), as well as their Request for Judicial Notice in Support of Joint Motion to Dismiss Amended Class Action Complaint for Violations of the Federal Securities Laws, ECF No. 76 ("Request for Judicial Notice").

13. In their Request for Judicial Notice, Defendants ask the Court to take judicial notice of, among other documents, "that the market was aware of the information contained" in six articles published

by *The Capitol Forum,* a subscription-only investigative news organization. Request for Judicial Notice at 4. In their Motion, Defendants argue that the market was aware of information in each of *The Capitol Forum* articles "on or after the date" the article was "published."

14. On September 21, 2021, Lead Counsel contacted *The Capitol Forum* to inquire as to the date when *The Capitol Forum* unlocked the six articles that Defendants submitted as exhibits to their Motion. In response, a representative from *The Capitol Forum* stated that they were not certain "when those articles were made public in our site but certainly not on the publication date or any time soon afterwards (by months)," explaining as follows:

> I don't recall the date in which those articles were made public in our site but certainly not on the publication date or any time soon afterwards (by months). From time to time, we made few selected articles public in our site (while I don't have the data, it's certainly less than 1%).

> There is no defined time frame on when we unlock articles, but it is almost always months before or after we see that doing so won't diminish the value our clients get already get.

> I think InnovAge is the only company that has more than a couple articles made public, and for most companies we write about, the coverage is never made public.

15. Attached as Exhibit 1 is a true and correct copy of a Historical Price Lookup chart on InnovAge's website at https://investor.innovage.com/stock-information/historical-price-lookup, which provides the open price, highest price, lowest price, and closing price of InnovAge's common stock on March 4, 2021.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 14th day of November, 2022, in Washington, D.C.

/s/ Jan E. Messerschmidt
Jan E. Messerschmidt

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of November 2022, I electronically filed a true and correct copy of the foregoing Declaration of Jan E. Messerschmidt in Support of Lead Plaintiffs' Opposition to Defendants' Motion to Dismiss Amended Class Cation Complaint for Violations of the Federal Securities Laws with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties via the CM/ECF system.

/s/ *Cecil E. Morris*
Cecil E. Morris