**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 21-cv-02770-WJM-SKC

EL PASO FIREMEN & POLICEMEN'S PENSION FUND, SAN ANTONIO FIRE & POLICE
PENSION FUND, AND INDIANA PUBLIC RETIREMENT SYSTEM, individually and on
behalf of all others similarly situated,

      Plaintiffs,

v.

INNOVAGE HOLDING CORP.,
MAUREEN HEWITT,
BARBARA GUTIERREZ,
JOHN ELLIS BUSH,
ANDREW CAVANNA,
CAROLINE DECHERT,
EDWARD KENNEDY, JR.,
PAVITHRA MAHESH,
THOMAS SCULLY,
MARILYN TAVENNER,
SEAN TRAYNOR,
RICHARD ZORETIC,
WELSH, CARSON, ANDERSON & STOWE,
APAX PARTNERS, L.P.,
J.P. MORGAN SECURITIES LLC,
BARCLAYS CAPITAL INC.,
GOLDMAN SACHS & CO. LLC,
CITIGROUP GLOBAL MARKETS INC.,
ROBERT W. BAIRD & CO. INCORPORATED,
WILLIAM BLAIR & COMPANY, L.L.C.,
PIPER SANDLER & CO.,
CAPITAL ONE SECURITIES, INC.,
LOOP CAPITAL MARKETS LLC,
SIEBERT WILLIAMS SHANK & CO., LLC, and
ROBERTS & RYAN INVESTMENTS, INC.,

      Defendants.

---

**UNDERWRITER DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF
MOTION & BRIEF TO DISMISS AMENDED CLASS ACTION COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

---

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................*ii*

PRELIMINARY STATEMENT ……………………………………………………………1

ARGUMENT................................................................................................................. 2

    I.   Plaintiffs' Section 12 Claim Must Be Dismissed With Prejudice.. .................................... 2

    II.  Rule 9(b)'s Particularity Requirements Apply to Plaintiffs' Section 11 and 12 Claims .... 5

        a. Rule 9(b) Is Applicable to Underwriter Claims ………………………………….……….6

        b. Plaintiffs Do Not Plead the Underwriter Defendants Knowingly Violated Item 303….8

        c. Plaintiffs' Failure to Plead Scienter Requires Dismissal of the
           Section 11 and 12 Claims…………………………………………………………………9

    III.  Plaintiffs' Request for Leave to Amend is Procedurally and Substantively Improper….10

CONCLUSION.................................................................................................................. 10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acito v. IMCERA Grp., Inc.*,
   47 F.3d 47 (2d Cir. 1995)..................................................................................................10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................................5

*Baum v. Dunmire Prop. Mgmt., Inc.*,
   2022 WL 889097 (D. Colo. Mar. 25, 2022) .......................................................................2

*Baker v. Seaworld Ent., Inc.*,
   2016 WL 2993481 (S.D. Cal. Mar. 31, 2016) .....................................................................4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................................5

*Blackmoss Investments Inc. v. ACA Capital Hldgs., Inc.*,
   2010 WL 148617 (S.D.N.Y. 2010)......................................................................................9

*Calderon v. Kansas Dept. of Social and Rehab. Svcs.*,
   181 F.3d 1180 (10th Cir. 1999) .........................................................................................10

*Cole v. New Mexico*,
   58 Fed. App'x 825 (10th Cir. 2003) ....................................................................................2

*Coronel v. Quanta Capital Holdings Ltd.*,
   2009 WL 174656 (S.D.N.Y. Jan. 26, 2009) .......................................................................9

*Emps. Ret. Sys. of City of Baton Rouge and Par. of E. Baton Rouge v. Macrogenics, Inc.*,
   2021 WL 4459218 (D. Md. Sept. 29, 2021) ........................................................................6

*In re Fortune Sys. Sec. Litig.*,
   604 F. Supp. 150 (N.D. Cal. 1984) ......................................................................................4

*Friedman v. Dollar Thrifty Automotive Grp., Inc.*,
   2013 WL 5448078 (D. Colo. Sept. 27, 2013)....................................................................10

*In re Frontier Airlines Litig.*,
   2022 WL 602870 (D. Colo. Mar. 1, 2022) ..........................................................................8

*Genesee Cty. Employees' Ret. Sys. v. Thornburg Mortg. Sec. Tr. 2006-3*,
    825 F. Supp. 2d 1082 (D.N.M. 2011) ......................................................................3, 4

*In re Gold Res. Corp. Sec. Litig.*,
    776 F.3d 1103 (10th Cir. 2015) ................................................................................10

*J&R Marketing, SEP v. Gen. Motors Corp.*,
    549 F.3d 384 (6th Cir. 2008) ......................................................................................9

*Ladmen Partners, Inc. v. Globalstar, Inc.*,
    2008 WL 4449280 (S.D.N.Y. Sept. 20, 2008)........................................................ 6-7

*Maher v. Durango Metals, Inc.*,
    144 F.3d 1302 (10th Cir. 1998)  ................................................................................4

*In re Molycorp, Inc. Secs. Litig*,
    157 F. Supp. 3d 987 (D. Colo. 2016)......................................................................3, 6

*Mosco v. Motricity, Inc.*,
    649 Fed. App'x 526 (9th Cir. 2016) ...........................................................................7

*Plymouth Cty. Retirement Ass'n v. Primo Water Corp.*,
    966 F. Supp. 2d 525 (M.D.N.C. 2013) .......................................................................7

*Rieckborn v. Jefferies LLC*,
    81 F. Supp. 3d 902 (N.D. Cal. 2015) .........................................................................7

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004).......................................................................................8

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.,
    Inc.*, 75 F.3d 801 (2d Cir. 1996) .............................................................................10

*Sanchez v. Crocs, Inc.*,
    667 Fed. App'x 710 (10th Cir. 2016) .......................................................................10

*Schone v. Sodexo, Inc.*,
    2021 WL 915937 (D. Colo. Mar. 10, 2021) ...............................................................2

*Schwartz v. Celestial Seasonings, Inc.*,
    124 F.3d 1246 (10th Cir. 1997) .................................................................................8

*Slater v. A.G. Edwards & Sons, Inc.*,
719 F.3d 1190 (10th Cir. 2013) ......................................................................................8, 9

*In re Thornburg Mortg., Inc. Sec. Litig.*,
824 F. Supp. 2d 1214 (D.N.M. 2011) ................................................................................ 8-9

*In re UBS AG Sec. Litig.*,
2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012).........................................................................3

*In re Ultrafem Inc. Sec. Litig.*,
91 F. Supp. 2d 678 (S.D.N.Y. 2000).......................................................................................8

*Verdi v. City of New York*,
306 F. Supp. 3d 532 (S.D.N.Y. 2018).....................................................................................2

*In re Violin Memory Sec. Litig.*,
2014 WL 5525946 (N.D. Cal. Oct. 31, 2014).....................................................................3, 4

*In re Vonage Initial Public Offering (IPO) Sec. Litig.*,
2009 WL 936872 (D.N.J. Apr. 6, 2009) ..................................................................................7

*West Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*,
495 F. Supp. 3d 622 (N.D. Ill. 2020) ......................................................................................8

## Other Authorities

15 U.S.C. § 77z-1(b)(1) .........................................................................................................4

Fed. R. Civ. P. 9(b) ..................................................................................... *passim*

D.C.COLO.LCivR. 7.1(d) ...................................................................................................10

D.C.COLO.LCivR. 15.1(b)..................................................................................................10

WJM Revised Practice Standards III.B ...............................................................................10

The Underwriter Defendants[1] respectfully submit this reply brief in further support of their motion to dismiss the complaint.  The Underwriter Defendants incorporate by reference the arguments made by the InnovAge Defendants in their reply brief.

### PRELIMINARY STATEMENT

Plaintiffs' opposition ignores the myriad authorities cited in the Underwriter Defendants' Opening Brief establishing that Plaintiffs' Securities Act claims are deficient as a matter of law and should be dismissed.

With respect to Section 12(a)(2), the Complaint fails to state a claim because it does not allege that the Underwriter Defendants solicited Plaintiffs' stock purchases or that Plaintiffs bought directly from the Underwriter Defendants pursuant to the Prospectus.  While Plaintiffs concede that they have not alleged solicitation, they insist a single conclusory allegation that they purchased stock in the Offering from one of the Underwriter Defendants should suffice.  But that is not the law as *In re Violin* and the other cases cited in the Opening Brief—all of which Plaintiffs ignore—squarely hold.  Indeed, despite being given several opportunities to clarify matters, Plaintiffs inexplicably have yet to squarely allege that title to the stock transferred directly from any Underwriter Defendant to them pursuant to the Prospectus, as required.

The Section 11 and 12(a)(2) claims also fail because the Complaint sounds in fraud, is governed by Rule 9(b), and Plaintiffs nowhere allege facts satisfying Rule 9(b)'s heightened pleading requirements.  Plaintiffs suggest Rule 9(b) ***never*** applies to Securities Act claims against underwriters because the courts "uniformly" hold such claims sound in negligence.  But

---

[1]    Capitalized terms used herein shall have the meaning ascribed to them in the Underwriter Defendants' motion and opening brief.  *See* ECF No. 75 (the "Opening Brief" or "Op. Br.").

many cases hold exactly the opposite, including those cited in our Opening Brief, which Plaintiffs likewise ignore.

For these reasons and more, the Motion should be granted without leave to replead.

## ARGUMENT

### I.    Plaintiffs' Section 12 Claim Must Be Dismissed With Prejudice

As demonstrated in the Opening Brief, no claim under Section 12(a)(2) can lie absent sufficient allegations that the Underwriter Defendants solicited Plaintiffs' purchase of InnovAge stock or that Plaintiffs purchased the stock directly from the Underwriter Defendants pursuant to the Prospectus.  *See* Op. Br. at 9-14.  Plaintiffs do not dispute that this is the governing standard. *See* Opp'n at 49.  They concede that their Complaint does not allege the Underwriter Defendants solicited their stock purchases.  *Id.*  And they do not contest that the Complaint fails to allege title to the stock passed directly to them from any Underwriter Defendant pursuant to the Prospectus, as it must. *See* Op. Br. at 10, 12; Opp'n at 49-50.  Plaintiffs' Section 12 claims should be dismissed with prejudice on those grounds alone.  *See, e.g.*, *Cole v. New Mexico*, 58 Fed. App'x 825, 829 (10th Cir. 2003) ("[B]y failing to raise the issue in his initial response to the respondent's motion to dismiss, Mr. Cole has waived the argument …."); *Verdi v. City of New York*, 306 F. Supp. 3d 532, 552 (S.D.N.Y. 2018) (dismissing abandoned claims with prejudice).[2]

Indeed, the Opposition makes but one argument in support of Plaintiffs' Section 12(a)(2) claim and only with regard to one Underwriter Defendant—J.P. Morgan Securities LLC—but that argument is meritless.  According to Plaintiffs, the Complaint's conclusory allegation that "Indiana

---

[2]    *Accord Baum v. Dunmire Prop. Mgmt., Inc.*, 2022 WL 889097, at *7 (D. Colo. Mar. 25, 2022); *Schone v. Sodexo, Inc.*, 2021 WL 915937, at *3 (D. Colo. Mar. 10, 2021) (Crews, M.J.).

purchased shares of InnovAge common stock in the Offering from J.P. Morgan" is "more than enough to establish standing" under Rule 12(a)(2). Opp'n at 49. But Plaintiffs do not even reference the many cases cited in the Opening Brief holding precisely the opposite, let alone attempt to distinguish them. *See* Op. Br. at 11-14 (discussing, *e.g.*, *In re Violin Memory Sec. Litig.*, 2014 WL 5525946 (N.D. Cal. Oct. 31, 2014) and *In re UBS AG Sec. Litig.*, 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012)). As those cases hold, Section 12(a)(2) standing is not sufficiently pled where, as here, a plaintiff merely appends to its complaint an undifferentiated chart of purchases and nowhere—not in the complaint or the chart—indicates which specific purchases it made directly from which specific Underwriter Defendant.

Nor does the single case Plaintiffs cite in support of their position help them. *See* Opp'n at 49 (citing *In re Molycorp, Inc. Sec. Litig.*, 157 F. Supp. 3d 987, 1017 (D. Colo. 2016)). As a threshold matter, the allegations in *Molycorp* were not "identical" to those asserted here, as Plaintiffs inaccurately assert. *See* Opp'n at 49. To the contrary, unlike *Molycorp*, there is no allegation here that Indiana bought its InnovAge stock "pursuant to the … Prospectus" as required. *See* Op. Br. at 10-11. What is more, *Molycorp* devoted only four sentences to the standing question, conceded that "Plaintiffs may not be able to ultimately prove a Section 12(a)(2) claim against each Section 12(a)(2) Defendant," and cited a single case in support of its "wait-and-see" approach. *In re Molycorp*, 157 F. Supp. 3d at 1017 (citing *Genesee Cty. Employees' Ret. Sys. v. Thornburg Mortg. Sec. Tr. 2006-3*, 825 F. Supp. 2d 1082, 1211 (D.N.M. 2011)). It did not cite to or analyze *Violin*, *UBS*, or any of the multiple other cases cited by the Underwriter Defendants, let alone the numerous Supreme Court and Court of Appeals cases *Violin* and *UBS* themselves addressed in coming to their well-reasoned conclusions. *Compare In re Molycorp*, 157 F. Supp.

3d at 1017 *with In re Violin*, 2014 WL 5525946, at \*18-19.  As for *Genesee Cty.*, the single authority to which *Molycorp* did cite, it is distinguishable.  First, to the extent it dispenses with the requirement of "direct" sales absent allegations of solicitation, it is contrary to binding precedent. *See Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1307 (10th Cir. 1998).  Second, the court found dispositive that "Defendants have cited no authority where a court has granted a motion to dismiss on a section 12(a)(2) claim based on allegations comparable to those Plaintiffs have" alleged.  *Genesee Cty.*, 825 F. Supp. 2d at 1211.  The present case could not be more different because we did identify such authority (*see* Op. Br. at 13-14), which Plaintiffs inexplicably ignore.

Plaintiffs also urge the Court to reject as "pure speculation" that the Underwriter Defendants may have sold to a broker and not directly to Indiana.  *See* Opp'n at 49.  But multiple courts have observed that "even in a firm commitment underwriting, it is possible that the underwriters sold to a broker who may have actually passed the title to Plaintiffs."  Op. Br. at 10 (quoting *Baker v. Seaworld Ent., Inc.*, 2016 WL 2993481, at \*18 (S.D. Cal. Mar. 31, 2016)).[3] Because of that distinct, real-world possibility, and because Indiana's certification and Complaint did not clearly align on this point, during the meet-and-confer process, counsel for the Underwriter Defendants expressly asked counsel for Plaintiffs to confirm (either through an account statement or representation of counsel) that Indiana purchased its InnovAge stock in the IPO directly from Defendant J.P. Morgan Securities LLC, the entity named in the Complaint.[4]  Counsel for Plaintiffs

---

[3]    *Accord In re Fortune Sys. Sec. Litig.*, 604 F. Supp. 150, 159-60 (N.D. Cal. 1984).

[4]    Plaintiffs' counsel attempts to make much of the fact that the Underwriter Defendants' counsel did not disclose the internal information that led them to raise the standing issue during the meet-and-confer.  *See* Messerschmidt Decl. at ¶ 10.  That is irrelevant both because discovery is stayed during the pendency of the motion to dismiss, 15 U.S.C. § 77z-1(b)(1), and because no

demurred, saying only that the stock was bought "from J.P. Morgan"—even when asked a second time. That did not resolve matters at all since it left open the prospect that Indiana purchased its stock from a different J.P. Morgan entity. The declaration submitted in support of Plaintiffs' Opposition does not resolve matters either since it still does not state in clear terms that Indiana purchased InnovAge stock *directly* from J.P. Morgan Securities LLC pursuant to the Prospectus.[5] The Court is not required to close its eyes to these facts or to common sense and must consider equally plausible and "obvious alternative explanation[s]," even if not expressly pled in the Complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007), *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("Determining whether a complaint states a plausible claim for relief … [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). Because Plaintiffs do not allege they purchased *directly* from J.P. Morgan Securities LLC pursuant to the Prospectus, the Section 12(a)(2) claim should be dismissed.

## II. Rule 9(b)'s Particularity Requirements Apply to Plaintiffs' Section 11 and 12 Claims

Rule 9(b) applies to Securities Act claims that "sound in fraud," as we already have shown. *See* Op. Br. at 4-5, 7-8, 14-15. Plaintiffs concede that point because they must:[6] the very authorities

---

such disclosure was necessary or warranted given the limited nature of the confirmation that Underwriter Defendants' counsel sought—a confirmation that is directly relevant to Plaintiffs' obligation to plead adequately they have standing, which Plaintiffs' counsel has still not provided.

[5]    Indeed, in relevant part, the Declaration merely repeats the allegations of the Complaint and describes the contents of Plaintiffs' stock purchase certifications attached to the Complaint as Schedules. *See* Messerschmidt Decl. at ¶¶ 7-9. Even taken together, however, the Complaint and Declaration do not establish that title to the stock passed directly from J.P. Morgan Securities LLC to Plaintiff Indiana in the Offering pursuant to the Prospectus. *See* Op. Br. at 10-14.

[6]    Plaintiffs do not dispute that "the Offering Documents statements Plaintiffs challenge in connection with their Exchange Act claims are *exactly the same* Offering Documents statements they challenge with their Securities Act claims." Opening Brief at 5.

to which they cite hold as much,[7] and their past attempts to escape Rule 9(b) in the same way they have attempted here rightly have been rejected.[8]  Now they take a new tack, arguing that: (i) Rule 9(b) does not apply to 1933 Act claims against underwriters; (ii) Item 303's knowledge requirement does not apply to underwriters;[9] and (iii) 1933 Act claims subject to Rule 9(b) do not require Plaintiffs to plead scienter.  None of that is correct.

### a.  *Rule 9(b) Is Applicable to Underwriter Claims*

According to Plaintiffs, "courts uniformly agree that Securities Act claims against underwriters are not subject to Rule 9(b) because such claims 'sound in negligence.'"  Opp'n at 47.  This is plainly wrong as our Opening Brief showed.  *See* Op. Br. at 8.  Indeed, the court's decision in *Ladmen Partners, Inc. v. Globalstar, Inc.*, 2008 WL 4449280 (S.D.N.Y. Sept. 20, 2008) (Op. Br. at 8), standing alone, refutes Plaintiffs' "uniformity" argument.  There, the court applied Rule 9(b) specifically because the plaintiff alleged that the underwriters "turned a blind eye to known deficiencies" and "ignored specific and readily apparent flags."  *Id.* at *12.  Plaintiffs make the same allegations here, alleging numerous "red flags" (s*ee* Compl. ¶¶ 341-43, 348) that the Underwriter Defendants intentionally "overlook[ed]."  Compl. ¶ 343.  And there (as here), Plaintiffs failed "to distinguish the Underwriter Defendants from [the company] and the Individual Defendants," referring to all the 1933 Act defendants generically as "Defendants," which suggested a uniform course of conduct.  *Ladmen*, 2008 WL 4449280, at *12; s*ee also* Compl. ¶¶

---

[7]    *See In re Molycorp*, 157 F. Supp. 3d at 1015 (applying Rule 9(b) to allegations against all "1933 Act Defendants," which included the underwriters) (cited in Opp'n at 49).

[8]    *See* Op. Br. at 7-8 (citing *Emps. Ret. Sys. of City of Baton Rouge and Par. of E. Baton Rouge v. Macrogenics, Inc.*, 2021 WL 4459218, at *16 (D. Md. Sept. 29, 2021)).

[9]    Plaintiffs also do not respond to the Underwriter Defendants' argument that alleged violations of Item 303 of Regulation S-K sound in fraud.  *See* Op. Br. at 6-7.

328(a)-(l), 336(a)-(b), 342 (alleging misconduct by "Defendants"); Compl. ¶¶ 338, 342-44, 348 (alleging misconduct and due diligence failures by the "Securities Act Defendants").[10]

And *Ladmen* is not the only decision applying Rule 9(b) to Securities Act claims against underwriters. The Ninth Circuit endorsed such an approach in *Mosco v. Motricity, Inc.*, 649 Fed. App'x 526, 528 (9th Cir. 2016), affirming the district court's application of Rule 9(b) to Section 11 claims against the underwriting banks. Other courts have reached the same conclusion. *See, e.g.*, *Rieckborn v. Jefferies LLC*, 81 F. Supp. 3d 902, 917-18 (N.D. Cal. 2015) (applying Rule 9(b) to dismiss Section 11 claim against underwriters and rejecting the plaintiff's argument that the allegations of a "unified course of fraudulent conduct" did not implicate the underwriters); *Plymouth Cty. Retirement Ass'n v. Primo Water Corp.*, 966 F. Supp. 2d 525, 553-54 (M.D.N.C. 2013) (applying Rule 9(b) to Section 11 and 12 claims against underwriters because "the mere label [of negligence] is not enough to transform the substance of the claims"); *In re Vonage Initial Public Offering (IPO) Sec. Litig.*, 2009 WL 936872, at *5 (D.N.J. Apr. 6, 2009) (applying Rule 9(b) because "Lead Plaintiff alleges that both Vonage and the Underwriter Defendants 'played a direct role in the IPO,' [so] the same legal analysis of the claims applies to those defendants"). The suggestion that courts are "uniform" in holding that Rule 9(b) does not apply to claims against underwriters (*see* Opp'n at 47-48) thus is demonstrably incorrect.

Plaintiffs point to four cases suggesting that the law is otherwise, but none stand for the broad legal proposition Plaintiffs would have the Court adopt. *See* Opp'n at 47-48. For example,

---

[10]    There are no allegations that the Underwriter Defendants failed to perform any of the "required" tasks. *Compare* Compl. ¶¶ 345-346 (alleging only general standards applicable to underwriters), *with* Compl. ¶ 347 (alleging specifically that *other* defendants "failed to conduct a reasonable investigation of the statements contained in the Registration Statement").

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004), stands for the unremarkable proposition that Rule 8 applies to claims against underwriters ***unless*** the claim sounds in fraud; the court did not pronounce a blanket rule that Rule 9(b) can never apply. *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246 (10th Cir. 1997), is distinguishable for lack of allegations that the underwriters turned a blind eye to "red flags." *Id.* at 1252. The same is true of *West Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622 (N.D. Ill. 2020), which likewise did not involve red flag allegations similar to those set forth in the Complaint. And *In re Ultrafem Inc. Sec. Litig.*, 91 F. Supp. 2d 678, 691 (S.D.N.Y. 2000), is utterly beside the point because the complaint did not allege a "fraudulent scheme" as Plaintiffs concededly allege here.

> b. <u>*Plaintiffs Do Not Plead the Underwriter Defendants Knowingly Violated Item 303*</u>

Plaintiffs have abandoned their theory that Item 303 liability can be imposed for mere negligence, acknowledging in the Opposition that the claim requires actual knowledge. *Compare* Compl. ¶¶ 330-31 (alleging that "the Offering Documents" were prepared in "negligent violation of Item 303 and Item 105"), *with* Opp'n at 25-26 (acknowledging that Items 105 and 303 require actual knowledge).[11] Instead, they argue that Item 303's knowledge requirement only applies to InnovAge management, not to the Underwriter Defendants. *See* Opp'n at 24-26. Plaintiffs are wrong on this score too. The court in *In re Thornburg Mortg., Inc. Sec. Litig.*, 824 F. Supp. 2d 1214 (D.N.M. 2011), *aff'd sub nom. Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190 (10th Cir. 2013), rejected a nearly identical argument, finding that "Plaintiffs fail to differentiate between the

---

[11]     Paragraphs 330-31 of the Complaint are carbon copies of Paragraphs 244-45, which appear in the Exchange Act section. Such duplication provides additional support for applying Rule 9(b) to Plaintiffs' claims against the Underwriter Defendants. *See* Op. Br. at 5.

Defendants, robbing their assertion of plausibility," *id.* at 1262,[12] and that the company's and

officers' alleged knowledge could not "establish[] that the Underwriter Defendants' [sic] failed to

disclose a trend towards illiquidity, in violation of Item 303." *Id.*[13]

Because Plaintiffs must plead knowledge on the part of each Securities Act Defendant

against whom an Item 303 claim is asserted, and because the Complaint nowhere pleads that the

Underwriter Defendants had such knowledge, Plaintiffs' claims against the Underwriter

Defendants for violating Item 303 necessarily fails.[14]

    c.   *Plaintiffs' Failure to Plead Scienter Requires Dismissal of the Section 11 and 12 Claims*

Finally, Plaintiffs argue in a perfunctory footnote that, even when courts find that Rule 9(b)

applies to Securities Act claims, the complaint need not plead facts sufficient to show that

defendants acted with scienter. *See* Opp'n at 48 n.38. The law is plainly otherwise. *See Coronel*

*v. Quanta Capital Holdings Ltd.*, 2009 WL 174656, at *15-16 (S.D.N.Y. Jan. 26, 2009) (where

Section 11 and 12(a)(2) claims sounded in fraud, plaintiff must "convey through factual allegations

---

[12] Considering this holding, as affirmed by the Tenth Circuit, Plaintiffs' citation to *Slater* to argue that "Items 105 and 303 require only that a trend or risk was 'presently known to management,' not that it was known to any individual defendant" is meritless. Opp'n at 25-26. The *Slater* decision makes no such statement and merely quotes the standard language from SEC guidance regarding Item 303. *See Slater*, 719 F.3d at 1197. That guidance regarding what the SEC expects from management does not bear upon federal pleading standards.

[13] *See also J&R Marketing, SEP v. Gen. Motors Corp.*, 549 F.3d 384, 391-92 (6th Cir. 2008) ("The problem for the plaintiffs is that they … specifically only contend that the information was 'knowable' to GMAC. … While Section 11 does not require any additional knowledge, that does not change the fact that the duty of disclosure arising from Item 303 does require knowledge."); *Blackmoss Investments Inc. v. ACA Capital Hldgs., Inc.*, 2010 WL 148617, at *9 (S.D.N.Y. 2010) ("While it is true that Section 11 claims generally do not require pleading scienter, Item 303's requirement of knowledge requires that a plaintiff plead, with some specificity, facts establishing that the defendant had actual knowledge of the purported trend.").

[14] Plaintiffs' argument that InnovAge's management, Hewitt and Gutierrez had sufficient knowledge (*see* Opp'n at 26 & n.17) is addressed by the InnovAge defendants in their reply.

that the defendants made materially false statements, and that they did so with scienter") (cited at Op. Br. at 15).  The reason for this requirement is not difficult to intuit.  As the Second Circuit held in *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995), scienter allegations "provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from 'improvident charges of wrongdoing,' and to protect a defendant against the institution of a strike suit."  The Complaint does not allege "facts that give rise to a strong inference of fraudulent intent," *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 812 (2d Cir. 1996), and the Securities Act claims against the Underwriter Defendants fail.[15]

**III.     Plaintiffs' Request for Leave to Amend is Procedurally and Substantively Improper**

It is black-letter Tenth Circuit law that Plaintiffs cannot seek leave to amend in a one-sentence footnote.  *See* Opp'n at 50 n.41; *Calderon v. Kansas Dept. of Soc. and Rehab. Svcs.*, 181 F.3d 1180, 1187 (10th Cir. 1999) ("Ms. Calderon's single sentence, lacking a statement for the grounds for amendment and dangling at the end of her memorandum, did not rise to the level of a motion for leave to amend.").[16]  Plaintiffs' request also violates two Local Rules of this Court.  *See* D.C.COLO.LCivR. 7.1(d); D.C.COLO.LCivR. 15.1(b); WJM Revised Practice Standards III.B.

<u>CONCLUSION</u>

For the foregoing reasons and those set forth in InnovAge's Reply, the Underwriter Defendants respectfully request that the Court dismiss Plaintiffs' claims with prejudice.

---

[15]     *See also Acito*, 47 F.3d at 52 ("[W]e must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a 'license to base claims of fraud on speculation and conclusory allegations.").

[16]     *Accord Sanchez v. Crocs, Inc.*, 667 Fed. App'x 710, 725 (10th Cir. 2016); *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1118-19 (10th Cir. 2015); *Friedman v. Dollar Thrifty Automotive Grp., Inc.*, 2013 WL 5448078, at *8 (D. Colo. Sept. 27, 2013).

Dated: December 14, 2022                    Respectfully submitted,

                                            **FRESHFIELDS BRUCKHAUS DERINGER US LLP**

                                            */s/ Mary Eaton*
                                            Mary Eaton
                                            Peter J. Linken
                                            601 Lexington Avenue
                                            New York, NY 10022
                                            Telephone: (212) 277-4000
                                            Facsimile: (212) 277-4001
                                            mary.eaton@freshfields.com
                                            peter.linken@freshfields.com

                                            *Counsel for J.P. Morgan Securities LLC,
                                            Barclays Capital Inc., Goldman Sachs & Co.
                                            LLC, Citigroup Global Markets Inc., Robert W.
                                            Baird & Co. Incorporated, William Blair &
                                            Company, L.L.C., Piper Sandler & Co., Capital
                                            One Securities, Inc., Loop Capital Markets LLC,
                                            Siebert Williams Shank & Co., LLC, and Roberts
                                            & Ryan Investments, Inc.*

-11-

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of December, 2022, I electronically filed a true and correct copy of the foregoing **UNDERWRITER DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION & BRIEF TO DISMISS AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties via the CM/ECF system.

*/s/ Mary Eaton*
Mary Eaton

-12-