**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 21-cv-2770-WJM

EL PASO FIREMEN & POLICEMEN'S PENSION FUND,
SAN ANTONIO FIRE & POLICE PENSION FUND, and
INDIANA PUBLIC RETIREMENT SYSTEM, individually and on behalf of all others
similarly situated,

       Plaintiffs,

v.

INNOVAGE HOLDING CORP.,
MAUREEN HEWITT,
BARBARA GUTIERREZ,
J.P. MORGAN SECURITIES LLC,
BARCLAYS CAPITAL INC.,
GOLDMAN SACHS & CO. LLC,
CITIGROUP GLOBAL MARKETS INC.,
ROBERT W. BAIRD & CO. INCORPORATED,
WILLIAM BLAIR & COMPANY, L.L.C.,
PIPER SANDLER & CO.,
CAPITAL ONE SECURITIES, INC.,
LOOP CAPITAL MARKETS LLC,
SIEBERT WILLIAMS SHANK & CO., LLC, and
ROBERTS & RYAN INVESTMENTS, INC.,

       Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART UNDERWRITER
DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**

---

This securities fraud action arises out of alleged false and misleading statements

made by Defendant InnovAge Holding Corp. ("InnovAge" or the "Company") and its

former executives regarding InnovAge's business practices, the success of its growth

strategy, and the potential impact of audits by government agencies in the highly

regulated Program of All-Inclusive Care for the Elderly ("PACE") industry.  Lead

1

Plaintiffs El Paso Fireman & Policemen's Pension Fund, San Antonio Fire & Police Pension Fund, and Indiana Public Retirement System (collectively, "Lead Plaintiffs") bring this action pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b) and §78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5 (the "Exchange Act"), Sections 11, 12(a)(2), and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77l(a)(2), and 77o (the "Securities Act"), on behalf of themselves and other purchasers of InnovAge securities.  (ECF No. 54.)  There are two putative classes in this action: (1) a class of all purchasers of InnovAge securities between March 4, 2021, and December 22, 2021, for claims brought under the Exchange Act; and (2) a class of all persons who purchased publicly traded common stock of InnovAge in or traceable to its March 4, 2021, initial public offering ("IPO").

J.P. Morgan Securities LLC, Barclays Capital Inc., Goldman Sachs & Co. LLC, Citigroup Global Markets Inc., Robert W. Baird & Co. Incorporated, William Blair & Company, L.L.C., Piper Sandler & Co., Capital One Securities, Inc., Loop Capital Markets LLC, Siebert Williams Shank & Co., LLC, and Roberts & Ryan Investments, Inc. (collectively, "Defendants") Motion & Brief to Dismiss the Amended Class Action Complaint for Violations of the Federal Securities Laws ("Motion").  (ECF No. 75.)  For the reasons explained below, the Motion is granted in part and denied in part.

## I. BACKGROUND

The Court assumes the parties' familiarity with the facts underlying this action and incorporates by reference its extensive Background section from its recent Order Granting in Part and Denying in Part Defendants' Joint Motion to Dismiss Amended

Class Action Complaint.  (ECF No. 102 at 2–31.)  Only material facts not recited in that Order are included below.

Defendants together "served as . . . underwriter[s] for the Company's IPO and acted as joint book-running manager[s] of the Offering."  (¶¶ 51–61.)  Indiana Public Retirement System ("Indiana") "purchased shares of InnovAge common stock in the Offering from Defendant J.P. Morgan."  (¶ 24.)

## II. LEGAL STANDARD

### A.    Rule 12(b)(6) Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  In reviewing a motion to dismiss under Rule 12(b)(6), the Court will "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff."  *Ridge at Red Hawk, L.L.C.*, 493 F.3d at 1177.  "[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'"  *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007) ("*Twombly*")).  This means that "[t]he burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief.  'Factual allegations must be enough to raise a right to relief above the speculative level.'"  *Id.* (quoting *Twombly,* 550 U.S. at 545 & 556).  A plaintiff "does not need detailed factual allegations" but must plead more than merely "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Id.*  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable,

and that a recovery is very remote and unlikely." *Ridge at Red Hawk, L.L.C.*, 493 F.3d at 1177 (quoting *Twombly*, 550 U.S. at 556).

## B.      Sections 11 and 12(a) of the Securities Act

To plead a claim under Section 11 of the Securities Act, a plaintiff must allege that (1) "any part of the registration statement . . . contained an untrue statement of material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading"; (2) the plaintiff acquired the security that the registration statement concerned; (3) the defendant is one of the five types of defendants identified by statute[1]; and (4) damages  15 U.S.C. § 77k(a), (e).

Section 12(a) provides that any person who "offers or sell a security . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading . . . shall be liable . . . to the person purchasing the security."  *Id.* § 77l(a)(2).  Therefore, to plead a claim under Section 12(a), a plaintiff must allege that (1) the defendant offered or sold a security; (2) by means of a prospectus of oral communication that contained a material false or misleading statement or omitted information necessary to make the statement not misleading; (3) the plaintiff purchased the security; and (4) damages.  *Id.* § 77l(a)(2), (b).

## C.      Items 303 and 105

Item 303 of Regulation S–K

requires disclosure in offering documents of, among other

---

[1] The category relevant to resolution of the Motion is: "(5) every underwriter with respect to such security."

> things . . . any known trends or uncertainties that have had
> or that the registrant reasonably expects will have a material
> favorable or unfavorable impact on net sales or revenues or
> income from continuing operations.  In interpreting the scope
> of Item 303, courts have relied on guidance from the SEC,
> which explains that a duty to disclose arises where a trend,
> demand, commitment, event or uncertainty is both [1]
> presently known to management and [2] reasonably likely to
> have material effects on the registrant's financial condition or
> results of operations.

*Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*, 45 F.4th 1236,1269 (2022) (internal quotations and citations omitted) (alterations in original).  "Item 105 requires that offering documents contain 'under the caption "Risk Factors" a discussion of the material factors that make an investment in the registrant or offering speculative or risky.'"  *Id.* at 1270 (quoting 17 C.F.R. § 229.105(a)).

### III. ANALYSIS

Defendants argue the claims against them should be dismissed for two reasons: (1) Lead Plaintiffs lack standing to bring a Section 12(a) claim; and (2) both the Section 11 and Section 12(a) claims are inadequately pleaded.  (ECF No. 75 at 15–21.)

### A.    Standing to Assert a Section 12(a) Claim

Defendants argue Lead Plaintiffs lack standing to assert a claim under Section 12(a) because they fail to "allege that [Defendants] are 'sellers' within the meaning of the statute."  (*Id.* at 15.)  According to Defendants, the Amended Complaint fails to allege facts permitting a plausible inference that any of Defendants either transferred title of InnovAge securities directly to any of Lead Plaintiffs or solicited the sale of InnovAge securities to any of Lead Plaintiffs.  (*Id.*)  They argue that the only allegation upon which their purported liability rests are two conclusory allegations that: (1) Defendants "were sellers, offerors, and solicitors of sales of the securities offered using

the Offering Documents in the Offering (*id.* at 16 (quoting ¶ 363)); and (2) Lead Plaintiff Indiana purchased shares "in or traceable to the IPO" (*id.* at 17). Because the Court must ignore conclusory allegations, Defendants argue the allegations in the Amended Complaint are insufficient. (*Id.* at 19–20.)

Lead Plaintiffs respond that the allegation in the Amended Complaint that "Indiana purchased shares of InnovAge common stock in the Offering from Defendant J.P. Morgan" is sufficient to confer standing. (ECF No. 79 at 60.) Further, they argue that the Court should reject Defendants' argument that Lead Plaintiff's lack standing simply because it is "possible" that title to the securities passed through a broker. (*Id.* (quoting ECF No. 75 at 16).)

In reply, Defendants recognize that Lead Plaintiffs' entire standing argument is premised upon the allegation that Indiana purchased InnovAge stock from J.P. Morgan Securities LLC. (ECF No. 82 at 7.)

The Court finds the allegation that Indiana purchased InnovAge stock *from* J.P. Morgan is sufficient to permit the reasonable inference that title passed directly from J.P. Morgan to Indiana. Defendants' reliance on *Baker v. Seaworld Entertainment, Inc.*, 2016 2993481, *18 (S.D. Cal. March 31, 2016), in an attempt to overcome this obvious inference is perplexing. Though they quote that decision to suggest that the mere possibility of an intermediary can overcome an explicit allegation that a security was purchased from a particular party at the motion to dismiss stage, that decision explains that a plaintiff who "plead[s] that they purchased their shares 'in' the IPO and SPOs, but fail[s] to plead that they purchased them from any of the Underwriter Defendants" has not stated a claim. *Id.* Likewise, in *In re Airgate PCS, Inc. Sec. Litig.*, 389 F. Supp. 2d

1360, 1367 (N.D. Ga. 2005), which *Baker* quotes, the "Plaintiffs d[id] not allege anywhere in their complaint that they actually purchased their securities from the Underwriter Defendants."

The distinction between those cases and the present action is obvious.  The complaints in those cases merely alleged that the plaintiffs purchased the securities "in" an offering where there "was a 'firm commitment' underwriting whereby the Underwriter Defendants purchased all shares for resale to the public" and left to the imagination from whom the plaintiff actually purchased the securities.  *Id.*; *accord Baker*, 2016 2993481, *17–18 ("Plaintiffs plead that they purchased their shares "in" the IPO and SPOs, but fail to plead that they purchased them from any of the Underwriter Defendants.").  In this case, however, the Amended Complaint does exactly what *Baker* faulted the plaintiffs in that case for not alleging: that Indiana purchased shares from J.P. Morgan.

In contrast with *Baker* and *In re Airgate*, the plaintiffs in *In re Violin Memory Sec. Litig.*, 2014 WL 5525946, *19 (N.D. Cal. Oct. 31, 2014), alleged that one of them "bought common stock . . . directly from J.P. Morgan."  In that case, the court disregarded this allegation as conclusory and dismissed the Section 12(a)(2) claim against the underwriters.  (*Id.*)  Despite the factual similarity of *In re Violin*, the Court disagrees that this allegation is conclusory.  And in turn, it concludes that this allegation gives rise to the reasonable inference that this sale included transfer of title.  But that is as far as it goes.  There are no allegations relating to direct purchases from any other Defendants, and therefore the standing is lacking.

Accordingly, this portion of the Motion is denied as to J.P. Morgan and granted

as to all other Defendants.

**B.    Adequacy of Allegations**

Defendants argue that both the Section 11 and 12(a) claims should be dismissed because they sound in fraud but fail to meet the Rule 9(b) pleading standard.  (ECF No. 75 at 20–21.)  In their view, because "the statements alleged to be false and misleading in [Lead] Plaintiffs' claims under Sections 11 and 12(a)(2) are exactly the same as the statements Plaintiffs challenge with their Section 10(b) and Rule 10b-5 claims and are alleged to be false and misleading for the same exact reasons using exactly the same words," these claims "sound in fraud" and are subject to the pleading standards of Rule 9(b).  (*Id.* at 20.)

When analyzed under the heightened pleading standards of Rule 9(b), Defendants argue Lead Plaintiffs' claims fail for two reasons.  (*Id.* at 20–21.)  First, they say the claims fail for "the same reasons" as Lead Plaintiffs' claims are inadequately pleaded against the other defendants.  (*Id.* at 21; *see generally* ECF No. 102 (granting in part and denying in part motion to dismiss filed by other defendants in this action).)  Second, they argue the applicability of Rule 9(b) imposed a scienter requirement on Lead Plaintiffs' claims.  (*Id.* (citing *Coronel v. Quanta Cap. Holdings Ltd.*, 2009 WL 174656, at *15–16 (S.D.N.Y. Jan 26, 2009)).)

Lead Plaintiffs respond that "courts uniformly agree that Securities Act claims against underwriters are not subject to Rule 9(b) because such claims "'sound in negligence.'"  (ECF No. 79 at 58.)  They claim the "Tenth Circuit has agreed, holding that, whether or not Rule 9(b) applies to Securities Act claims 'premised on fraud,' it did not apply to Securities Act claims based on due diligence failures, like Plaintiffs' claims against the Underwriter Defendants."  (*Id.* at 59 (quoting *Schwartz v. Celestial*

8

*Seasonings, Inc.*, 124 F.3d 1246, 1251–52 (10th Cir. 1997)).)

Lead Plaintiffs' argument described above initially argues for a categorical rule based on the defendant's role in the offering (underwriter), but it eventually concedes that the Tenth Circuit's holding in *Schwartz* hinged on the defendant's conduct (due diligence failures).  *Schwartz* leaves open whether Rule 9(b) applies but is clear that if Rule 9(b) applies to any Securities Act claims, it is only to those where the alleged *conduct* is fraudulent rather than merely negligent.  124 F.3d at 1251–52.  As for that open question, the Court finds answering it unnecessary to resolve the Motion.

As pleaded, Lead Plaintiffs' claims against Defendants sound in negligence. They allege that underwriters "must not rely on management statements" and conduct an independent due diligence process instead.  (¶ 339.)  They allege that Defendants "negligently failed to conduct reasonable due diligence into the accuracy and completeness of the representations contained in the Offering Documents."  (¶ 343.) Though Defendants argue the allegation that they "overlook[ed] . . . red flags" suggest fraud.  (ECF No. 75 at 14 ("The Complaint's due diligence allegations are inextricably interwoven with suggestions that the Underwriter Defendants deliberately turned a blind eye to known deficiencies in InnovAge's business.").)  But the Court disagrees.  In the context of the entire paragraph, "overlook" in this allegation is much more naturally read in the sense of failing to notice the "red flags" rather than intentionally ignoring them. Therefore, the Court concludes the claims sound in negligence.

Because both of Defendants' arguments concerning the adequacy of the allegations in the Amended Complaint depend solely on the application of Rule 9(b), this portion of the Motion is denied.

## IV. CONCLUSION

For the reasons set for above, the Court ORDERS as follows:

1.     Underwriter Defendants' Motion & Brief to Dismiss Amended Class Action

Complaint for Violations of the Federal Securities Laws (ECF No. 75) is

GRANTED IN PART AND DENIED IN PART as more fully set forth in this

Order; and

2.     All claims dismissed by this Order are DISMISSED WITHOUT

PREJUDICE.

Dated this 18th day of January, 2024.

BY THE COURT:

William J. Martínez
Senior United States District Judge