# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-02770-WJM-SBP

EL PASO FIREMEN & POLICEMEN'S PENSION FUND, SAN ANTONIO FIRE & POLICE PENSION FUND, and INDIANA PUBLIC RETIREMENT SYSTEM, individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

INNOVAGE HOLDING CORP.,
MAUREEN HEWITT,
BARBARA GUTIERREZ,
JOHN ELLIS BUSH,
ANDREW CAVANNA,
CAROLINE DECHERT,
EDWARD KENNEDY, JR.,
PAVITHRA MAHESH,
THOMAS SCULLY,
MARILYN TAVENNER,
SEAN TRAYNOR,
RICHARD ZORETIC,
WELSH, CARSON, ANDERSON & STOWE,
APAX PARTNERS, L.P.,
J.P. MORGAN SECURITIES LLC,
BARCLAYS CAPITAL INC.,
GOLDMAN SACHS & CO. LLC,
CITIGROUP GLOBAL MARKETS INC.,
ROBERT W. BAIRD & CO. INCORPORATED,
WILLIAM BLAIR & COMPANY, L.L.C.,
PIPER SANDLER & CO.,
CAPITAL ONE SECURITIES, INC.,
LOOP CAPITAL MARKETS LLC,
SIEBERT WILLIAMS SHANK & CO., LLC, and
ROBERTS & RYAN INVESTMENTS, INC.,

      Defendants.

---

**AMENDED SCHEDULING ORDER**

1. **DATE OF CONFERENCE AND APPEARANCES OF COUNSEL AND PRO SE PARTIES**

The Rule 16(b) Scheduling Conference was conducted telephonically on February 26, 2024 before the Honorable Susan Prose, United States Magistrate Judge for the United States District Court for the District of Colorado. All litigants are represented.

The following counsel appeared on behalf of Plaintiffs:

- Julie G. Reiser, Molly Bowen, and Brendan R. Schneiderman of Cohen Milstein Sellers & Toll PLLC, 1100 New York Avenue NW, Fifth Floor, Washington, D.C. 20005

- Carol V. Gilden of Cohen Milstein Sellers & Toll PLLC, 190 South LaSalle Street, Suite 1705, Chicago, IL 60603

- Cecil E. Morris and Adrian P. Castro of Fairfield and Woods P.C., 1801 California Street, Suite 2600, Denver, CO 80202-2645

The following counsel appeared on behalf of Defendants:

- ~~Karen Seymour of Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004~~

- Diane L. McGimsey and Avalee Statner of Sullivan & Cromwell, 1888 Century Park East, Suite 2100, Los Angeles, CA 90067

- Peter A. Kurtz of Wilmer Cutler Pickering Hale and Dorr LLP, 1225 17th Street, Suite 2600, Denver, Colorado 80202

- Mary Eaton and Nicholas A. Caselli of Freshfields Bruckhaus Deringer US LLP, 3 World Trade Center, 175 Greenwich Street, 51st Floor, New York, NY 10007

**2.      STATEMENT OF JURISDICTION**

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, Section 22 of the Securities Act, 15 U.S.C. § 77v, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

**3.      STATEMENT OF CLAIMS AND DEFENSES**

a.  **Lead Plaintiffs:**

This is a federal securities class action. Plaintiffs bring claims against InnovAge, its Chief Executive Officer Maureen Hewitt ("Hewitt"), its Chief Financial Officer Barbara Gutierrez ("Gutierrez"), two private equity firms and InnovAge's principal shareholders, Welsh, Carson, Anderson & Stowe ("WCAS") and Apax Partners ("Apax"), the underwriters in the Company's IPO, and members of the Company's Board of Directors who signed Offering Documents.

InnovAge operates as a healthcare company focused on providing all-inclusive medical and social services for certain frail seniors, providing these services through the Program of All-Inclusive Care for the Elderly ("PACE"), funded by government payors, primarily Medicare and Medicaid, which comprises 99% of the Company's revenue. For more than four decades, the PACE model of care was provided almost exclusively by nonprofits, operating on slim margins that were reinvested into their programs. Defendants Hewitt and Thomas Scully successfully lobbied to change the federal law that barred for-profit PACE programs, overcoming opposition from other PACE providers—and even InnovAge's founders—who worried that for-profit status would sacrifice quality for greater margins. And in 2016, InnovAge formally converted to a for-profit company, aided by a $196 million investment by Defendant WCAS, a private equity firm.

Soon after, WCAS solicited other private equity firms to jointly sponsor an initial public offering for InnovAge and signed an agreement with Defendant Apax.

Defendants WCAS and Apax, together with a syndicate of 11 underwriters, launched InnovAge's IPO in March 2021, making bold claims about InnovAge. Unbeknownst to investors, however, InnovAge executives had received internal audits and responded to calls with center directors and other medical staff who conveyed that InnovAge's rapid enrollment was overwhelming its ability to provide necessary healthcare across its facilities in three states. Based on Defendants' false and misleading statements and omissions, Defendants priced InnovAge's stock price for the IPO at $21, rising to $24.20 by close of the first day of trading and to $25.98 within another week, with an enterprise value of $3.75 billion—a nearly four-fold increase from just a year earlier. And throughout the Class Period, Defendants made additional false and misleading statements, including regarding InnovAge's staffing levels, efforts to ensure adequate staffing, and impact of staffing levels on ability to execute participant care plans.

But starting just six months later, in a series of disclosures InnovAge revealed serious regulatory violations, including that CMS and states sanctioned InnovAge due to major patient care, staffing, and compliance deficiencies. These disclosures caused InnovAge's stock price to crash. As a result of Defendants' misconduct alleged, Plaintiffs and members of the Class purchased InnovAge stock at artificially inflated or maintained prices, and suffered significant damages.

Accordingly, Plaintiffs bring claims under the Securities Act of 1933 ("Securities Act") individually and on behalf of all persons who purchased the publicly traded common stock of

InnovAge Holding Corp. ("InnovAge" or the "Company") in or traceable to the Company's initial public offering ("IPO" or "Offering"), conducted on March 4, 2021, and were damaged as a result. Plaintiffs also bring claims under the Securities Exchange Act of 1934 ("Exchange Act") individually and on behalf of all persons who purchased or otherwise acquired InnovAge common stock during the Class Period, and were damaged as a result.

b. **Defendants:**

InnovAge is a healthcare delivery platform focused on providing, through its PACE platform, all-inclusive, capitated care to high-cost, dual-eligible seniors. InnovAge was founded as a non-profit under the name Total Community Options in 2007 and is headquartered in Denver, Colorado. In 2016, CMS removed certain restrictions that made it more difficult to establish for-profit PACE sites. That same year, InnovAge converted to for-profit status and is now one of numerous for-profit PACE providers across the United States. This litigation centers around InnovAge's business operations and its response to the COVID-19 pandemic, which led to well-known and significant challenges in the healthcare industry. Plaintiffs challenge general statements about InnovAge's operations as materially false and misleading because audits at InnovAge's Sacramento and Colorado centers showed that InnovAge has not perfectly executed its business operations. Plaintiffs also challenge statements about InnovAge's staffing levels, claiming that InnovAge suffered staffing shortages because of its allegedly deficient business operations.

Defendants Hewitt and Gutierrez are InnovAge's former CEO and former CFO (the "Officer Defendants"). The director defendants are current and former directors of InnovAge that

began serving on InnovAge's Board of Directors upon the completion of its IPO (the "Director Defendants"). Defendant WCAS is a private equity firm. Entities affiliated with WCAS, which are not named as defendants in the Amended Complaint, invested in InnovAge in 2016. Defendant Apax[1] is also a private equity firm. Entities affiliated with Apax, which also are not named as defendants in the Amended Complaint, invested in InnovAge in July 2020. Neither WCAS nor Apax is a shareholder in InnovAge. The remaining corporate defendants served as underwriters in InnovAge's IPO (the "Underwriter Defendants").

PACE organizations undergo frequent and routine audits by the federal Centers for Medicare & Medicaid Services ("CMS") and state administrative agencies. CMS and InnovAge's state regulators in Colorado, the Colorado Department of Health Care Policy & Financing ("HCPF") and Colorado Department of Public Health & Environment ("CDPHE"), publish audit results. In particular, CMS makes available to the public information concerning the number of "corrective actions" and "immediate corrective actions" required following an audit of any PACE facility. HCPF and CDPHE similarly publish information concerning "citations" and "sanctions" issued to PACE providers, including detailed findings concerning the facts underlying each citation or sanction. In addition to this publicly available information, InnovAge's offering documents filed in connection with its IPO (the "Offering Documents"), as well as its subsequent filings with the Securities and Exchange Commission ("SEC"), disclosed that InnovAge was found to have violated PACE regulations concerning "compliance with regulatory requirements,

---

[1] In April 2021, Apax Partners, L.P. converted to a Delaware limited liability company known as Apax Partners US, LLC.

participant quality of care, care plan development and implementation . . . and other issues" in the past, and included extensive risk disclosures concerning the risk that regulatory audits may result in additional adverse findings or "enrollment sanctions that may impede [InnovAge's] ability to expand." InnovAge's SEC filings also warned that a "lack of availability of clinical personnel . . . has become a significant operating issue facing all healthcare providers, which situation has been further exacerbated by the COVID-19 pandemic."

Notwithstanding these disclosures, Plaintiffs allege that post-IPO audits at InnovAge's Sacramento and Colorado centers, which identified certain deficiencies in InnovAge's provision of care and resulted in the suspension of new enrollments at certain facilities, render InnovAge's general statements about its business operations and its response to staffing shortages materially false and misleading. In the Amended Complaint, Plaintiffs alleged 43 false or misleading statements or omissions, comprised of 29 unique statements or omissions. In its December 21, 2023 order on Defendants' motion to dismiss, the Court rejected Plaintiffs' claims with respect to all but six of those statements. With respect to Plaintiffs' Securities Act claims, the three remaining statements at issue are comprised of generalized statements in the Offering Documents concerning (1) InnovAge's use of interdisciplinary teams to develop individualized care plans, (2) InnovAge's transition to in-home and telehealth services during the COVID-19 pandemic, and (3) InnovAge's in-home care capabilities. With respect to Plaintiffs' Exchange Act claims, the three remaining statements concern InnovAge's staffing levels and response to staffing needs.

Statements broadly related to InnovAge's activities, plans and goals are not rendered false or misleading simply because InnovAge's operations were deficient in some respects, particularly

in light of the numerous disclosures that prior audits had identified deficiencies in InnovAge's operations—as they did with numerous other PACE providers.  In addition, materials produced by InnovAge in discovery will establish that InnovAge's statements concerning staffing shortages were not materially false or misleading, and that InnovAge had disclosed the fact of staffing shortages in its public filings.  In light of these disclosures, no reasonable investor could interpret the Company's statements to ensure that it had perfectly executed its business operations and that its efforts to ensured adequate staffing levels guaranteed that InnovAge would never experience staffing issues.  Moreover, even if Plaintiffs were able to demonstrate any material misstatements or omissions, which they will not, materials produced by InnovAge in discovery will establish that Director Defendants had reasonable ground to believe and did believe that the three challenged statements in the Offering Documents were not materially false or misleading, and that the Officer Defendants, WCAS and Apax acted in good faith at all relevant times.

The Underwriter Defendants incorporate the foregoing by reference.

In addition, the Underwriter Defendants challenge Plaintiffs' standing to assert a violation of Section 12(a)(2) of the Securities Act, as Section 12(a)(2) contains "an express privity requirement, giving a cause of action only to individuals who purchase securities directly from a person who sells the securities by means of a prospectus." *See Joseph v. Wiles*, 223 F.3d 1155, 1161 (10th Cir. 2000).  Lead Plaintiffs El Paso and San Antonio do not allege that they purchased shares of InnovAge common stock in the IPO directly from any of the Underwriter Defendants. Lead Plaintiff Indiana has never alleged that it purchased shares of InnovAge common stock in the IPO directly from any of the following Underwriter Defendants:  Barclays Capital Inc.;

Goldman Sachs & Co. LLC; Citigroup Global Markets Inc.; Robert W. Baird & Co. Incorporated; William Blair & Company, L.L.C.; Piper Sandler & Co.; Capital One Securities, Inc.; Loop Capital Markets LLC; Siebert Williams Shank & Co., LLC; or Roberts & Ryan Investments, Inc.  Lead Plaintiffs disagree that the foregoing are undisputed facts, and despite being given multiple opportunities to state the factual basis of that disagreement, including in connection with this submission, have declined to do so.

The Underwriter Defendants reserve their right to assert any defenses that they may have, including a due diligence defense under Sections 11(b)(3) and 12(a)(2) of the Securities Act, as the Underwriter Defendants (1) with respect to the Offering Documents (as that term is defined in the Amended Complaint), undertook a reasonable investigation in connection with the IPO to the extent required by applicable laws and regulations, and had reasonable grounds to believe and did believe that the statements contained in the Offering Documents were true and that there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading and (2) did not know, nor through the exercise of reasonable care could have known, that any material statement in the Offering Documents was untrue or omitted.

The Underwriter Defendants further reserve their right to assert a loss causation (or negative causation) defense as articulated in Section 11(e) and Section 12(b) of the Securities Act with respect to any damages that might become recoverable in this action against the Underwriter Defendants, including on the grounds that any declines in the price of InnovAge common stock occurred due to factors other than the Underwriter Defendants' alleged conduct.

The Underwriter Defendants further reserve their right to assert that Plaintiffs' claims are barred pursuant to Section 11(a) and Section 12(a)(2) of the Securities Act on the grounds that Plaintiffs and/or other putative class members possessed actual knowledge of any alleged misstatements or omissions at the time of the IPO or that such information was widely available to investors.

**4.     UNDISPUTED FACTS**

The following facts are undisputed by all parties:

**InnovAge**

- InnovAge is a healthcare company focused on providing, through its PACE platform, all-inclusive, capitated care to frail, high-cost individuals aged 55 and over, most of whom qualify for benefits under both Medicare and Medicaid.

- InnovAge directly contracts with government payors, such as Medicare and Medicaid, through PACE and receives a capitated risk-adjusted payment to manage the totality of a participant's medical care across all care settings.

- In May 2007, InnovAge first incorporated under the name Total Community Options, Inc. in Colorado as a not-for-profit organization.

- InnovAge's common stock is listed on the Nasdaq Global Select Market under the symbol "INNV."

- InnovAge is headquartered in Denver, Colorado.

**The Parties**

- Maureen Hewitt served as InnovAge's President and Chief Executive Officer from 2006 to January 1, 2022, and as a Director of InnovAge from 2020 to January 1, 2022.

- Barbara Gutierrez served as InnovAge's Chief Financial Officer from May 15, 2017 to July 10, 2023.

**Investor Communications and SEC Filings**

- InnovAge filed a Form S-1 Registration Statement with the SEC on or about February 8, 2021.

- InnovAge filed Amendment No. 1 to the Form S-1 Registration Statement with the SEC on or about February 24, 2021.

- InnovAge filed Amendment No. 2 to the Form S-1 Registration Statement with the SEC on or about February 26, 2021.

- InnovAge filed Amendment No. 3 to the Form S-1 Registration Statement with the SEC on or about March 3, 2021.

- InnovAge filed a Prospectus with the SEC on or about March 5, 2021.

- InnovAge held a conference call with investors on May 10, 2021.

- InnovAge filed a Form 10-Q with the SEC on or about May 11, 2021.

- InnovAge held a conference call with investors on September 21, 2021.

- InnovAge filed a Form 10-K with the SEC on or about September 23, 2021.

- InnovAge held a conference call with investors on November 9, 2021.

- InnovAge filed a form 10-Q with the SEC on or about November 9, 2021.

**IPO**

- On March 4, 2021, InnovAge conducted an IPO of InnovAge securities. As part of the IPO, InnovAge offered 16,666,667 shares of its common stock at a price to the public of $21.00 per share. The IPO's underwriters exercised an option to purchase an additional 2,329,234 shares of common stock from InnovAge at the price of $21.00 per share, less underwriting discounts and commissions.

**Underwriters**

- J.P. Morgan Securities LLC was an underwriter of the IPO.

- Barclays Capital Inc. was an underwriter of the IPO.

- Goldman Sachs & Co. LLC was an underwriter of the IPO.

- Citigroup Global Markets Inc. was an underwriter of the IPO.

- Robert W. Baird & Co. Incorporated was an underwriter of the IPO.

- William Blair & Company, L.L.C. was an underwriter of the IPO.

- Piper Sandler & Co. was an underwriter of the IPO.

- Capital One Securities, Inc. was an underwriter of the IPO.

- Loop Capital Markets LLC was an underwriter of the IPO.

- Siebert Williams Shank & Co., LLC was an underwriter of the IPO.

- Roberts & Ryan Investments, Inc. was an underwriter of the IPO.

**Sacramento and Colorado Audits**

- In May 2021, CMS conducted an audit of InnovAge's Sacramento, California center.

- In May 2021, the HCPF and the CDPHE conducted a joint audit of InnovAge's Colorado PACE centers.

- In June and July 2021, CMS conducted an audit of InnovAge's Colorado PACE program.

- Effective September 18, 2021, CMS suspended new enrollments at InnovAge's Sacramento center.

- Effective December 23, 2021, CMS suspended new enrollments at InnovAge's Colorado centers.

- Effective December 23, 2021, HCPF determined to impose sanctions and suspended new enrollments of Medicaid beneficiaries at InnovAge's Colorado centers.

5.    **COMPUTATION OF DAMAGES**

**Lead Plaintiffs' Calculation of Damages:** Damages to Lead Plaintiff and the Class are significant. Due to the complexity of calculating damages in securities fraud class actions, expert testimony is required. Lead Plaintiff will proffer an expert on damages, at the time set forth in the Court's Scheduling Order, who will opine on the amount of per share damages suffered by Lead Plaintiff and the Class.

**Defendants' Statement Regarding Damages:**

Defendants deny that Plaintiffs are entitled to any of the relief that they seek. Defendants will seek an award of their costs and attorney's fees to the extent permitted by law.

6.    **REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)**

a.    **Date of Rule 26(f) Meeting and Participation of Counsel**

Lead Plaintiffs and Defendants (the "Parties") conferred telephonically on January 30, 2024. Julie G. Reiser, Carol V. Gilden, Molly Bowen, Jan E. Messerschmidt, and Brendan R. Schneiderman of Cohen Milstein Sellers & Toll, PLLC participated on behalf of Lead Plaintiffs. Diane L. McGimsey and Avalee M. Statner of Sullivan & Cromwell LLP participated on behalf of InnovAge, the Officer Defendants, the Director Defendants, Apax, and WCAS; and Peter J. Linken and Nicholas Caselli of Freshfields, Bruckhaus, Deringer US LLP participated on behalf of the Underwriter Defendants.

b.    **Statement as to when Rule 26(a)(1) disclosures were or will be made.**

The Parties will exchange initial disclosures pursuant to Rule 26(a)(1) by March 11, 2024. ~~March 1, 2024~~

c.  **Proposed changes, if any, in timing or requirement of disclosures under Rule 26(a)(1).**

The Parties ~~propose no additional changes to the scope or timing of disclosure provided in Rule 26(a)(1).~~ agreed to extend the deadline for exchanging Rule 26(a)(1) disclosures to March 11, 2024.

d.  **Statement concerning any agreements to conduct informal discovery:**

The Parties currently have no agreement to conduct informal discovery.

e.  **Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system.**

The Parties agree to use a unified exhibit numbering system. The Parties will also negotiate, and present to the Court, a stipulated protective order and protocol for the production of electronically stored information ("ESI") that will govern document production and discovery in this case. The Parties will continue to work towards minimizing the cost of litigation. The Parties agree to accept electronic service of any discovery materials or pleadings in connection with this action.[2] The Parties anticipate that certain discovery in this action may include information protected by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").  To the extent any HIPAA-protected information is sought in discovery, the parties may also enter into an agreement regarding patient privacy concerns as required by law.

f.  **Statement as to whether the Parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.**

---

[2] For the avoidance of doubt, Defendants do not agree to accept electronic service of any

discovery materials or pleadings in connection with this action on behalf of any related entities or those related entities' employees that are located outside the United States or are not named as parties to this action.

The Parties anticipate that their claims and defenses will involve extensive ESI, and that a substantial amount of disclosure and discovery will involve records maintained in electronic form. The Parties will negotiate, and present to the Court, a stipulated order for the production of ESI that will facilitate the Parties' discovery of ESI. All counsel have informed the Parties of their obligations to preserve potentially discoverable material. The Parties have discussed the general sources, types, and volume of their clients' respective ESI.

g. **Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.**

The Parties will assess the possibility of settlement prior to the close of discovery and will propose convening a settlement conference or participation in a private mediation if and when appropriate based on their assessments.

7.   **CONSENT**

All Parties **have not** consented to the exercise of jurisdiction of a magistrate judge.

8.   **DISCOVERY LIMITATIONS**

For ease of reference to the parties in this section:

Defendants Maureen Hewitt, Barbara Gutierrez, John Ellis Bush, Andrew Cavanna, Caroline Dechert, Edward Kennedy, Jr., Pavithra Mahesh, Thomas Scully, Marilyn Tavenner, Sean Traynor, and Richard Zoretic are, collectively, the "Individual Defendants."

Welsh, Carson, Anderson & Stowe and Apax Partners, L.P. are, collectively, the "Private Equity Defendants."

J.P. Morgan Securities LLC, Barclays Capital Inc., Goldman Sachs & Co. LLC, Citigroup Global Markets Inc., Robert W. Baird & Co. Incorporated, William Blair & Company, L.L.C., Piper Sandler & Co., Capital One Securities, Inc., Loop Capital Markets LLC, Siebert Williams Shank & Co., LLC, and Roberts & Ryan Investments, Inc. are, collectively, the "Underwriter Defendants."

**Depositions.** Given the complex nature of this securities fraud class action, Lead Plaintiffs anticipate that they will require more than 10 depositions. Defendants reserve the right to object to Plaintiffs taking more than 10 depositions without leave of court, as provided for in Fed. R. Civ. P. 30(a)(2)(A)(i).  Should the Parties seek additional depositions beyond the 10 per side to which they are entitled, the Parties agree to meet and confer and should the Parties reach an impasse on the total number of depositions, will seek the Court's assistance as appropriate.

**Interrogatories.** ~~At this time, Lead Plaintiffs are not in a position to anticipate the number of interrogatories that will be required. Defendants reserve the right to object to Plaintiffs serving more than 25 interrogatories without leave of court, as provided for in Fed. R. Civ. P. 33(a)(1). Plaintiffs are permitted to serve up to 25 interrogatories, including discrete subparts, to each of three groups: (1) InnovAge Holding Corp. and the Individual Defendants; (2) the Private Equity Defendants; and (3) the Underwriter Defendants. (1) InnovAge Holding Corp. and the Individual Defendants, (2) the Private Equity Defendants, and (3) the Underwriter Defendants are each permitted to serve up to 25 interrogatories, including discrete subparts, to Plaintiffs.~~

*Plaintiffs are permitted to serve up to 25 interrogatories, including discrete subparts, to each of two groups: (1) InnovAge Holding Corp., the Individual Defendants and the Private Equity Defendants; and (2) the Underwriter Defendants.*

*Plaintiffs are permitted to serve one additional interrogatory, without subparts, on each*

*of the Private Equity Defendants on the topic of the structure and identity of the entities that beneficially own stock in and/or Plaintiffs allege exercise control over InnovAge.*

*(1) InnovAge Holding Corp., the Individual Defendants, and the Private Equity Defendants, and (2) the Underwriter Defendants are each permitted to serve up to 25 interrogatories, including discrete subparts, to Plaintiffs.*

Should any Party seek additional interrogatories, the Parties agree to meet and confer and should the Parties reach an impasse on the total number of interrogatories, will seek the Court's assistance as appropriate.

a.  **Limitations which any Party proposes on the length of depositions.**

~~Lead Plaintiffs propose no limitations on the length of depositions other than those set forth in the Federal Rules of Civil Procedure.~~ Each deposition shall be limited to one (1) day of seven (7) hours unless the parties agree to otherwise or seek leave for additional deposition time from the court.

b.  **Limitations Which Any Party Proposes on the Number of Requests for Production and/or Requests for Admission**

**Requests for Production and Requests for Admission.**
~~The Parties propose no limitations on the number of requests for production of documents and things, or on the number of requests for admission, other than those set forth in the Federal Rules of Civil Procedure.~~

~~Plaintiffs are permitted to serve up to 25 requests for production and 25 requests for admission to each of three groups: (1) InnovAge Holding Corp. and the Individual Defendants; (2) the Private Equity Defendants; and (3) the Underwriter Defendants.~~

~~(1) InnovAge Holding Corp. and the Individual Defendants, (2) the Private Equity~~

~~Defendants, and (3) the Underwriter Defendants are each permitted to serve up to 25 requests for production and 25 requests for admission to Plaintiffs.~~

*Plaintiffs are permitted to serve up to 25 requests for production and 25 requests for admission to each of two groups: (1) InnovAge Holding Corp., the Individual Defendants and the Private Equity Defendants; and (2) the Underwriter Defendants.*

*(1) InnovAge Holding Corp., the Individual Defendants, and the Private Equity Defendants, and (2) the Underwriter Defendants are each permitted to serve up to 25 requests for production and 25 requests for admission to Plaintiffs.*

The Parties, however, reserve the right to object to the service of any requests for production of documents or requests for admissions to the extent the number or scope of such requests would impose an undue burden on the receiving party. Should any Party seek to object to the service of additional requests for production or requests for admission, the Parties agree to meet and confer and should the Parties reach an impasse on the total number of requests, will seek the Court's assistance as appropriate.

c.  **Other Planning or Discovery Orders**

The Parties will negotiate, and present to the Court, a proposed stipulated protocol for the production of ESI and a proposed stipulated protective order. The Parties are working towards agreement on a final proposal and will promptly contact the Court if they require assistance in resolving any dispute.

9.    **CASE PLAN AND SCHEDULE**

| Event | Date |
|---|---|
| Scheduling Conference | February 26, 2024 |

| Defendants to file Answer | March 4, 2024 |
|---|---|
| Parties to exchange Initial Disclosures pursuant to Rule 26(a) | March 11, 2024 |
| Lead Plaintiffs' Motion for Class Certification | May 8, 2024 |
| Deadline to Join Additional Parties and Amend Pleadings | July 8, 2024 |
| Response to Class Certification | July 19, 2024 |
| Reply in Support of Class Certification | September 18, 2024 |
| Deadline to Serve Requests for Production of Documents, Interrogatories, and Requests for Admission | January 27, 2025 |
| Substantial Completion of document production | February 15, 2025 |
| Deadline to Complete Fact Discovery, including Fact Depositions | March 29, 2025 |
| Service of Rule 26(a)(2) expert witness report(s) | May 14, 2025 |
| Service of rebuttal expert report(s) in response to initial expert report(s) | July 9, 2025 |
| Service of reply expert report(s) | September 3, 2025 |
| Close of expert discovery; completion of expert depositions | October 1, 2025 |
| Motions for Summary Judgment/Dispositive Motions | November 11, 2025 |
| Response to Summary Judgment Motion | January 16, 2026 |
| Reply in Support of Summary Judgment Motion | February 20, 2026 |
| Deadline to file motions *in limine/Daubert* motions | The parties are to comply with Judge Martinez's Practice Standards. |
| Deadline to submit joint jury instructions, *voir dire*, verdict forms, and trial briefs | The parties are to comply with Judge Martinez's Practice Standards. |
| Rule 26(a)(3) pretrial disclosures | The parties are to comply with Judge Martinez's Practice Standards. |
| Final Pretrial Conference (SBP) | March 18, 2026, at 1:00 p.m. MDT |
| Final Trial Preparation Conference (WJM) | The parties are to comply with Judge Martinez's Practice Standards. |
| Jury trial | The parties are to comply with Judge Martinez's Practice Standards. |

## 10.    EXPERT WITNESSES

### a.  The Parties Shall Identify Anticipated Fields of Expert Testimony, if Any

Lead Plaintiffs anticipate proffering expert opinion in the fields of economics, healthcare,

underwriting and due diligence, damages, and other disciplines as needed.

Defendants anticipate using expert testimony in the areas identified by Plaintiffs.

b.  **Limitations Which the Parties Propose on the Use or Number of Expert Witnesses**

~~None.~~ The parties agree that any potential limit regarding expert witnesses will be revisited at a future status conference.

11.  **DATES FOR FURTHER CONFERENCES**

Status conferences will be held in this case at the following dates and times:

~~Plaintiffs request that status conferences be set for every **90 days**. Defendants believe that it is not necessary for the Court to set periodic status conferences at this time, as the Parties have agreed to confer in good faith to resolve any discovery disputes that may arise and to seek the Court's assistance if necessary and appropriate to resolve any particular dispute.~~ A telephonic Status Conference is set for June 20, 2024, at 11:00 a.m. MDT before Magistrate Judge Susan Prose. The parties shall attend by calling 571-353-2301, Guest meeting ID- 868150043. All attendees shall please mute their phone when not speaking and not use speaker phone.

A Final Pretrial Conference is set for March 18, 2026, at 1:00 p.m. MDT in Courtroom C205, Byron Rogers U.S. Courthouse, 1929 Stout Street, Denver, Colorado before Magistrate Judge Susan Prose. The parties shall electronically file their proposed pretrial order, with witness lists and exhibit lists, through CM/ECF and include a courtesy copy of the proposed order in a Word format sent by email to Prose_Chambers@cod.uscourts.gov by March 11, 2026.

12. **OTHER SCHEDULING MATTERS**

a.  **Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement.**

None.

**b. Anticipated length of trial and whether trial is to the court or jury.**

The Parties are not in a position to provide an accurate or informed estimate of the length of trial at this time. The Parties anticipate that trial will last at least ten days. The Parties understand that, after entry of the Final Pretrial Order, the Parties must schedule a status conference if a trial longer than five days is necessary. Trial in this matter will be by jury.

**c. Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2520; or the U.S. Courthouse/Federal Building, , La Plata County Courthouse 1060 E. 2nd Avenue, Suite 150, Durango, Colorado 81301.**

None.

## 13. NOTICE TO COUNSEL AND *PRO SE* PARTIES

The Party filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by serving the motion contemporaneously upon the moving attorney's client. Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case. With respect to discovery disputes, Parties must comply with D.C.COLO.LCivR 7.1(a). Counsel and unrepresented Parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## 14. AMENDMENTS TO SCHEDULING ORDER

This Scheduling Order may be altered or amended only upon a showing of good cause.

 IT IS SO ORDERED.

DATED at Denver, Colorado, this 27th day of March, 2024.

BY THE COURT:

Susan Prose
United States Magistrate Judge

APPROVED:

/s/ Julie G. Reiser
Julie G. Reiser
S. Douglas Bunch
Molly Bowen
Jan E. Messerschmidt
Brendan R. Schneiderman
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, N.W., Fifth Floor
Washington, D.C. 20005
Tel.: (202) 408-4600
Fax.: (202 408-4699
jreiser@cohenmilstein.com
dbunch@cohenmilstein.com
mbowen@cohenmilstein.com
jmesserschmidt@cohenmilstein.com
bschneiderman@cohenmilstein.com

Carol V. Gilden
COHEN MILSTEIN SELLERS & TOLL PLLC
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Tel.: (312) 357-0370
Fax.: (312) 357-0369
cgilden@cohenmilstein.com

Manuel J. Dominguez
COHEN MILSTEIN SELLERS & TOLL PLLC
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Tel.: (561) 551-1400
Fax.: (561) 515-1401
jdominguez@cohenmilstein.com

*Lead Counsel for Lead Plaintiff*

Cecil E. Morris
Adrian P. Castro
FAIRFIELD AND WOODS, P.C.
1801 California Street, Suite 2600
Denver, CO 80202
Tel.: (303) 830-2400

/s/ Diane L. McGimsey
Karen Patton Seymour
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Tel.: (212) 558-4000
Fax.: (212) 291-9305
seymourk@sullcrom.com

Diane L. McGimsey
SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100
Los Angeles, CA 90067
Tel.: (310) 712-6600
Fax.: (310) 712-8800
mcgimseyd@sullcrom.com

*Counsel for InnovAge Holding Corp., Maureen Hewitt, Barbara Gutierrez, John Ellis Bush, Andrew Cavanna, Caroline Dechert, Edward Kennedy, Jr., Pavithra Mahesh, Thomas Scully, Marilyn Tavenner, Sean Traynor, Richard Zoretic, Apax Partners, L.P., and Welsh, Carson, Anderson & Stowe*

Peter Kurtz
Michelle L. Keast-Nachtrab
WILMER CUTLER PICKERING HALE AND
    DORR LLP
1225 17th Street, Suite 2600
Denver, CO 80202
Tel: (720) 598-3453
Fax: (720) 274-3133
peter.kurtz@wilmerhale.com
michelle.keast-nachtrab@wilmerhale.com

*Counsel for InnovAge Holding Corp.*

/s/ Mary Eaton

Fax.: (303) 830-1033
cmorris@fwlaw.com acastro@fwlaw.com

*Liaison Counsel for Lead Plaintiffs*

Mary Eaton
Nicholas A. Caselli
FRESHFIELDS BRUCKHAUS DERINGER US LLP
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007
Tel.: (212) 277-4000
Fax.: (212) 277-4001
mary.eaton@freshfields.com
nicholas.caselli@freshfields.com

*Counsel for J.P. Morgan Securities LLC, Barclays Capital Inc., Goldman Sachs & Co. LLC, Citigroup Global Markets Inc., Robert W. Baird & Co. Incorporated, William Blair & Company, L.L.C., Piper Sandler & Co., Capital One Securities, Inc., Loop Capital Markets LLC, Siebert Williams Shank & Co., LLC, and Roberts & Ryan Investments, Inc.*