1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:21-cv-02770-WJM-SBP

_____

EL PASO FIREMEN & POLICEMEN'S PENSION FUND, SAN ANTONIO FIRE

& POLICE PENSION FUND, AND INDIANA PUBLIC RETIREMENT SYSTEM,

INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY

SITUATION,

        Plaintiffs,

v.

INNOVAGE HOLDING CORP, et al.,

        Defendants.

_____

        Proceedings before SUSAN PROSE, United States

Magistrate Judge, for the District of Colorado, commencing

at 10:03 a.m. on February 26, 2024, in the United States

Courthouse, Denver, Colorado.

_____

WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS ARE

HEREIN TYPOGRAPHICALLY TRANSCRIBED...

_____


TELEPHONIC SCHEDULING CONFERENCE


**PATTERSON TRANSCRIPTION COMPANY**
scheduling@pattersontranscription.com

2

APPEARANCES

CAROL V. GILDEN, CECIL E. MORRIS, JR., JULIE G. REISER, ADRIAN P. CASTRO, MOLLY J. BOWEN, and BRENDAN SCHNEIDERMAN, Attorneys at Law, appearing on behalf of the Plaintiffs.

DIANE L. MCGIMSEY and AVALEE STATNER, Attorneys at Law, on behalf of Defendants Innovage Holding, Corp.; Welsh, Carson, Anderson & Stowe; Apax Partners, L.P., and individual defendants.

PETER A. KURTZ, Attorney at Law, on behalf of Defendant Innovage Holding, Corp.

MARY EATON and NICHOLAS A. CASELLI, Attorneys at Law, appearing on behalf of the underwriter Defendants.

_____


P R O C E E D I N G S

THE COURT:  Good morning, everyone.  We're on the record in Case No. 21-cv-2770, El Paso Firemen and others v. Innovage and others.  And so with that, let me just state for the record that we are here for a scheduling conference following Judge Martinez's disposition of a motion to dismiss in this matter back in December.  And so we're going to kind of collectively here take a stab at getting this old case, almost -- I guess it's three years old now -- moving forward.

3

So I recognize that we have a lot of people on the line this morning, okay?  And so this is going to get rather cumbersome and unwieldy, I think.  And so with that, let -- let me just kind of take a little bit different approach here; and that is, I'm going to -- I know there are 11 participants on the line.

And so let me -- let me just do this, let's start with the plaintiffs.

Is Ms. Gild -- is Ms. Gilden on the line?

MS. GILDEN:  Yes, I am, Your Honor.

THE COURT:  Hi, Ms. Gilden.  And you represent?

MS. GILDEN:  So I represent the lead plaintiffs in the case --

THE COURT:  Lead plaintiffs.  Okay, that's good.

MS. GILDEN:  -- along with my other colleagues from the firm.

THE COURT:  And who -- who is with you then, Ms. Gilden, from your firm?

MS. GILDEN:  That would be Julie Reiser, my partner in our D.C. office.

THE COURT:  Good morning, Ms. Reiser.  All right. Who else is with you?

MS. REISER:  Good morning, Your Honor.

THE COURT:  Ms. Gilden, anybody else with you or just Ms. Reiser this morning?

4

MS. GILDEN:  Yes, Your Honor.  I believe our other partner, Molly Bowen, is on the line as well.

THE COURT:  Ms. Bowen, are you on the line?

MS. BOWEN:  Yes, Your Honor.  Good morning.

THE COURT:  Good morning.  Anyone else?

MR. SCHNEIDERMAN:  Judge, this is Brendan Schneiderman.  Brendan Schneiderman also with Cohen Milstein.  Good morning, Your Honor.

MS. GILDEN:  Yes, Your Honor.

THE COURT:  I'm sorry.  Sir, was your last name Schneider; is that right?

MR. SCHNEIDERMAN:  Schneiderman.

THE COURT:  Have you entered an appearance in the case?

MR. SCHNEIDERMAN:  I -- I have not.

THE COURT:  Oh, okay.  Well, thank you for identifying yourself.  I might ask on behalf of my courtroom deputy, to the extent she may need this for our minutes, could you spell your -- your first name, sir?  What is your first name?

MR. SCHNEIDERMAN:  Brendan.

THE COURT:  Brendan?

MR. SCHNEIDERMAN:  B-r-e-n -- yes.  B-r-e-n-d-a-n.

THE COURT:  Okay.  And spell your last name, please, for her.

5

MR. SCHNEIDERMAN:  Sure.  Schneiderman,
S-c-h-n-e-i-d-e-r-m-a-n.

THE COURT:  All right.  Thank you for that, Mr.
Schneiderman.  And you are a colleague to -- of -- of Ms.
Gilden, yes?

MR. SCHNEIDERMAN:  That's correct.

THE COURT:  All right.  Is there -- is Ms. Gilden,
do you have any other colleagues with you on the line this
morning?

MS. GILDEN:  No, Your Honor, not from Cohen
Milstein.

THE COURT:  Okay.  Is Mr. Morris on the line,
please?

MR. MORRIS:  Good morning, Your Honor.  This is
Cecil Morris from Fairfield & Woods in Denver as liaison
counsel for the plaintiffs and also with me --

THE COURT:  Oh, okay.

MR. MORRIS:  -- is my colleague, Adrian Castro.

THE COURT:  All right.  Thank you for that, Mr.
Morris.  All right.  And okay.

How about, it may be Mr. or may be Ms.
Messerschmidt?

MS. GILDEN:  I don't believe he's -- I don't
believe he's on the line with us.

THE COURT:  Okay.

6

UNIDENTIFIED SPEAKER:  Correct.  He's -- he's on parental leave right now.

THE COURT:  Okay.

UNIDENTIFIED SPEAKER:  He won't be joining.

THE COURT:  Is Mr. Robinson on the line, please?  Sounds like not.

MR. MORRIS:  Your Honor, this is Cecil Morris from Fairfield & Woods.  Mr. Robinson has withdrawn from the matter, as I recall.

THE COURT:  Okay.  Thank you.  Thank you.  Thank you.

Anybody else on the line then for our -- any of our plaintiffs?  Okay.

So I think we've covered that side of the house, and I expect I'll be hearing this morning probably primarily from Mr. Gilden -- Ms. Gilden, I should say, and Mr. Morris.  Okay.  Great.

Let's go over to the defense side, and perhaps I'll just ask who -- who -- just start talking, I guess, folks.  This is -- this is quite a -- quite a complicated thing to do.

Can someone just let me know who's on and who they represent, please, and we'll go from there.

MS. MCGIMSEY:  Yes.  Good morning, Your Honor.  This is Diane McGimsey from Sullivan & Cromwell.  I have

7

with me my colleague Avalee Statner, and we represent Innovage, Welsh Carson, Apax, and then all of the individual defendants.

THE COURT:  And let us have the name of your colleague, Ms. McGimsey, again, please, because I don't think we have her on our list.

MS. MCGIMSEY:  Okay.  It's Avalee, A-v-a-l-e-e.

THE COURT:  Okay.

MS. MCGIMSEY:  Statner, S-t-a-t-n-e-r.

THE COURT:  All right.  And she is -- and Ms. Statner is with your -- with Sullivan, is that -- is that right?

MS. MCGIMSEY:  She is.  She's with Sullivan & Cromwell in -- in Los Angeles.

THE COURT:  Okay.  All right.  So we'll note her presence as well.  Good morning to both of you.  Okay.

Folks, let me hear from the next group of defendants.  Speak up.  Just -- just say hello.

MS. EATON:  Good morning, Your Honor.  This is Mary Eaton from -- from Freshfields, together with my -- my colleague, Nicholas Caselli.

THE COURT:  Okay.

MS. EATON:  And we represent the 11 underwriter defendants.

THE COURT:  The underwriters?  Okay.  Thank you

8

for that.  All right, folks.

Who else for another group of defendants?  We've got Innovage, we've got underwriters.  Who else, please?

MR. KURTZ:  Good morning, Your Honor.  This is Peter Kurtz from Wilmer Hale in Denver on behalf of Innovage Holding Corp.

THE COURT:  All right.  Good morning to you.  Do you have anyone with you, Mr. Kurtz?

MR. KURTZ:  No.  Just me.

THE COURT:  Just you.  Okay.

Anyone else on the line this morning for any defendant, please?  It sounds like not.

So with that, is there anyone else who is on the line, though, who has not introduced themselves or been introduced, please?  Okay.

So I'm looking at this and I'm thinking to myself, Ms. Gilden, Mr. Morris, Ms. McGimsey, and perhaps -- oh, Ms. Eaton, and Mr. Kurtz.  Mr. Kurtz, I don't know if you -- you plan to be actively involved in the conference this morning.  Perhaps you do, yes?

MR. KURTZ:  I do not.

THE COURT:  No?  Okay.  So we've got -- all right. Well, thank you for that.

It's -- it's a little bit of -- I think I should have had a spreadsheet, right?  So -- so folks, let's --

9

let's get -- let's get this show on the road, as they say.

I -- I know you're -- I know the motion to dismiss was pending quite a while, Judge Martinez has resolved that.

I have reviewed your proposed scheduling order, and let me -- and you know -- you knew I was going to ask you this, right, but let me just ask, kind of perhaps rhetorically.  But do we -- honestly, folks, two more years just to get -- is it -- is it two years just to get to the summary judgment stage in this case?

You know, and look, I mean, I get it.  I -- I -- I know this is a complicated case, but by the time you get your summary judgment motion out there, folks, and there -- you know, there -- there may be many, several of them, you know, then we're going to have, what, another year or two before you get scheduled for trial?

Help me out here, folks.  Is there really no way to get this to the -- to the next dispositive motion stage before 2026?  I mean, if there isn't, we'll enter the order.  Judge Martinez may have something to say about that.  But -- so, folks, somebody -- somebody jump in, talk to me a little bit about this very long schedule that we have here in this very old case.

MS. GILDEN:  Your Honor, this is Carol Gilden, and so I'm identifying myself since I know there are a lot of people --

PATTERSON TRANSCRIPTION COMPANY
scheduling@pattersontranscription.com

10

THE COURT:  Yes.

MS. GILDEN:  -- on the line.

THE COURT:  Thank you for that.  Thank you for that.

MS. GILDEN:  Of course, of course.  And so -- so it's a complicated case, you know, as the papers set forth and --

THE COURT:  Yeah.

MS. GILDEN:  -- my partner, Julie Reiser, is going to be speaking today on behalf of the plaintiffs.  So --

THE COURT:  Okay.

MS. GILDEN:  -- I think she -- she probably could best sort of dive into that for Your Honor.

THE COURT:  I'm -- I'm very happy to hear from you, Ms. Reiser.  What -- what do you think --

MS. REISER:  Good morning, Your Honor.

THE COURT:  -- and as the plaintiffs are -- you're okay with this, I guess?  And that might be the real nub of the matter.

MS. REISER:  Your Honor, this is Julie Reiser on behalf of the plaintiff.  And part of what is going on here is the class certification briefing, which we plan to do very early on so that we can keep things moving.  And so I think on --

THE COURT:  Yeah.

11

MS. REISER:  -- that note, we have expedited things, but I will say that we have over a dozen defendants here that, while we would like to get fact discovery completed on a quicker pace --

THE COURT:  Yeah.

MS. REISER:  -- we recognize that they will be doing, both fact discovery and class certification opposition, unless they choose not to oppose it and so that can sometimes bump things up and slow things down.

THE COURT:  Yeah, yeah.

MS. REISER:  But if Your Honor is -- and I don't think I've been part of a security fraud class action that involved underwriters and the company and individual defendants --

THE COURT:  Uh-huh.

MS. REISER:  -- where we have gone through the fact discovery process and each factor.

THE COURT:  Yeah.

MS. REISER:  I wish that wasn't the case, but between discovery experts, class certification, that -- that normally feels about right.

THE COURT:  Yeah.  Well, and I defer to your -- Ms. Reiser, I defer to your judgment and your experience on this.  I just -- I think to myself though, my goodness, assuming that the summary judgment motions would not dispose

12

of the case, you are -- you are looking at a trial very,
very far into the future, and maybe that's -- maybe that's a
typical thing.

Let me -- let me ask the group this way:  Having
heard from Ms. Reiser on this, is there -- is there anyone
on the line on behalf of any client who has any qualms or
concerns about this lengthy schedule?  Let me just ask it
that way.  And if you don't, no need to speak up; but if
there's anyone who'd like to talk about that a little bit,
please do let me know.

I would -- I would imagine if anybody was really
unhappy with the schedule or just didn't think we should
enter it, that that might have been on the plaintiffs more
likely than the defendants.

But defendants, is there anyone who'd like to
address the length of the discovery, cause any -- the length
of schedule causing concerns, anything along those lines?

MS. MCGIMSEY:  Your Honor, this is Diane McGimsey.
I don't have any concerns, and I realize you just said we
don't need to speak up unless we have concerns, but I did
want to just add one more --

THE COURT:  Oh, sure, sure, sure.

MS. MCGIMSEY:  -- you know, one more sort of
complexity just so to give you more understanding of the
schedule.

13

Innovage is -- is a healthcare provider, and so --

THE COURT:  Uh-huh.

MS. MCGIMSEY:  -- a lot -- and the issues in the case relate to obvious statements concerning Innovage's business and some audits that occurred at Innovage's business.

THE COURT:  Yes.

MS. MCGIMSEY:  And as a result of that, you know, the core subject matter of this is going to relate to some of the services provided by Innovage --

THE COURT:  Uh-huh.

MS. MCGIMSEY:  -- which, in turn, means that there will be potentially a very significant amount of HIPAA-protected patient information --

THE COURT:  Okay.

MS. MCGIMSEY:  -- in the documents at issue.

THE COURT:  Yeah.

MS. MCGIMSEY:  So we are -- we have had discussions already with plaintiffs about how to avoid that as much as possible because they obviously have no interest in, you know, looking at patient-level records, but just as a -- you know, the way discovery goes, they're going to make discovery requests, and we'll run searches.  And we're going to --

THE COURT:  Sure.

14

MS. MCGIMSEY:  -- have to look at every single document and redact anything that may be protected by HIPAA or get permission from the -- each patient to produce it. And so that, in and of itself, is just going to cause -- it's going to complicate the discovery process a little bit.

THE COURT:  Yeah.

MS. MCGIMSEY:  I have no doubt we'll be able to work through that with the plaintiffs, but --

THE COURT:  Sure.

MS. MCGIMSEY:  -- it just means that things that may take, you know, 30 days in a normal case might take twice -- twice as long or three times as long in this case just because of those particularities and the need for our client to make sure that it complies with its HIPAA obligations.

THE COURT:  Understood.  And in that regard, I -- I see we don't yet have -- and there wouldn't have been any reason, right, because discovery wasn't open, but there's not a protective order in the case.

And so, Counsel, do you anticipate submitting one of those for the Court's consideration fairly expeditiously? Can -- can we expect to see that here in the not-to-distant future?

MS. MCGIMSEY:  Yes, Your Honor.  This is Ms. McGimsey again.

MS. REISER:  Your Honor --

MS. MCGIMSEY:  Because we were already discussing a protective order and -- and expect to be able to submit one shortly.

THE COURT:  Okay.  That sounds good.  Someone else wished to speak.

Was that you, Ms. Gilden?  Or was that you, Ms. Reiser?

MS. REISER:  Julie Reiser, and -- and honestly, Ms. McGimsey has everything exactly right.

THE COURT:  Okay.  Well, all -- all right, folks. So -- so let's -- let's do just a couple of things then.

You're going to hear me paging through your paper -- paper version of your proposed scheduling order.  I thank you very much for your excellent work on this.  I really appreciate it when scheduling orders come to the Court that are this thoroughly considered, so thank you for that.

Now, I'm over just -- I just want to confirm that -- that I am reading your undisputed facts correctly, and I -- I believe that your subheadings just merely indicate you're -- you're trying to -- you're trying to bring some clarity here, but let me just verify.

These facts that are listed there on Page 10 to 12 -- let me correct that -- yeah, Page 10 to 12 of -- of my printout, those are undisputed by all parties, right?  I

16

think I'm reading that --

MS. REISER:  This is Julie Reiser.

THE COURT:  Yeah.

MS. REISER:  That's correct.

THE COURT:  Okay.  Okay.  Thank you for that. Let's go over, Counsel, let's take just a quick, quick look at -- I'm on Page 13.  You -- you made a statement that, folks, you're going to do your 26(a)(1)s on March 1.  I think you mean 2024.  And so I'll correct that in the final version of the -- of the schedule order.

Does anyone have -- and I ask this in every case. Does anyone have any concerns about that?  Is everybody on track to get their 26(a)(1)s out by March 1?  And again, if -- if you're having an issue or you want to talk about that, just -- just speak up.

MS. MCGIMSEY:  This is Diane McGimsey.  Your Honor, we actually requested that that date by moved to March 11th, and the plaintiffs agreed, just because of the time needed to coordinate among all of their --

THE COURT:  Sure.

MS. MCGIMSEY:  -- parties and so that -- so I apologize.  We inadvertently did not correct the date on Page 13, but it is reflected on Page 17 of the case final schedule.

THE COURT:  Is it?  Okay.  Thank you for that, and

17

no problem at all.  Okay.  Again, I'm just paging through here, if you'll give me a moment.

Now, there are some things that you haven't, Counsel, exactly agreed on yet, say the number of depos, the number of rogs, that -- that kind of thing.

And you've signaled, look, we're going to try to do the kind of default limits, but if we can't, you'll ask the Court for assistance.  That's how I read -- that's how I read your statement, and so I'm fine with that.  I'm fine with that.  It's a little hard for me as an outsider to do this.

No one's ever going to know, of course, your case as you know it, but it's a little hard for me to make some proclamation about, you know, this is a case where you absolutely have to do no more than 10 depos, including experts.  I'm -- I'm not going to micromanage you with that level.  But -- so I'm going to -- I'm going to just leave your points regarding your depos, your interrogatories as you have them.

Now, let me -- let me ask you this though, Counsel, I am assuming, and maybe I'm wrong about this now that I'm looking at it -- pardon me, please.  Your numbers of depos, your numbers of written discovery requests, et cetera, are those per side, is that how you look at those?  Or are those per party?  Whoever'd like to speak to that,

18

happy to hear you.

MS. REISER:  Your Honor, Julie Reiser behalf on plaintiffs.  We did anticipate those were per side.  We are somewhat hamstrung right now without having the Rule 26 disclosures.  I think probably defendants feel the same way.  And so for the moment, we would appreciate the opportunity to say we will live within the standard framework, and then seek leave of the Court to ask for more.

We have looked at two cases that Judge Martinez has had that are complex security fraud class actions, and we have a sense that -- that in those cases, the parties did ask for up to 25 ultimately through the course of discovery.

THE COURT:  On -- on the depos, Ms. Reiser, is that right, on the depos?

MS. REISER:  Yes, correct.

THE COURT:  Yeah, yeah.

MS. REISER:  That's correct.  We just don't feel like -- well, right now, we couldn't even explain to the Court why we needed what we need without the --

THE COURT:  Sure.

MS. REISER:  -- Rule 26 disclosures.

THE COURT:  Okay, okay.  Well, probably the United States Magistrate Judge in those two cases you reference, Ms. Reiser, probably made those changes.  And look, I'm going to do it too, all right?  Just -- just work together

19

and we can -- you know, we can amend this scheduling order anytime you want to come together jointly, show good cause.

You know I'm going to grant it.  You know I am, right, you know, unless there's some strong opposition to something and I need to hear everybody out, but if there's no disagreement on things.

I wonder, though, if we ought to note in here, folks, I get you've got the lead plaintiffs, which I guess really -- well, I -- I don't know.  How -- how do we define lead -- lead plaintiffs, folks?  Would that be the El Paso and San Antonio Funds?  Are those the lead plaintiffs?

MS. REISER:  And -- this is Julie Reiser.  Thank you.

THE COURT:  Uh-huh.

MS. REISER:  It's El Paso, San Antonio, Indiana first, and --

THE COURT:  Oh, you just mean --

MS. REISER:  -- (indiscernible).

THE COURT:  -- the lead plaintiffs, not the whole class.

MS. GILDEN:  Okay, I'm with you.

MS. REISER:  Correct.  If the Court --

THE COURT:  Yeah, yeah.  All right.  Thank you.  So I mean --

MS. REISER:  And we would try to be efficient, and

20

I -- I think defendants will, as well, to use 30(b)(6)
depositions where --

THE COURT:  Sure.

MS. REISER:  -- we can to try to narrow the issue.

THE COURT:  Okay.  All right.  You know, here's
what I'm going to -- I'm just going to add one thing then,
folks, in -- I'm on Page 15, your modifications on the
depositions.  I'm -- I'm going to go ahead and put in that
this is how we understand this right now, okay?

So right here where you've got "seek additional
depositions beyond the 10," blah, blah, blah, and I'm going
to just add the language, "per side."  I just want to note
that right now, that's how we're thinking about this, okay?
It doesn't mean you're locked into it.  That's -- that's why
God made motions to amend scheduling orders, right?

So -- but I -- I just want to be -- I just want to
make sure we're all on the same page.  Let's look at your
rogs here.  So you've got 25 rogs.  Yeah.  Let's see.  How
could I put that in here?  Blah, blah, blah.  Defense --
hmm.

Well, you don't really have a way for me to easily
put in "per side" in that one.  So we'll live -- leave it.
But we've got a marker in there.  Okay.

Length of depos, you've got a proposal,
plaintiff's counsel, no depo to exceed, you know, the seven

21

hours, right?  Now, I see that proposal.

Folks, is that an agreement right now, or is that just a -- it looks like defendants, do you not agree with that?  Is that why this is left as the plaintiffs' proposing?  Feel free to speak up, whoever'd like to talk on that.

Ms. McGimsey?

MS. MCGIMSEY:  This is Diane McGimsey.

THE COURT:  Yeah.

MS. MCGIMSEY:  We -- we agree with the -- to stick to the seven-hour limits in the Federal Rules.

THE COURT:  Okay.  Is -- does any one defendant have an issue with that?  Just speak up if you do on behalf of your client.  Okay.

Well, let's use -- let's use -- we're just going to then note in here:  One day of seven hours, okay?  And that's the kind of thing, of course, you can work together on.  If you need nine hours for somebody, I suspect the Court's never even going to hear about that.  It doesn't have to, unless you just cannot reach an agreement.

So folks, on the RFAs and RFPs, it's a weird little glitch in the Rule unless some change was made, say at the end of December 2023 that I don't know about right now, although I should.

I think what you're saying is here, there really

22

isn't a default number for the rogs and the RFs.  I'm happy to stand corrected if -- if I'm wrong about that.

But I think what you're saying here right now is right now, 25 of each of those RFPs, RFAs, right -- per side?  Or do you mean per party there?  So tell me that, Counsel.

MS. REISER:  This is Julie Reiser on behalf of the lead plaintiffs.

THE COURT:  Yeah.

MS. REISER:  We would prefer that 25 per defendant.  There are different issues that are involved. And I should be clear that when I say that, I mean, the company that underwriters -- that was in blocks, I guess would be the best way --

THE COURT:  Sure.

MS. REISER:  -- of putting it.

THE COURT:  And yeah.  Well, I understand your position, Ms. Reiser.

Let me turn to defense counsel.  Would you be -- are you agreeable to that, 25 of each of those items per block of defendants?

MS. MCGIMSEY:  This is Diane McGimsey, and we -- we would be amenable to 25 for all of the Innovage, the private equity firms, and the individual defendants as one block and the underwriter as a separate block.

23

THE COURT:  Would that cover -- does that cover everybody, folks, those two blocks or no?  Folks, would that -- would what Ms. McGimsey proposes, Innovage, plus the individuals, I believe being one group and the underwriters being another, would that cover everything?

MS. REISER:  Your Honor, it's Julie Reiser.  Yes, that would.

THE COURT:  Okay, okay.  So essentially I guess what that would mean, folks, I guess as a default, we have -- we'd have here 25 -- so okay.  I'm going to have to come up with some language and -- and kind of tweak this a little bit to make this make sense.

So we'll have 25 RFAs.  Plaintiffs can direct 25 of each form, RFA, RFP to a group that includes Innovage and the individuals and 25 of each of those forms to the group that includes the underwriters.

Now, how about back the other way?  Do each of those groups -- and I guess I would hear from Ms. McGimsey and Ms. Eaton, perhaps, on this.

Do you each feel it appropriate -- given the different interests that your clients have, as Ms. Reiser articulated, do you each feel that you should be able to do 25 on behalf of your own client?

MS. MCGIMSEY:  Your Honor, this is Diane McGimsey.  One clarification on the -- the -- the RFAs to the

24

defendants.  The first group with Innovage and the individuals would also include the two private equity defendants.

THE COURT:  Okay.

MS. MCGIMSEY:  And then on -- on RFAs back to the other side, I -- I -- I agree with that statement, that the, you know, parties do have different interests and that we would be willing to do 25 as the same group.  So Innovage --

THE COURT:  Sure.

MS. MCGIMSEY:  -- individuals and private equity defendants would do -- have 25, and the underwriters would separately have 25 as to all of the -- the group of plaintiffs.

THE COURT:  Yeah.  And do you think -- do you think the same, Ms. Eaton?

MS. EATON:  I do, Your Honor.  Thank you.

THE COURT:  Yeah.  Well, I think that's -- I think that that is equitable.  I think that's appropriate.  That's what I'm going to do.  It strikes me though, folks, that one thing we haven't done is we don't really have -- do we -- maybe you do in your description of your claims and defenses, but we're going to use these terms about these groups, right?

And I don't think they're really defined in the scheduling order, so I don't want there to be any confusion

25

about that.  So, of course, I can see Innovage.  And then would the individuals, folks, would that be Hewitt, Gutierrez, Bush, Cavanna, Dechert, Kennedy, Mahesh, Scully, Tavenner, Traynor, Zoretic?

MS. MCGIMSEY:  That's correct, Your Honor.

THE COURT:  Would those be the individuals?  Okay. And then who are -- along with that, Ms. McGimsey, who are the private equity defendants then?  I think I can take a good guess, but you tell me.

MS. MCGIMSEY:  So the -- Welsh, Carson, Anderson, and, and Stowe and Apax Partners, LP, which now is doing business as -- I want to make sure I get it right, Apax Partners US, LLC.

THE COURT:  Yeah.  I don't that have on my caption here.  So -- and -- and so those are the two private equity entities, if you will?

MS. MCGIMSEY:  Correct.  And we --

THE COURT:  Okay.

MS. MCGIMSEY:  -- in -- in Footnote 1 on Page 6, we have the name of the Apax entity.

THE COURT:  Okay.  Hmm.  Yeah.  It's been a quite a while too, hasn't it, that that's had a different name.  I don't think I can necessarily sua sponte, if you will, go in and alter the caption.  I think -- although it sounds like a little bit of a form-over-substance game, I think probably

if you want to change that caption, Ms. McGimsey, I think probably the right way is just to file a little unopposed motion.  And then that will signal to the clerk's office, our clerk's office here.

MS. MCGIMSEY:  Okay.

THE COURT:  Yeah.  I think that's the right way to handle that.  And so then are all of the remainder, folks, beginning with JP Morgan and going down to Roberts & Ryan, those are all going to be the underwriter group that Ms. Eaton represents; is that right?

MS. EATON:  That is correct, Your Honor.

THE COURT:  Okay.

MS. EATON:  Thank you.

THE COURT:  Great.  All right.  Well, we'll get -- we'll get some language in there that works and that's going to properly articulate.

Now, let me go back though, folks.  Shall we say maybe we don't need to put this in there just yet for the interrogatories.

Well, I asked you about the depos, and I -- I guess I intended to ask you about the rogs too, but the 10 deps were per side.  Do you want to have the same setup, folks, for your interrogatories, 25 to the two -- from -- plaintiffs can send 25 to the two groups of defendants, and the defendants can each send 25 back to plaintiffs?  You

27

want -- in other words, you want it exactly the same?

MS. REISER:  Your Honor, this is Julie Reiser for plaintiffs.  That works well for us.

THE COURT:  Okay.  How about on the defense side, Ms. McGimsey, Ms. -- Ms. Eaton?

MS. MCGIMSEY:  That would be fine with us as well.

THE COURT:  Okay.  So we're going to do the same, okay?  Great.  All righty.

You've got your case plan and schedule here. You've -- you've indicated expert testimony after the class certification issue is resolved, I believe.  Or do we actually have -- sorry.  I'm just reading here.

No.  You do -- you do have -- you do have them. Okay.  We've got you.  We've got you.  All right.

Let me ask you this, by the way, in your -- in your chart there of your case plan and schedule, I'm -- as appropriate, I'm going to add in there for those things that I don't have control over of, such as your Daubert motion, your voir dire questions, et cetera.  I'll -- I'll note there that -- that you're going to comply with Judge Martinez's practices, okay?  That's what we'll -- that's what we'll add in there.

Now, Judge Martinez does have the magistrate judge conduct the final pretrial conference.  And ordinarily the way this works is this, per his practice, we would set this

28

-- and Ms. Vo, you please correct me if I'm -- I'm wrong and I've misremembered this.

But I believe he has me conduct that final pretrial conference about 60 days after the filing of the dispositive motion deadline.

Am I right about that, Ms. Vo?

THE DEPUTY:  That's correct, Your Honor.  So he does after the dispositive motions (indiscernible).

THE COURT:  Yeah.  So that's -- that's how he does that.  Now, you guys have set up -- November 11th's your -- your Rule 56 deadline, right?  You've done an expanded dispositive motion schedule here.  Ordinarily one would expect that the 60 days would have encompassed, right, that your dispositive motion briefing would be accomplished.

That's not going to be the case here.  You've got a 90-day and a little bit more dispositive.  Here's what we're going to do, now that I've done the higher math, folks.

I'm going to set -- it's a little bit off from Judge's practice, but I'm going to -- I'm going to set a final pretrial conference in front of -- that's in front of me, and we're going to make that in March of 2026.  My goodness, I hope we're all still alive then, it's so far away.  So let's -- let's do that, folks.

Now, I recognize that your schedule could change

29

and there could be extensions, but I think I'm obliged to get this on the calendar. My goodness, we don't have anything set yet for March of 2026. So let's just go ahead and get it on the calendar.

I think we all realize that, you know, maybe -- maybe things are going to get moved as the case progresses. We've got the complexity of the class -- of the class certification issue in there too.

But we're going to -- we're going to do this. We're -- we're going to do this. We're going to get this set. I am -- does anybody right now have, say, a trial set in March of 2026? If anybody wants to -- or -- or like, I don't know, you know it's your 25th wedding anniversary and -- and you're going to Rome or something wonderful like that, right? Does anybody have an obligation in March of 2026 that they know of right now?

Sounds like not. So let me -- let me note this, and think we're going to go ahead and set this as I usually do.

We ordinarily set these in person, folks. I know you are all over the United States, but we ordinarily set these in person. I'm going to do that now. And again, this all seems so far away and just a little bit in the realm of the -- of the hypothetical, doesn't it?

But I'm going to go ahead and set this final

pretrial conference.  We're going to pick a day.  And I'm going to set it in-person, and I'm going to set it for a couple of hours.  And again, if -- as this approaches, if the date remains and someone really needs to appear telephonically because you don't want to come in from -- from, you know, New York or D.C. or wherever, I'll consider that.

But let's do it this way for now.  I'm just going to pull a date out of the air.  I'm going to say March 18, 2026, a couple hours for the final pretrial conference.  We're going to do it in-person.  And you know, I suppose we've got people on the coasts.  Here's what I think I'll do in the event you might wish to just fly in in the morning, and then fly out that afternoon.

Let's do it in the afternoon, unless I hear someone, "Oh, no, no.  We'd rather come in the night before."  Does anybody want to say that, they'd rather do it in the morning, come in the night before, do it in the morning?  Happy -- happy to adjust it, folks.  Just let me know.  Okay.  Sounds like we don't have a strong preference on that.

So -- so let me go ahead and do this.  March 18th, let's set it at 1:00 in the afternoon, okay, Mountain Time.  And I propose final pretrial order and you know, the -- with the relevant exhibit and witness lists, that would be filed

or submitted a week before or March 11, 2026.  Okay.  All right.  So that's what we're going to do there.

And then, folks, does anybody -- oh, no.  I have one more substantive question for you, folks.  Talk to me about this little bit, folks, because this is -- this is a little bit unusual, and I again recognize this is an unusual case.  But do you really not want to have a benchmark limit on your number of experts at this time?  I'm on page 18, limits which you propose on the use or number of experts.

Do you -- do all parties want to have really kind of a no-holds barred approach to expert discovery?  That is -- that is extremely unusual, of course, I know you know that, but I'm happy to hear from -- well, you know what?

Let me start with you, Ms. Reiser, on behalf of the plaintiffs.  Do -- do you really not want to have an upper limit on the number of experts in the case?  What do you think?

MS. REISER:  Your Honor, Julie Reiser.

We -- we can easily do an upper limit.  I would propose that we maybe revisit this at a later time to do that.

THE COURT:  Okay.

MS. REISER:  Sort of one of the things that would happen is we would get through class certification, we would understand what those issues are, and then we would have

32

fact discovery and we would understand what that set of issues are.

And because fact discovery is going to run for almost a year, I would feel much more comfortable putting a limit on (indiscernible).  The Court's probably seen that plaintiffs are requesting a status conference every 90 days.  If we could do that in two or three rotations, that would feel more comfortable to me.  I -- in all respects, I can't imagine us needing more than six.

THE COURT:  Oh.

MS. REISER:  Probably it will be fewer than that.

THE COURT:  Okay.

MS. REISER:  But that's -- that's -- just don't want to bind us to a particular number without really appreciating the factual issues that are in play.

THE COURT:  Well, that's -- you know, and if that's the plaintiffs' position, I'm happy to go with that.  I'm -- and I'll hear from -- from the two defense counsel as well.

One thing that we could, of course -- and what I could say in here:  The -- the -- a potential limit regarding expert witnesses will be revisited and determined at a future status conference, just something like that.

And with that, how about -- how about you, Ms. McGimsey and you, Ms. Eaton?  Are you okay with what Ms.

33

Reiser has articulated there and how I propose to deal with it here in our scheduling order?  Is that okay with you?

MS. MCGIMSEY:  Yes.  This is Diane McGimsey. We're -- we're fine with that approach.

THE COURT:  Okay.  And you too, Ms. Eaton?

MS. EATON:  Yes, Your Honor, that's fine.

THE COURT:  Okay.  Great.  So that's what we're going to do there.

Now, I know here you do have -- let's talk about this business with status conferences, huh?  I'm happy to -- I'm happy to talk with you whenever you would like.  I think that I -- it looks like defense's -- defense's position is maybe we don't have to set, you know, just kind of periodic or, you know, repeating, if you will, status conferences.

I agree with that piece.  I don't think we need to keep setting them out every 90 days, but I do want to do this, especially in light of the fact that we're going to be talking a little bit about experts.  Now, having said that, I don't know that 90 days from now is going to get us to that point yet, and we, of course, could revisit it.

But maybe -- folks, maybe let's just get a status conference on the books, and -- and maybe, I don't know, in the next 90 days, are you going to get much done?  Let's see.  Are you going to have your initial --

MS. REISER:  Your Honor, it's --

34

THE COURT:  Yeah.

MS. REISER:  -- Julie Reiser.  I think --

THE COURT:  Sure.

MS. REISER:  -- that HIPAA issues, to the extent that we help navigating the HIPAA process, would be something that would benefit from a 90-day status conference if we haven't resolved that.  I think we tend to see a flurry of activity happen prior to status conferences.  And one of the things that we're hoping to do is get document discovery underway.

THE COURT:  Uh-huh.

MS. REISER:  So this is a few things that we were hoping to accomplish, just to make sure that we had the protocols in place to enable the document discovery to start happening while class certification briefing is happening.

THE COURT:  Well, I'm happy to do it.  Let me also make note of, for the record, folks, that you know, I do have discovery dispute procedures if you are unable to resolve something.  And I would this, potentially the production of records and the -- and the intertwined HIPAA question might -- might fall into this category, and you can use those procedures separately at any time without having to wait for the next scheduling conference.  So I -- I do draw your attention to those.

Let me also give you that and we're now going to

35

-- in the next -- I don't know when it's going to happen, you know, sometime in the next probably 30 days or so, we're going to -- we're going to change to a uniformed set of Practice Standards for all United States Magistrate Judges. So those are going to change a little bit, but even so, I'm going to continue to have discovery dispute procedures.

So let me just put that out there. Let me also signal on the discovery dispute side of the house, I ordinarily require those hearings to be conducted in person. I allow a lot of time for them. I will spend half a day with the parties and that's necessary, you know, an afternoon, say. I take them very seriously, and I take my role in them seriously, and I wish to have the parties present in the courtroom to the maximum extent possible for those.

So with that, let's do this, defense counsel, do you mind setting -- do you have any objection to setting at least one status conference, say, about 90 days out? Is that okay with Ms. McGimsey and Ms. Eaton on behalf of their clients? Is that okay?

MS. MCGIMSEY: Yeah, that's -- this is Diane McGimsey. That would be fine for our clients, Your Honor.

THE COURT: Okay. And that we'll just do on the phone, right? We'll just -- we'll just do that on the phone, okay? Well, let's see here. So that's going to put

36

us -- it's already the end of February.  Let's go into early June, folks.

Except for it looks like we have criminal duty the first two weeks, Ms. Vo, in June.

THE DEPUTY:  That's correct, Your Honor.

THE COURT:  Yeah.  Okay.  Well, let's do this, it's a little bit farther out than 90 days, but I'm so sorry, I don't think my schedule's going to accommodate it earlier, okay?

Let's go the week of June 17th.  Let's see here. And I am just looking at -- bear with me, folks.  I guess the 19th is -- that's Juneteenth, so that's amenable.  You hear a little bit of a sigh there.  Let me get you in here.

How about sometime on Thursday, the 20th of June for, say -- and we can set it for a half hour, however much time you need.  But let's -- let's -- would everybody be -- be available on June 20th, 2024 for just a telephonic status conference?  Is there anyone who would not be available that day?  And we'll pick another day.

Okay.  Sounds like we can make the 20th work.  So we've got -- it sounds like, am I correct, folks, we have people on the East Coast and as far away as the West Coast, cross country, right?  There are some people in Eastern Time, I believe.  Okay.

So with that and recognizing that, let's see.  Why

37

don't we say, folks, Thursday, June 20, 2024, 11:00 a.m., that'd be Mountain Time, okay? So 1:00, I guess for our friends on the East Coast, 1:00 p.m. and 10:00 for our friends in California, for a 30-minute status conference in this matter. Sound okay, folks? Anybody think that sounds like just terrible and it can't work?

Okay. That's what we're going to do. We've set that final pretrial conference for, you know, off in the distant future. I see that I'm almost through your scheduling order, folks.

I see that you don't reasonably feel that you can estimate your trial at this time. That's okay for the scheduling order. I know that as -- as we get closer to it, Judge Martinez is going to want something more -- more solid obviously, but okay.

I don't think I have anything else with that, Counsel. So thanks for taking the time and walking me -- helping me walk through your scheduling order.

Okay. Before we close our conference then, let's do this. I'm just going to go around -- I've -- I've talking primarily with four counsel. I'm going to start with them and ask if there's anything else that either -- I -- I guess three counsel, really -- three counsel. I'll ask if you have anything else you'd like to just sort of put on the record here while we're all together, and then I'll turn

38

the floor over to any counsel who would like to say something, but I haven't called on.

Let's start with you, Ms. Reiser.  Anything else today on behalf of the lead plaintiffs?

MS. REISER:  No.  Thank you, Your Honor.

THE COURT:  Thank you, Ms. Reiser.  Very nice to speak with you.  And Ms. Gilden, of course, as well.

Mr. Morris, did I overlook you?  Should I have called on you a couple of times?  I'm so sorry.  Do you have anything before we --

MR. MORRIS:  Thank you, Your Honor.  That's -- that's fine.  I'm -- I'm no -- I'm not shy.  I would have piped up (indiscernible).

THE COURT:  Would you?  Good, good.

MR. MORRIS:  -- for the lead counsel.

THE COURT:  Yeah.  That's how we do it here. That's how we -- thank you.  Okay.  Let me turn --

MR. MORRIS:  So nothing to add.  Thank you, Your Honor.

THE COURT:  You're welcome.

Let me turn to Ms. McGimsey.  How about on behalf of Innovage, the individuals, and the private equity defendants?  I have that down now.  Anything on be --

MS. MCGIMSEY:  Yeah.  No, nothing to add, Your Honor.

39

THE COURT:  Okay.

MS. MCGIMSEY:  Thank you.

THE COURT:  And how about Ms. Eaton on behalf of the underwriters?

MS. EATON:  Nothing -- nothing further from the underwriters either, Your Honor.

THE COURT: All right.  Thank you.  And so counsel with whom I -- I haven't spoken much and -- and -- and/or didn't call on just now, does anybody wish to -- to add anything for the record?  And the -- just speak up if is there something you wish to add.  All right.  Sounds like not.

And so, Counsel, with that, you're either going to see -- I think we have a kind of heavy docket this afternoon, so you will either see later today or sometime early tomorrow the final version of the scheduling order entered on the docket.

Thank you very much.  It was nice to speak with each and every one of you.  I appreciate your professional courtesy very much.

And with that, we will be in recess on Case No. 21-2770.  Thanks, all.

MS. REISER:  Thank you, Your Honor.

MS. EATON:  Thank you, Your Honor.

MR. MORRIS:  Thank you, Your Honor.

40

MS. GILDEN:  Thank you, Your Honor.

UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

(Whereupon, the within proceedings concluded at 10:55 a.m.)

                         TRANSCRIBER'S CERTIFICATE

            I certify that the forgoing is a correct

transcript, to the best of my knowledge and belief (pursuant

to the quality of the recording) from the record of

proceeding in the above-entitled matter.

/s/Brittany Payne                    March 4, 2024

Signature of Transcriber                  Date

**PATTERSON TRANSCRIPTION COMPANY**

scheduling@pattersontranscription.com