# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02770-WJM-SBP

EL PASO FIREMEN & POLICEMEN'S PENSION FUND, SAN ANTONIO FIRE & POLICE PENSION FUND, and INDIANA PUBLIC RETIREMENT SYSTEM, individually and on behalf of all others similarly situated,

        Plaintiffs,

v.

INNOVAGE HOLDING CORP.,
MAUREEN HEWITT,
BARBARA GUTIERREZ,
JOHN ELLIS BUSH,
ANDREW CAVANNA,
CAROLINE DECHERT,
EDWARD KENNEDY, JR.,
PAVITHRA MAHESH,
THOMAS SCULLY,
MARILYN TAVENNER,
SEAN TRAYNOR,
RICHARD ZORETIC,
WELSH, CARSON, ANDERSON & STOWE,
APAX PARTNERS, L.P.,
J.P. MORGAN SECURITIES LLC,
BARCLAYS CAPITAL INC.,
GOLDMAN SACHS & CO. LLC,
CITIGROUP GLOBAL MARKETS INC.,
ROBERT W. BAIRD & CO. INCORPORATED,
WILLIAM BLAIR & COMPANY, L.L.C.,
PIPER SANDLER & CO.,
CAPITAL ONE SECURITIES, INC.,
LOOP CAPITAL MARKETS LLC,
SIEBERT WILLIAMS SHANK & CO., LLC, and
ROBERTS & RYAN INVESTMENTS, INC.,

        Defendants.

---

## STIPULATED ORDER REGARDING PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS

---

This Stipulated Order Regarding Production of Electronically Stored Information and Paper Documents ("ESI Protocol") is entered into by and among the Parties in the above-captioned case and shall govern the search, processing, and production of Electronically Stored Information ("ESI") and paper documents, including by third parties, in the above-captioned case and any related actions that may later be consolidated with this case (collectively, the "Litigation").

## I.  GENERAL PROVISIONS

A.  **Applicability:** This ESI Protocol will govern the production of Electronically Stored Information ("ESI") and paper documents in the Litigation. To the extent that a Party collected and processed documents prior to the entry of this ESI Protocol, and production of such documents cannot be made in accordance with the terms of this ESI Protocol, the Parties shall meet and confer concerning the potential formats of the production of any such documents.  Further, to the extent the guidelines or procedures set forth in this ESI protocol are not technologically feasible or reasonably practicable based on vendor capabilities, the Parties will use best efforts to comply with the ESI Protocol.

B.  **Deadlines:** References to schedules and deadlines in this ESI Protocol shall comply with the governing schedule in the Litigation and the Civil Rules for the District of Colorado with respect to computing deadlines.

C.  **Definitions:**

1.  Plaintiffs and Defendants, as well as their officers, directors, employees, agents, and legal counsel, are referred to as the "Parties" solely for the purposes of this ESI Protocol. A single Plaintiff or Defendant, as well as, where applicable, its respective officers, directors, employees, agents, and legal counsel, may also be referred to as a "Party" solely for the purposes of this ESI Protocol.

2.  "Plaintiffs" as used herein shall mean the El Paso Firemen & Policemen's Pension Fund, San Antonio Fire & Police Pension Fund, and Indiana Public Retirement System.

3.  "Defendants" as used herein shall mean Defendants named in the Complaint or in any subsequent complaint.

4.  "Discovery Material" is defined as all information produced, given, or exchanged by and among all Parties, or received from non-Parties in the Litigation, including all deposition testimony, testimony given at hearings or other proceedings, interrogatory answers, documents, and all other discovery-related materials, whether produced informally or in response to requests for discovery.

5.  "Document" means written, recorded, and graphic material of every kind, including all Electronically Stored Information, data or information in any tangible form, including but not limited to the original and any non-identical copy (which is different from the original because of notations on such copy or otherwise) of any documentary material, together with any attachments thereto or enclosures therewith, including but not limited to: records; reports; correspondence; emails

and all attachments and enclosures thereto; communications; contracts (including drafts, proposals, and any and all exhibits thereto); agreements; memoranda (including inter- and intra-office memoranda, and memoranda for file); and data and documents maintained or transmitted by or to a Party, including electronically. Documents include the metadata or labels associated with each original or copy. "Document" includes (i) documentary material that exists physically in hard copy form and (ii) documentary material no matter how any such document is stored, maintained or organized, including but not limited to electronically, digitally or magnetically through computer or other electronic, network, or cloud-based storage equipment or media.

6. "Electronically stored information," or "ESI," means the complete original and any non-identical copy (whether different from the original because of notations, different metadata, or otherwise) of any electronically created or stored information, including but not limited to e-mail, instant messaging, videoconferencing, SMS, MMS, Slack, Teams Chat, Google Chat, Zoom Chat, or other text messaging, ephemeral messaging, and other electronic correspondence (whether active, archived, unsent, or in a sent or deleted-items folder), word-processing files, spreadsheets, databases, unorganized data, document metadata, presentation files, and sound recordings, regardless of how or where the information is stored, including if it is on a mobile device.

7. "Hash Value" is a numerical identifier that can be determined from a file, a group of files, or a portion of a file, based on a standard mathematical algorithm that calculates a value for a given set of data, serving as a digital fingerprint, and representing the binary content of the data to assist in subsequently ensuring that data has not been modified and to facilitate duplicate identification. Unless otherwise specified, hash values shall be calculated using the MD5 hash algorithm.

8. "Metadata" means and refers to data providing information about data, and includes without limitation: (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage and/or validity of the electronic file and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

9. "Searchable Text" means the native text extracted from an Electronic Document or, when extraction is infeasible, by Optical Character Recognition text ("OCR text") generated from a Hard Copy Document or electronic image.

D.   **Authenticity and Admissibility:** Nothing in this ESI Protocol shall be construed to affect the authenticity or admissibility of any document or data. All objections to the authenticity or admissibility of any document or data are preserved and may be asserted at any time.

E.    **Privilege**: The Parties and their attorneys do not intend by entering into, and producing documents pursuant to, this ESI Protocol to waive their rights to the attorney client or work-product privilege, or any other privilege or protection available to them under the applicable law.  The Parties preserve their attorney-client privileges and other privileges, all of which are preserved and protected to the fullest extent provided by law.

F.    **Confidential Information:** For the avoidance of doubt, nothing herein shall contradict the Parties' rights and obligations with respect to any information designated as Confidential or Highly Confidential under the Protective Order entered in this case.  All productions are subject to the Protective Order entered by the Court in this Action.

G.    **Preservation:** The Parties agree that they shall continue to take reasonable steps to preserve all potentially relevant documents and ESI in accordance with their obligations under applicable law. By preserving or producing information for the purpose of this Litigation, the Parties are not conceding that such material is discoverable or admissible.

H.    **Search:** The Parties agree that in responding to an initial Fed.R.Civ.P.34 request, or earlier if appropriate, they will meet and confer about methods to search ESI to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery. Nothing herein shall prohibit a Party from reasonable use of any specific search methods/technologies, including commercially reasonable tools for technology-assisted review ("TAR"). However, a producing Party that elects to use TAR must disclose that it has elected to do so, along with the name of the TAR software, and will agree to meet and confer upon request to address any related concerns including regarding vendor capabilities.

## II.    <u>GENERAL PRODUCTION FORMAT PROTOCOLS</u>

A.    **TIFFs:** Except for structured data, all production images will be provided as a single-page Group IV TIFF of at least 300 DPI resolution, in black-and-white, with corresponding multi-page text and necessary load files. The producing Party will honor reasonable requests for a color image of a document, if production in color is necessary to understand the meaning or content of the document. Documents produced in color will be produced in the document's native file format or in JPEG format as single-page, 300 dpi. Each image will have a file name that is the unique Bates number of that image, pursuant to ¶ II(E). Original document orientation should be maintained to the extent reasonably practicable and technologically possible for a producing Party's vendor (*i.e.*, portrait to portrait and landscape to landscape). The imaged Data shall retain all attributes of the native or hard-copy file, such as document breaks. To the extent reasonably practicable, produced TIFF images will show all text and images that are visible in the form in which the electronic document was last saved, with the exception of redacted portions. For example, TIFFs of e-mail messages should include the BCC line.  To the extent reasonably practicable and technologically feasible, hidden content, tracked changes or edits, comments, notes, and other similar information, to the extent viewable within a document in its native file format, shall also be imaged so that such content is viewable on the image file. For example, PowerPoint materials shall be processed with hidden slides and all speaker notes unhidden, and shall be processed to show both the slide and the speaker's notes on the TIFF image.

Documents that are difficult to render in TIFF because of technical issues, or any other documents that are impracticable to render in TIFF format, may be produced in their native format with a placeholder TIFF image stating "Document Produced Natively," or in the alternative, if applicable, "Exception File Unable to Be Imaged." A producing Party retains the option to produce ESI in alternative formats if so agreed by the requesting Party, which may include native format, or a combination of native and TIFF formats.

B.    **Text Files:** Each ESI item produced under this ESI Protocol shall be accompanied by a text file as set out below. All text files shall be provided as a single document level Unicode text file for each item, not one text file per page. Each text file shall be named to use the Bates number of the first page of the corresponding production item.  File names shall not have any special characters or embedded spaces. Electronic text must be extracted directly from the native electronic file to the extent reasonably feasible unless the document is an image file or contains redactions, in which case, a text file created using OCR (see below) should be produced in lieu of extracted text.

1.    **Optical Character Recognition (OCR):** A producing Party must scan and OCR paper documents and any ESI for which text cannot be extracted pursuant to the below paragraph (e.g., non-text searchable PDFs). Where OCR is used, the Parties will endeavor to generate accurate OCR and will utilize OCR processes and technology of sufficient quality to enable the generation of utilizable text files. OCR text files should indicate page breaks where possible.

2.    **ESI:** Emails and other ESI will be accompanied by extracted text taken from the electronic file itself, where available.

3.    **Redacted documents:** For redacted documents, the Parties shall provide the full text for the redacted version. Any redacted material must be clearly labeled on the face of the document as having been redacted and shall be identified as such in the load file provided with the production. Each redacted document shall be produced with an OCR *.txt file containing unredacted text. A document's status as redacted does not relieve the producing party from providing all the metadata required herein unless the metadata withheld contains privileged content.

C.    **Production of Native Items:** The Parties agree that ESI shall be produced as TIFF images consistent with the format described in ¶ II(A) with an accompanying load file, which will contain, among other data points, the ESI data points listed in Appendix 1 hereto. The exception to this rule shall be spreadsheet-application files (*e.g.*, MS Excel), presentations (*e.g.,* MS PowerPoint)*,* personal databases (*e.g.*, MS Access), and multimedia audio/visual files such as voice and video recordings (*e.g.*, .wav, .mpeg, .mp3, .mp4, and .avi), and any file types that are not easily rendered to image for which all ESI items shall be produced in native format, provided that to the extent such files contain Highly Confidential information as defined in the Stipulated Protective Order, Defendants reserve the right to produce such information in TIFF format in the first instance and to honor reasonable requests for specific items to be produced in a native format if a receiving Party reasonably determines the item cannot be reviewed in TIFF format. In the case of personal database

(*e.g.*, MS Access) files containing confidential or privileged information, the Parties shall meet and confer to determine the appropriate form of production. When producing the above file types in native format, the producing Party shall produce a single-page TIFF slip sheet indicating that a native item was produced. The filename must retain the file extension corresponding to the original native format; for example, an Excel 2003 spreadsheet's extension must be .xls. The corresponding load file shall include NativeFileLink information for each native file that is produced. The Parties agree to meet and confer to the extent that there is data in database application files, such as SQL and SAP, to determine a reasonable form of production of usable data. Through the pendency of the Litigation, the producing Party shall exercise reasonable, good faith efforts to maintain all preserved and produced native files in a manner that does not alter or modify the file or the metadata.

D. **Requests for Other Native Files:** Other than as specifically set forth above, a producing Party need not produce documents in native format. If a Party would like a particular document produced in native format and this ESI Protocol does not require the production of that document in its native format, the Party making such a request shall explain the reason for its request that the document be produced in its native format. The requesting Party will provide a specific Bates range for documents it wishes to be produced in native format. Any native files that are produced should be produced with a link in the NativeLink field, along with all extracted text and applicable metadata fields set forth in Appendix 1.

E. **Bates Numbering:**

   1. All images must be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant prefix and length (ten-digits and 0-padded) across the entire production; (3) contain no special characters, embedded spaces, hyphens, or underscores; (4) be sequential within a given document; and (5) identify the producing Party. To the extent reasonably practicable, the Bates number must also maintain consistent numbering across a family of documents.

   2. If a Bates number or set of Bates numbers is skipped in a production, the producing Party will so note in a cover letter or production log accompanying the production.

   3. Producing Parties will brand all TIFF images with the corresponding Bates numbers in the bottom-right hand corner of the images, in a manner that does not obscure any part of the underlying images.

F. **Parent-Child Relationships:** Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved.

G. **Entire Document Families:** A document and all other documents in its attachment range, emails with attachments, and email or other documents together with any documents referenced by document stubs or via links to internal document sources within those emails or other documents all constitute family groups. Subject to ¶¶ II(J)(1), II(J)(2), and VI(B) below, and to the extent reasonably practicable and technologically feasible, entire

document families must be produced, even if only the parent or an attachment is responsive, excepting (1) junk files and non-user-created content routinely excluded during processing (provided such routine processing-generated exclusions are agreed to among the Parties), and (2) documents that are withheld on the basis of privilege and in compliance with the Parties' stipulation or the Court's order on such assertions of privilege. To the extent a produced document contains a hyperlinked document, the Parties will discuss the production of such documents on an individualized basis in connection with meet-and-confers concerning any requests for production.  Where a document is fully withheld from an otherwise produced family on the basis of privilege, the producing Party may produce a single-page TIFF slip sheet indicating that the document was withheld. The corresponding load file record for such a document only needs to provide information for the following fields: BegBates, EndBates, BegAttach, EndAttach, Withheld Placeholder, and Privilege Asserted.

H.  **Load Files:** All production items will be provided with a delimited data file or "load file," which will include both an image cross-reference load file (such as an Opticon file), as well as a metadata (.dat) file with the document-level metadata fields identified in Appendix 1 below (to the extent available). The load file must reference each TIFF in the corresponding production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load files in the production.

I.  **Foreign Language Documents:** To the extent that documents or ESI are produced that contain languages other than English, in whole or in part, the producing Party shall produce all foreign language documents and ESI in the original language.  For documents in foreign languages, any OCR shall be performed using an OCR tool and settings suitable for the particular byte or multi-byte languages.  The Parties agree to meet and confer regarding existing translations of the produced foreign language documents.

J.  **Redactions**

   1.  **Personal Data Redactions:** Except for structured data, a producing Party may redact personal information to the extent that the information falls within one of the following categories:

      a.  the information is protected from disclosure under HIPAA; or

      b.  social security numbers, financial-account numbers or bank account information, taxpayer-identification numbers, driver's license numbers, birthdates, passport numbers, names of minor children, credit card information or personal passcodes. Such redactions should be identified as "Redacted – Personal Data" on the face of the document.

   2.  **No "relevancy" redactions:** A Party may not make redactions based on an assertion the data is not relevant. The only redactions permitted are on the basis of privilege or the two specific categories of privacy listed above.

3.      The Parties agree to meet and confer to discuss redaction of any additional categories of information.

K.      **Production Media, Encryption, & Protocol:** A producing Party may produce documents via file-sharing service, including any network-based secure file transfer mechanism or SFTP, or readily accessible computer or electronic media, including CD-ROM, DVD, or external hard drive (with standard PC compatible interface) ("Production Media"). Any requesting Party that is unable to resolve any technical issues with the electronic production method used for a particular production may request that a producing Party provide a copy of that production using Production Media.

The producing Party shall encrypt Production Media, regardless of transmission method, and will provide a decryption key to the requesting Party in a communication separate from the production itself. Each piece of Production Media will be assigned a production number or other unique identifying label corresponding to the date of the production of documents on the Production Media, as well as the sequence of the material in that production. For example, if the production comprises document images on three DVDs, the producing Party may label each DVD in the following manner: "[PARTY] Production January 1, 2017-001," "[PARTY] Production January 1, 2017-002," and "[PARTY] Production January 1, 2017-003." Where the Production Media used is a CD-ROM, DVD, external hard drive (with standard PC compatible interface), or USB drive, such production media must be sent no slower than overnight delivery via FedEx, UPS, or USPS. Each item of Production Media (or in the case of productions made via FTP link, each production transmittal letter) shall include: (1) text referencing that it was produced in the Litigation, (2) the production date, (3) the Bates number range of the materials contained on such production media item, and (4) a short description of the production. Any replacement Production Media will cross-reference the original Production Media and clearly identify that it is a replacement and cross-reference the Bates number range that is being replaced. The Parties shall designate the appropriate physical address for productions that are produced on Production Media.

Each production shall include a transmittal letter that includes (1) the production date, (2) the Bates range of the materials included in the production, and (3) a brief description identifying the content of the production.

L.      **Resolution of Production Issues:** Documents that cannot be read because of imaging or formatting problems shall be identified by the receiving Party to the producing Party promptly after the receiving Party's discovery of the issue. The producing Party and the receiving Party shall meet and confer to attempt to resolve problem(s), to the extent the problem(s) are within the Parties' control.

However produced, a producing Party shall provide clear instructions for accessing the production, including any necessary passwords or encryption keys.

### III. PAPER DOCUMENT PRODUCTION PROTOCOLS

A.  **Scanning:** A producing Party must scan and OCR paper documents. Where OCR is used, the Parties agree that the following ¶¶ III(B)-(C) shall apply.

B.  **Coding Fields:** The following information shall be produced in the load file accompanying production of paper documents: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) Confidentiality, (g) Pages, and (h) Redacted (Y/N) or otherwise indicating that a redaction is present. Additionally, all paper documents will be produced with a coding field named "Paper Document" marked with a "Y" or otherwise indicate that the document originated in paper, and such indication shall be explained to the requesting Party.

C.  **Unitization of Paper Documents:** Paper documents should be logically unitized for production to the extent reasonably practicable. Generally, when scanning paper documents for production, distinct documents shall not be merged into a single record and single documents shall not be split into multiple records. The Parties will make reasonable efforts to unitize documents correctly.

D.  **Relationship:** To the extent reasonably practicable and technologically feasible, the relationship among the documents in a folder or other grouping should be reflected in proper coding of the beginning and ending document and attachment fields.

E.  **Identification:** Where a document, or a document group – such as folder, clipped bundle, or binder – has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

F.  **Fixed Notes:** Paper documents that contain fixed notes shall be scanned with the notes affixed, if it can be done so in a manner so as not to obstruct other content on the document. If the content of the document is obscured by the affixed notes, the document and note shall be scanned separately, and produced in a way that makes clear which page the note was affixed to.

G.  **Custodian Identification**: The Parties will utilize best efforts to ensure that paper records for a particular document custodian are produced in consecutive stamp order.

### IV. ESI METADATA FORMAT AND PROCESSING ISSUES

A.  **System Files:** ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time of de-NISTing. Other file types may be added to the list of excluded files if agreed to by the Parties.

B.  **Metadata Fields and Processing:**

1.  **Date and Time:** No Party shall modify the date or time as contained in any original ESI.

2.  **Time Zone:** To the extent reasonably practicable, each Party shall process ESI items using a consistent time zone both in the metadata and on the image of the document. For the avoidance of doubt, ESI items that have already been previously processed in a different time zone need not be reprocessed, though the time zone previously used shall be reflected in the metadata. Each producing Party will provide notice to the other Party's ESI Liaisons of the time zone used in their produced metadata and on the image of produced documents.

3.  **Auto Date/Time Stamps:** To the extent reasonably practicable, ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

4.  **Metadata Fields:** Except as otherwise set forth in this ESI Protocol, ESI files shall be produced with at least each of the data fields set forth in Appendix 1 that are available and can reasonably be extracted from a document.

    The Parties are not obligated to manually populate any of the fields in the Appendix if such fields cannot reasonably be extracted from the document using an automated process, with the exception of the following fields:  (a) BegBates, (b) EndBates, (c) BegAttach,        (d) EndAttach,        (e) Custodian/Custodians        All/Other, (f) Confidentiality, (g) Redacted (Y/N), and (h) NativeLink fields, which should be delivered regardless of whether the fields can be populated pursuant to an automated process.

C.  **Redaction:**

1.  The Parties agree that, where ESI items, with the exception of Native Excel or other spreadsheet files, need to be produced according to Appendix 1 and also must be redacted, they shall be produced solely in TIFF format with each redaction and the reason for it clearly indicated (i.e., "Redaction – PII" or "Redaction – Privilege"), except in the case of personal database files (*e.g.*, MS Access), which shall be governed by ¶ II(C), *supra*. The producing Party must also produce a text file of such documents. Any metadata fields reasonably available and unnecessary to protect the privilege protected by the redaction, including but not limited to the metadata fields listed in the Appendix, shall be provided.  The Parties understand that for certain MS Excel documents or other file types or files, TIFF redactions may be impracticable. These documents may be redacted in native format.

2.  Native Excel or other spreadsheet files which require redaction may be redacted in their native form by overwriting the data contained in a particular cell, row, column, or tab with the word "Redacted" and shall make clear the reason for the redaction (*e.g.*, "REDACTED - PRIVILEGED"). The Parties acknowledge that redacting the native may alter the Metadata of the produced file; however, the data fields produced subject to Appendix 1 will be extracted from the original native file, other than the data field(s) containing redacted information.

3.  If the items redacted and partially withheld from production are audio/visual files, the producing Party shall, to the extent reasonably practicable, provide the

unredacted portions of the content. The Parties shall meet and confer to discuss the appropriate manner for the producing Party to produce the unredacted portion of such content.

D. **Email Threading:** The Parties are permitted to use commercially reasonable email threading tools to remove emails and their attachments where the contents of the email and any attachments are wholly included within another email that is not removed.

E. **De-duplication:** A producing Party may de-duplicate any file globally (*i.e.*, across Document Custodians) at the "family" level (i.e., families should not be broken due to de-duplication). The producing Party will make a reasonable effort to identify all custodians who were in possession of any de-duplicated documents through an appropriate load file field such as DuplicateCustodian or CustodianAll/Other (as noted in the Appendix). An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include identical content in those fields, even if the text of the email is otherwise identical. In the event of rolling productions of documents or ESI items, the producing Party will, as needed, supplement the load files with updated duplicate custodian information, as well as BCC information to the extent such metadata exists. Duplicate custodian information may be provided by a metadata "overlay."

1. Duplicate electronic documents shall be identified by utilizing the industry-standard process of comparison of auto-generated hash values (*e.g.*, MD5 or SHA-1). All electronic documents bearing an identical value will be considered duplicative. The producing Party is not obligated to extract, review, or produce entirely duplicate ESI documents.

2. Duplicate emails shall be identified by utilizing the industry-standard process of comparison of auto-generated hash values (*e.g.*, MD5 hash values) for the email family, which shall include the parent email and all attachments. Duplicate identification will be identified at a family level, including message and all attachments. Email families bearing an identical value are considered a duplicate group.

F. **Zero-byte Files:** The Parties may, but are not required to, filter out stand-alone files identified as zero-bytes in size that do not contain responsive file links or file names. If the requesting Party in good faith believes that a zero-byte file was withheld from production and contains information responsive to a request for production, the requesting Party may request that the producing Party produce the zero-byte file. The requesting Party may provide a Bates number to the producing Party of any document that suggests a zero-byte file was withheld from production and contains information responsive to a request for production.

G. **Hidden Text:** ESI items shall be processed and produced, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments.

H.    **Embedded Objects:** To the extent reasonably practicable and technologically feasible for a producing Party's vendor, Microsoft Excel spreadsheets (.xls) embedded in Microsoft Word or Microsoft PowerPoint documents will be extracted as separate documents and treated as attachments to the document. The Parties agree that other embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set and need not be produced as separate documents by a producing Party (*e.g.*, such embedded objects will be produced within the document itself, rather than as separate attachments).

I.    **Hyperlinked Files:** The Parties will discuss the production of hyperlinked files on an individualized basis in connection with meet-and-confers concerning any requests for production.

J.    **Compressed Files:** Compression file types (*i.e.*, .CAB, .GZ, .TAR, .Z, and .ZIP) shall be decompressed and extracted in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

K.    **Exception Files**: The Parties will use reasonable efforts and standard industry practices to address documents that present imaging or form production problems (including encrypted and/or protected files identified during the processing of ESI ("Exception Files"). A Party is not required in the first instance to produce Exception Files it has been unable to resolve through commercially reasonable efforts, except that, upon reasonable request, the producing Party will undertake reasonable efforts to locate passwords for specifically identified documents and to provide such passwords within thirty (30) calendar days of the request. Exception Files that are attached to produced Documents will be produced as a Bates-stamped placeholder TIFF bearing a legend indicating the document is unable to be processed.

L.    **Password-Protected, Encrypted, or Proprietary-Software Files:** With respect to any ESI items that are password-protected or encrypted within the scope of review, the producing Party will take reasonable steps to obtain identified passwords and remove such protection so that the documents can be reviewed and produced if appropriate. ESI that is likely to contain responsive information that cannot be reviewed because proprietary software is necessary to view the ESI will be disclosed to a requesting Party, and the Parties shall meet and confer regarding the next steps, if any, with respect to such ESI.

## V.    <u>DOCUMENT SOURCE SCOPE AND DISCLOSURE PARAMETERS</u>

A.    **Document Source Negotiations**

1.    **Initial Document Custodians and Sources**: Each Party will provide a list of proposed document custodians and non-custodial document sources (*e.g.*, centralized document sources other than an individual document custodian's files) reflecting those employees or sources with information and/or documents responsive to Rule 34 Requests. The Parties shall be prepared to meet and confer regarding how discoverable information is stored and how it may be collected.

2. **Additional Document Custodians or Sources:** If, after the Parties identify initial document custodians, a requesting Party believes that additional document custodians or sources should be added, then the requesting Party shall advise the producing Party in writing of the proposed additional document custodians or sources and the basis for the request. If the Parties have not agreed on whether to add the document custodian or source within 30 days of the requesting Party's request, then the matter may be brought to the Court.

3. The Parties' discussion of proposed search terms, document custodians, or sources does not preclude a Party from requesting additional search terms, document custodians, or sources pursuant to the terms of this ESI Protocol; nor does it preclude a Party from objecting to any such additional requests.

## VI. CELLPHONE, PERSONAL COMMUNICATIONS, AND STRUCTURED DATA

A. **Cellphones:** For Document Custodians agreed on by the Parties or ordered by the Court, a producing Party will take reasonable steps to identify whether any unique, responsive ESI (including cell phone call logs, voicemails, voicemail logs, text messages and/or iMessages, chats [such as WhatsApp and Signal], notes, calendar items, emails, Word documents, photographs, audio recordings, and video recordings), if any, is located on any devices (including mobile phones, tablets, and computers) in the possession, custody, or control of the producing Party. Unless agreed otherwise, the following shall govern the identification of unique, responsive, and non-privileged communications for cellphone-based data for the agreed or ordered Document Custodians with respect to cellphones in the possession, custody, or control of the producing Party. Within a reasonable time period following the designation of a Document Custodian, whether by agreement or Court order, a producing Party is obligated to disclose if it takes the position that a Document Custodian possesses a cellphone that was used for purposes relevant to the Litigation but is not within the producing Party's possession, custody, or control; however, nothing in this ESI Protocol obligates a producing Party to subpoena a third-party to obtain the information described below.

a. A producing Party shall use reasonable due diligence to ensure that reasonably available sources of data/applications on a cellphone (and related backups and archives, if those data sources/applications contain work-related information) are evaluated and considered as a potential source of data subject to discovery, including without limitation call and voicemail logs, text messages, contacts, and image files (*e.g.*, pictures and videos). A producing Party shall not be required to disclose any other cellphone-related information prior to any culling of cellphone data.

b. A producing Party will consider the sources of information on a cellphone identified below, to the extent reasonably available, to identify unique, responsive, and discoverable information. The Parties will also meet and confer regarding any culling of the sources of information below.

i. **Cellphone Call and Voicemail Logs:** The logs of any calls

made/received to or from a Document Custodian, and logs of voicemails on a cellphone that the Document Custodian used for purposes relevant to the Litigation, if any, if the cellphone is in the possession, custody, or control of a producing Party.

ii. **Text Messages:** All text messages and/or iMessages, or any other type of message or chat on a Document Custodian's cellphone device used for purposes relevant to the Litigation, if any, if the cellphone is in the possession, custody, or control of a producing Party, provided, however, that nothing herein shall obligate a Party to violate the Colorado Social Media and the Workplace Law § 8-2-127, C.R.S., or any similar, applicable provision restricting employers from requiring an employee to disclose any user name or password for purposes of accessing an employee's personal account through the employee's personal electronic communications device.

B. **Enterprise messaging and other communication tools:** The Parties will disclose at the outset any use of enterprise messaging tools meant to replace email (*e.g.*, Slack, Google Chat, Microsoft Teams, Zoom, WhatsApp, Sametime, Signal, Skype, Telegram, Facebook Messenger. etc.), including the type of subscription and retention settings in place. The Parties will meet and confer regarding issues relating to the parameters for an inclusive collection of such data, the format of the production, and other unique issues to this type of data.

C. **Social Media Data:** If a Document Custodian confirms that he or she (1) used social media for purposes relevant to the Litigation, and/or (2) used that social media to communicate with an employee of another Party or otherwise regarding a subject relevant to the Litigation and responsive to a Request for Production, then the requested communication(s) must be produced if it is reasonably accessible, in the producing Party's possession, custody, or control, and not withheld as privileged. The Parties shall meet and confer about any issues relating to social media, including the scope of social media and format of production. A producing Party is obligated to promptly following identification of a Document Custodian disclose to a Requesting Party if it takes the position that the Document Custodian possesses social media materials that are not within the producing Party's possession, custody or control so that a requesting Party may issue a subpoena to that Document Custodian; however, nothing in this ESI Protocol obligates a producing Party to subpoena a third-party to obtain such social media materials or to take any actions that would violate the Colorado Social Media and the Workplace Law § 8-2-127, C.R.S., or any similar, applicable provision restricting employers from requiring an employee to disclose any user name or password for purposes of accessing an employee's personal account through the employee's personal electronic communications device. If a requesting Party intends to issue a third-party subpoena directed at an employee of a producing Party concerning that employee's social media materials that are not in the producing Party's possession, custody or control, the requesting Party will provide notice of its intent to the producing Party prior to the service of the subpoena so that the Parties may meet and confer regarding the third-party subpoena. The requesting Party may serve the subpoena 3 business days after the date of notice or at such earlier time agreed by the Parties.

D.   **Structured Data:** To the extent a response to discovery requires production of discoverable ESI contained in a structured database, the Parties shall meet and confer in an attempt to agree upon a set of queries to be made for discoverable information and generate a report in a reasonably usable and exportable electronic file (*e.g.*, Excel or CSV format) for review by the Requesting Party. Upon review of the report, the Requesting Party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields.

## VII. <u>CLAIMS OF PRIVILEGE AND REDACTIONS</u>

A.   **Production of Privilege Logs:** A producing Party shall, on a rolling basis, supply a log of the documents withheld or redacted under a claim of privilege and/or work product with sufficient information to allow the receiving Party to understand the basis for the claim. Except as provided otherwise below, for any document withheld in its entirety or produced but redacted, the producing Party will produce privilege/redaction logs in MS Excel format.

B.   **Privilege Log Requirements:**

1.   **Privilege Log:** To the extent applicable, each Party's privilege log must provide objective metadata (to the extent it is reasonably available and does not reflect privileged or protected information) and a description of the material not disclosed. The Parties agree to meet and confer if a party proposes to use a categorical log.

   a.   Objective metadata includes the following (as applicable to the document types as shown in Appendix 1):

      i.   A unique privilege log identifier
      ii.   A family relationship identifier
      iii.   Custodian
      iv.   CustodianOther or CustodianAll (if applicable)
      v.   Title/File Name
      vi.   Email Subject
      vii.   Author
      viii.   From
      ix.   To
      x.   CC
      xi.   BCC
      xii.   Date Sent
      xiii.   Date Received
      xiv.   Date Created

   b.   In addition to the objective metadata fields, a Party must also indicate which privilege or protection is being asserted, and include a field on its privilege log entitled "Attorney/Description of Privileged Material" that contains a description of the privileged or protected material in a manner that will

enable other parties to assess the claim of privilege, and identify which persons associated with the document *(i.e.*, senders, recipients, or authors) are attorneys  Further, for any document withheld for which there is no objective metadata, a Party must manually populate on its privilege log each of the foregoing metadata fields and description field, to the extent such information is known and reasonably accessible.

    c. With respect to the "Email Subject" or "File Name" field, the producing Party may substitute a description of the document where the contents of these fields reveal privileged information. In the privilege log(s), the producing Party shall identify each instance in which it has modified the content of the "Email Subject" or "File Name" field.

    d. If a document is withheld on the basis of work product, in addition to the objective metadata fields, a Party must also include the basis of the claim in the manner required by Rule 26(b)(5).

C. **Exclusion from Logging Potentially Privileged Documents:** The following categories of documents need not be collected, reviewed, or reflected in a producing Party's privilege log.

    a. Communications after commencement of the litigation exclusively between a producing Party and its in-house and/or outside counsel regarding this Litigation.

    b. Any communications exclusively between a producing Party and its outside counsel retained in connection with any litigation or governmental investigation.

    c. Any communications exclusively between a producing Party and non-testifying experts in connection with this Litigation, or with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts in connection with this Litigation.

    d. Any privileged materials or work product created by or specifically at the direction of any non-testifying experts in connection with this Litigation, or with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts in connection with this Litigation.

D. **Challenges to Privilege Claims:** Following the receipt of a privilege/redaction log, a Party may identify, in writing (by Bates/unique privilege log identification number), the particular documents that it believes require further explanation. The producing Party shall respond to such a request within 14 days. If the parties cannot agree as to the propriety of the privilege claim, the matter may be brought to the Court. A producing/withholding party bears the burden of supporting each claim of privilege or work-product protection.

## VIII.    <u>THIRD PARTY DOCUMENTS</u>

A Party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this Order with the subpoena and advise that Third Parties should produce documents in accordance with the specifications set forth herein. The Issuing Party shall produce any documents obtained pursuant to a non-Party subpoena to the opposing Parties. Nothing in this Order is intended or may be interpreted to narrow, expand, or otherwise affect the rights of Third Parties to object to a subpoena.

## IX.    **MISCELLANEOUS PROVISIONS**

A.    **Objections Preserved:** Nothing in this ESI Protocol shall be interpreted to require disclosure of information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Except as provided expressly herein, the Parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of documents and ESI.

B.    **Inaccessible ESI:** If a producing Party asserts that certain categories of ESI that are reasonably likely to contain responsive information are inaccessible or otherwise unnecessary under the circumstances, or if the requesting Party asserts that, following production, certain ESI is not reasonably usable, the Parties shall meet and confer to discuss resolving such assertions. If the Parties cannot resolve any such disputes after such a meet and confer has taken place, the issue shall be presented to the Court for resolution. Nothing in this ESI Protocol prevents any Party from asserting that other categories of ESI are not reasonably accessible. The following types of data stores are presumed to be inaccessible and are not subject to discovery, and need not be collected or preserved, absent a particularized need for the data as established by the facts and legal issues of the case (*e.g.*, information suggesting that relevant evidence has been lost or is no longer available in other more accessible forms):

      1.    Deleted, slack, fragmented, or other data only accessible by forensics;

      2.    Random access memory (RAM) or temporary files; and, other ephemeral data that is difficult to preserve without disabling the operating system;

      3.    Server, system, or network logs;

      4.    On-line access data such as temporary internet files, history, cache, cookies, and the like;

      5.    Back-up data that is substantially duplicative of data that is more accessible elsewhere;

      6.    Data stored on photocopiers, scanners and fax machines; and

      7.    Data remaining from systems no longer in use that cannot be accessed by systems in use.

C.    **Lost or Destroyed ESI**: If counsel for the producing Party learns that after the duty to preserve arose, responsive ESI that once existed was lost, destroyed, or is no longer

retrievable, the producing Party shall disclose this to all other Parties within 3 business days.  Within 10 business days, the producing party shall explain where and when the ESI was last retrievable in its original format, and disclose the circumstances surrounding the change in status of that ESI, and whether any backup or copy of such original ESI exists, together with the location and the custodian thereof.

D.    **Variations or Modifications:** Variations from this ESI Protocol may be required. Any practice or procedure set forth herein may be varied by agreement of all affected Parties and non-Parties, which will be confirmed in writing. In the event a producing Party determines that a variation or modification is necessary to facilitate the timely and economical production of documents or ESI, the producing Party will notify the requesting Party of the variation or modification. Upon request by the requesting Party, those Parties will meet and confer to address any issues in a reasonable and timely manner prior to seeking Court intervention. To the extent the Parties cannot resolve the dispute, the producing Party must seek relief from the Court if it wants to deviate from this ESI Protocol.

IT IS SO STIPULATED, through Counsel of Record.

| | |
|---|---|
| */s/ Julie G. Reiser* | */s/ Diane L. McGimsey* |
| Julie G. Reiser | Karen Patton Seymour |
| S. Douglas Bunch | SULLIVAN & CROMWELL LLP |
| Molly Bowen | 125 Broad Street |
| Jan E. Messerschmidt | New York, NY 10004 |
| Brendan R. Schneiderman | Tel.: (212) 558-4000 |
| COHEN MILSTEIN SELLERS & TOLL PLLC | Fax.: (212) 291-9305 |
| 1100 New York Avenue, N.W., Fifth Floor | seymourk@sullcrom.com |
| Washington, D.C. 20005 | |
| Tel.: (202) 408-4600 | Diane L. McGimsey |
| Fax.: (202) 408-4699 | SULLIVAN & CROMWELL LLP |
| jreiser@cohenmilstein.com | 1888 Century Park East, Suite 2100 |
| dbunch@cohenmilstein.com | Los Angeles, CA 90067 |
| mbowen@cohenmilstein.com | Telephone: (310) 712-6600 |
| jmesserschmidt@cohenmilstein.com | Facsimile: (310) 712-8800 |
| bschneiderman@cohenmilstein.com | mcgimseyd@sullcrom.com |
| | |
| Carol V. Gilden | *Counsel for InnovAge Holding Corp., Maureen* |
| COHEN MILSTEIN SELLERS & TOLL PLLC | *Hewitt, Barbara Gutierrez, John Ellis Bush,* |
| 190 South LaSalle Street, Suite 1705 | *Andrew Cavanna, Caroline Dechert, Edward* |
| Chicago, IL 60603 | *Kennedy, Jr., Pavithra Mahesh, Thomas* |
| Tel.: (312) 357-0370 | *Scully, Marilyn Tavenner, Sean Traynor,* |
| Fax.: (312) 357-0369 | *Richard Zoretic, Apax Partners US LLC, and* |
| cgilden@cohenmilstein.com | *Welsh, Carson, Anderson & Stowe* |
| | |
| Manuel J. Dominguez | |

COHEN MILSTEIN SELLERS & TOLL PLLC
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Tel.: (561) 551-1400
Fax.: (561) 515-1401
jdominguez@cohenmilstein.com

*Lead Counsel for Lead Plaintiffs*

Cecil E. Morris
Adrian P. Castro
FAIRFIELD AND WOODS, P.C.
1801 California Street, Suite 2600
Denver, CO 80202
Tel.: (303) 830-2400
Fax.: (303) 830-1033
cmorris@fwlaw.com
acastro@fwlaw.com

*Liaison Counsel for Lead Plaintiffs*

Peter Kurtz
WILMER CUTLER PICKERING HALE AND DORR
    LLP
1225 17th Street, Suite 2600
Denver, CO 80202
Tel: (720) 598-3453
Fax: (720) 274-3133
peter.kurtz@wilmerhale.com

*Counsel for InnovAge Holding Corp.*

*/s/ Mary Eaton*
Mary Eaton
Nicholas A. Caselli
Abhinaya Swaminathan
FRESHFIELDS BRUCKHAUS DERINGER US LLP
601 Lexington Avenue
31st Floor
New York, NY 10022
Telephone: (212) 277-4000
Facsimile: (212) 277-4001
mary.eaton@freshfields.com
nicholas.caselli@freshfields.com
abhinaya.swaminathan@freshfields.com

*Counsel for J.P. Morgan Securities LLC,
Barclays Capital Inc., Goldman Sachs & Co.
LLC, Citigroup Global Markets Inc., Robert
W. Baird & Co. Incorporated, William Blair
& Company, L.L.C., Piper Sandler & Co.,
Capital One Securities, Inc., Loop Capital
Markets LLC, Siebert Williams Shank & Co.,
LLC, and Roberts & Ryan Investments, Inc.*

PURSUANT TO THE STIPULATION, IT IS SO ORDERED.

DATED:     June 17, 2024

_____
Hon. Susan B. Prose

## <u>Appendix 1: ESI Metadata and Coding Fields</u>

| Field Name[1] | Typical Data Type | Field Description |
|---|---|---|
| Begin Bates | Text | Beginning Bates number of first page of a document. |
| End Bates | Text | Ending Bates number of last page of a document. |
| Begin Family | Text | The Begin Bates number of the parent document of a family of attachments. |
| End Family | Text | The End Bates number of the last attachment in an attachment family. |
| From | Text | The name and email address of the sender of the email. |
| To | Text | All recipients that were included on the "To" line of the email. |
| Subject | Text | Subject line. An email field, the subject of the email. |
| Title | Text | Any value populated in the Title field of the document properties. |
| Author | Text | The creator of the document. |
| Bcc | Text | All recipients that were included on the "BCC" line of the email. |
| Cc | Text | All recipients that were included on the "CC" line of the email. |
| All Custodians | Text | The custodian(s) of the document in question, as well as custodians of duplicate docs generated from deduplication. |
| Custodian | Text | The person the file was originally collected from. It may also list the owner of the device from which the document was collected. |
| All Paths | Text | The file paths of the document and all of its duplicate documents as they were stored in the Custodian's directories. |
| Application | Text | The native application in which a file was created. |
| Attachment Count | Number | Identifies the number of attachments to an email (if present/applicable). |
| Confidentiality | Text | Indicates if a document has been designated as "Confidential" or "Highly Confidential" under the Protective Order. |
| Date Time Accessed | DateTime | The date the document was accessed or opened electronically. |
| Date Time Created | DateTime | The date the document was created. |
| Date Time Modified | DateTime | The date and time that the document was last modified (i.e., changes were applied and save to the document). |
| Date Time Printed | DateTime | The date and time that the document was printed. |
| Date Time Received | DateTime | The date and time that the document was received. |
| Date Time Saved | DateTime | The date and time that the document was saved. |
| Date Time Sent | DateTime | The date and time that the document was sent. |

[1] Field Names can vary from system to system and even between different versions of systems. Thus, Parties are to be guided by these Field Names and Field Descriptions when identifying the metadata fields to be produced for a given document pursuant to this ESI Protocol. To the extent that a Party does not produce metadata for one of these field names, the Parties will meet and confer in good faith about the metadata that the Parties do possess and the extent to which other metadata information provides the substantive information for the Field Name metadata that is not provided.

| Field Name[1] | Typical Data Type | Field Description |
|---|---|---|
| End Date Time | DateTime | The date and time of the conclusion of an event (for calendar entry). |
| Start Date Time | DateTime | The start date and time of a calendar event (for calendar entry). |
| Document Type | Text | A description of the file type, e.g., email, PDF, spreadsheet, Excel, Microsoft Word document, video, audio, plain text, etc. |
| Extension | Text | The suffix at the end of a native filename indicating file type. |
| File Path | Text | The original source file path, including location, folder name, filename, and extension. |
| Filename | Text | The filename as it occurred on the custodian's machine. |
| MD5 Hash | MD5 Hash | MD5 Hash is a 32-character hash value consisting of the characters A-F and 0-9. |
| SHA1 Hash | SHA1 Hash | SHA1 Hash is a 40-character hash value consisting of the characters A-F and 0-9. |
| In Reply To | Text | The Message ID of the email being replied to. |
| Message ID | Text | Message header identifier used to reconstruct email threads. |
| Native Path | Text | Relative file path of native record within production, including filename and extension of native file within the production. Only for documents produced in native format. |
| Paper | Text (Y) | "Y" if document is scanned from hard copy in connection with the collection and production of documents in this matter. |
| Pages | Number | The number of Bates stamped pages of the document. |
| Placeholder | Text (Y) | If a Bates stamped document is withheld (on the basis of privilege or otherwise) and instead produced with a placeholder image, this field must be populated with a "Y." |
| Privilege Type | Text | To the extent a document has been withheld on the basis of privilege or redacted on the basis of privilege, the text pertaining to such assertion of privilege shall be included as a metadata field (e.g., "Redacted – Attorney Client Privileged" or "Withheld – Attorney Client Privileged"). |
| Production Volume | Text | Identifies the unique production volume ID of the delivery. |
| Redacted | Text (Y) | "Y" if document has redactions. |
| TextPath | Text | Relative file path of text record within production, including filename and extension of the text file. |
| FileSize | Text | Size of native file document/email in KB |
| Redacted | Boolean | Denotes that item has been redacted as containing privileged content |
| HiddenContent | Boolean | Denotes presence of Tracked Changes/Hidden Content/Embedded Objects in item(s) |