1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No: 21-cv-02770-WJM-SBP

_____

EL PASO FIREMEN & POLICEMEN'S PENSION FUND, SAN ANTONIO FIRE
& POLICE PENSION FUND, AND INDIANA PUBLIC RETIREMENT SYSTEM,
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

        Plaintiffs,

v.

INNOVAGE HOLDING CORP.  ET AL.,

        Defendants.
_____

        Proceedings before SUSAN PROSE, United States
Magistrate Judge, for the District of Colorado, commencing
at 11:04 a.m. on June 20, 2024, in the United States
Courthouse, Denver, Colorado.
_____

WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS ARE

HEREIN TYPOGRAPHICALLY TRANSCRIBED...

_____

APPEARANCES

        CAROL V. GILDEN, CECIL E. MORRIS, JR., JULIE G.
REISER, and MOLLY J. BOWEN, Attorneys at Law, appearing on
behalf of the Plaintiffs.

        DIANE L. MCGIMSEY and AVALEE STATNER, Attorneys at
Law, on behalf of Defendants Innovage Holding, Corp.; Welsh,
Carson, Anderson & Stowe; Apax Partners, L.P., and
individual defendants.

        MARY EATON, Attorney at Law, appearing on Behalf
of the underwriter Defendants.
_____

TELEPHONIC STATUS CONFERENCE

2

P R O C E E D I N G S

(Whereupon, the within electronically recorded proceedings are herein transcribed, pursuant to order of counsel.)

(Audio for Mary Eaton was poor, resulting in "indiscernibles."

THE COURT:  Good morning, everyone.  We're on the record in Case No. 21-cv-2770, El Paso Fireman and Policemen's Pension Fund and others v. Innovage Holding Corporation and others.

Now, we have a lot of counsel on the phone today for participation in our status conference.  It actually might take longer, Counsel, to introduce all of you than to conduct our status conference.

But in the interest of just trying to streamline this as much as possible and the confusion that's necessarily attended on so many different people being on the line, let me note the following:  I'm going to -- let's do this:  I'm going to -- I'm going to call out each counsel's name and just -- just verify who you're here for, and then at the end of doing that, if I've missed anyone, is that person can speak up then.

So on the plaintiffs' side, we have Ms. Gilden; is that right?  Carol Gilden?

MS. GILDEN:  Yes, Your Honor.  That's right.

3

THE COURT:  Good morning.

MS. GILDEN:  Good morning.

THE COURT:  And we have Mr. Morris as well, yes?

MR. MORRIS:  Yes, Your Honor.  Thank you.

THE COURT:  All right.  And for the record, that's Cecil Morris.  And we have Julie Reiser.  Is that right, Ms. Reiser?

MS. REISER:  That's correct.  Good morning.

THE COURT:  Good morning.  And also Molly Bowen.

MS. BOWEN:  Good morning, Your Honor.

THE COURT:  Good morning.  And Counsel, you may represent different plaintiffs, but it -- is there a -- is there a particular counsel that is going to speak on behalf of each of the plaintiffs?  Feel free to speak up.

MS. GILDEN:  Good morning, Your Honor.  This is Molly Bowen of Cohen Milstein.  Together all of my colleagues represent all three plaintiffs, and I will be speaking on behalf of them today.

THE COURT:  All right.  And who else, please? Just -- just Ms. Bowen or -- okay.  All right.

Now on the defendants' side, we -- I believe we have Ms. Statner, is that right, Avalee Statner?  Avalee (pronouncing), it could be.  I apologize.

MS. STATNER:  Yes, Your Honor.  Thank you.

THE COURT:  Okay.  Good morning to you.  And we

4

also have Diane McGimsey, yes?

MS. MCGIMSEY:  Yes.  Good morning, Your Honor.

THE COURT:  Thank you.  Good morning to you too. And we have Mary Jane Eaton as well?

MS. EATON:  Yes, Your Honor.  Good morning on behalf of the underwriters.

THE COURT:  All right.  Thank you to all.  So folks, we set this for a status conference a few months ago, didn't we, when we had a scheduling conference, and sometimes we set these things, and it's -- it's apparent that there is a lot to talk about, but I'm not sure that there is this morning.

I will just note for the record that we have in this case commenced the briefing on the motion for class certification.  So that motion was filed on May 8th. However, the deadline to respond is not until July 19th.  So we're sort of smack-dab in the middle, if you will, of our briefing on the motion for class certification.

And other than to just make note of that for the record, I am not sure that there's anything that we need to collectively address this morning.  It seems we're on track with the deadlines that were set back in February, but -- so with that introduction, Counsel, I'll be guided by you.

Is there anything that any of the counsel that we have introduced on either side for either the plaintiffs or

5

the defense side would like to discuss this morning?  And so I'll just -- I'll just let counsel speak up and -- and say -- and introduce themselves, let me know who's talking and -- and tell me what's on your mind.

MS. BOWEN:  Good morning, Your Honor.  This is Molly Bowen for the plaintiffs, and there were --

THE COURT:  Yes.

MS. BOWEN:  -- a few items I was hoping we could raise today with your (indiscernible).

THE COURT:  All right.  Let's go ahead, please. Thank you, Ms. Bowen.

MS. BOWEN:  Perfect.  So I was hoping to just quickly update you on where discovery stands.

THE COURT:  Okay.

MS. BOWEN:  Talk about our motion for leave to amend the complaint, which is coming up on the schedule due in July, July 8th, and then also just speak briefly about class certification.

THE COURT:  All right.  Go right ahead, Ms. Bowen then.  You want to start with your --

MS. BOWEN:  Perfect.

THE COURT:  -- discovery piece?

MS. BOWEN:  Great.  Thank you.  So since we last saw you in late February, plaintiffs have been working diligently to keep discovery moving forward and stay on

6

track with our case schedule, which closes fact discovery in March.  So at this point, we're about a third of the way through the schedule.

So we have drafted and negotiated a protective order and ESI protocol, both of which the Court has entered.

THE COURT:  Yes.

MS. BOWEN:  We've served request for production on all defendants.  There have been a number of discovery disputes, but the parties have really tried to work through those ourselves and not impose on the Court.

We have served third-party subpoenas and a number of FOIA and records requests on state and federal regulators, one of which has already yielded documents that we have provided to defendants.

We've responded to three sets of RFPs, and then we have also commenced production, both from our class certification expert, which we did on an expedited timeline per the defendants' request, and also from our clients, the lead plaintiffs.

So all of that has been very active.  The challenge that we're having is getting the document production moving forward from the defendants.  We wanted to just raise that today and help get the Court's guidance on moving things forward.

And defendants agreed in their responses and

7

objections to produce a number of discrete types of documents like, you know, policies and procedures, compliance reports, concern board materials.

So of course, we are working on negotiating such terms and custodians, but we are hoping that we can get production moving forward on some of the documents that are more discrete and hopefully easier to access so that we can get our review going.  So --

THE COURT:  So you've received --

MS. BOWEN:  -- up until --

THE COURT:  -- some documents then, Ms. Bowen, is that right, or no documents --

MS. BOWEN:  Well --

THE COURT:  -- have been produced?

MS. BOWEN:  So -- and just Tuesday, we had received no documents.  On Tuesday, we received our first production from defendants, the Innovage defendants, which consisted of certain regulatory reports and audits and things like that.  I think it was about 40 or 45 documents.

THE COURT:  Oh, okay.  And you've -- so I take it then that a number of RFPs that you've -- that you've submitted, are -- are they -- are they -- are responses pending, currently overdue?  How do you see that?

MS. BOWEN:  Uh-huh.  So we have agreed on a number of documents that defendants will produce, certain types of

8

reports.

THE COURT:  Uh-huh.

MS. BOWEN:  You know, board notes, et cetera.  We are in the process of negotiating search terms and custodians.  So those are proceeding sort of on two tracks; documents that have been agreed on and hopefully can be accessed and produced, and then continued negotiation of the search terms and custodians for emails and other electronic documents.

THE COURT:  I see.  I see.  Now, let me ask you, you -- you've pointed this out for the record, which I appreciate -- at this point in time, are -- are you -- do you feel that you are approaching a point where you would move to compel, or you are -- you are more or less just continuing to work together and perhaps -- perhaps you're suggesting we need to extend some deadlines, but I'm not sure.

MS. BOWEN:  Thank you for that question.  I -- we don't really need to move to compel, because in large part, I think we have agreements.

THE COURT:  Okay.

MS. BOWEN:  It's just a matter of getting them moving hopefully, getting the documents moving forward so we can keep on track.  We have -- you know, the judge recognized at our last status conference this case has been

9

pending for some time.  We are eager to keep it moving.

THE COURT:  Sure.

MS. BOWEN:  We do not want to need to extend any deadlines.  So we are hoping that we can stay on track, and we do think that if Your Honor has availability and is willing, having another status conference set a few months out would give us --

THE COURT:  Sure.

MS. BOWEN:  -- all I think a good touch point to divide the year up and make sure everything is moving --

THE COURT:  Of course.

MS. BOWEN:  -- and stay on schedule.

THE COURT:  Of course.  Okay.  So I'll note that. So that was your update on discovery.  And please refresh my memory, were you -- what is the second issue that you wish to bring to the Court's attention today?  I apologize.

MS. BOWEN:  Oh, no, please.  Thank you.  So we have a deadline on the schedule of July 8th to move to amend or add any parties.

THE COURT:  Yes.

MS. BOWEN:  So I wanted to preview for the judge that we will be moving for leave to amend the complaint, and I want to be clear that is a very narrow amendment.

THE COURT:  Okay.

MS. BOWEN:  It is designed to cure concerns that

10

defendants have raised about one of the private equity defendants.  We are not adding new substantive allegations or new counts or new claims.

The issue is that we named two private equity entities in the original complaint, Apax Partners and Welsh, Carson, Anderson & and Stowe, and the case proceeded for a number of years with those defendants participating in the litigation.  And then more recently, defendants have taken the position that Welsh -- Welsh Carson is not an entity that exists, but it's merely a trade name.

So to ensure we have the proper defendant in this case, we are intending to add certain related LLCs and partnerships that make up Welsh Carson.  So this is in many ways, it's like a substitution of parties.  It's not adding a whole new universe of allegations.

We are hoping to do this in a streamlined way and ideally prevent additional motion practice on the complaint. So we have provided defendants with a list of the entities we are considering adding.  We'll be meeting and conferring with the goal of curing this problem without additional, you know, significant motion practice or delay in the case.

THE COURT:  I appreciate knowing that.  So right now though, you're still negotiating about this.  Is your perception -- is your perception, Ms. Bowen, that you likely will reach agreement with your -- with your counsel across

11

the aisle, or is that unknown yet?

MS. BOWEN:  I can't say yes because we are just at the beginning of those conversations.  I think I'll be able to say more after tomorrow, but I'm hopeful that we will be able to work together and reach agreements.

THE COURT:  All right.  Well, thank you for alerting me to that.  Of course, if you do reach agreement, that's a matter then that we can simply -- it will just simply be a matter of, you know, getting -- addressing an unopposed motion on the docket and getting a new version, I guess, of the complaint with appropriate defendants from plaintiffs' perspective on the -- on the docket and formalized as quickly as possible, which we can probably turn around very quickly.

If you've got a disputed motion, naturally that's going to take a little bit more time, and I don't know how that might effect any other motions practice that's going on right now.  Probably I suppose it wouldn't affect the motion for class certification in any substantive way.  Would that be fair --

MS. BOWEN:  That's correct.

THE COURT:  -- do you think, Ms. Bowen?  Yeah.

MS. BOWEN:  The motion for class certification is really more specific to our clients.

THE COURT:  Sure.

12

MS. BOWEN:  I don't think the amendment would implicate that.

THE COURT:  All right.  Thank you, Ms. Bowen. Counsel on the plaintiffs' side, anyone else want to bring up anything before I move over to the defendants' side? Hearing none --

MR. MORRIS:  No.  Thank you, Your Honor.

THE COURT:  Oh.  Wait a minute.  We have Mr. Morris, yes?

MR. MORRIS:  You do, but I said, no, thank you.

THE COURT:  Oh, okay.  Thank you, Mr. Morris. Well, let's move over, and we can come back to plaintiffs' side if something comes up.

So folks on the defense side, you heard the -- the two points that Ms. Bowen raised, and if anyone would like to address those, just kind of put their position out there, or give the Court its -- their view of those two matters, please speak up, or any other matter that the defendants would like to bring up for the Court or for -- for the plaintiffs' counsel in this case.

MS. MCGIMSEY:  Yes, Your Honor.  This is Diane McGimsey from Sullivan & Cromwell on behalf of all of the Innovage defendants and the --

THE COURT:  Yes.

MS. MCGIMSEY:  -- private equity defendants.

13

THE COURT:  Uh-huh.

MS. MCGIMSEY:  And also with -- on discovery, I just want to note we have been moving forward as expeditiously as possible.  It did take some significant period of time to getting an ESI protocol finalized, which obviously precluded any production of documents, which include quite a lot of not only confidential information, but documents are replete with HIPAA-protected patient information.

THE COURT:  Sure.

MS. MCGIMSEY:  So -- so there's just nothing the parties could do to move forward.  And unfortunately, you know, given the nature of this business, there are going to be delays in production because both we, and -- and I think the plaintiffs agree, you know, want to do everything possible to make sure that we abide by all the various HIPAA privacy protections.

So you know, we're moving forward productively. We actually worked -- I'm a little surprised to hear Ms. Bowen raise an issue with the timing of production because we have started producing documents.  We're discussing with them the periodic reports that will get rolled out, we have custodial documents loaded and ready to be served as soon as we have such terms agreed upon or even just a subset of search terms agreed upon.  So --

14

THE COURT:  Uh-huh.

MS. MCGIMSEY:  -- you know, from our perspective, things are -- things are proceeding as they should with -- with one exception relating to third-party discovery that relates to a subpoena that was issued by Ms. Eaton's clients.  So I'll -- I'll let her address that in more detail.

But I -- I will note for the subpoena, we're having a little bit of difficulties getting compliance from one of the third parties, it's an investment advisor for one of the plaintiffs.  And it's possible that that may get resolved and the plaintiffs may either be able to compel their investment advisor to comply or may have some of the documents that we're seeking, but that may cause a slight delay and cause us to come back and request a slight delay on our opposition to the class certification motion --

THE COURT:  Oh.

MS. MCGIMSEY:  -- if we don't have those documents.

THE COURT:  Okay.

MS. MCGIMSEY:  We have -- we've raised this with the plaintiffs.  You know, they -- they've indicated they obviously want to keep things moving forward as do we.

THE COURT:  Sure.

MS. MCGIMSEY:  We intend to have a further

15

conversation with them.  I would anticipate as long as we don't have to engage in motion practice, you know, it would be a matter of -- of weeks and not more than that, but -- but we'll bring that back to Your Honor if -- if that becomes an issue.

THE COURT:  Okay.

MS. MCGIMSEY:  On the amendment, so as things stand right now, plaintiffs have provided us with 43 new individuals or entities that they are proposing to potentially add to the complaint.

And while they may not be adding new substantive claims, you know, from our perspective, there are a number of issues relating to the addition of these potentially defendants, including personal jurisdictional issues over entities and individuals that are located abroad as well as whether there's any factual basis to add these individuals and entities, which are many, many steps removed from the investments and the decisions at issue.

That said, so as we -- as we sit here today, if that list remains the same, I can tell you there will be motion practice --

THE COURT:  Okay.

MS. MCGIMSEY:  -- on the motion to amend.  It's possible that we'll reach an agreement where we don't -- where we don't oppose the request for leave to amend, but we

16

would moving to dismiss because we'd be addressing obviously many of the same issues.  We haven't had that discussion yet.

THE COURT:  I see.

MS. MCGIMSEY:  But we'll try to do this in as streamlined a way as possible, but if -- if we do have the amendment and it does include these new individuals or entities in -- in the form or substantially the form that plaintiffs are proposing, I would anticipate that there will also be another motion to dismiss filed, and then an impact on the case, because as Your Honor probably knows, you know, in the majority of jurisdictions, the PSL or a discovery stay kicks in anytime there is a motion to dismiss pending by any defendant.

We are not now obviously at that point of having that discussion, and we've worked very cooperatively with the plaintiffs, and there may be ways in which we can continue to move portions of the case forward while a motion to dismiss is pending --

THE COURT:  Yeah.

MS. MCGIMSEY:  -- filed by any of the defendants, but obviously, you know, those defendants have a right to participate in the case, participate in depositions, and you know, a pending motion to dismiss would certainly impact the -- the case schedule.

17

That's not an issue for today, but I -- I but I just want to preview it, and my hope is that we will be able to at least significantly narrow the scope of the amendment so that if is there any motion practice, that can be narrowed as well, and you know, can we resolved more expeditiously than otherwise.

THE COURT:  From your -- from your perspective, Ms. McGimsey, is the -- and I recognize that Ms. -- Ms. Bowen's likely to have a different view, but from your perspective, is the amendment truly necessary in order for the plaintiffs fully to pursue these securities claims?

MS. MCGIMSEY:  An amendment is necessary because the entities that were named in the complaint are not the entities that invested in or even controlled the investments in Innovage.

THE COURT:  I see.

MS. MCGIMSEY:  There's -- you know, there's -- with these private equity structures, there's, you know, a number of different entities involved.  It's -- it's spelled out in the -- in the registration statement that accompanied the public offering.  But we do think some amendment is necessary, and if --

THE COURT:  Okay.

MS. GILDEN:  -- we -- we're able to come to an agreement on -- on those parties, I think, you know, we

18

could -- we could move forward without any motion practice. But I just think based on initial discussions, you know, we will have a difference of opinion as to what the full scope of proper parties are.  So I -- I think we will be able to narrow it, but I anticipate we may not be able to get all the way there.

THE COURT:  It -- it does -- it does sound like it based on what you've heard from the two attorneys here this morning.

Well, I don't need to tell these very experienced and -- and able counsel who are on this line that, of course, that's -- it's inevitable, isn't it, that if there is a necessity for motions practice, that that is going to slow this case down.

You know, and it's obviously worth -- we're -- three years in now, and -- and I understand that the parties have the right to pursue their -- their strongest case and to advocate vigorously for their respective positions.  I honor that, I respect it.  That goes without saying truly.

But there will just be an inevitable slowdown, and I am sorry about that, but it sounds that -- you know, I'll leave it to the part -- I'll -- I'll leave it to the good faith of all counsel, but it does sound like we're going to have some level of dispute about this.

Well, I'll look for that on the -- on -- in the

19

docket.  We will see if Judge Martinez refers that motion to me.  I don't know that he will.  He may or he may not.

So Ms. McGimsey, was there anything else that you wished to address?  I want to ask Ms. Eaton briefly.  I think you noted she was the counsel who had an initiated the subpoena request, but before I turn to her, Ms. McGimsey, anything else that you'd like to address, just kind out put out on the record this morning?

MS. MCGIMSEY:  No.  That's all, Your Honor.

THE COURT:  Thank you.  Ms. Eaton, let me turn to you.  Did I hear correctly from your -- from your colleague that you -- you are the counsel who would have been responsible for issues the third-party subpoena, yes?

MS. EATON:  That's -- that's correct, Your Honor, and I think it would be helpful for the Court to -- to have a little bit of context here.

THE COURT:  Sure.

MS. EATON:  Because there are three -- there are three plaintiffs, none of them exercised investment discretions themselves.  They hired investment advisors to do that.

THE COURT:  I see.

MS. EATON:  So it's represented to us the bulk of the documentation reflecting their investment in Innovage Securities would be in the possession of the investment

20

advisors, which is why we issued subpoenas to them.

THE COURT:  Of course.

MS. EATON:  One investment advisor in particular is -- there -- what they have is directly relevant for all defendants, but there's a way in which what they have is particularly germane to the claims against the underwriter defendants, and those are the claims under Section 12(a)(2) of the security laws.

THE COURT:  All right.

MS. EATON:  The investment advisor in question (indiscernible) and Times Square Capital management, and we sought documentation from them that another -- among other things would show the passage of title (indiscernible) in question --

THE COURT:  Ms. Eaton --

MS. EATON:  -- and the basis --

THE COURT:  -- you are -- you just got a little bit muffled for me, and I'm not certain why.  I'm so sorry, but could you repeat the last sentence that you just said, please.

MS. EATON:  Sure.  So one of these investment advisors is an entity called Times Square Investment Management.

THE COURT:  Times Square, did you say?

MS. EATON:  They --

21

THE COURT:  Okay.

MS. EATON:  Times Square, yes.

THE COURT:  Uh-huh.

MS. EATON:  They would have been -- one of the plaintiffs, the Indiana side, bought their Innovage securities through Times Square.

THE COURT:  Uh-huh.

MS. EATON:  That same plaintiff alleges that they bought the security directly from one of the underwriters of JP Morgan, and if they did not do that, they effectively would not have a claim under Section 12(a)(2).

THE COURT:  Okay.

MS. EATON:  So it's quite important to us to get total and fair discovery both from the plaintiffs and from their investment advisors --

THE COURT:  Yes.

MS. EATON:  -- (indiscernible) these purchases.

THE COURT:  Okay.

MS. EATON:  Unfortunately, Times Square has taken the position that they will produce nothing until we agree to pay upfront all their costs and expenses for producing any documentation, including attorneys' fees.

THE COURT:  Huh.

MS. EATON:  We don't think that is a reasonable position to take, but they have made it clear to us that

22

they won't produce anything unless we make this agreement.
I don't have authority to make this agreement, which means
we will likely have to engage in motion practice --

THE COURT:  Sure.

MS. EATON:  -- unless -- unless the plaintiffs
were to agree that they -- they in effect have control over
their -- those documents because (indiscernible) was the
agent of theirs, and they could -- they could effectively
force Times Square to -- to turn over the documentation to
them, and they could produce it.

THE COURT:  Yeah.  And have you had discussion
with -- with your opponents on the plaintiffs' side about
that point yet then?

MS. EATON:  Yes.  Yes, we have, Your Honor.  That
was recently.  They told us they would consider it.
Plaintiffs will correct me if I misunderstood the message,
but I understood the message to be that they will consider
it and get back to us.  But it plainly presents a timing
issue for us because if we must move to compel, we're going
to have to do that in the Southern District before a judge
who's not familiar with this case at all.  It will be a
random assignment, and it's anybody's guess how long this is
going to take.

THE COURT:  It could take a while, couldn't it?

MS. EATON:  Right.

23

THE COURT:  I don't have to tell you or anyone else.  That's -- that's an extremely busy docket obviously. Who is -- so there -- the response that came back to you, it sound like, Ms. Eaton, from counsel was they'll consider it. It -- was that -- which one of -- of the counsel on the plaintiffs' side was that from?  I apologize.  Was that Ms. Bowen or another counsel?

MS. EATON:  There were several --

MS. BOWEN:  Yeah.  This is Ms. Bowen.

MS. EATON:  -- people (indiscernible).

MS. BOWEN:  If I --

THE COURT:  I'm sorry.  You --

MS. BOWEN:  If I could address that.

THE COURT:  Go -- go ahead, please.

MS. BOWEN:  My apologize for interrupting, but I just --

THE COURT:  Not at all.

MS. BOWEN:  -- figured it would just be easier if I address this.  So this came for the first time from defendants with us on Tuesday, two days ago --

THE COURT:  Okay.

MS. BOWEN:  -- on a meet and confer in preparation for this status conference.  We said we would consider it. We are looking at the contracts, other documents to figure out, do we have the ability to help move this forward?

24

But more important, I wanted to flag that the discovery that Ms. Eaton is speaking about is merits discovery.  It's about traceability.  As you can tell from her description, it's about whether a claim has been proven, a substantive claim.

This is not class certification discovery.  So it is a little bit confusing why this is the basis for the need to extend the class certification schedule from their perspective.

Additionally, it is standard practice in securities class actions like this to depose the investment managers when they are the ones doing the trading.  We identified those investment managers in our initial disclosures, which were served in early March.  I think March 11th.

THE COURT:  Yeah.  I see.

MS. BOWEN:  Defendants waited two months to serve any subpoenas.  So again, this is the delay thing we're talking about.  We all know what the schedule is, we all know the standard discovery practice is.  We don't want the class certification schedule to be substantials extended, and we don't think it's needed to be this way.

THE COURT:  Okay.  Okay.  Ms. Eaton, do you wish to --

MS. EATON:  May I --

25

THE COURT:  -- make any comment in response to Ms. Bowen's representation?

MS. EATON:  Yes, please.  Thank you, Your Honor. I guess two points.  One is, we could not disagree more strenuously that this discovery has nothing to do with (indiscernible) with -- with the Indiana pension fund.

THE COURT:  All right.

MS. EATON:  Did not purchase the security directly, but then they don't have standing to pursue a claim under 12(a)(2).  That is a class certification issue. It's a (indiscernible) to our clients because that is the only claim asserted against Innovage (indiscernible).  So I respectfully disagree with Ms. Bowen about that.

THE COURT:  Okay.

MS. EATON:  The second point as to timing, I raised the issue and noted there was a (indiscernible) delay while the parties looked back at ESI protocols. (Indiscernible) that we just serve the subpoena.  This was well over a month ago.  If they had any concern about it (indiscernible) a week from (indiscernible).

THE COURT:  Okay.

MS. EATON:  So --

THE COURT:  Okay.

MS. EATON:  You know, I think the (indiscernible) are not completely accurate here.  We're doing what we --

26

what we can with these people, but we only -- we've been -- they've had a number of exchanges with Times Square in an effort to try to obviate this issue.  It was only recently that they made it clear that they would give us absolutely nothing.

THE COURT:  Okay.  Well, it sounds like -- I mean, obviously these -- there is some complexity here in the -- both in terms of the underlying discussions that are going on just sort of on a practical, logistical level where things stand, and there's also some disagreement here on -- on shall we call a more substantive issue with regard to whether this kind of discovery actually has play in terms of the Court's assessment of what I -- I'm anticipating is going to be now a motion for extension likely of the response deadline for the class certification response.  So -- or response to that motion, I should say.

Well, let me just say this, Counsel:  I do encourage you, of course and I know you will even if I encourage you or not, right, to keep talking about this, but you have given me now and I likely would have -- I would be tasked to deal with any motion for extension, I think. Likely Judge Martinez would refer that to me.  So I have some context for it when it comes my way, but with luck, perhaps we won't see that motion.

Ms. Eaton, was there anything that you wanted to

27

bring up on your behalf of your clients this morning, or I should say this afternoon if you're in -- are you in New York, Ms. Eaton?  I'm not sure.  Perhaps you --

MS. EATON:  Yes, I am, Your Honor.

THE COURT:  Yeah.  Do you have anything else you'd like to discuss this morning?

MS. EATON:  No.  Those were the primary points.

THE COURT:  Okay.

MS. EATON:  Anything else, we are engaged in productive discussions with the plaintiffs, and I'm hopeful that those -- any other issues would be resolved with (indiscernible).

THE COURT:  And I thank you for that.  So I've spoken with Ms. Eaton, I've spoken with Ms. McGimsey.  And Ms. -- Ms. Statner, any -- anything you'd like to add on the defense side?

MS. STATNER:  No.  Thank you, Your Honor.

THE COURT:  Thank you very much.  So let me go back to plaintiffs then.  Is there anything else, whether from Ms. Bowen or from any other of the counsel for plaintiffs, that you'd adjust kind of like to kind of air out today in our status conference?  Happy to hear from any of you.

MS. BOWEN:  This is Ms. Bowen.  Nothing further from me.  Thank you.

28

THE COURT:  Thank you, Ms. Bowen.  And any -- anyone else, Ms. Reiser, Mr. Morris, Ms. Gilden, anything from you folks?

MS. GILDEN:  No, Your Honor.  Nothing further.  This is Ms. Gilden speaking.  Thank you.

THE COURT:  Thank you.

MR. MORRIS:  No.  No, Your Honor.  Thank you.

THE COURT:  Thank you.  Ms. Reiser, anything from you?

MS. REISER:  No, thank you.  I appreciate it.

THE COURT:  All right.  You too.  You too and all of you.  So all right.  Well, it sounds like I may be seeing a motion for extension, not a -- not a certainty I guess at this point, but I do have a little bit of understanding of the -- of the context here.

It does also sound, I'm anticipating that there will be some motions practice associated with the additional parties/amendment issue there.  So thank you for giving me kind of a framework there in the event Judge Martinez would refer that to me.

All right.  And I think Ms. Bowen, you mentioned setting a status conference.  Happy to do it.  We would just do it on the phone.  I think you -- did you suggest about 60 days out, Ms. Bowen?  Is that what I heard from you?

MS. BOWEN:  That works well for us if Your Honor

29

has availability.

THE COURT: I'm sure we can find something, and I'm very happy of course to speak with you again. So Counsel, we could do 60 days out, maybe 75 days or so. This is -- this would put us somewhere around the end of August.

I suppose by that time, it could be that I will have two motions referred to me and perhaps would have dealt with one or both of them. I don't know. It's all a little bit conjectural and speculative at this point, isn't it?

But why don't we do this, let's do this: Let's look kind of -- I'm kind of -- just -- just if you'll bear with me. I'm just kind of popped into my docket. Say, oh, beginning of -- first, second week of September. Why don't -- why don't we kind of target that for a status conference.

And I apologize. I do have criminal duty the first week in September, so I won't be able to do it that week. Let's look at the week of September 9th, and let me just -- we've got some things set, but Counsel, what if we set a conference, a status conference sometime the week of September 9th, just to jump on the phone and kind of talk together just as we did this morning, which I know I appreciate very much.

Is there a day the week of September 9th that any counsel would not be available for such a telephonic status conference? Let's start with that. Anyone not available

30

for a quick half hour or so status conference any day of that week?  Okay.

MR. MORRIS:  Your Honor, this is Cecil Morris from Fairfield & Woods in Denver.  I'm not available on Monday the 9th, but am on the rest of the week.

THE COURT:  Thank you.  Anyone else have any conflict like Mr. Morris just shared?  Okay.  So that was September 9th you're not available, Mr. Morris, right?  But any other day is good.  Okay.

Well, let's do this:  Why don't we look at September 10th.  So I do have one final pretrial conference in the morning that day, and bearing in mind we have some of our counsel on the East Coast, what if we said we will do a status conference, let's make it 1:30 Denver time.  So that would be 3:30 for you folks obviously in New -- in New York.

Does any -- does anyone have an objection to saying 1:30 Mountain, 3:30 Eastern on Tuesday, September 10th?  Let me hear from anyone if that doesn't work.  All right.  Well, let's make it so then.

So I'll ask our courtroom deputy to have -- reflect that status conference in our minutes.  I will keep my eye trained on the docket for the two potential motions that this Court may see and that may be referred to it.

Is there anything else though before we close our conversation this morning that any counsel would like to

31

discuss?  And I think rather than calling on each of you, I'll just -- I'll just hear -- I'll just pause a moment. Any final thing?

Okay.  Well, with that, I have an -- I don't hear from anyone on our -- on -- on your end, and I will close by saying thank you so much for jumping on the call with me this morning.  I know that this has given me some context to appreciate what may be happening here on the docket in the next couple of months.  I do appreciate that very much, and I certainly also appreciate your professional courtesy to the Court.  Thank you for that.  And with that, we'll be in recess on this matter.  Thanks, all.

(Whereupon, the within proceedings concluded at 11:42 a.m.)

                   TRANSCRIBER'S CERTIFICATE

        I certify that the forgoing is a correct transcript, to the best of my knowledge and belief (pursuant to the quality of the recording) from the record of proceeding in the above-entitled matter.

/s/Brittany Payne                      July 3, 2024

Signature of Transcriber                  Date