## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02770-WJM-SBP

EL PASO FIREMEN & POLICEMEN'S PENSION FUND, SAN ANTONIO FIRE & POLICE PENSION FUND, and INDIANA PUBLIC RETIREMENT SYSTEM, individually and on behalf of all others similarly situated,

        Plaintiffs,

v.

INNOVAGE HOLDING CORP.,
MAUREEN HEWITT,
BARBARA GUTIERREZ,
JOHN ELLIS BUSH,
ANDREW CAVANNA,
CAROLINE DECHERT,
EDWARD KENNEDY, JR.,
PAVITHRA MAHESH,
THOMAS SCULLY,
MARILYN TAVENNER,
SEAN TRAYNOR,
RICHARD ZORETIC,
WELSH, CARSON, ANDERSON & STOWE,
APAX PARTNERS, L.P.,
J.P. MORGAN SECURITIES LLC,
BARCLAYS CAPITAL INC.,
GOLDMAN SACHS & CO. LLC,
CITIGROUP GLOBAL MARKETS INC.,
ROBERT W. BAIRD & CO. INCORPORATED,
WILLIAM BLAIR & COMPANY, L.L.C.,
PIPER SANDLER & CO.,
CAPITAL ONE SECURITIES, INC.,
LOOP CAPITAL MARKETS LLC,
SIEBERT WILLIAMS SHANK & CO., LLC, AND
ROBERTS & RYAN INVESTMENTS, INC.,

        Defendants.

---

## LEAD PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO AMEND THE COMPLAINT

Lead Plaintiffs, El Paso Firemen & Policemen's Pension Fund ("El Paso"), San Antonio Fire & Police Pension Fund ("San Antonio"), and Indiana Public Retirement System ("Indiana") (collectively, "Plaintiffs"), hereby move for leave to amend the Amended Complaint ("Complaint"), ECF No. 54.

## INTRODUCTION

This motion and the amendment are necessitated by the conduct of Defendant Welsh, Carson, Anderson & Stowe, a private equity firm comprised of dozens of related entities through which its investments are effectuated. In the operative Complaint, Plaintiffs alleged that Welsh, Carson, Anderson & Stowe and another private equity firm, Apax Partners, L.P. (together, the "Private Equity Defendants"), controlled InnovAge and were thereby liable for violations of the federal securities laws. ECF No. 54. For two years, Welsh, Carson, Anderson, & Stowe actively participated in this case, including filing briefs and having counsel appear in this Court representing themselves as attorneys for Welsh, Carson, Anderson & Stowe. Only after the Court sustained Plaintiffs' claims against the Private Equity Defendants, finding "without significant effort"[1] that the Complaint adequately pled that the Private Equity Defendants controlled InnovAge, did Defendants suddenly claim that Welsh, Carson, Anderson, & Stowe did not exist and, indeed, that *no* Welsh, Carson, Anderson & Stowe entity was a controller of InnovAge.

Accordingly, to avoid needless motion practice and delay later in the case, Plaintiffs seek leave to make modest amendments to the Complaint: update Defendant Apax Partners LP's name to its current name, Apax Partners US, LLC; substitute Defendant "Welsh, Carson, Anderson & Stowe" ("WCAS") with the three management entities that operate under that name and control its operations: WCAS Management Corporation, WCAS Management LP, and WCAS

---

[1] ECF No. 102 at 87.

Management LLC; and add TCO Group Holdings, LP, the investment vehicle through which Apax and WCAS jointly exercise control over the majority of InnovAge's voting stock.

This proposed amendment is narrow, adds no new claims or theories, and merely clarifies the identities of the Private Equity Defendants. The amendment will also not delay the litigation or unduly prejudice Defendants, all of whom are already represented by counsel and have been actively participating in this litigation for years. Further, the amendment is made within the court-ordered schedule and with eight months remaining for fact discovery. Accordingly, for the reasons stated below, Plaintiffs' Motion for Leave to Amend the Complaint should be granted. Pursuant to D.C. Colo. LCivR 15.1, a copy of the Proposed Second Amended Complaint is attached.

## CERTIFICATE OF CONFERRAL

Pursuant to D.C. Colo. LcivR 7.1, Plaintiffs' counsel certifies that in addition to the numerous conversations in the preceding months with the Private Equity Defendants' counsel ("Defense Counsel") regarding the identity of the Welsh, Carson, Anderson & Stowe entity that controls InnovAge, they formally met and conferred on July 3 and July 9, 2024, regarding the relief sought in this motion for leave to amend. The Private Equity Defendants, InnovAge, and the Individual Defendants are still considering whether they intend to oppose this motion. The Underwriter Defendants take no position on this motion.

## RELEVANT BACKGROUND AND PROCEDURAL HISTORY

This is a securities case against InnovAge, a healthcare company that provides services to frail seniors under the Program of All-Inclusive Care for the Elderly ("PACE"). ECF No. 54 at ¶¶ 1-3. Defendant Thomas Scully, a General Partner at private equity firm Defendant Welsh, Carson, Anderson & Stowe, lobbied to change federal law to allow PACE programs to operate as for-profits; in 2016, InnovAge formally converted to a for-profit company, aided by a $196 million

2

investment from WCAS's funds. *Id.* at ¶ 5.

From the beginning, Scully publicly stated his goal was to extract a return on WCAS's investment by growing InnovAge rapidly and taking the Company public in as few as four years. *Id.* at ¶ 6. He succeeded. InnovAge experienced astronomical growth, doubling its enrollment and revenue in just four years and in July 2020, WCAS signed an agreement with private equity firm Apax Partners to jointly sponsor an initial public offering ("IPO"). *Id.* at ¶ 7.

WCAS and Apax took InnovAge public in March 2021. Despite promises to investors about the quality of InnovAge's care and its legal compliance in a highly regulated industry, within months, federal and state regulators uncovered systemic violations of minimal standards of care, leading to unprecedented suspensions of enrollment at the Company's centers. *Id.* at ¶¶ 8-11. On this news, InnovAge's stock price cratered, dropping 78% from its March 2021 all-time high by December 2021, becoming one of the five worst performing IPOs that year. *Id.* at ¶ 11.

Plaintiffs filed the operative Complaint on June 21, 2022, asserting claims under the federal securities laws against a number of corporate and individual defendants, including control person claims against private equity firms Welsh, Carson, Anderson, & Stowe and Apax Partners, L.P. ECF No. 54. Soon after, Defense Counsel entered appearances on behalf of "Apax Partners, L.P." and "Welsh, Carson, Anderson & Stowe." ECF Nos. 65-67.

For the past two years, Welsh, Carson, Anderson & Stowe and Apax Partners, L.P. have actively participated in this litigation, and Defense Counsel has claimed to be representing those entities at argument as well as in their signature blocks.[2]

---

[2] *See* ECF Nos. 68 (Joint Mot. for Leave to Expand Page Limit by Defs. Apax Partners, L.P., Welsh, Carson, Anderson & Stowe, et al.), 73 (Joint Mot. to Dismiss by Defs. Apax Partners, L.P., Welsh, Carson, Anderson & Stowe, et al.), 74 (Decl. of Diane L. McGimsey regarding Joint Mot. to Dismiss by Defs. Apax Partners, L.P., Welsh, Carson, Anderson & Stowe, et al.), 76 (Req. for Judicial Notice by Defs. Apax Partners, L.P., Welsh, Carson, Anderson & Stowe, et al.), 83 (Reply

Specifically, on September 13, 2022, Welsh, Carson, Anderson & Stowe and Apax Partners, L.P. moved to dismiss this case in a motion jointly filed with InnovAge and the Individual Defendants. ECF No. 73, 83. Defendants argued that Apax Partners, L.P. and Welsh, Carson, Anderson & Stowe did not directly own InnovAge stock and that, instead, a majority of InnovAge stock is owned by TCO Group Holdings, L.P., which is controlled "by a series of LPs and LLCs" that were not named as defendants. ECF No. 73 at 53; *see also* ECF No. 102 at 84. Defendants did *not* deny the existence of Welsh, Carson, Anderson & Stowe or raise any concerns about service upon that entity or its identification in the Complaint.

On December 21, 2023, the Court ruled on Defendants' motion to dismiss, sustaining the control liability claims against the Private Equity Defendants. ECF 102 at 87. Noting that "control" is defined as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise," the Court explained that this definition "is capacious enough to embrace even the complex ownership structures employed by well-heeled investors, provided those ownership structures allow for control." *Id.* at 85. Applying that definition to the facts alleged, the Court explained that while 86% of InnovAge's voting stock was owned by TCO Group Holdings, L.P., the voting and dispositive power with respect to the stock held by TCO Group Holdings, L.P. is exercised by a committee of limited partners of seven persons ("LP Board"), three of which are

_____

to Resp. to Mot. to Dismiss by Defs. Apax Partners, L.P., Welsh, Carson, Anderson & Stowe, et al.), 84 (Reply to Resp. to Req. for Judicial Notice by Defs. Apax Partners, L.P., Welsh, Carson, Anderson & Stowe, et al.), 95 (Mot. to Withdraw as Attorney by Defs. Apax Partners, L.P., Welsh, Carson, Anderson & Stowe, et al.), 96 (Mem. re Mot. to Withdraw as Attorney by Defs. Welsh, Carson, Anderson & Stowe, Apax Partners, L.P., et al.), 105 (Unopposed Mot. for Extension of Time to File Answer by Defs. Apax Partners, L.P., Welsh, Carson, Anderson & Stowe, et al.), 110 (Joint Mot. to Continue Rule 16(b) Scheduling Conference by Defs. Apax Partners, L.P., Welsh, Carson, Anderson & Stowe, et al.), 121 (Prop. Scheduling Order by Defs. Apax Partners, L.P., Welsh, Carson, Anderson & Stowe, et al.).

4

designated by WCAS and two by Apax. *Id.* at 86-87. Because the LP Board exercises its voting and dispositive power by majority vote, WCAS and Apax acting together could "cause the direction of the management and policies" of InnovAge "without input from anyone else" and each wielded veto power should WCAS and Apax disagree. *Id.* at 87. Thus, "the Court without significant effort concludes the Amended Complaint adequately alleges control person liability against WCAS and Apax." *Id.*

Following the motion to dismiss ruling, Welsh, Carson, Anderson & Stowe and Apax Partners, L.P. continued participating in the litigation. They moved, with other parties, for an extension of time to answer the Complaint and to continue the scheduling conference. ECF Nos. 105, 110. They joined in the Proposed Scheduling Order, which included numerous statements about Welsh, Carson, Anderson & Stowe and Apax Partners, L.P., including:

> *Defendant WCAS is a private equity firm*. Entities affiliated with WCAS, which are not named as defendants in the Amended Complaint, invested in InnovAge in 2016. *Defendant Apax is also a private equity firm*. Entities affiliated with Apax, which also are not named as defendants in the Amended Complaint, invested in InnovAge in July 2020.

ECF No. 121 at 6 (emphasis added). In that document, a footnote noted a ministerial change that "[i]n April 2021, Apax Partners, L.P. converted to a Delaware limited liability company known as Apax Partners US, LLC." *Id.* at 6 n.1. Defendants made no caveats and raised no concerns about the identity or naming of Welsh, Carson, Anderson & Stowe.

Then, at the February 26, 2024, telephonic status conference, Defense Counsel identified Welsh, Carson, Anderson & Stowe and Apax Partners as the Private Equity Defendants:

> THE COURT: [W]ho are the private equity defendants then? I think I can take a good guess, but you tell me.
>
> DEFENSE COUNSEL: So the -- Welsh, Carson, Anderson, and, and Stowe and Apax Partners, LP, which now is doing business as -- I want to make sure I get it right, Apax Partners US, LLC.

5

THE COURT: Yeah. I don't that have on my caption here. So -- and -- and so those are the two private equity entities, if you will?

DEFENSE COUNSEL: Correct.

ECF No. 137 at 25:6-17. After Defense Counsel informed the court that Apax had changed its name from Apax Partners, LP to Apax Partners US, LLC, the Court advised her to file a motion to update the caption to reflect Apax's new name. *Id.* at 25:21-26:4. Defense Counsel has not made that change. Defense Counsel did not raise any concerns about Welsh, Carson, Anderson & Stowe during this status conference.

Then, years into the case, Defendants suddenly claimed that Welsh, Carson, Anderson & Stowe does not exist and claimed it was litigating this case on behalf of unidentified entities:

> WCAS denies the existence of an entity called "Welsh, Carson, Anderson & Stowe." For the avoidance of doubt, and notwithstanding that no proper defendant has been named, the denials and admissions of "WCAS" herein are made on behalf of the entity or entities, if any, which Plaintiffs may ultimately claim are associated with "Welsh, Carson, Anderson & Stowe."

ECF No. 126 at 2 (Answer filed on March 4, 2024). The same language was included in Welsh, Carson, Anderson & Stowe's initial disclosures served on March 11, 2024. To date, it is unclear who or what Welsh, Carson, Anderson & Stowe-related individual or entity is acting as "Welsh, Carson, Anderson & Stowe" in this litigation.

This obfuscation is creating significant issues in discovery. Defendants have represented that they are searching for responsive documents on behalf of Welsh, Carson, Anderson & Stowe, but refused to identify specifically which Welsh, Carson, Anderson & Stowe entity's files were being searched (and, perhaps more importantly to Plaintiffs, which are not being searched).

To resolve this issue, Plaintiffs informed Defendants that they intended to move for leave to amend the Complaint. Plaintiffs have gone to significant effort to reach agreement on the scope

of the amendment and avoid unnecessary motion practice. Over the past month, Plaintiffs provided Defendants with a more robust list of entities and individuals proposed to be included in the amendment, and then a significantly more streamlined proposal in an effort to reach compromise. Plaintiffs also provided Defendants with an advance copy of the proposed amendment to review. Defendants agree that an amendment in some form is necessary. *See* ECF No. 147 at 17 (transcript of June 20, 2024 Status Conference). However, to date the parties have been unable to reach agreement on the amendment, even as to the ministerial change to reflect Apax Partner's correct name—a change the Court ordered Defendants to make months ago.

Thus, Plaintiffs now seek leave to amend the Complaint.

## ARGUMENT

### 1. Leave to Amend is Freely Given

Under Federal Rule of Civil Procedure 15, a complaint may be amended upon leave of court, which should be "freely" given. Fed. R. Civ. P. 15. A court's decision on whether to allow a complaint amendment is guided by "the basic policy that pleadings should enable a claim to be heard on its merits." *Calderon v. Kansas Dep't of Social & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999); *see also Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982) (Rule 15 is intended to ensure a case is "decided on its merits rather than on procedural niceties"). "Refusing leave to amend is generally only justified upon a showing of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'" *Morales v. Law Firm of Michael W. McDivitt, P.C.*, No. 21-cv-1262-WJM-STV, 2022 WL 370025, at *1 (D. Colo. Feb. 8, 2022) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In considering motions for leave to amend, courts in the Tenth

Circuit are mindful not to "place the cart before the horse" and discourage litigants from trying to "force a Rule 12(b)(6) motion into a Rule 15(a) opposition brief[.]" *Gen. Steel Domestic Sales, LLC v. Steelwise, LLC*, No. 07-cv-01145, 2008 WL 2520423, at *4 (D. Colo. June 20, 2008).

Plaintiffs easily meet this lenient standard for amending the Complaint.

2. **Plaintiffs Promptly Moved to Amend and There Has Been No Undue Delay, Bad Faith, or Dilatory Motive**

Plaintiffs have not unduly delayed in proposing this amendment, nor is it made in bad faith or with dilatory motive.

Plaintiffs propose this amendment within the court-ordered schedule, which the Court agreed to extend by one week to facilitate continued negotiations. *See* ECF No. 123 (setting July 8, 2024 as deadline for amendments or additional parties); ECF No. 150 (extending deadline to July 15, 2024). Accordingly, the amendment is timely. *Morales*, 2022 WL 370025, at *2 ("Defendants have not cited a single case, Tenth Circuit or otherwise, where a motion for leave to amend that was filed *before* the amendment deadline expired was held to be untimely.")

Additionally, Plaintiffs move for leave to amend within a few short months since the issue necessitating the amendment arose. Defendants did not raise their concern about Welsh, Carson, Anderson, & Stowe until March 2024; Plaintiffs promptly engaged in numerous discussions with Defendants in an effort to resolve the issue; and when that proved impossible, Plaintiffs promptly advised Defendants and the Court of their plan to amend the Complaint. Eight months remain for fact discovery, allowing ample time for any discovery. ECF No. 123. This case is thus made without undue delay. *See, e.g., Brayman v. KeyPoint Gov't Sols., Inc.*, No. 18-cv-0550-WJM-NRN, 2020 WL 3790504, at *3 (D. Colo. July 7, 2020) (finding no undue delay in amendment made two years into litigation but within the court-ordered schedule).

Nor are Plaintiffs acting in bad faith or with dilatory motive. Defendants have taken the position that some form of amendment is necessary. *See* ECF No. 147 at 17:7-15 (transcript of June 20, 2024 Status Conference). Further, Plaintiffs endeavored to resolve this issue with Defendants without need for motion practice and narrowed the proposed amendment from initial proposals, in an effort to streamline the issues. As Plaintiffs noted to the Court during the recent status conference, they are eager to maintain the court-ordered schedule and see no reason that this amendment should disrupt that schedule. *Id.* at 8-9. This amendment will clarify the parties and put to rest bizarre disputes over how to conduct discovery from an entity that is claimed to be participating in this litigation but also not exist; on these facts, there can be no claim of bad faith or dilatory motive.

### 3. The Proposed Amendment Will Not Unduly Prejudice Defendants

Nor does this amendment cause any undue prejudice to Defendants. Undue prejudice is not "simply the vague idea that a party might be inconvenienced." *Obeslo v. Great-West Cap. Mgmt., LLC*, No. 16-cv-00230-CMA-MJW, 2017 WL 10591604, at *3 (D. Colo. Feb. 21, 2017). Rather, it means "the amendment unfairly affects the defendants in terms of preparing their defense" most often because "the amended claims arise out of a subject matter different from what was set forth in the complaint and raises significant new factual issues." *Minter v. Prime Equip. Corp.*, 451 F.3d 1196, 1208 (10th Cir. 2006).

Here, the amendment clarifies the identity of parties against whom claims have *already been sustained*. It does not introduce new claims or subject matter, and the minimal new facts are about Defendants. Defendants "obviously know what roles they played in the underlying activity, and know or should have known that [the newly named defendants] might ultimately be brought into this case." *Farmland Partners Inc. v. Fortunae*, No. 18-cv-02351-KLM, 2020 WL 12574994,

at *1 (D. Colo. July 27, 2020) (finding no undue prejudice in amendment identifying the names of John Doe defendants and updating a pseudonym to a real name); *Brayman*, 2020 WL 3790504, at *3-4  (finding no undue prejudice when amendment arises out of the same subject matter as set forth in the original complaint, even if it "may raise new factual issues").

Further, Defendants had ample notice of the plan to amend and many months (eight) remain to conduct fact discovery. *See Morales*, 2022 WL 370025, at *2 (alterations omitted) (when, as here, "the proposed amendments track the factual situations set forth in previous or subsisting claims, then prejudice is highly unlikely"). Under these circumstances, there is no undue prejudice.

### 4.  The Amendment is Not Futile

Plaintiffs' proposed amendment is not futile. An amendment is futile only if "it appears beyond a doubt that the [party] can prove no set of facts in support of his claims which would entitle him to relief[.]" *Brawner v. Bank of Am., N.A.*, No. 09-2073-JWL, 2009 WL 10687998, at *2 (D. Kan. Nov. 6, 2009). Here, Plaintiffs do not introduce new claims or issues—the amendment simply clarifies the identity of the Private Equity Defendants against whom Plaintiffs claims were already sustained. ECF No. 102 at 84-87 (sustaining control person claims against WCAS and Apax). The amendment, therefore, is not futile.

### CONCLUSION

Plaintiffs' proposed amendment is timely, does not cause undue prejudice, and is not futile. Plaintiffs should therefore be granted leave to amend the Complaint.

10

Dated: July 15, 2024                           Respectfully submitted,


                                               /s/ Julie Goldsmith Reiser
                                               COHEN MILSTEIN SELLERS & TOLL PLLC
                                               Julie Goldsmith Reiser
                                               Molly Bowen
                                               Jan E. Messerschmidt
                                               Brendan R. Schneiderman
                                               1100 New York Avenue, N.W., Fifth Floor
                                               Washington, D.C. 20005
                                               Tel.: (202) 408-4600
                                               Fax.: (202) 408-4699
                                               jreiser@cohenmilstein.com
                                               mbowen@cohenmilstein.com
                                               jmesserschmidt@cohenmilstein.com
                                               bschneiderman@cohenmilstein.com

                                               Carol V. Gilden
                                               190 South LaSalle Street, Suite 1705
                                               Chicago, IL 60603
                                               Tel.: (312) 357-0370
                                               Fax.: (312) 357-0369
                                               cgilden@cohenmilstein.com

                                               Manuel J. Dominguez
                                               2925 PGA Boulevard, Suite 200
                                               Palm Beach Gardens, FL 33410
                                               Tel.: (561) 515-1400
                                               Fax.: (561) 515-1401
                                               jdominguez@cohenmilstein.com

                                               *Lead Counsel for Lead Plaintiffs*

                                               FAIRFIELD AND WOODS, P.C.
                                               Cecil E. Morris
                                               Adrian P. Castro
                                               1801 California Street, Suite 2600
                                               Denver, CO 80202
                                               Tel.: (303) 830-2400
                                               Fax.: (303) 830-1033
                                               cmorris@fwlaw.com
                                               acastro@fwlaw.com

                                               *Liaison Counsel for Lead Plaintiffs*


11

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 15, 2024, a true and correct copy of the Motion for Leave to Amend the Complaint was filed and served via the Court's ECF system upon all parties who have entered an appearance in this action.

/s/ *Julie G. Reiser*
Julie G. Reiser

12