**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 21-cv-02770-WJM-SBP

EL PASO FIREMEN & POLICEMEN'S PENSION FUND, SAN ANTONIO FIRE & POLICE PENSION FUND, AND INDIANA PUBLIC RETIREMENT SYSTEM, individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

INNOVAGE HOLDING CORP.,
MAUREEN HEWITT,
BARBARA GUTIERREZ,
JOHN ELLIS BUSH,
ANDREW CAVANNA,
CAROLINE DECHERT,
EDWARD KENNEDY, JR.,
PAVITHRA MAHESH,
THOMAS SCULLY,
MARILYN TAVENNER,
SEAN TRAYNOR,
RICHARD ZORETIC,
WELSH, CARSON, ANDERSON & STOWE,
APAX PARTNERS, L.P.,
J.P. MORGAN SECURITIES LLC,
BARCLAYS CAPITAL INC.,
GOLDMAN SACHS & CO. LLC,
CITIGROUP GLOBAL MARKETS INC.,
ROBERT W. BAIRD & CO. INCORPORATED,
WILLIAM BLAIR & COMPANY, L.L.C.,
PIPER SANDLER & CO.,
CAPITAL ONE SECURITIES, INC.,
LOOP CAPITAL MARKETS LLC,
SIEBERT WILLIAMS SHANK & CO., LLC, and
ROBERTS & RYAN INVESTMENTS, INC.,

      Defendants.

---

**DEFENDANTS' OPPOSITION TO LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

---

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...........................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND...................................................................2

LEGAL STANDARD......................................................................................................................4

ARGUMENT..................................................................................................................................5

I.      PLAINTIFFS HAVE NOT MET THEIR BURDEN TO SHOW THAT
DAMAGES CAN BE CALCULATED ON A CLASS-WIDE BASIS
CONSISTENT WITH THEIR THEORY OF LIABILITY ..................................................5

         A.     Damages Must Be Calculated Based on Plaintiffs' Theory of Harm ......................6

         B.     Plaintiffs Have Not Demonstrated a Method to Reliably Measure the
Heightened Sanctions Risk .....................................................................................7

                 1.     Plaintiffs and Dr. Cain Have Not Put Forth a Method for
Calculating Damages Specific to Their Theory of Liability........................7

                 2.     Plaintiffs and Dr. Cain Have Not Shown Any Method for Isolating
the Purported Artificial Inflation Caused by the Alleged
Misstatements .............................................................................................9

                 3.     Plaintiffs' Damages Model Does Not Account for Changes Over
Time in the Amount of Artificial Inflation Caused by the Alleged
Misstatements ...........................................................................................13

II.     PLAINTIFFS HAVE NOT SATISFIED RULE 23(a)'s ADEQUACY
REQUIREMENT .............................................................................................................14

III.    CONCLUSION................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prod., Inc.* v. *Windsor*,
521 U.S. 591 (1997)..................................................................................................4

*In re BP p.l.c. Sec. Litig.*,
2013 WL 6388408 (S.D. Tex. Dec. 6, 2013)...............................................................9

*In re BP p.l.c. Sec. Litig.*,
2014 WL 2112823 (S.D. Tex. May 20, 2014).........................................................4, 9

*Bricklayers & Trowel Trades Int'l Pension Fund* v. *Credit Suisse First Bos.*,
853 F. Supp. 2d 181 (D. Mass. 2012) ......................................................................11

*CGC Holding Co., LLC* v. *Broad & Cassel*,
773 F.3d 1076 (10th Cir. 2014) .............................................................................4, 5

*Comcast Corp.* v. *Behrend*,
569 U.S. 27 (2013)............................................................................ *passim*

*Halliburton Co.* v. *Erica P. John Fund, Inc.*,
573 U.S. 258 (2014)..................................................................................................4

*Indiana Pub. Ret. Sys.* v. *AAC Holdings, Inc.*,
2023 WL 2592134 (M.D. Tenn. Feb. 24, 2023) ........................................................6

*Kelley* v. *Mid-Am. Racing Stables, Inc.*,
139 F.R.D. 405 (W.D. Okla. 1990)..........................................................................15

*In re Kosmos Energy Ltd. Secs. Litig.*,
299 F.R.D. 133 (N.D. Tex. 2014)............................................................................15

*Payne* v. *Tri-State CareFlight, LLC*,
328 F.R.D. 601 (D.N.M. 2018)........................................................................4, 9, 15

*In re Petrobras Sec.*,
862 F.3d 250 (2d Cir. 2017)....................................................................................11

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
725 F.3d 244 (D.C. Cir. 2013) ..................................................................................6

*Ramos* v. *Banner Health*,
  325 F.R.D. 382 (D. Colo. 2018) ................................................................................................15

*In re Storage Tech. Corp. Sec. Litig.*,
  113 F.R.D. 113 (D. Colo. 1986) ..............................................................................................15

*Tyson Foods, Inc.* v. *Bouaphakeo*,
  577 U.S. 442 (2016)...................................................................................................................5

*Vallario* v. *Vandehey*,
  554 F.3d 1259 (10th Cir. 2009) ................................................................................................4

*White* v. *Gen. Motors LLC*,
  2023 WL 3278460 (D. Colo. May 5, 2023)...............................................................................4

**Other Authorities**

Federal Rule of Civil Procedure 23(a) ..................................................................................... *passim*

Federal Rule of Civil Procedure 23(b)..................................................................................... *passim*

Jill E. Fisch et. al., *The Logic and Limits of Event Studies in Securities Fraud Litigation*,
  96 TEX. L. REV. 553, 556 (2018) .............................................................................................12

Defendants respectfully submit this opposition to Lead Plaintiffs El Paso Firemen & Policemen's Pension Fund ("El Paso"), San Antonio Fire & Police Pension Fund ("San Antonio"), and Indiana Public Retirement System's ("Indiana," and collectively, "Plaintiffs") Motion for Class Certification (the "Motion" or "Mot.").

## INTRODUCTION

Plaintiffs have failed to satisfy their burden under Federal Rule of Civil Procedure 23(b) to establish that questions of law or fact common to class members predominate over individual issues with respect to their section 10(b) claims. Plaintiffs also have failed to show that they are adequate class representatives who can effectively represent the putative class as required under Federal Rule of Civil Procedure 23(a). Both of these deficiencies require denial of the Motion.

To meet their burden under Rule 23(b), Plaintiffs must show that they will be able to calculate damages on a class-wide basis consistent with their theory of "materialization of concealed risk." In a typical securities fraud case, plaintiff's theory of harm posits that defendant's misrepresentation artificially inflated its stock price, and plaintiffs calculate the amount of inflation caused by the misrepresentation through an "event study" analysis of stock price reactions to corrective disclosures that reveal the previously concealed truth. This case, however, is not a typical securities fraud case. Here, Plaintiffs allege that undefined staffing shortages (measured against an unidentified benchmark) presented an unquantified "heightened risk" that federal and state audits by regulators could result in sanctions, which would have an unspecified impact on InnovAge's business operations. This indeterminate "heightened risk" allegedly was concealed in public statements containing other alleged misrepresentations that also artificially inflated InnovAge's stock price, but for which Plaintiffs cannot recover damages. The amount of artificial inflation also was not static throughout the class period; new information and developments caused fluctuations in the purported harm Plaintiffs suffered. These complex factors underlie Plaintiffs' theory of harm and make calculating damages in this case all but impossible on a class-wide basis.

It is Plaintiffs' burden to show how they can untie this Gordian knot.  Under Federal Rule of Civil Procedure 23(b), Plaintiffs must prove by a preponderance of the evidence that class-wide issues predominate over individual issues, including on the issue of damages.  In *Comcast Corp.* v. *Behrend*, the Supreme Court held that proposed damages models in class actions "must measure only those damages attributable to" the plaintiff's theory of liability.  569 U.S. 27, 35 (2013).

Otherwise, individual questions "will inevitably overwhelm questions common to the class."  *Id.* at 34.  Plaintiffs have failed to show that they are able to meet that requirement here.  Absent a showing that there exists a reliable methodology to calculate damages attributable solely to Plaintiffs' theory of harm on a class-wide basis, individual damages calculations specific to each putative class member will overwhelm issues common to the class.  *Id.*  Here, neither Plaintiffs nor their expert put forth *any* damages methodology, much less one consistent with their theory of harm.  Instead, Plaintiffs ask the Court to trust that these impediments to calculating damages on a class-wide basis can be resolved through unspecified "techniques" that rely on unidentified information.  But at the class certification stage, Plaintiffs must *prove* that they have satisfied Rule 23's requirements.  Because they have failed to do so, the Court should deny the Motion.

Plaintiffs' Motion also should be denied as to *all* claims under Federal Rule of Civil Procedure 23(a) because Plaintiffs are unfamiliar with the basis for this action, have failed adequately to oversee their counsel, and accordingly are not adequate class representatives.

### FACTUAL AND PROCEDURAL BACKGROUND

InnovAge is a public healthcare company focused on providing all-inclusive care to seniors through the Program of All-Inclusive Care for the Elderly ("PACE"), a Medicare and Medicaid program that pays healthcare providers a flat monthly rate for all of a patient's needs instead of paying for services rendered.  (Amended Class Action Complaint ("Amended Complaint" or "FAC") ¶¶ 3-4, 72-73, Dkt. 54.)  On September 17, 2021, the Centers for Medicare & Medicaid Services ("CMS") imposed an enrollment suspension on InnovAge's Sacramento service area as

a result of care deficiencies identified in a CMS audit, meaning InnovAge could not enroll any new participants into its program. (FAC ¶ 210.) On December 22, 2021, CMS suspended enrollment at InnovAge's Colorado service areas. (FAC ¶ 224.) The Colorado Department of Health Care Policy & Financing ("HCPF") similarly sanctioned InnovAge's Colorado service areas on December 23, 2021. (FAC ¶ 226.)

Plaintiffs filed their initial complaint on October 14, 2024 (Dkt. 1) and filed the Amended Complaint on June 21, 2022 (Dkt. 54). Plaintiffs' claims are putatively brought on behalf of all persons and entities who (i) purchased or otherwise acquired the publicly traded common stock of InnovAge between May 11, 2021, and December 22, 2021, or (ii) purchased or otherwise acquired publicly traded InnovAge common stock either in or traceable to InnovAge's March 4, 2021, IPO and were damaged thereby. (Mot. 2.)

The Amended Complaint asserts claims under sections 11, 12(a)(2) and 15 of the Securities Act of 1933 and sections 10(b) and 20(a) of the Securities Exchange Act of 1934 based on 43 allegedly false or misleading statements. (FAC ¶¶ 304-81.) Defendants filed a joint motion to dismiss the Amended Complaint (the "Joint MTD") on September 13, 2022. (Dkt. 73.) On December 21, 2023, the Court granted in part and denied in part Defendants' Joint MTD (the "MTD Order"). (Dkt. 102.) The MTD Order dismissed Plaintiffs' claims as to 37 of the 43 challenged statements, leaving only six alleged misstatements: the Individualized and Coordinated Care Statement (FAC ¶ 241(b)); COVID Continuity of Care Statement (*id.* ¶ 241(f)); Home Care Statement (*id.* ¶ 241(h)); and the three Staffing Statements (*id.* ¶¶ 250(b), 254(a), 259(a)) (together, the "Challenged Statements"). (MTD Order at 55, 81.)

Plaintiffs claim these statements were false and misleading when made because some patients at InnovAge facilities allegedly received substandard care and some InnovAge facilities were understaffed, and, as a result, there was an undisclosed "heightened risk" that audits by federal and state regulators could result in sanctions, even though those very audits were publicly

-3-

disclosed.  Plaintiffs assert that as a result of the challenged statements, Plaintiffs and putative class members "purchased InnovAge stock at artificially inflated or maintained prices, and suffered significant damages."  (FAC ¶ 17.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 23 establishes the requirements for class certification. "Because class action litigation remains 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only,' the requirements of Rule 23 are heavily scrutinized and strictly enforced."  *CGC Holding Co., LLC* v. *Broad & Cassel*, 773 F.3d 1076, 1086 (10th Cir. 2014) (quoting *Califano* v. *Yamasaki*, 442 U.S. 682, 701 (1979)).  "To come within the exception, a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23."  *Comcast Corp.*, 569 U.S. at 33 (internal quotations omitted).

"[P]laintiffs wishing to proceed through a class action must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23."  *Halliburton Co.* v. *Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014).  Plaintiffs seeking class certification must demonstrate, by a preponderance of the evidence, that each of Rule 23's requirements have been satisfied.  *White* v. *Gen. Motors LLC*, 2023 WL 3278460, at \*3 (D. Colo. May 5, 2023); *see also Payne* v. *Tri-State CareFlight, LLC*, 328 F.R.D. 601, 621 n.12 (D.N.M. 2018); *In re BP p.l.c. Sec. Litig.*, 2014 WL 2112823, at \*12 (S.D. Tex. May 20, 2014) (plaintiffs cannot just "ask[] the Court simply to trust them").  Moreover, the Tenth Circuit "require[s] district courts, in making a class certification ruling, to conduct a rigorous analysis of Rule 23's requirements."  *Vallario* v. *Vandehey*, 554 F.3d 1259, 1265 (10th Cir. 2009) (internal quotations omitted).

"Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequacy of representation (representatives 'will fairly and

adequately protect the interests of the class').” *Amchem Prod., Inc.* v. *Windsor*, 521 U.S. 591, 613 (1997) (quoting Fed R. Civ. P. 23).  “If the class meets the four criteria under Rule 23(a), then the court must consider whether the class satisfies at least one of the three alternative class-types under Rule 23(b).”  *CGC Holding Co.*, 773 F.3d at 1086.  Here, Plaintiffs have moved for class certification under Rule 23(b)(3), which requires Plaintiffs to prove that (i) common questions of law or fact predominate over individualized questions, and (ii) that a class action is superior to other available methods for fairly and effectively adjudicating the controversy.

Courts also have clarified the contours of Rule 23(b)’s exacting requirement of predominance.  “The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.” *Tyson Foods, Inc.* v. *Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal quotations omitted).  This inquiry “asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.”  *Id.* (internal quotations omitted).  Because Rule 23(b)(3) is applied in situations where class action treatment “is not as clearly called for” compared to Rule 23(b)’s other class types,  courts have a “duty” to take a “close look” at whether common questions predominate over individual questions.  *Comcast Corp.*, 569 U.S. at 34; *see also CGC Holding Co.*, 773 F.3d at 1087.

**ARGUMENT**

Plaintiffs’ Motion must be denied because they have not demonstrated that (i) class-wide damages may be calculated consistent with their theory of liability with respect to the section 10(b) claims or (ii) Plaintiffs meet the adequacy requirements of Federal Rule of Civil Procedure 23(a).

**I.    PLAINTIFFS HAVE NOT MET THEIR BURDEN TO SHOW THAT DAMAGES CAN BE CALCULATED ON A CLASS-WIDE BASIS CONSISTENT WITH THEIR THEORY OF LIABILITY**

Plaintiffs have failed to meet Rule 23(b)’s predominance requirement with respect to their section 10(b) claims concerning the Staffing Statements because they have not presented any

reliable methodology for calculating the damages (if any) to the class members on a class-wide basis that is consistent with their theory of liability and that can be feasibly calculated once any common liability questions are decided.[1]

### A.    Damages Must Be Calculated Based on Plaintiffs' Theory of Harm

Under Rule 23(b)(3), Plaintiffs must prove that common issues predominate over any questions that only affect certain individuals, including on the issue of damages. *Comcast Corp.*, 569 U.S. at 33-36. The proposed model for calculating damages must "measure only those damages attributable to" Plaintiffs' theory of liability. *Id.* at 35; *Indiana Pub. Ret. Sys.* v. *AAC Holdings, Inc.*, 2023 WL 2592134, at \*23 (M.D. Tenn. Feb. 24, 2023) ("*Comcast* requires district courts to ensure that a model purporting to serve as evidence of damages in a class action measures only those damages attributable to the plaintiffs' theory." (cleaned up)). "If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Comcast Corp.*, 569 U.S. at 33-36. Without a way to measure damages on a class-wide basis "consistent with its liability case," individual questions "will inevitably overwhelm questions common to the class. *Id.* at 34-35. As the D.C. Circuit explained: "No damages model, no predominance, no class certification." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 253 (D.C. Cir. 2013).

Here, Plaintiffs' theory of liability posits that the Staffing Statements were "false and misleading" when made because they concealed the reality of InnovAge's staffing challenges, which, in turn, created a "significant and heightened risk that the audits would result in costly CAPS [(corrective action plans)], monetary penalties, or suspension of enrollment" (the "Heightened Sanctions Risk"). (FAC ¶¶ 251(b), 255(a), 260(a).) In other words, Plaintiffs assert

---

[1] Because damages (if any) for Plaintiffs' Securities Act claims are determined by statute, Defendants limit their Rule 23(b) challenges to Plaintiffs' section 10(b) claims concerning the Staffing Statements.

a "materialization of concealed risk" theory of harm, under which they allege that Defendants' purported misstatements caused InnovAge's stock price to be artificially inflated by concealing a risk that subsequently materialized to deflate the stock price and cause their loss. (*See* Expert Report of Matthew D. Cain, PHD ("Cain Rep.") ¶ 87, Dkt. 141-1 (acknowledging Plaintiffs' allegations involve the "materialization of concealed risk").)

Under *Comcast*, Plaintiffs must demonstrate by a preponderance of the evidence that their damages model can measure the price inflation in InnovAge stock stemming *solely* from the alleged Heightened Sanctions Risk, and nothing else. *See Comcast Corp.*, 569 U.S. at 33-36. Plaintiffs have not come close to meeting their burden.

## B. Plaintiffs Have Not Demonstrated a Method to Reliably Measure the Heightened Sanctions Risk

Plaintiffs have not proven by a preponderance of the evidence that damages may be calculated on a class-wide basis consistent with their theory of liability because they have failed to (i) put forth any non-hypothetical specific damages method, (ii) show how they plan to isolate damages specific to their section 10(b) claims, and (iii) demonstrate how Dr. Cain's generic tools can account for the changes in artificial inflation that Plaintiffs' allegations require.

### 1. Plaintiffs and Dr. Cain Have Not Put Forth a Method for Calculating Damages Specific to Their Theory of Liability

Neither Plaintiffs nor their expert, Dr. Cain, have set forth a methodology by which the artificial inflation in InnovAge's stock price attributable to only the undisclosed "heightened risk" (if any) could be measured in this case, as required by *Comcast*. Instead, Plaintiffs and Dr. Cain discuss only in general terms generic tools that *might* be used to calculate damages, without showing, as they must, that these methodologies can calculate damages on a class-wide basis with respect to Plaintiffs' liability theory in this case. (McGimsey Decl. Ex. 1 ("Hutton Rep.") ¶¶ 25, 30); *see Comcast Corp.*, 569 U.S. at 36 (rejecting damages model that "failed to measure damages resulting from the particular . . . injury on which . . . liability in this action is premised").

-7-

*First*, Dr. Cain asserts that section 10(b) damages can be calculated through an "out-of-pocket" formula that "calculates damages formulaically as the difference between the artificial inflation in the share price at the time of purchase and the artificial inflation in the share price at the time of sale." (Cain Rep. ¶ 82; Mot. 13.)  This merely restates what courts recognize as the appropriate measure of section 10(b) damages.  *See Anixter*, 977 F.2d at 1553 ("correct measure of damages" in securities fraud case is "the difference between the fair value of all that the [plaintiff] received and the fair value of what he would have received had there been no fraudulent conduct").  Under *Comcast*, Plaintiffs must be able to show some methodology for calculating the amount of artificial inflation in InnovAge stock caused by the allegedly Heightened Sanctions Risk, and nothing else.  Plaintiffs' "out-of-pocket" formula cannot function without this input.

Plaintiffs argue that the out-of-pocket formula is a "widely accepted methodology" that "is employed in nearly every securities class action." (Mot. 13.)  But Plaintiffs' authorities say nothing about whether the formulaic recitation of a damages calculation constitutes a *Comcast*-compliant methodology in this case.  *Queen Uno Limited Partnership* v. *Coeur D'Alene Mines Corp.*, which long predates *Comcast*, simply states that damages in Exchange Act claims are "determined by the out of pocket rule."  183 F.R.D. 687, 690 (D. Colo. 1998).  *Comcast*'s requirements are not satisfied by presenting the Court with the tautological proposition that damages will be measured by measuring damages.  In *In re Myriad Genetics Securities Litigation,* the court did not address whether the "out of pocket" formula proposed by the plaintiffs satisfied Rule 23(b)'s requirements because it concluded that "complex liability issues" predominated over any damages issues.  2021 WL 5882259, at *7 (D. Utah Dec. 13, 2021).  Here, the complexity of Plaintiffs' theory of harm, and the difficulties of calculating damages under that theory, far outstrip any liability issues.  Plaintiffs' final case, *In re SandRidge Energy, Inc. Securities Litigation*, does not even mention "out-of-pocket" damages.  2019 WL 4752268 (W.D. Okla. Sept. 30, 2019).

*Second*, Dr. Cain asserts that a "detailed loss causation analysis" could be used to measure

-8-

artificial inflation during the Class Period. (Cain Rep. ¶ 86.) Apart from unspecified "brokerage statements and other documentation of securities transactions," Dr. Cain fails to identify any information upon which his model would rely, including (i) the "facts and circumstances" relevant to the analysis, (ii) whether and how the "valuation techniques" would be used, (iii) whether and how "event studies" would be incorporated, or (iv) the "published academic research studies" and "analyst research" it might be based upon. (*Id.*)

In short, Plaintiffs and Dr. Cain have set forth nothing more than an assertion that there are generic tools that may generally be used to measure stock price inflation on a class-wide basis and that they may use some of these tools in some unspecified way to measure damages on a class-wide basis in this case. (Cain Rep. ¶¶ 81-88; Mot. 13-14.) Plaintiffs cannot paper over their shortcomings by raising the irrelevant proposition that they do not need to calculate the precise amount of damages at the class certification stage. (Mot. 14.) Under *Comcast*, courts cannot certify a class where plaintiffs have merely asserted that they *will* be able to calculate damages on a class-wide basis consistent with their theory of liability. *In re BP p.l.c. Sec. Litig.*, 2014 WL 2112823, at *12. Plaintiffs must actually prove that they can do so by a preponderance of the evidence. *White*, 2023 WL 3278460, at *3; *Payne*, 328 F.R.D. at 621 n.12. Plaintiffs' own case law provides that Plaintiffs must "show a common, classwide *method* for determining individual damages." (Mot. 14 (emphasis added).) Plaintiffs have made no such evidentiary showing in this case. For that reason alone, class certification should be denied. *See In re BP p.l.c. Sec. Litig.*, 2013 WL 6388408, at *17 (S.D. Tex. Dec. 6, 2013) (denying class certification because plaintiffs did "not assuage the Court that the class-wide damages methodology proposed will track Plaintiffs' theories of liability, as the Supreme Court expressly required in *Comcast*").

> 2. Plaintiffs and Dr. Cain Have Not Shown Any Method for Isolating the Purported Artificial Inflation Caused by the Alleged Misstatements

Under *Comcast*, Plaintiffs must demonstrate that their damages methodology is consistent with their theory of liability. *See Comcast*, 569 U.S. at 33-36. Accordingly, Plaintiffs' burden is

to demonstrate how they may filter out any impact on InnovAge's share price that is unrelated to the alleged concealment of the Heightened Sanctions Risk. *Id.* Without doing so, any damages calculation is likely to misdiagnose the purported harm caused by Defendants' alleged failure to disclose the Heightened Sanctions Risk. Plaintiffs have not met their burden, as neither Plaintiffs nor Dr. Cain have explained, even in general terms, how they can possibly segregate the dissipation of artificial inflation caused by the revelation of the allegedly concealed Heightened Sanctions Risk from stock price declines attributable to other, unrelated (and non-actionable) causes.

Although Dr. Cain does not state that he would actually use an event study in this case involving public statements that included both actionable and *non-actionable* alleged misstatements as to which the "truth" was revealed through the same alleged corrective disclosures, Dr. Cain suggests that he may hypothetically use an event study of unspecified parameters to measure damages in this action. (Cain Rep. ¶ 85.) Dr. Cain alludes to two partially corrective disclosures that he presumably would use in such an event study: (i) Defendants' disclosure on September 21, 2021 during an earnings call that CMS had suspended enrollments at InnovAge's Sacramento service area and (ii) Defendants' disclosure on December 23, 2021 in a Form 8-K filed with the SEC that CMS and HCPF were implementing enrollment sanctions at InnovAge's Colorado service areas. (*See* Cain Rep. ¶¶ 17-18, 85, 87.) But an event study based on these two disclosures would not be capable of accurately calculating class-wide damages under Plaintiffs' theory of liability for at least two reasons.

*First*, the purported corrective disclosures that Dr. Cain identified are not reliable data points to measure the artificial inflation of InnovAge stock caused by the purported concealment of the Heightened Sanctions Risk. As explained in the Hutton Report, InnovAge's stock price declines following the alleged corrective disclosures may overestimate the amount of inflation dissipated by the announcement. (Hutton Rep. ¶ 34.) The disclosures on September 21 and December 23, 2021 each had at least a *two-fold* impact on InnovAge's share price: (i) they

-10-

dissipated the purported artificial inflation caused by the alleged concealment of the Heightened Sanction Risk and (ii) they caused the market to factor into InnovAge's share price the now-certain economic strain that enrollment sanctions would place on InnovAge's business operations.  (*Id.* ¶¶ 34-35, 41; *id.* Exs. 2A, 2B.)  In order to calculate damages in a manner consistent with Plaintiffs' theory of liability, Plaintiffs must demonstrate some method of isolating the former from the latter. *See Bricklayers & Trowel Trades Int'l Pension Fund* v. *Credit Suisse First Bos.*, 853 F. Supp. 2d 181, 191 (D. Mass. 2012) (excluding expert event study where "confounding factors pervade[d]"); *cf. In re Petrobras Sec.*, 862 F.3d 250, 279 (2d Cir. 2017) ("[I]t can be extremely difficult to isolate the price impact of any one piece of information in the presence of confounding factors, such as other simultaneously released news about the company.").  Plaintiffs and Dr. Cain fail to disentangle those factors from each other.

*Second*, Plaintiffs have not demonstrated that their purported damages model can separate artificial inflation caused by the actionable Staffing Statements from artificial inflation caused by the non-actionable statements that the Court dismissed but which were nevertheless deemed by the Court to be adequately alleged to be false and misleading.  (Hutton Rep. ¶¶ 66-70; *id.* Ex. 2D.) For example, the May 11, 2021 Quarterly Report, which contains one of the actionable Staffing Statements, also contained the Individualized and Coordinated Care Statement.  (FAC ¶ 250(a).) In its Joint MTD Order, the Court determined that, for purposes of Plaintiffs' section 10(b) claims, the Individualized and Coordinated Care Statement was adequately alleged to be false and misleading, but nevertheless dismissed the section 10(b) claim as to this statement for failure to adequately allege scienter.  (Joint MTD Order at 55, 81.)  As such, Plaintiffs' section 10(b) damages methodology must be able to disaggregate any artificial inflation caused by the actionable Staffing Statements from the price impact of the non-actionable Individualized and Coordinated Care Statement.  The same is true with respect to the Home Care and COVID Continuity of Care Statements (*id.* at 55, 81), and the other statements that the Court found to have been adequately

-11-

alleged to be false but nevertheless non-actionable, including the Deficient Participant Assessments and Care Plans Statement (*id.* at 63, 81) and the Government Payors Statement (*id.* at 64, 81), among others. Plaintiffs and Dr. Cain have failed to show how an event study, or any other methodology, is capable of separating artificial inflation owing to the actionable Staffing Statements from the price impact of these non-actionable statements. (*See* Hutton Rep. ¶¶ 66-70; Jill E. Fisch et. al., *The Logic and Limits of Event Studies in Securities Fraud Litigation*, 96 TEX. L. REV. 553, 556 (2018) ("[I]n cases involving multiple 'bundled' disclosures, event studies have limited capacity to identify the particular contribution of each piece of information.").)

The reason Plaintiffs and Dr. Cain fail to disentangle the effects of actionable statements from non-actionable ones in the same disclosure is because they *cannot* do so. Event studies such as those implied by Dr. Cain are used to "assess the total stock price impact of *all* new company-specific information revealed on a given alleged corrective disclosure day." (Hutton Rep. ¶ 27.) Consequently, as Dr. Hutton explains, "[e]ven if such an event study is performed appropriately, it cannot, on its own, separately measure the effects of corrective and other company-specific confounding information that is released at the same time." (*Id.*) Some other method of calculation is needed to isolate the alleged artificial inflation caused by the actionable Staffing Statements that was dissipated by the September 21, 2021 and December 23, 2021 disclosures. (*Id.*)

Dr. Cain does not specify any methodology that he could use in this case to isolate cognizable damages. Rather, he merely asserts that "[t]o the extent that any portion of a stock price decline following a corrective disclosure is unrelated to Plaintiffs' allegations involving the materialization of concealed risk, this portion can be disaggregated for all Class Members using" the generic "techniques" described in his Report. (Cain Rep. ¶ 87.) But none of the techniques that Dr. Cain discusses in his Report are capable of isolating artificial inflation in InnovAge stock caused by the alleged concealment of the Heighted Sanctions Risk. (Hutton Rep. ¶¶ 28-29, 34-35, 41, 51-53, 66-70.) *First*, as noted above, the "out-of-pocket" formula of calculating damages is

just a restatement of the measure of damages in a securities fraud case.  *See Anixter*, 977 F.2d at 1553.  *Second*, Dr. Cain admits he has not yet performed a loss causation analysis (Cain Rep. ¶ 84), and has failed to provide any explanation of the facts specific to this action that he would use in such an analysis (Cain Rep. ¶ 86).  *Third*, event studies, like the one discussed by Dr. Cain, are not sufficient tools for isolating artificial inflation caused by a failure to disclose a concealed risk.

In sum, Plaintiffs have not shown how they will be able to isolate damages specific to their theory of harm from all other factors with respect to their section 10(b) claims.  Because Plaintiffs have failed to meet their burden under *Comcast*, the Court should deny class certification.

> 3.  Plaintiffs' Damages Model Does Not Account for Changes Over Time in the Amount of Artificial Inflation Caused by the Alleged Misstatements

Class certification also should be denied as to Plaintiffs' section 10(b) claims because Plaintiffs have failed to explain how they will measure the evolution of artificial inflation throughout the Class Period.  Under Plaintiffs' theory, artificial inflation equals the difference between InnovAge's actual stock price (*i.e.*, the ceiling) and what the stock price would have been if InnovAge had not allegedly concealed the Heighted Sanctions Risk (*i.e.*, the floor).  (*See* FAC ¶¶ 251(b), 255(a), 260(a).)  As Dr. Hutton  explains in her Report, artificial inflation caused by the purported concealment of the Heightened Sanctions Risk would have been affected by both InnovAge's and the market's knowledge of InnovAge's alleged staffing challenges and the status of the audits.  (Hutton Rep. ¶¶ 56-57.)  For example, InnovAge's staffing levels may have increased over the Class Period—meaning the allegedly concealed risk of sanctions would have been less probable (*i.e.*, raising the floor).  (*Id.* ¶¶ 56-57, 61.)  Similarly, the market may have acquired new information during the Class Period about InnovAge's exposure to possible sanctions—which would have resulted in a decrease in InnovAge's actual stock price (*i.e.*, lowering the ceiling).  (*Id.* ¶¶ 56-57, 63.)  Both factors would have caused artificial inflation to vary during the Class Period.

Plaintiffs concede that "artificial inflation may have varied and could evolve throughout

the Class Period based on the timing of specific information or statements." (Cain Rep. ¶ 86.) Yet, Dr. Cain nowhere explains how his generic damages model could calculate artificial inflation over time given variable levels of artificial price inflation. Instead, he makes only vague references to the same generic techniques described above and claims, without explanation, that they are capable of measuring such variations. (Cain Rep. ¶¶ 86, 94-95.)

Moreover, Plaintiffs' own allegations require that they account for variances in artificial inflation over the course of the Class Period. The Amended Complaint points to numerous instances in which the level of artificial inflation would have varied as a result of the market's knowledge of staffing challenges or the status of the audits. (Hutton Rep. ¶¶ 61-63.) For example, the Amended Complaint repeatedly refers to *Capitol Forum* reports (some published early in the Class Period) that concern staffing levels at InnovAge that would have affected the market's understanding of InnovAge's staffing challenges. (FAC ¶¶ 128-141.) Plaintiffs also make specific, albeit unsubstantiated, allegations that InnovAge received feedback from CMS regulators that affected its knowledge of the likelihood of sanctions. (FAC ¶¶ 208-09.) In light of such allegations, Plaintiffs were required to set out as part of their methodology for calculating class-wide damages some means of accounting for the variations in the amount of artificial inflation over time during the Class Period that they themselves acknowledge. They do not even try.

As Plaintiffs have not shown that they can feasibly measure the variance in damages over time in a manner consistent with their theory of liability, the Court should deny class certification.

## II. PLAINTIFFS HAVE NOT SATISFIED RULE 23(a)'s ADEQUACY REQUIREMENT

Class certification should be denied as to *all* of Plaintiffs' claims because their unfamiliarity with the legal basis for this action demonstrates their inadequacy as class representatives. Rule 23(a)(4) requires that class representatives "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The requirement of fair and adequate representation is perhaps the most important of the criteria for class certification set forth in Rule

-14-

23(a)." *Payne*, 332 F.R.D. 611, 662 (D.N.M. 2019). Although plaintiffs are not expected to have total command of their "highly complex factual and legal claims," *Ramos* v. *Banner Health*, 325 F.R.D. 382, 396 (D. Colo. 2018), proposed class representatives at least must be "knowledgeable as to the status and underlying legal basis of the action," *In re Storage Tech. Corp. Sec. Litig.*, 113 F.R.D. 113, 117 (D. Colo. 1986). "[P]laintiffs seeking certification must produce actual, credible evidence that the proposed class representatives are informed, able individuals, who are themselves—not the lawyers—actually directing the litigation." *In re Kosmos Energy Ltd. Secs. Litig.*, 299 F.R.D. 133, 145 (N.D. Tex. 2014).

Here, Plaintiffs have not proven their ability to protect the interests of absent class members. For example, El Paso "rel[ies] on Counsel" to articulate how Defendants had harmed El Paso and has no idea what the Challenged Statements mean or why they are misleading. (McGimsey Decl. Ex. 2 at 89:20-90:8, 92:1-101:13.) Likewise, San Antonio defers entirely to counsel regarding the "basis of the lawsuit." (McGimsey Decl. Ex. 3 at 26:21-27:18; *see Kelley* v. *Mid-Am. Racing Stables, Inc.*, 139 F.R.D. 405, 409 (W.D. Okla. 1990) (finding plaintiffs inadequate because "what the plaintiffs know appears to come entirely from their counsel").) San Antonio has not even reviewed documents containing the Challenged Statements and does not even know what Plaintiffs' Amended Complaint alleges with regard to the Challenged Statements (McGimsey Decl. Ex. 3 at 25:6-32:17), despite certifying to the Court that it had "fully reviewed the facts and allegations of a complaint filed in this action and authorize[d] its filing" (Dkt. 54-3). Similarly, Indiana merely speculates that Plaintiffs' Complaint might have related to "staffing" because "the word may have been in the Complaint." (McGimsey Decl. Ex. 4 at 55:19-56:5.)

Accordingly, the Court should deny class certification due to Plaintiffs' failure to demonstrate their ability to adequately represent the class.

## III.    CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Class Certification.

-15-

Dated:            August 23, 2024

SULLIVAN & CROMWELL LLP

By:  /s/ *Diane L. McGimsey*
Karen Patton Seymour
125 Broad Street
New York, NY 10004-2498
Telephone: (212) 558-4000
Facsimile: (212) 291-9307
seymourk@sullcrom.com

Diane L. McGimsey
1888 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 712-6600
Facsimile: (310) 712-8800
mcgimseyd@sullcrom.com

*Counsel for InnovAge Holding Corp.,
Maureen Hewitt, Barbara Gutierrez, John
Ellis Bush, Andrew Cavanna, Caroline
Dechert, Edward Kennedy, Jr., Pavithra
Mahesh, Thomas Scully, Marilyn Tavenner,
Sean Traynor, and Richard Zoretic, Apax
Partners, L.P., and Welsh, Carson, Anderson
& Stowe*

By:  /s/ *Mary Eaton*
Mary Eaton
Nicholas A. Caselli
Abhinaya Swaminathan
FRESHFIELDS BRUCKHAUS DERINGER US LLP
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007
Tel.: (212) 277-4000
Fax.: (212) 277-4001
mary.eaton@freshfields.com
nicholas.caselli@freshfields.com
abhinaya.swaminathan@freshfields.com

*Counsel for J.P. Morgan Securities LLC,
Barclays Capital Inc., Goldman Sachs & Co.*

WILMER CUTLER PICKERING HALE
AND DORR LLP

Peter Kurtz
1225 17th Street, Suite 2600
Denver, CO 80202
Telephone: (720) 274-3154
Facsimile: (720) 274-3133
peter.kurtz@wilmerhale.com

Matthew Benedetto
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5323
Facsimile: (213) 443-5400
matthew.benedetto@wilmerhale.com

*Counsel for InnovAge Holding Corp.*

-16-

*LLC, Citigroup Global Markets Inc., Robert
W. Baird & Co. Incorporated, William Blair
& Company, L.L.C., Piper Sandler & Co.,
Capital One Securities, Inc., Loop Capital
Markets LLC, Siebert Williams Shank & Co.,
LLC, and Roberts & Ryan Investments, Inc.*

-17-

-18-

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of August, 2024, I electronically filed a true and correct copy of the foregoing **DEFENDANTS' OPPOSITION TO LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties via the CM/ECF system.

/s/ Caleb J. Downs

Caleb J. Downs