# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02770-WJM-SBP

EL PASO FIREMEN & POLICEMEN'S PENSION FUND, SAN ANTONIO FIRE & POLICE PENSION FUND, and INDIANA PUBLIC RETIREMENT SYSTEM, individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

INNOVAGE HOLDING CORP.,
MAUREEN HEWITT,
BARBARA GUTIERREZ,
JOHN ELLIS BUSH,
ANDREW CAVANNA,
CAROLINE DECHERT,
EDWARD KENNEDY, JR.,
PAVITHRA MAHESH,
THOMAS SCULLY,
MARILYN TAVENNER,
SEAN TRAYNOR,
RICHARD ZORETIC,
WCAS MANAGEMENT, L.P.,
WCAS MANAGEMENT, L.L.C.,
APAX PARTNERS US LLC,
TCO GROUP HOLDINGS, L.P.,
J.P. MORGAN SECURITIES LLC,
BARCLAYS CAPITAL INC.,
GOLDMAN SACHS & CO. LLC,
CITIGROUP GLOBAL MARKETS INC.,
ROBERT W. BAIRD & CO. INCORPORATED,
WILLIAM BLAIR & COMPANY, L.L.C.,
PIPER SANDLER & CO.,
CAPITAL ONE SECURITIES, INC.,
LOOP CAPITAL MARKETS LLC,
SIEBERT WILLIAMS SHANK & CO., LLC, and
ROBERTS & RYAN INVESTMENTS, INC.,

      Defendants.

## LEAD PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION

**TABLE OF CONTENTS**

I.    INTRODUCTION ....................................................................................................................1

II.   ARGUMENT...........................................................................................................................2
      A.    Common questions predominate and warrant certification...........................................2
            1.    Courts resoundingly find *Comcast* satisfied in securities fraud classes. ..............3
            2.    Defendants' fact-based arguments do not bar class certification. .....................5
      B.    The proposed class representatives are adequate under Rule 23(a). ..............................9

III.  CONCLUSION ......................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*In re Allergan PLC Sec. Litig.*,
    2021 WL 4077942 (S.D.N.Y. September 8, 2021) ...................................................................6

*Amchem Prod., Inc. v. Windsor*,
    521 U.S. 591 (1997)...........................................................................................................2

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013)...........................................................................................................8

*In re Apple, Inc., Sec. Litig.*,
    No. 19-CV-2033-YGR, 2022 WL 354785 (N. D. Cal. Feb. 4, 2022) .........................................8

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)...........................................................................................................2

*Bond v. Clover Health Inv., Corp.*,
    No. 3:21-cv-00096, 2023 WL 1999859 (M.D. Tenn. Feb. 14, 2023)....................................6

*Bos. Ret. Sys. v. Alexion Pharms., Inc.*,
    556 F. Supp. 3d 100 (D. Conn. 2021) ...................................................................................7

*Bos. Ret. Sys. v. Alexion Pharm., Inc.*,
    No. 3:16-cv-2127-WAT, 2023 WL 2932485 (D. Conn. Apr. 13, 2023)...............................7

*In re Broiler Chicken Grower Antitrust Litig. (No. II)*,
    No. 6:20-md-02977-RJS-CMR, 2024 WL 2117359 (E.D. Okla. May 8, 2024)...................4

*Brokop v. Farmland Partners Inc.*,
    No. 18-CV-02104-DME-NYW, 2021 WL 4913970 (D. Colo. Sept. 30, 2021)...................9

*CGC Holding Co., LLC v. Broad & Cassel*,
    773 F.3d 1076 (10th Cir. 2014) .........................................................................................1

*City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc.*,
    322 F. Supp. 3d 676 (D. Md. 2018)................................................................................3, 5

*City P'ship Co. v. Jones Intercable, Inc.*,
    213 F.R.D. 576 (D. Colo. 2002)........................................................................................9

*Cosby v. KPMG, LLP*,
    No. 3:16-cv-121-TAV-DCP, 2021 WL 1828114 (E.D. Tenn. May 7, 2021) .....................5

*Esplin v. Hirschi*,
    402 F.2d 94 (10th Cir. 1968).............................................................................................8

*Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*,
No. CV 20-4660-KSM, 2023 WL 7285167 (E.D. Pa. Nov. 3, 2023) ...................................................8

*Hatamian v. Advanced Micro Devices, Inc.*,
No. 14-cv-00226-YGR, 2016 WL 1042502 (N.D. Cal. Mar. 16, 2016) .............................................4

*Howard v. Liquidity Servs. Inc.*,
322 F.R.D. 103 (D.D.C. 2017) ...................................................................................................................5

*Indiana Pub. Ret. Sys. vs. AAC Holdings, Inc.*,
No. 3:19-cv-00407, 2023 WL 2592134 (M.D. Tenn. Feb. 24, 2023)..................................................5

*Indiana Pub. Ret. Sys. v. Pluralsight, Inc.*,
No. 1:19-cv-00128-DBB-DAO, 2023 WL 8936277 (D. Utah Dec. 27, 2023) ............................2, 8

*Jordan v. Maxim Healthcare Servs., Inc.*,
No. 15-CV-01372-KMT, 2017 WL 4407940 (D. Colo. July 6, 2017) ..........................................9, 10

*Junge v. Geron Corp.*,
No. C 20-00547-WHA, 2022 WL 1002446 (N.D. Cal. Apr. 2, 2022) .............................................5

*Malriat v. QuantumScape Corp.*,
No. 3:21-CV-00058-WHO, 2022 WL 17974629 (N.D. Cal. Dec. 19, 2022) ....................................6

*Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*,
No. 1:17-CV-241-MHC, 2018 WL 1558577 (N.D. Ga. Mar. 29, 2018) ...........................................7

*Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*,
332 F.R.D. 370 (N.D. Ga. 2019)...............................................................................................................7

*In re Myriad Genetics, Inc. Sec. Litig.*,
No. 2:19-CV-00707-DBB, 2021 WL 5882259 (D. Utah Dec. 13, 2021) .........................................2

*Naylor Farms, Inc. v. Chaparral Energy, LLC*,
923 F.3d 779 (10th Cir. 2019) ...................................................................................................................8

*In re Oppenheimer Rochester Funds Grp. Sec. Litig.*,
318 F.R.D. 435 (D. Colo. 2015)...........................................................................................................1, 9

*Pirnik v. Fiat Chrysler Autos., N.V.*,
327 F.R.D. 38 (S.D.N.Y. 2018).................................................................................................................8

*Ret. Sys. of Miss. v. Treehouse Foods, Inc.*,
No. 16-cv-10632, 2020 WL 919249 (N.D. Ill. Feb. 26, 2020).............................................................5, 8

*Rougier v. Applied Optoelectronics, Inc.*,
No. 4:17-CV-02399, 2019 WL 6111303 (S.D. Tex. Nov. 13, 2019)...................................................4

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
   314 F.3d 1180 (10th Cir. 2002) ..................................................................................................9

*In re Sandridge Energy, Inc. Sec. Litig.*,
   No. 5:12-cv-01341, 2018 WL 3413414 (W.D. Okla. Feb. 16, 2018) ...................................................5

*In re SandRidge Energy, Inc. Sec. Litig.*,
   No. CIV-12-1341-G, 2019 WL 4752268 (W.D. Okla. Sept. 30, 2019)................................... 2, 4, 5, 7

*Schwartz, v. Celestial Seasonings, Inc.*,
   178 F.R.D. 545 (D. Colo 1998)..................................................................................................10

*In re Teva Sec. Litig.*,
   No. 17-cv-558, 2021 WL 872156 (D. Conn. Mar. 9, 2021) ..............................................................3, 4

*In re Thornburg Mortg., Inc. Sec. Litig.*,
   912 F. Supp. 2d 1178 (D.N.M. 2012)..............................................................................................8

*In re Under Armour Sec. Litig.*,
   631 F.Supp.3d 285 ......................................................................................................................6

*In re Vale S.A. Sec. Litig.*,
   No. 19-CV-526-RJD-SJB, 2022 WL 122593 (E.D.N.Y. Jan. 11, 2022)...............................................8

*Weiner v. Tivity Health, Inc.*,
   334 F.R.D. 123 (M.D. Tenn. 2020) ................................................................................................8

## I.    INTRODUCTION

Class actions are generally the "appropriate means" for resolving securities claims. *In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, 318 F.R.D. 435, 443 (D. Colo. 2015). So long as plaintiffs have "met their burden under Rule 23," a proposed class should be certified. *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087, 1094 (10th Cir. 2014). Plaintiffs have met that burden here, demonstrating that class certification is proper. ECF 140 ("Br.").[1] Defendants do not even challenge the vast majority of the certification requirements: they do not dispute that the proposed class satisfies Rule 23(a)'s requirements of numerosity, typicality, or commonality or that there is no conflict between Plaintiffs and the class. *See generally* ECF 160 ("Def. Br."). As to the Securities Act claims, Defendants do not dispute that Rule 23(b) is satisfied. Def. Br. at 6 n.1. As to the Exchange Act claims, Defendants do not question whether reliance is a common question or that a class action is superior for adjudicating this controversy. *See* Br. at 10-13. And Defendants' expert does not challenge that InnovAge common stock traded in an efficient market throughout the entirety of the Class Period, rendering a classwide presumption of reliance appropriate. *See* Bowen Decl. Ex. A ("Rebuttal Rep.") ¶¶ 6-10.

Defendants lodge only two narrow challenges to class certification, both of which fail. First, as to the Exchange Act claims only, they claim that Plaintiffs did not present a viable damages methodology that applies classwide and so common questions do not predominate, but that argument rests on a resoundingly rejected legal theory and ignores key aspects of Plaintiffs' expert report. Second, they claim that Plaintiffs lack sufficient familiarity with the case and so are not adequate, but that argument ignores Plaintiffs' vigorous prosecution of this case and knowledge of the facts that gave rise to their and other class members' investment losses. Because Plaintiffs have met their burden, the Court should grant Plaintiffs' motion to certify a class of all persons and entities who:

---

[1] Abbreviations and definitions are taken from Plaintiffs' opening brief and internal citations are omitted unless stated otherwise.

1

(i) purchased or otherwise acquired the publicly traded common stock of InnovAge between May 11, 2021, and December 22, 2021, inclusive (the "Class Period"); and/or (ii) purchased or otherwise acquired publicly traded InnovAge common stock either in or traceable to InnovAge's March 4, 2021, IPO and were damaged thereby.

## II.    ARGUMENT

### A.    Common questions predominate and warrant certification.

"Predominance is a test readily met" in securities cases. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *see also Basic Inc. v. Levinson*, 485 U.S. 224 (1988). Plaintiffs' expert Dr. Matthew Cain demonstrates that Section 10(b) damages can be adequately calculated through a common "out-of-pocket" methodology involving an event study. ECF 141-1 ("Cain Rep.") ¶¶ 81-88. And he describes exactly how such a study, applied classwide, would support the jury in assessing damages, by: (i) calculating the price impact of corrective disclosures; (ii) determining the impact of any "confounding information" unrelated to the fraud; and (iii) subtracting (ii) from (i) to yield a calculation of fraud-related artificial inflation in InnovAge's stock price for each day during the Class Period. *Id.* ¶¶ 81-88.

Defendants do not dispute that an out-of-pocket approach including an event study is the damages methodology employed in nearly every securities class action. Br. at 13. *See, e.g.*, *Indiana Pub. Ret. Sys. v. Pluralsight, Inc.*, No. 1:19-cv-00128-DBB-DAO, 2023 WL 8936277 (D. Utah Dec. 27, 2023) (accepting event study methodology); *In re SandRidge Energy, Inc. Sec. Litig.*, No. CIV-12-1341-G, 2019 WL 4752268 (W.D. Okla. Sept. 30, 2019) (same); *In re Myriad Genetics, Inc. Sec. Litig.*, No. 2:19-CV-00707-DBB, 2021 WL 5882259, at *7, 9 (D. Utah Dec. 13, 2021) (noting plaintiffs offer "a routinely accepted 'out of pocket' damages model" utilizing an event study).[2] Damages methodologies including event studies are routinely used in securities class actions because they can separate damages attributable to

---

[2] Defendants argue that predominance was satisfied in *Myriad* only because the court "concluded that 'complex liability issues' predominated over any damages issues." Def. Br. at 8. But *the exact same* "complex liability issues" are present here: whether a statement was "a material misrepresentation or omission"; scienter; "a connection between the [misstatements] and the purchase or sale of a security'"; and "reliance." 2021 WL 5882259 at *7-10. Thus, by Defendants' own calculus, the presence of "complex liability issues" here means common issues predominate.

the alleged fraud from non-fraud related drivers of stock price changes (known as "confounding fac-

tors") and to account for change over time in price inflation.

Nonetheless, Defendants argue that, for the Exchange Act claims, predominance is not met

because Plaintiffs have not presented a viable, classwide methodology for calculating damages con-

sistent with their theory of liability. Def. Br. at 5-6. But this argument fails because it rests on a mis-

application of antitrust law and on unfounded critiques of the proposed damages methodology.

### 1.     Courts resoundingly find *Comcast* satisfied in securities fraud classes.

Defendants' primary argument is that damages cannot be calculated classwide according to

*Comcast Corp. v. Behrend*, an antitrust action alleging a monopoly over regional cable markets. That

argument is resoundingly rejected in securities cases. Def. Br. § I.A (citing 569 U.S. 27 (2013)).[3] *See,*

*e.g.*, Bowen Decl. Ex. B (Federal District Court Decisions Certifying Securities Class Actions and Rejecting

*Comcast* Arguments); *In re Teva Sec. Litig.*, No. 17-cv-558, 2021 WL 872156, at *41 (D. Conn. Mar. 9, 2021)

("Securities class actions rarely have trouble complying with . . . *Comcast* … [I]t is a rare—perhaps even

nonexistent—securities case that raises damages issues that are so individualized as to defeat the predom-

inance of the critical common issues in the case"); *City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent*

*Biosolutions, Inc.*, 322 F. Supp. 3d 676, 692 (D. Md. 2018) ("Defendants do not cite to a single Rule 10(b)-5

securities fraud case, and the Court could not find one, in which the court did not certify the proposed

class based on the class's proposal of a sufficiently explained out-of-pocket damages model when the

plaintiffs relied on a fraud-on-the-market theory of liability"). Unsurprisingly, Defendants cite *zero*

---

[3] *In re Rail Freight Fuel Surcharge Antitrust Litig.* is distinguishable because it is also an antitrust case with a distinct approach to damages calculation and because, in contrast to here, there the plaintiffs offered "*[n]o* damages model" at all. 725 F.3d 244, 253 (D.C. Cir. 2013) (emphasis added).

analogous securities cases denying class certification based on *Comcast*, and this Court should decline their invitation to be an outlier.[4]

Instead, Defendants cite a line of readily distinguishable cases involving issues not present here, principally *In re BP P.L.C. Sec. Litig.*, a case about the Deepwater Horizon oil spill, where plaintiffs moved to certify "pre-" and "post-explosion" subclasses. 2014 WL 2112823, at *11-12 (S.D. Tex. May 20, 2014). For the post-explosion subclass, the *BP* court *accepted* the out-of-pocket approach analogous to that proposed here. *Id.* at *12-14. Defendants ignore that and focus on the pre-explosion subclass which "expressly eschew[ed]" the traditional out-of-pocket damages methodology in favor of a "non-traditional"[5] statistical technique that the court found necessitated "an individualized inquiry into each investor's subjective motivations." *BP*, 2014 WL 2112823, at *4, 11-12; *see* Def. Br. at 9 (discussing *BP*, 2014 WL 2112823, *17); *see also Rougier v. Applied Optoelectronics, Inc.*, No. 4:17-CV-02399, 2019 WL 6111303, at *16 (S.D. Tex. Nov. 13, 2019) (agreeing that in *BP* "the pre-explosion subclass did not seek out-of-pocket damages"). Plaintiffs' use here of the out-of-pocket approach that the *BP* court *approved* for the post-explosion subclass means that the remainder of Defendants' argument regarding the *BP* court's decision concerning a "non-traditional" statistical technique is irrelevant here.

Unsurprisingly, courts routinely reject defendants' invocation of the *BP* pre-explosion reasoning as a basis to deny class certification—and the only opinion in the Tenth Circuit to cite *BP* at class certification is *Sandridge*, which certified the class and cited *BP* only to say defendants' argument regarding the damages model "[did] *not* persuade the Court against finding predominance." 2019 WL

---

[4] Even in antitrust cases, *Comcast*'s reach in this Circuit is limited. *See, e.g.*, *In re Broiler Chicken Grower Antitrust Litig. (No. II)*, No. 6:20-md-02977-RJS-CMR, 2024 WL 2117359, at *28–29 (E.D. Okla. May 8, 2024) (rejecting *Comcast* argument).

[5] *Hatamian v. Advanced Micro Devices, Inc.*, No. 14-cv-00226-YGR, 2016 WL 1042502, at *9 (N.D. Cal. Mar. 16, 2016) (*BP* pre-explosion damages methodology was "non-traditional").

4752268 at *6 (emphasis added).[6] *See also Cape Coral*, 322 F. Supp. 3d at 692 (rejecting *BP* argument);

*Cosby v. KPMG, LLP*, No. 3:16-cv-121-TAV-DCP, 2021 WL 1828114, (E.D. Tenn. May 7, 2021)

(same); *Junge v. Geron Corp.*, No. C 20-00547-WHA, 2022 WL 1002446 (N.D. Cal. Apr. 2, 2022) (same);

*Howard v. Liquidity Servs. Inc.*, 322 F.R.D. 103, 139 (D.D.C. 2017) (holding that even after *BP*, an event

study suffices to show damages are measurable on a classwide basis).[7]

### 2.    Defendants' fact-based arguments do not bar class certification.

With no apt caselaw, Defendants contend Plaintiffs' damages methodology cannot measure arti-

ficial inflation caused by the alleged fraud and instead overestimates damages based on non-fraud related

"confounding factors" that caused the stock price to decline. Def. Br. § I.B.2. Defendants' argument fails

because, as courts readily recognize, Plaintiffs' proposed damages methodology is capable of disaggregating

these factors on a classwide basis.

Dr. Cain expressly states that his methodology can accommodate the need to remove confounding

information from calculations of price inflation. *See* Rebuttal Rep. ¶ 27 ("disaggregat[ion] . . . of confound-

ing information" is present "in virtually every certified securities class action matter," "and . . . such analyses

are determined based upon proof that is common to all class members"); *id.* ¶ 35 (discussing the "well-

accepted valuation techniques" to disaggregate confounding information). Courts have repeatedly ruled

---

[6] Defendants attempt to minimize *SandRidge* because it does not use the phrase "'out-of-pocket' damages." Def. Br. at 8. But while the *Sandridge* expert used slightly different nomenclature, the approach was the same: a damages analysis including an event study to calculate the difference between purchase price and artificial inflation. *See In re Sandridge Energy, Inc. Sec. Litig.*, No. 5:12-cv-01341, 2018 WL 3413414 (W.D. Okla. Feb. 16, 2018) ¶¶ 53-55 (expert report explaining event study framework). And *SandRidge* rejected the same *Comcast* argument raised here. *See* 2019 WL 4752268 at *6 (rejecting *Comcast* argument because methodology could separate damages attributable to the mis-representations from confounding factors and account for change over time in price inflation).

[7] Defendants also cite *Indiana Public Retirement System vs. AAC Holdings, Inc.* (Def. Br. at 6) but, there, plaintiff's expert "omit[ted] any consideration of how to factor in the risk" on which plaintiff based its theory. No. 3:19-cv-00407, 2023 WL 2592134, at *24 (M.D. Tenn. Feb. 24, 2023). In contrast, Dr. Cain addresses that: "[t]o the extent that any portion of a stock price decline following a corrective disclosure is unrelated to Plaintiffs' allegations involving the materialization of concealed risk, this portion can be disaggregated" on a classwide basis. Cain Rep. ¶ 87; *see also* Rebuttal Rep. ¶¶ 25-29.

that damages methodologies like the one Dr. Cain proposes are able to disaggregate the amount of stock price drop attributable to an alleged fraud as opposed to other factors. *Pub. Emps.' Ret. Sys. of Miss. v. Treehouse Foods, Inc.*, No. 16-cv-10632, 2020 WL 919249, at \*9 (N.D. Ill. Feb. 26, 2020) (event studies are "'widely considered an accepted method" for damages "even in the face of confounding information.'"); *In re Allergan PLC Sec. Litig.*, 2021 WL 4077942, at \*15 (S.D.N.Y. September 8, 2021) (rejecting the suggestion "that an event study is incapable of disaggregating the effects of confounding information [because otherwise] nearly every securities fraud class action would fail").

By way of example, Defendants claim that information regarding InnovAge's sanctions should be separated from the market's assessment of how the sanctions would impact its future valuation. Defendants' example reflects a fundamental misunderstanding of stock price valuation: the *reason* the disclosure of sanctions is material to investors is because it bears directly on InnovAge's business prospects. *See* ECF 141-1 ("Opening Rep.") ¶ 87 (stock prices "reflect[] the value of all future cash flows discounted to the present time at a rate that reflects the riskiness of the business and those cash flows"). Neither Defendants nor their expert[8] cite a single economic study or court decision suggesting their proposed distinction is actually confounding information rather than the stock market's reaction to new and unexpected information that InnovAge's new enrollments were being frozen because it was unable to provide care to existing participants. Even Defendants' out-of-Circuit caselaw does not support their point. *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse First Bos.* is not a class certification decision; it was a summary judgment and *Daubert* decision examining the *application* of, again, a non-traditional methodology, not whether one existed. *See* 853 F. Supp. 2d 181, 190-91 (D. Mass. 2012) (granting motion to

---

[8] Notably, Defendants do not point to, and Plaintiffs are not aware of, any court's accepting Defendants' expert's opinion on whether a damages methodology can be applied classwide. In contrast, Dr. Cain's qualifications, opinions, and same proposed methodology offered here have been accepted repeatedly. *See, e.g.*, *In re Under Armour Sec. Litig.*, 631 F.Supp.3d 285, 311-12; *Bond v. Clover Health Inv., Corp.*, No. 3:21-cv-00096, 2023 WL 1999859, at \*11 (M.D. Tenn. Feb. 14, 2023); *Malriat v. QuantumScape Corp.*, No. 3:21-CV-00058-WHO, 2022 WL 17974629, at \*10 (N.D. Cal. Dec. 19, 2022).

exclude expert report for failure to disaggregate confounding factors; instead of a "rigorous" approach, expert simply read news articles and made "subjective" and "unreasonable judgments" as to which news caused stock price movement and which did not). Defendants also cite irrelevant discussion from *In re Petrobras Sec.* about what evidence supports market efficiency—an element of class certification that Plaintiffs established here and Defendants did not contest. *See* 862 F.3d 250 (2d Cir. 2017); *see* Br. at 10-12 (establishing reliance through showing of market efficiency). And if it were confounding information, the proposed damages methodology could handle it.

As another example, Defendants claim Plaintiffs' damages model cannot separate the artificial inflation caused by actionable statements from statements found to be false but nevertheless non-actionable. Def. Br. at 11-12. Assuming the non-actionable statement created confounding information, it can be dealt with by the proposed damages methodology. Cain Rep. ¶ 85; Rebuttal Rep. ¶ 27, ¶¶ 35-37 (explaining how methodology can disaggregate confounding factors). *See supra* at 5-6 (cases finding event studies can disaggregate confounding factors). Defendants cite no court opinions denying class certification because of damages issues related to only some alleged misstatements surviving motion to dismiss.

As a third example, Defendants claim that Plaintiffs' damages model does not account for changes in artificial inflation over time (Def. Br. at 13-14) but Dr. Cain's opening report *expressly acknowledges* that "artificial inflation may [vary] throughout the Class Period" and *explains* how his model allows for the factfinder to account for such variation. *See, e.g.*, Cain Rep. ¶¶ 84-85; Rebuttal Rep. ¶¶ 31-33. That Defendants fail to cite a single case on this point reveals the weakness of this argument. Indeed, courts find that similar damages methodologies can address changes in the amount of artificial inflation in a stock price over time. *See, e.g.*, *SandRidge*, 2019 WL 4752268, at *6 (holding that damages methodology including event study could account for changes in artificial inflation over time and noting defendants' challenges were best saved for summary judgment); *Weiner v. Tivity Health, Inc.*, 334 F.R.D. 123, 138 (M.D. Tenn. 2020) (holding that model can "account for time-varying inflation" at class certification).

7

Together, Defendants' three examples amount to criticism that Dr. Cain has not yet completed an event study or performed a full damages analysis—but that is because there is no such requirement at class certification, nor would such an approach be possible before discovery is complete. The "damages formula" and identification of the "inputs to the damages formula" are distinct (Rebuttal Rep. at ¶ 19), and the law is crystal clear that only the former must be provided now. *See In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1238 (D.N.M. 2012) (the need to prove damages eventually does not bar class certification) (quoting *Esplin v. Hirschi*, 402 F.2d 94, 100 (10th Cir. 1968)); *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 798 (10th Cir. 2019) (class certification requires showing that expert "*can* determine damages on a class[ ]wide basis") (emphasis added); *Pluralsight*, 2023 WL 8936277 at *11 (parties "need only show a common, classwide *method* for determining individual damages") (emphasis added).

Similarly, it is neither possible nor required to perform a full loss causation analysis at this stage. Thus, courts routinely find that a demand like Defendants', for detailed disaggregation of "confounding information" from the impact of the fraud on the stock price, is not appropriate at class certification because it amounts to a "loss causation argument in disguise." *In re Vale S.A. Sec. Litig.*, No. 19-CV-526-RJD-SJB, 2022 WL 122593 at *19 (E.D.N.Y. Jan. 11, 2022); *see also Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 475 (2013) (loss causation need not be adjudicated for a class to be certified); *Pirnik v. Fiat Chrysler Autos., N.V.*, 327 F.R.D. 38, 46 (S.D.N.Y. 2018) (plaintiffs need not "demonstrate that any price impact was due to the prior misrepresentation alone" at class certification); *TreeHouse Foods, Inc.*, 2020 WL 919249, at *10 (disaggregation challenges "need not be resolved before the class is certified"); *Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*, No. CV 20-4660-KSM, 2023 WL 7285167, at *20, 23 (E.D. Pa. Nov. 3, 2023) (damages disaggregation "does not impede class certification"); *In re Apple, Inc., Sec. Litig.*, No. 19-CV-2033-YGR, 2022 WL 354785 at *12 (N. D. Cal. Feb. 4, 2022) (attacks on fit between corrective disclosures and alleged misrepresentations are "attacks on loss causation").

### B.    The proposed class representatives are adequate under Rule 23(a).

In the Tenth Circuit, an adequate class representative must be able to "prosecute the action vigorously on behalf of the class[.]" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002). While this requires that a plaintiff be "knowledgeable as to the status and underlying legal basis of the action," *Jordan v. Maxim Healthcare Servs., Inc.*, No. 15-CV-01372-KMT, 2017 WL 4407940, at *4 (D. Colo. July 6, 2017), "[i]n the context of complex securities litigation, attacks on the adequacy of the class representative based on the representative's ignorance or credibility are rarely appropriate," *In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, 318 F.R.D. at 445. *See also Brokop v. Farmland Partners Inc.*, No. 18-CV-02104-DME-NYW, 2021 WL 4913970, at *2 (D. Colo. Sept. 30, 2021) (any doubt regarding adequacy should be resolved in favor of certification).

Plaintiffs are sophisticated institutional investors[9] who manage billions in assets. Each Plaintiff volunteered representatives who testified that they: (i) understood they were class representatives (Bowen Decl. Ex. C ("El Paso Tr.") 123:4-13; Ex. D ("San Antonio-Jensen Tr.") 52:21-53:5; Ex. F ("Indiana Tr.") 174:17-22); (ii) met with counsel before their depositions (El Paso Tr. 19:9-19:25; Bowen Decl. Ex. E ("San Antonio-Schott Tr.") 19:5-17; San Antonio-Jensen Tr. 16:11-17:7; Indiana Tr. 40:13-15); and (iii) regularly review key case documents (El Paso Tr. 128:15-21; San Antonio-Jensen Tr. 22:1-9; Indiana Tr. 42:15-19). Plaintiffs have also collected, reviewed, and produced 898 documents totaling thousands of pages of documents; by contrast, Defendant InnovAge has produced only 233 documents in the same span. *See City P'ship*, 213 F.R.D. at 584-85 (plaintiffs were adequate because they understood case was a class action, prepared with counsel for depositions, and reviewed key documents); *see also Jordan*, 2017 WL 4407940, at *4 (plaintiff who was involved in litigation for years, agreed to be class representative, answered discovery requests, and agreed to appear at deposition was adequate).

---

[9] Institutional plaintiffs are favored as class representatives because they bring "greater expertise and resources[.]" *City P'ship Co. v. Jones Intercable, Inc.*, 213 F.R.D. 576, 585–86 (D. Colo. 2002).

Plaintiffs' exemplary oversight of counsel and participation in this litigation leave Defendants with no argument on adequacy other than that, at their depositions, Plaintiffs could have said more about the allegations in this case. *See* Def. Br. at 15. But the record makes clear that Plaintiffs are "knowledgeable as to the status and underlying legal basis of the action." In particular, Plaintiffs testified:

- **El Paso:** "InnovAge is a healthcare company [that] initiated a IPO in March of 2021. … During the class period, of June till, I believe September, information about the audits that occurred in Sacramento and Colorado was made public, which was not provided … at the IPO in March, and therefore it led to a 78 percent drop in the value of the stock, becoming one of the fifth worst IPO in 2021, therefore it created the loss that was advised by our outside counsel of the $563,000 to El Paso." El Paso Tr. 86:14-25. "Those audits … obviously there was inadequacies in InnovAge and so therefore they were conducted." *Id.* 103:5-7. "[B]ecause of the inadequacies, and then their -- those audits then stopping InnovAge from accepting any new members, which obviously affects their ability to grow, which then affects their stock price." *Id.* 103:12-15.

- **San Antonio:** "[D]efendants in this case [are] … InnovAge, the company, along with two of its officers, several of its directors, and two private equity firms and then 11 underwriters." San Antonio-Jensen Tr. 23:16-19. "[T]he claims against InnovAge … are claims under the Securities Act and the Exchange Act regarding misstatements and omissions" (*id.* 22:20-24) "regarding the company['s] ability to operate in an effective way and in compliance with regulations. And those misstatements led to significantly overpriced stock prices that the pension fund was victimized by." *Id.* 27:5-9. "[InnovAge] had an IPO that started out at $20 a share, and within seven months it dropped down to $6, and [San Antonio] lost $700,000." San Antonio-Schott Tr. 58:23-59:1.

- **Indiana:** "Indiana's knowledge is that there was severe staffing shortages and substandard care and delays in providing care and poor outcome from the care provided," Indiana Tr. 81:22-24, "there was an audit in Sacramento, California, and Colorado by regulators related to InnovAge," *id.* at 86:14-15, and "there was a shortage of staffing and overloaded – overloaded case management," *id.* at 87:25-88:1.

*See, e.g.*, *Schwartz, v. Celestial Seasonings, Inc.*, 178 F.R.D. 545, 552 (D. Colo 1998) (plaintiff adequate who understood "the nature of [the] alleged deception and how it caused her to overpay for her stock").

Taken together, Plaintiffs' vigorous prosecution of the case, oversight of counsel, and knowledge of the case history and the basis for the claims easily satisfies the adequacy requirement of Rule 23 (a)(4).

## III.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be granted.

10

Dated: October 9, 2024

Respectfully submitted,


/s/ Molly J. Bowen
COHEN MILSTEIN SELLERS & TOLL PLLC
Molly Bowen
Julie Goldsmith Reiser
Jan E. Messerschmidt
Brendan R. Schneiderman
1100 New York Avenue, N.W., Fifth Floor
Washington, D.C. 20005
Tel.: (202) 408-4600
Fax.: (202) 408-4699
mbowen@cohenmilstein.com
jreiser@cohenmilstein.com
jmesserschmidt@cohenmilstein.com
bschneiderman@cohenmilstein.com

Carol V. Gilden
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Tel.: (312) 357-0370
Fax.: (312) 357-0369
cgilden@cohenmilstein.com

Manuel J. Dominguez
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Tel.: (561) 515-1400
Fax.: (561) 515-1401
jdominguez@cohenmilstein.com

*Lead Counsel for Lead Plaintiffs*

FAIRFIELD AND WOODS, P.C.
Cecil E. Morris
Adrian P. Castro
1801 California Street, Suite 2600
Denver, CO 80202
Tel.: (303) 830-2400
Fax.: (303) 830-1033
cmorris@fwlaw.com
acastro@fwlaw.com

*Liaison Counsel for Lead Plaintiffs*

11

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2024, I electronically filed the foregoing with the Clerk of the

Court via ECF, which in turn served notice on all counsel of record.


Dated:    October 9, 2024                    */s/ Molly J. Bowen*
                                             Molly J. Bowen