**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 21-cv-02770-WJM-SKC

EL PASO FIREMEN & POLICEMEN'S PENSION FUND, SAN ANTONIO FIRE & POLICE PENSION FUND, AND INDIANA PUBLIC RETIREMENT SYSTEM, individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

INNOVAGE HOLDING CORP.,
MAUREEN HEWITT,
BARBARA GUTIERREZ,
JOHN ELLIS BUSH,
ANDREW CAVANNA,
CAROLINE DECHERT,
EDWARD KENNEDY, JR.,
PAVITHRA MAHESH,
THOMAS SCULLY,
MARILYN TAVENNER,
SEAN TRAYNOR,
RICHARD ZORETIC,
WCAS MANAGEMENT CORPORATION,
WCAS MANAGEMENT, L.P.,
WCAS MANAGEMENT, LLC,
APAX PARTNERS US, LLC,
TCO GROUP HOLDINGS, L.P.,
J.P. MORGAN SECURITIES LLC,
BARCLAYS CAPITAL INC.,
GOLDMAN SACHS & CO. LLC,
CITIGROUP GLOBAL MARKETS INC.,
ROBERT W. BAIRD & CO. INCORPORATED,
WILLIAM BLAIR & COMPANY, L.L.C.,
PIPER SANDLER & CO.,
CAPITAL ONE SECURITIES, INC.,
LOOP CAPITAL MARKETS LLC,
SIEBERT WILLIAMS SHANK & CO., LLC, and
ROBERTS & RYAN INVESTMENTS, INC.,

      Defendants.

---

**DEFENDANT TCO GROUP HOLDINGS, L.P.'S ANSWER TO SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

---

Defendant TCO Group Holdings, L.P. ("TCO"), by its undersigned counsel, hereby answers as to itself the Second Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Amended Complaint") in the above-captioned proceeding. For the avoidance of doubt, any allegation not expressly admitted herein by TCO is denied. Any denial that TCO asserts below based on a lack of knowledge or information is further made with the explicit assertion that TCO and related parties have taken all appropriate steps in good faith to fully comply with their legal obligation, if any, to be diligently informed as to the matters alleged in the Amended Complaint. Further, TCO is not required to respond to unnumbered preamble statements, glossaries of terms, headings, or sub-headings of the Amended Complaint, but, to the extent any response is required, unless otherwise expressly stated, TCO denies the allegations and characterizations of allegations set forth in the unnumbered preamble statements, glossaries of terms, headings, and sub-headings of the Amended Complaint.

On December 21, 2023, this Court issued an Order Granting in Part and Denying in Part Defendants' Joint Motion to Dismiss Amended Class Action Complaint. The Court dismissed claims based on a majority of the misstatements alleged in the Amended Complaint and found that Plaintiffs failed to allege control person liability against John Ellis Bush, Andrew Cavanna, Caroline Dechert, Edward Kennedy, Jr., Pavithra Mahesh, Thomas Scully, Marilyn Tavenner, Sean Traynor and Richard Zoretic (the "Director Defendants") (together, the "Dismissed Claims"). Accordingly, portions of the Amended Complaint are inoperative and do not require a response. TCO answers the allegations of the like-numbered paragraphs and subparagraphs of the Amended Complaint as follows:

1.      TCO admits that Plaintiffs seek to bring this federal securities action against InnovAge, Maureen Hewitt ("Hewitt"), Barbara Gutierrez ("Gutierrez"), WCAS Management Corporation, WCAS Management, L.P., WCAS Management, LLC (together, "WCAS"), Apax Partners US, LLC ("Apax"), TCO, the underwriters in InnovAge's IPO and members of InnovAge's Board of Directors as of the completion of InnovAge's IPO, and otherwise deny the remaining allegations in Paragraph 1 and refer the Court to InnovAge's Schedule 14(a) Proxy Statement for a description of the investment vehicle through which entities affiliated with WCAS and Apax and certain other holders hold their investment.

2.      TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of Paragraph 2, and on that basis denies them. TCO admits that InnovAge completed an initial public offering ("IPO") in March 2021, but otherwise denies the allegations in the second sentence of Paragraph 2.  The third sentence of Paragraph 2 purports to quote from and characterize InnovAge's Offering Documents, which are documents that speak for themselves.[1]  TCO respectfully refers the Court to the Offering Documents for their complete and accurate contents, and otherwise denies the allegations in the third sentence of Paragraph 2.  TCO denies the allegations in the fourth sentence of Paragraph 2.

3.      TCO admits that InnovAge's 2023 Annual Report states that (a) InnovAge focuses on providing all-inclusive care to frail, high-cost, dual-eligible seniors; (b) InnovAge directly

---

[1] The Offering Documents, as defined in Paragraph 253 of the Amended Complaint, include InnovAge's Registration Statement on Form S-1, filed with the Securities and Exchange Commission ("SEC") on February 8, 2021, First Amended Registration Statement, filed with the SEC on February 24, 2021, Second Amended Registration Statement, filed with the SEC on February 26, 2021, Third Amended Registration Statement, filed with the SEC on March 3, 2021, and Prospectus, filed with the SEC on March 3, 2021.

contracts with government payors, such as Medicare and Medicaid, through PACE; (c) approximately 99.8% and 99.7% of InnovAge's revenue for the years ended June 30, 2023 and 2022, respectively, was derived from capitation agreements with government payors in which InnovAge receives fixed per member, per month ("PMPM") fees; (d) InnovAge receives a capitated risk-adjusted payment to manage the totality of a participant's medical care across all settings; and (e) InnovAge's in-home care capabilities are designed to enable its participants to live safely in their homes and avoid nursing homes to the extent safely possible, but otherwise lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 3, and on that basis denies them.

4.    The first sentence of Paragraph 4 is too vague as to time to permit a response and TCO therefore denies it on that basis, however, by way of further answer, TCO states that based on an analysis of available data by the National PACE Association in July 2023, which data TCO has not independently verified but assumes to be accurate, costs under the Program of All-inclusive Care for the Elderly ("PACE") were estimated to be 15% lower on average than for a comparable dual-eligible population aged 65 and older under Medicaid.  TCO further admits that InnovAge's 2023 Annual Report states that (a) InnovAge receives 100% of the pooled capitated payment to directly provide or manage the healthcare needs of its participants; (b) InnovAge's vertically integrated care model and full-risk contracts incentivize it to coordinate and manage all aspects of a participant's health; (c) InnovAge's care model reduces unnecessary or avoidable medical spend; and (d) InnovAge's capitated payment model gives it the flexibility to invest in home modifications, such as ramps, grab bars and shower chairs, to reduce falls and make the home safer

-3-

for its seniors, but otherwise lacks the knowledge or information sufficient to form a belief as to

the truth or falsity of the remaining allegations in Paragraph 4, and on that basis denies them.

5.      TCO lacks the knowledge or information sufficient to form a belief as to the truth

or falsity of the allegations in the first sentence of Paragraph 5, and on that basis denies them.

TCO admits that InnovAge's Offering Documents and press releases indicate that Hewitt served

as InnovAge's CEO from 2006-2021 and that InnovAge's Third Amended Registration Statement,

filed with the SEC on March 3, 2021, states that in 2016 Hewitt had the vision to convert InnovAge

from a not-for-profit entity to a for-profit entity and this conversion allowed InnovAge to increase

its agility in the marketplace and access the required capital to grow its footprint nationally and

reach more participants, but otherwise denies the allegations in the second sentence of Paragraph 5.

TCO further admits that (a) Thomas Scully was the former Administrator of the Centers for

Medicare & Medicaid Services ("CMS") under President George W. Bush and is a general partner

of the investment advisor TCO Management Corporation, and (b) InnovAge converted to a for-

profit company in 2016.  TCO denies or lacks knowledge or information sufficient to form a belief

as to the truth or falsity of the remaining allegations in Paragraph 5, and on that basis denies them,

except respectfully refers the Court to the transaction documents through which entities affiliated

with WCAS invested in InnovAge in 2016 for a complete and accurate description of the

transaction and entities involved.

6.      TCO admits that (a) a *Modern Healthcare* article dated January 6, 2017, contains

quotes attributed to Scully and respectfully refers the Court to that document for its complete and

accurate contents, (b) InnovAge completed an IPO in March 2021, (c) InnovAge was a nonprofit

company prior to converting to a for-profit company in 2016, (d) Hewitt served as InnovAge's

CEO at the time it converted to a for profit entity and at the time of its IPO, (e) InnovAge's Third Amended Registration Statement, filed with the SEC on March 3, 2021, states that for the fiscal year ended June 30, 2020, InnovAge's participant census was approximately 6,400 across its 16 centers in five states, (f) InnovAge's 2016 Annual Report states that the total number of InnovAge PACE participants grew in fiscal year 2016 to 3,155 and its total revenue was $231,807,412, and (g) InnovAge's Third Amended Registration Statement, filed with the SEC on March 3, 2021, states that InnovAge provided care for approximately 6,400 participants during the year ended June 30, 2020 and its total revenue was $567.2 million, but otherwise denies the remaining allegations in Paragraph 6.

7.      TCO denies the allegations in Paragraph 7, which do not present a fair and complete description of the matters described therein.  By way of further answer, however, TCO admits that in June 2020, Ignite Aggregator LP, TCO Group Holdings, Inc. and the equity holders of TCO Group Holdings, Inc. entered into a Securities Purchase Agreement pursuant to which the equity holders of TCO Group Holdings, Inc. sold a portion of their equity interest in InnovAge to Ignite Aggregator LP.  TCO respectfully refers the Court to InnovAge's Third Amended Registration Statement, filed with the SEC on March 3, 3021, for a complete description of Ignite Aggregator LP, TCO and their respective affiliations with Apax and WCAS.

8.      TCO admits that InnovAge's IPO was launched in March 2021 through a syndicate of 11 underwriters, but otherwise denies the allegations in Paragraph 8, which do not present a fair and complete description of the matters described herein, except respectfully refers the Court to InnovAge's Offering Documents for a complete and accurate statement of their contents.

9. TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of Paragraph 9, and on that basis denies them. TCO denies the remaining allegations in Paragraph 9.

10. The first sentence of Paragraph 10 purports to quote from and characterize InnovAge's Offering Documents, which are documents that speak for themselves. TCO respectfully refers the Court to the Offering Documents for their complete and accurate contents, and otherwise denies the allegations in the first sentence of Paragraph 10. The allegations in the second sentence of Paragraph 10 constitute legal conclusions, to which no response is required. To the extent a response is required, TCO admits that InnovAge's stock price for the IPO was $21 per share, the price at the close of trading on March 4, 2021, was $24.20 and the price at the close of trading on March 12, 2021, was $25.98, but otherwise denies the allegations in the second sentence of Paragraph 10. TCO denies the allegations in the third sentence of Paragraph 10, which are too vague to permit a response.

11. TCO admits that (a) on September 17, 2021, CMS notified InnovAge that it was suspending InnovAge Sacramento's enrollment of new Medicare beneficiaries under its contract number H2368, (b) InnovAge held an earnings call on September 23, 2021, and (c) InnovAge's stock was priced at $13.85 per share at the open of trading on September 20, 2021, InnovAge's stock was priced at $12.71 per share at the close of trading on September 20, 2021, and its stock was priced at $6.76 per share at the close of trading on September 23, 2021, and otherwise denies the remaining allegations in Paragraph 11, except respectfully refers the Court to CMS's Notice of Imposition of Sanction to Suspend Enrollment of Programs of All-inclusive Care for the Elderly

(PACE) participants into contract number: H2368 and a transcript of InnovAge's September 21, 2021 earnings conference call for a complete and accurate statement of their contents.

12.    TCO admits that on December 23, 2021, InnovAge issued a press release and filed with the SEC a Form 8-K announcing that CMS had determined to suspend new enrollments at InnovAge's Colorado centers and respectfully refers the Court to the press release and Form 8-K for a complete and accurate statement of their contents, and otherwise denies the allegations in the first sentence of Paragraph 12.  TCO admits that InnovAge's stock was priced at $8.25 per share at the close of trading on December 22, 2021, and $5.31 per share at the close of trading on December 23, 2021, but otherwise denies the allegations in the second sentence of Paragraph 12.

13.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 13 and on that basis denies them.  TCO admits that the second sentence of Paragraph 13 purports to quote from and characterize a December 23, 2021 report published by William Blair, which is a document that speaks for itself.  TCO respectfully refers the Court to that document for a complete and accurate statement of its contents, and otherwise denies the allegations in Paragraph 13.

14.    TCO denies the allegations in the first sentence of Paragraph 14.  The second sentence of Paragraph 14 purports to characterize a document, Summary of Findings - InnovAge Colorado PACE Complaint Investigation, from the Colorado Department of Health Care Policy and Financing ("HCPF"), which is a document that speaks for itself.  TCO respectfully refers the Court to that document for a complete and accurate statement of its contents, and otherwise denies the allegations in the second sentence of Paragraph 14.

15.     TCO admits that InnovAge held an earnings conference call on May 10, 2022, and otherwise denies the allegations in Paragraph 15, which do not present a fair and complete description of the matters described therein, except respectfully refers the Court to a transcript of the May 10, 2022 earnings conference call for a complete and accurate statement of its contents.

16.     TCO admits that InnovAge held an earnings conference call on May 10, 2022, and otherwise denies the allegations in Paragraph 16, which do not present a fair and complete description of the matters described therein, except respectfully refers the Court to a transcript of the May 10, 2022 earnings conference call for a complete and accurate statement of its contents.

17.     The allegations in Paragraph 17 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 17.

18.     The allegations in Paragraph 18 constitute legal conclusions, to which no response is required.

19.     The allegations in Paragraph 19 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO admits the allegations in Paragraph 19.

20.     The allegations in the first sentence of Paragraph 20 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO admits the allegations in the first sentence of Paragraph 20.  The allegations in the second sentence of Paragraph 20 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO admits that InnovAge's principal executive offices are located in Denver, Colorado, but otherwise denies the allegations in the second sentence of Paragraph 20.

21.     The allegations in Paragraph 21 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 21.

22.     TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 22, and on that basis denies them.

23.     TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 23, and on that basis denies them.

24.     TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 24, and on that basis denies them.

25.     The allegations in Paragraph 25 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 25.

26.     As to the allegations in the first, third, fourth, sixth and seventh sentences of Paragraph 26, TCO admits that (a) InnovAge's Third Amended Registration Statement, filed with the SEC on March 3, 2021, states that InnovAge is the leading healthcare delivery platform by number of participants focused on providing all-inclusive, capitated care to high-cost, dual-eligible seniors and it directly contracts with government payors, such as Medicare and Medicaid, through PACE; (b) InnovAge's Third Amended Registration Statement, filed with the SEC on March 3, 2021, states that InnovAge's principal executive office is located in Denver, Colorado; (c) InnovAge's press release dated March 4, 2021 states that InnovAge shares were expected to begin trading on Nasdaq under the ticker symbol "INNV" on March 4, 2021; and (d) InnovAge's press release dated March 12, 2021, states that underwriters of InnovAge's previously announced IPO of 16,666,667 shares of its common stock exercised their option to purchase an additional 2,329,234 shares of common stock from InnovAge at the initial public offering price of $21.00 per share, less underwriting discounts and commissions and, including the exercise of the over-allotment option, InnovAge issued a total of 18,995,901 shares, for gross proceeds of

approximately $399 million before deducting underwriting discounts and commissions. TCO further admits that (a) InnovAge's Third Amended Registration Statement, filed with the SEC on March 3, 2021, states that TCO Group Holdings, Inc. and certain wholly-owned subsidiaries were formed as for-profit corporations effective May 13, 2016, for the purpose of purchasing all the outstanding common stock of Total Community Options, Inc. d/b/a InnovAge, which was formed in May 2007, (b) InnovAge's Third Amended Registration Statement, filed with the SEC on March 3, 2021, states that in connection with this purchase, InnovAge and certain of its subsidiaries converted from not-for-profit organizations to for-profit corporations, (c) InnovAge's Form 10-K, filed with the SEC on September 22, 2021, states that in connection with the IPO in March 2021, InnovAge changed its name from TCO Group Holdings, Inc. to InnovAge Holding Corp., (d) the IPO was conducted pursuant to a registration statement that was filed with the SEC on February 8, 2021, and an incorporated prospectus that registered 19,166,667 shares of InnovAge common stock for sale to the public and (e) InnovAge's 2021 Annual Report states that as of September 20, 2021, there were 135,516,513 shares of InnovAge common stock outstanding. TCO otherwise denies or denies knowledge sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 26 and therefore denies them.

27. TCO admits that certain entities affiliated with WCAS have been involved with private equity since 1979 and focus on investing in the technology and healthcare industries, primarily in the United States. TCO denies the existence of an entity called "Welsh, Carson Anderson & Stowe." TCO denies the rest of the allegations in the first sentence of Paragraph 27. TCO admits that certain entities affiliated with WCAS raised capital across at least 18 partnerships and invested in more than 170 companies but denies the existence of an entity called "Welsh,

Carson Anderson & Stowe" and denies the remaining allegations in the second sentence of Paragraph 27. TCO denies the existence of an entity called "Welsh, Carson Anderson & Stowe" and denies the allegations in the third sentence of Paragraph 27, but respectfully refers the Court to the transaction documents pursuant to which certain entities affiliated with WCAS invested in InnovAge in 2016 for a complete and accurate description of the transaction and entities involved.

28.    TCO admits that (a) WCAS Management Corporation and WCAS Management, L.P. serve as investment managers to certain related private investment partnerships or limited liability companies organized to make private equity investments in equity securities ("Partnerships") that are managed by general partners associated with WCAS, (b) WCAS Management Corporation and WCAS Management, L.P. are parties to a sub-advisory agreement, pursuant to which WCAS Management, L.P. serves as sub-adviser with respect to certain partnerships for which WCAS Management Corporation serves as investment manager, (c) WCAS Management, L.P. employs and compensates certain individuals who work for WCAS Management, L.P. TCO denies the existence of an entity called "Welsh, Carson Anderson & Stowe" and denies the remaining allegations in Paragraph 28, or otherwise lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 28, and on that basis denies them.

a)    TCO admits that WCAS Management Corporation is a registered investment adviser. WCAS Management, L.P. employs and compensates certain individuals who work for WCAS Management, L.P., including individuals with the title general partner who supervise and direct junior employees and staff of WCAS. TCO denies the rest of the allegations in the first sentence of Paragraph 28(a). TCO admits that WCAS Management Corporation is a

party to the Director Nomination Agreement attached as Exhibit 10.3 to InnovAge's Third Amended Registration Statement, filed with the SEC on March 3, 3021.  TCO further admits that the Director Nomination Agreement is an agreement among InnovAge and eight separate entities—Ignite Aggregator LP (or the "Apax Sponsor"); Welsh, Carson, Anderson & Stowe XII, L.P.; Welsh, Carson, Anderson & Stowe XII Delaware, L.P.; Welsh, Carson, Anderson & Stowe XII Delaware II, L.P.; Welsh, Carson, Anderson & Stowe XII Cayman, L.P.; WCAS XII Co-Investors LLC; WCAS Management Corporation; and WCAS Co-Invest Holdco, L.P. (the "WCAS Sponsors," and together with the Apax Sponsor, the "Sponsors")—associated with Apax or WCAS that are entitled, in exchange for undertaking the IPO to nominate a certain number of nominees for election to InnovAge's board depending on the number of shares of InnovAge's common stock that the Sponsors owned after the IPO.  TCO respectfully refers the Court to the Director Nomination Agreement, for a complete description of the agreement, and otherwise denies the allegations in the second sentence of Paragraph 28(a).  TCO denies that WCAS Management Corporation is primarily owned by the WCAS Board, but otherwise admits the allegations in the third sentence of Paragraph 28(a).  TCO denies that WCAS Management Corporation has over $15 million in regulatory assets under management, but otherwise admits the allegations in the fourth sentence of Paragraph 28(a).

b)      TCO admits the allegations in the first sentence of Paragraph 28(b).  As to the second sentence of Paragraph 28(b), TCO admits that WCAS Management, L.P. is an affiliate of WCAS Management Corporation and serves as sub-adviser with respect to certain Partnerships for which WCAS Management Corporation serves as investment manager, pursuant to a sub-advisory agreement. The remaining allegations in the second sentence of Paragraph 28(b) are too

vague to permit a response and TCO on the basis denies them. TCO admits that the third sentence of Paragraph 28(b) and Footnote 2 thereto appear to characterize WCAS Management Corporation and WCAS Management, L.P.'s Part 2A of Form ADV, The Brochure, and the Form ADV General Instructions, which are documents that speak for themselves. TCO respectfully refers the Court to those documents for a complete and accurate statement of their contents, and otherwise denies the allegations in the third sentence of Paragraph 28(b) and Footnote 2. The allegations in the fourth sentence of paragraph 28(b) constitute legal conclusions, to which no response is required. To the extent a response is required, TCO denies that WCAS Management, L.P. is controlled by the WCAS Management Corporation Board, as defined in the Second Amended Complaint. TCO denies the remaining allegations in the fourth sentence of Paragraph 28(b), except admits that WCAS Management L.P. is controlled by eight direct owners and executive officers designated as "Control Persons" as defined in the Form ADV Glossary of Terms.

c)     TCO admits the allegations in the first sentence of Paragraph 28(c). TCO further admits that WCAS Management, LLC is the sole general partner of WCAS Management, L.P. but otherwise denies the allegations of the second sentence of Paragraph 28(c).

29.     The allegations in Paragraph 29 constitute definitions of terms in the Amended Complaint to which no response is required. To the extent a response is required, TCO admits the allegation in Paragraph 29.

30.     TCO denies the allegations in Paragraph 30, except admits that WCAS Management Corporation and WCAS Management, L.P. serve as investment managers to Partnerships that invest in growth-oriented companies within the healthcare and technology industries and that WCAS Management Corporation and WCAS Management, L.P. provide

consulting services to companies in which the Partnerships invest.  TCO further admits that with regard to certain Partnerships, WCAS Management Corporation and WCAS Management, L.P. may receive management fees for providing administrative services.  TCO further admits that the Partnerships that WCAS Management Corporation and WCAS Management, L.P. advise operate as pooled investment vehicles.

31.    As to the first sentence of Paragraph 31, TCO admits that the Partnerships for which WCAS Management Corporation and WCAS Management, L.P. serve as investment managers pursue investment strategies that include buying securities of growth-oriented businesses in healthcare and technology, which are referred to as a Partnership's "portfolio companies," and otherwise denies the remaining allegations in the first sentence of Paragraph 31.  As to the second sentence of Paragraph 31, TCO admits that the general partner of the Partnerships advised by WCAS Management Corporation and WCAS Management, L.P.  generally receive a carried interest allocation of profits on distributions derived from the recapitalization or disposition of investments or securities after the limited partners of the Partnership receive a preferred return, pursuant to an Agreement of Limited Partnership for the respective Partnership.  TCO denies the remaining allegations in the second sentence of Paragraph 31.

32.    As to the first sentence of Paragraph 32, TCO admits that (a) Welsh, Carson, Anderson & Stowe XII, L.P. is a Delaware limited partnership founded in 2014 and (b) Welsh, Carson, Anderson & Stowe XII, L.P., together with the other Sponsors, indirectly owns shares of InnovAge's common stock.  TCO otherwise denies the remainder of the allegations in the first sentence of Paragraph 32.  As to Footnote 3 in Paragraph 32, TCO admits that the other WCAS-affiliated Sponsors include Welsh, Carson, Anderson & Stowe XII Delaware, L.P., Welsh, Carson,

Anderson & Stowe XII Delaware II, L.P., Welsh, Carson, Anderson & Stowe XII Cayman, L.P., as well as WCAS XII Co-Investors LLC, a co-investment holding company, and WCAS Co-Invest Holdco, L.P., an employee and consultant co-investment vehicle. TCO otherwise denies the remainder of the allegations in Footnote 3. TCO admits that the second sentence of Paragraph 32 purports to characterize the Form ADV, which is a document that speaks for itself. TCO respectfully refers the Court to that document for a complete and accurate statement of its contents, and otherwise denies the allegations in the second sentence of Paragraph 32. As to the third sentence of Paragraph 32, TCO admits that the general partner of Welsh, Carson, Anderson & Stowe XII, L.P. is WCAS XII Associates, LLC, but the remaining allegations are too vague to permit a response and TCO denies them on that basis. TCO denies the allegations of the fourth sentence of Paragraph 32, except admits that WCAS Management Corporation and WCAS Management, L.P. serve as investment managers for Welsh, Carson, Anderson & Stowe XII, L.P.; Welsh, Carson, Anderson & Stowe XII Delaware, L.P.; Welsh, Carson, Anderson & Stowe XII Delaware II, L.P.; Welsh, Carson, Anderson & Stowe XII Cayman, L.P.; WCAS XII Co-Investors LLC; and WCAS Co-Invest Holdco, L.P. As to the first sentence of Footnote 4 of Paragraph 32, TCO admits that the managing members of WCAS XII Associates at the time of the last ADV filing are Thomas A. Scully, Sean Traynor, Anthony deNicola, D. Scott Mackesy, Brian Regan, Michael Donovan, Eric Lee, Christopher Hooper, Christopher Solomon, Edward Sobol, Gregory Lau, Frances Higgins, Nicholas O'Leary, Jonathan Rather and Ryan Harper (together, the "WCAS GP"), and otherwise denies the remaining allegations. TCO admits the allegations in the second sentence of Footnote 4 of Paragraph 32. The allegations in the third sentence of Footnote 4 of Paragraph 32 constitute legal conclusions to which no response is required. To the extent a

-15-

response is required, TCO admits that WCAS XII Associates, LLC is the general partner of WCAS XII Associates Cayman, L.P. and that WCAS XII Associates Cayman, L.P. is the general partner of Welsh, Carson, Anderson & Stowe XII Cayman, L.P. and Welsh, Carson, Anderson & Stowe XII Delaware, L.P., but otherwise denies the allegations in the third sentence of Footnote 4 of Paragraph 32. The allegations of the fourth sentence of Footnote 4 of Paragraph 32 constitute legal conclusions to which no response is required. To the extent any response is required, TCO denies the allegations of the fourth sentence of Footnote 4 of Paragraph 32. The allegations in the fifth sentence of Footnote 4 of Paragraph 32 constitute legal conclusions to which no response is required. To the extent a response is required, TCO admits the allegations in the fifth sentence of Footnote 4 of Paragraph 32.

33.    The allegations in the first sentence of Paragraph 33 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations in the first sentence of Paragraph 33 are too vague to permit a response, and TCO denies them on that basis. TCO admits that the trademarks "WCAS" and "Welsh, Carson, Anderson & Stowe" are registered to WCAS Management Corporation, and otherwise denies the remaining allegations in the second sentence of Paragraph 33. The allegations in the third sentence of Paragraph 33 constitute legal conclusions to which no response is required. To the extent a response is required, TCO admits that (a) Anthony deNicola, Dennis Mackesy, Jonathan Rather, Brian Regan, Michael Donovan, Christopher Hooper, and Edward Sobol are executive officers of WCAS Management Corporation and WCAS Management, L.P. and (b) WCAS Management Corporation and WCAS Management, L.P. serve as investment managers and provide consulting services to Welsh, Carson, Anderson & Stowe XII, L.P., Welsh, Carson, Anderson & Stowe XII Delaware, L.P., Welsh, Carson, Anderson

& Stowe XII Delaware II, L.P., and Welsh, Carson, Anderson & Stowe XII Cayman, L.P., but otherwise denies the allegations.

34.    TCO admits that Apax is a part of a global network of private equity advisory firms focusing on the technology, services and internet/consumer industries.  TCO denies the allegations in the second sentence of Paragraph 34, however, by way of further answer, TCO admits that in June 2020, Ignite Aggregator LP, TCO Group Holdings, Inc. and the equity holders of TCO Group Holdings, Inc. entered into a Securities Purchase Agreement pursuant to which the equity holders of TCO Group Holdings, Inc. sold a portion of their equity interest in InnovAge to Ignite Aggregator LP.  TCO respectfully refers the Court to InnovAge's Third Amended Registration Statement, filed with the SEC on March 3, 3021, for a complete description of Ignite Aggregator LP, TCO Group Holdings, Inc. and their respective affiliations with Apax and WCAS.  TCO admits that InnovAge completed an IPO in March 2021, but otherwise denies the allegations in the third sentence of Paragraph 34, which do not present a fair and complete description of the matters described therein.

35.    TCO denies the allegations in the first sentence of Paragraph 35 as inaccurately describing the structure of Apax and its relationship to Ignite Aggregator LP.  As to the allegations in the second sentence of paragraph 35, TCO admits that Apax and Ignite Aggregator LP share a principal place of business at 601 Lexington Avenue, 53rd Floor, New York, New York 10022. TCO denies the remaining allegations in the second sentence of Paragraph 35.  With respect to the third sentence of Paragraph 35, TCO respectfully refers the Court to InnovAge's Schedule 14A Proxy Statement for a complete description of its contents, but otherwise admits that the quoted language appears therein.

36.     TCO denies the allegations in Paragraph 36, except TCO admits that in June 2020, Ignite Aggregator LP, TCO Group Holdings, Inc. and the equity holders of TCO Group Holdings, Inc. entered into a Securities Purchase Agreement pursuant to which the equity holders of TCO Group Holdings, Inc. sold a portion of their equity interest in InnovAge to Ignite Aggregator LP. Ignite Aggregator LP and the equity holders of TCO Group Holdings, Inc. contributed their equity interests in InnovAge Holding Corp. to a newly formed Limited Partnership, TCO Group Holdings, L.P.  TCO respectfully refers the Court to InnovAge's Third Amended Registration Statement, filed with the SEC on March 3, 3021, for a complete description of Ignite Aggregator LP, TCO and their respective affiliations with Apax and WCAS.  TCO further admits that Paragraph 36 purports to characterize the Director Nomination Agreement and respectfully refers the Court to the Director Nomination Agreement for a complete and accurate statement of its contents, but otherwise denies the allegations.

37.     TCO denies the allegations in the first sentence of Paragraph 37, except TCO admits that in June 2020, Ignite Aggregator LP, TCO Group Holdings, Inc. and the equity holders of TCO Group Holdings, Inc. entered into a Securities Purchase Agreement pursuant to which the equity holders of TCO Group Holdings, Inc. sold a portion of their equity interest in InnovAge to Ignite Aggregator LP.  TCO further admits that Ignite Aggregator LP and the equity holders of TCO Group Holdings, Inc. contributed their equity interests in InnovAge Holding Corp. to a newly formed Limited Partnership, TCO Group Holdings, L.P.  TCO respectfully refers the Court to InnovAge's Third Amended Registration Statement, filed with the SEC on March 3, 3021, for a complete description of Ignite Aggregator LP, TCO and their respective affiliations with Apax and WCAS.  TCO admits the allegations in the second sentence of Paragraph 37.  As to the allegations

-18-

in the third sentence of Paragraph 37, TCO admits that Thomas Scully is a General Partner affiliated with WCAS, that Andrew Cavanna is an employee affiliated with Apax, and that both Scully and Cavanna have signed SEC filings made by TCO as representatives of TCO. TCO otherwise denies the allegations in the third sentence of Paragraph 37. As to the allegations in the fourth sentence of Paragraph 37, TCO admits that voting and dispositive power with respect to the common stock held by TCO Group Holdings, L.P. is exercised by a committee (the "LP Board") that at the time of the IPO was composed of six of seven possible committee members, including Caroline Dechert, Thomas Scully, Sean Traynor, Andrew Cavanna, Pavithra Mahesh, and Maureen Hewitt. TCO further admits that Caroline Dechert, Thomas Scully and Sean Traynor were designated to the LP Board by the WCAS Sponsors, and that Andrew Cavanna and Pavithra Mahesh were designated by the Apax Sponsor. TCO otherwise denies the allegations in the fourth sentence of Paragraph 37.

38.    The allegations in Paragraph 38 constitute definitions of terms used in the Amended Complaint to which no response is required. To the extent a response is required, TCO admits the allegation in Paragraph 38.

39.    The allegations in Paragraph 39 constitute legal conclusions to which no response is required. To the extent a response is required, TCO denies the allegations in Paragraph 39.

40.    TCO denies the allegations of Paragraph 40, which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to InnovAge's Form 10-K, filed with the SEC on September 23, 2021, for a complete and accurate statement of its contents.

-19-

41.    TCO denies the allegations in the first sentence of Paragraph 41, except admits that in connection with its IPO, InnovAge entered into a Director Nomination Agreement. TCO further admits that Paragraph 41 purports to quote from and characterize the Director Nomination Agreement and respectfully refers the Court to the Director Nomination Agreement for a complete and accurate statement of its contents.

42.    As to the allegations in the first sentence of Paragraph 42, TCO admits that in June 2020, Ignite Aggregator LP, TCO Group Holdings, Inc. and the equity holders of TCO Group Holdings, Inc. entered into a Securities Purchase Agreement pursuant to which the equity holders of TCO Group Holdings, Inc. sold a portion of their equity interest in InnovAge to Ignite Aggregator LP. Ignite Aggregator LP and the equity holders of TCO Group Holdings, Inc. contributed their equity interests in InnovAge Holding Corp. to a newly formed Limited Partnership, TCO Group Holdings, L.P. TCO respectfully refers the Court to InnovAge's Third Amended Registration Statement, filed with the SEC on March 3, 3021, for a complete description of Ignite Aggregator LP, TCO and their respective affiliations with Apax and WCAS. As to the second sentence of Paragraph 42, TCO admits that immediately after the IPO, the Sponsors collectively owned 86 percent of InnovAge's common stock. As to the third sentence of Paragraph 42, TCO admits that InnovAge could not take certain actions nor could its Board put to shareholder vote certain actions without the written consent of the Sponsors so long as the Sponsors retained certain ownership percentages of InnovAge stock, but otherwise denies the allegations. TCO respectfully refers the Court to InnovAge's Director Nomination Agreement attached as Exhibit 10.3 to InnovAge's Third Amended Registration Statement, filed with the SEC on March 3, 3021, for a full description of consent matters requiring written consent of the Sponsors. The allegations

-20-

of the fourth sentence of Paragraph 42 constitute legal conclusions, to which no response is required. To the extent a response is required, TCO denies the allegations in the fourth sentence of Paragraph 42, except admits that voting and dispositive power with respect to the common stock held by TCO Group Holdings, L.P. is exercised by the LP Board, which at the time of the IPO was composed of six persons, including Maureen Hewitt, Caroline Dechert, Thomas Scully, Sean Traynor, Andrew Cavanna, and Pavithra Mahesh, all of whom served as directors of InnovAge following the IPO. TCO denies the allegations of the fifth and sixth sentences of Paragraph 42, except admits that the LP Board exercises its voting and dispositive power by majority vote, so long as one member designated by the WCAS Sponsors and one member designated by the Apax Sponsor comprise the majority.

43. The allegations in Paragraph 43 constitute legal conclusions, to which no response is required. To the extent a response is required, TCO denies the allegations in Paragraph 43, which do not present a fair and complete description of the matters described therein.

44. As to the first and second sentences of Paragraph 44, TCO admits that InnovAge's Offering Documents and press releases indicate that Hewitt served as InnovAge's CEO from 2006-2021 and that InnovAge's public filings indicate that Hewitt signed the Offering Documents and other public filings. TCO denies the allegations in the third sentence of Paragraph 44, except respectfully refers the Court to InnovAge's Form 10-K/A filed with the SEC on October 28, 2021, for a complete and accurate statement of compensation earned by Hewitt in InnovAge's fiscal year 2021.

45. TCO admits the first and third sentences of Paragraph 45, except denies that Gutierrez is InnovAge's current Chief Financial Officer. TCO lacks the knowledge or information

sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 45, and on that basis denies them.  TCO denies the allegations in the fourth sentence of Paragraph 45, except respectfully refers the Court to InnovAge's Form 10-K/A filed with the SEC on October 28, 2021, for a complete and accurate statement of compensation earned by Gutierrez in InnovAge's fiscal year 2021.

46.    The allegations in Paragraph 46 constitute a characterization of certain defined terms in the Amended Complaint, to which no response is required.

47.    The allegations in Paragraph 47 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 47, which do not present a fair and complete description of the matters described therein, except admit that Hewitt and Gutierrez performed responsibilities of InnovAge's CEO and CFO, respectively.

48.    TCO admits that John Ellis Bush ("Bush") became a Director of InnovAge upon the completion of InnovAge's IPO and is currently a Director of InnovAge but otherwise denies the remaining allegations in the first sentence of Paragraph 48.  TCO admits that Bush signed a written consent to being named in the Offering Documents as an individual to become a director of InnovAge and signed the 2021 Annual Report but otherwise denies the allegations of the second sentence of Paragraph 48.  TCO admits the allegations in the third sentence of Paragraph 48.  The allegations in the fourth sentence of Paragraph 48 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in the fourth sentence of Paragraph 48.  TCO admits that InnovAge's Form 10-K/A, filed with the SEC on October 28, 2021, states that Bush received $50,000 in connection with services rendered to

-22-

InnovAge during fiscal year 2021, but otherwise denies the allegations in the fifth sentence of Paragraph 48.

49.     TCO admits that Andrew Cavanna ("Cavanna") became a Director of InnovAge upon the completion of InnovAge's IPO and is currently a Director of InnovAge, but denies that Cavanna is the current Chair of InnovAge's Board of Directors.  TCO admits that Cavanna signed a written consent to being named in the Offering Documents as an individual to become a director of InnovAge and signed the 2021 Annual Report.  TCO admits the allegations in the third sentence of Paragraph 49.  The allegations in the fourth sentence of Paragraph 49 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in the fourth sentence of Paragraph 49.

50.     TCO admits that Caroline Dechert ("Dechert") became a Director of InnovAge upon the completion of InnovAge's IPO, but otherwise denies the remaining allegations in the first sentence of Paragraph 50.  By way of further answer, TCO admits that Dechert became a Director of InnovAge as a "WCAS Nominee" as that term is defined in the Director Nomination Agreement and respectfully refers the Court to the Director Nomination Agreement, attached as Exhibit 10.3 to InnovAge's Form S-1 filed with the SEC on February 8, 2021, for a complete and accurate description of the entities referred to as "WCAS" under the Director Nomination Agreement.  TCO admits that Dechert signed a written consent to being named in the Offering Documents as an individual to become a director of InnovAge and signed the 2021 Annual Report. TCO admits that Dechert joined one or more entities affiliated with TCO in 2012 and serves as a Principal in the healthcare group, but otherwise denies the remaining allegations in the third sentence of Paragraph 50.  The allegations in the fourth sentence of Paragraph 50 constitute legal conclusions,

to which no response is required.  To the extent a response is required, TCO denies the allegations in the fourth sentence of Paragraph 50.

51.      TCO admits that Edward Kennedy, Jr. ("Kennedy") became a Director of InnovAge upon the completion of InnovAge's IPO and is currently a Director of InnovAge.  TCO admits that Kennedy signed a written consent to being named in the Offering Documents as an individual to become a director of InnovAge and signed the 2021 Annual Report.  TCO admits the allegations in the third sentence of Paragraph 51.  TCO denies the allegations in the fourth sentence of Paragraph 51 and respectfully refers the Court to InnovAge's Form 10-K/A filed with the SEC on October 28, 2021, for a complete and accurate description of compensation received by Kennedy during fiscal year 2021.  The allegations in the fifth sentence of Paragraph 51 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in the fifth sentence of Paragraph 51.

52.      TCO admits that Pavithra Mahesh ("Mahesh") became a Director of InnovAge upon the completion of InnovAge's IPO, but otherwise denies the remaining allegations of the first sentence of Paragraph 52.  By way of further answer, TCO states that  Mahesh became a Director of InnovAge as a "Partners Nominee" as that term is defined in the Director Nomination Agreement and respectfully refers the Court to the Director Nomination Agreement, attached as Exhibit 10.3 to InnovAge's Form S-1 filed with the SEC on February 8, 2021, for a complete and accurate description of the entities referred to as "Apax Partners" under the Director Nomination Agreement.  TCO admits that Mahesh signed a written consent to being named in the Offering Documents as an individual to become a director of InnovAge and signed the 2021 Annual Report. TCO admits the allegations in the third sentence of Paragraph 52.  The allegations in the fourth

sentence of Paragraph 52 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in the fourth sentence of Paragraph 52.

53.     TCO admits that Thomas Scully ("Scully") became a Director of InnovAge upon the completion of InnovAge's IPO and is currently a Director of InnovAge, but otherwise denies the remaining allegations in the first sentence of Paragraph 53.  By way of further answer, TCO admits that Scully became a Director of InnovAge as a "WCAS Nominee" as that term is defined in the Director Nomination Agreement and respectfully refers the Court to the Director Nomination Agreement, attached as Exhibit 10.3 to InnovAge's Form S-1 filed with the SEC on February 8, 2021, for a complete and accurate description of the entities referred to as "WCAS" under the Director Nomination Agreement. TCO admits that Scully signed a written consent to being named in the Offering Documents as an individual to become a director of InnovAge and signed the 2021 Annual Report.  TCO admits the allegations in the third and fourth sentences of Paragraph 53.  The allegations in the fifth sentence of Paragraph 53 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in the fifth sentence of Paragraph 53.

54.     TCO admits that Marilyn Tavenner ("Tavenner") became a Director of InnovAge upon the completion of InnovAge's IPO.  TCO admits that Tavenner signed a written consent to being named in the Offering Documents as an individual to become a director of InnovAge and signed the 2021 Annual Report.  TCO admits the allegations in the third and fourth sentences of Paragraph 54.   TCO admits that Tavenner worked at the Hospital Corporation of America ("HCA").  The remaining allegations in the fifth sentence of Paragraph 54 are too vague to permit a response, and TCO therefore denies them on that basis.   TCO denies the allegations in the sixth

sentence of Paragraph 54 and respectfully refers the Court to InnovAge's Form 10-K/A filed with the SEC on October 28, 2021, for a complete and accurate description of compensation received by Tavenner during fiscal year 2021. The allegations in the seventh sentence of Paragraph 54 constitute legal conclusions, to which no response is required. To the extent a response is required, TCO denies the allegations in the seventh sentence of Paragraph 54.

55.     TCO admits that Sean Traynor ("Traynor") became a Director of InnovAge upon the completion of InnovAge's IPO, but otherwise denies the remaining allegations in the first sentence of Paragraph 55. By way of further answer, TCO admits that Traynor became a Director of InnovAge as a "WCAS Nominee" as that term is defined in the Director Nomination Agreement and respectfully refers the Court to the Director Nomination Agreement, attached as Exhibit 10.3 to InnovAge's Form S-1 filed with the SEC on February 8, 2021, for a complete and accurate description of the entities referred to as "WCAS" under the Director Nomination Agreement. TCO admits that Traynor signed a written consent to being named in the Offering Documents as an individual to become a director of InnovAge and signed the 2021 Annual Report. TCO denies the allegations in the third sentence of Paragraph 55, except admits that Traynor joined one or more entities affiliated with WCAS in 1999 and is a General Partner of WCAS Management Corporation. The allegations in the fourth sentence of Paragraph 55 constitute legal conclusions, to which no response is required. To the extent a response is required, TCO denies the allegations in the fourth sentence of Paragraph 55.

56.     TCO admits that Richard Zoretic ("Zoretic") became a Director of InnovAge upon the completion of InnovAge's IPO and is currently a Director of InnovAge, but otherwise denies the remaining allegations in the first sentence of Paragraph 56. TCO admits that Zoretic signed a

written consent to being named in the Offering Documents as an individual to become a director of InnovAge and signed the 2021 Annual Report.  TCO denies the allegations in the third sentence of Paragraph 56 and respectfully refers the Court to InnovAge's Form 10-K/A filed with the SEC on October 28, 2021, for a complete and accurate description of compensation received by Zoretic during fiscal year 2021.  The allegations in the fourth sentence of Paragraph 56 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in the fourth sentence of Paragraph 56.

57.    The allegations in Paragraph 57 constitute a characterization of certain defined terms in the Amended Complaint, to which no response is required.

58.    TCO admits that Defendants Cavanna, Dechert, Mahesh, Scully and Traynor were appointed as Directors in accordance with the Director Nomination Agreement dated March 8, 2021, but otherwise denies the allegations in Paragraph 58 and respectfully refers the Court to the Director Nomination Agreement for a complete and accurate statement of its contents, including the entities that are parties to that agreement.

59.    Paragraph 59 includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, the allegations in Paragraph 59 constitute legal conclusions, to which no response is required.  To the extent any further response is required, TCO denies the allegations in Paragraph 59.

60.    The allegations in Paragraph 60 constitute legal conclusions and are not directed at TCO, therefore no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 60.

61. Paragraph 61 includes allegations pertaining to the Dismissed Claims, to which no response is required. To the extent a response is required, the allegations in Paragraph 61 constitute legal conclusions and are not directed at TCO, and therefore no response is required. To the extent any further response is required, TCO denies the allegations in Paragraph 61.

62. The allegations in Paragraph 62 constitute legal conclusions and are not directed at TCO, and therefore no response is required. To the extent a response is required, TCO denies the allegations in Paragraph 62.

63. TCO admits the allegations in Paragraph 63.

64. TCO admits the allegations in Paragraph 64.

65. TCO admits the allegations in Paragraph 65.

66. TCO admits the allegations in Paragraph 66.

67. TCO admits the allegations in Paragraph 67.

68. TCO admits the allegations in Paragraph 68.

69. TCO admits the allegations in Paragraph 69.

70. TCO admits the allegations in Paragraph 70.

71. TCO admits the allegations in Paragraph 71.

72. TCO admits the allegations in Paragraph 72.

73. TCO admits the allegations in Paragraph 73.

74. The allegations in Paragraph 74 constitute a characterization of certain defined terms in the Amended Complaint, to which no response is required.

75. TCO admits the allegations in Paragraph 75.

76. TCO admits the allegations in Paragraph 76.

77.    TCO admits the allegations in Paragraph 77.

78.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 78, and on that basis denies them.

79.    TCO admits that during the time period March 2019 to February 2021, (a) Melissa Welch ("Welch") was InnovAge's Chief Medical Officer, (b) Hewitt was InnovAge's CEO and (c) Welch reported to Hewitt, but otherwise lack the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 79, and on that basis denies them.

80.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 80, and on that basis denies them.

81.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 81, and on that basis denies them.

82.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 82, and on that basis denies them.

83.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 83, and on that basis denies them.

84.    As to the allegations in the first and third sentences of Paragraph 84, TCO admits that (a) InnovAge's 2023 Annual Report states that PACE is a fully-capitated managed care program, which serves the frail elderly, and predominantly dual-eligible, population in a community-based service model, and (b) InnovAge contracts directly with Medicare and Medicaid on a PMPM basis and receives 100% of the pooled capitated payment to directly provide or manage the healthcare needs of its participants.    TCO lacks the knowledge or information

sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of Paragraph 84, and on that basis denies them.

85.     TCO admits that the allegations in the first, second and sixth sentences of Paragraph 85 appear to characterize the CMS PACE Manual.  TCO admits that costs under the PACE program are estimated to be 15% lower on average than for a comparable dual-eligible population aged 65 and older under Medicaid, based on an analysis of available data by the National PACE Association in July 2023, which data TCO has not independently verified but assumes to be accurate, but otherwise lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the third sentence of Paragraph 85, and on that basis denies them.  TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the fourth and fifth sentences of Paragraph 85, and on that basis denies them.

86.     Paragraph 86 appears to characterize the CMS PACE Manual, which is a document that speaks for itself.  TCO respectfully refers the Court to that document for a complete and accurate statement of its contents, and otherwise denies the allegations in Paragraph 86.

87.     TCO admits that the allegations in the third and fourth sentences of Paragraph 87 appear to characterize the CMS PACE Manual, but otherwise lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations as to the remaining allegations of Paragraph 87, and on that basis denies them.

88.     TCO admits that the allegations in the first sentence of Paragraph 88 appear to characterize the CMS PACE Manual, but otherwise lacks the knowledge or information sufficient

to form a belief as to the truth or falsity of the allegations in the second and third sentences of Paragraph 88, and on that basis denies them.

89.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of Paragraph 89, and on that basis denies them. The second sentence of Paragraph 89 appears to characterize the CMS PACE Manual, which is a document that speaks for itself.  TCO respectfully refers the Court to that document for a complete and accurate statement of its contents, and otherwise denies the allegations in the second sentence of Paragraph 89.

90.    Paragraph 90 appears to characterize the CMS PACE Manual, which is a document that speaks for itself.  TCO respectfully refers the Court to that document for a complete and accurate statement of its contents, and otherwise denies the allegations in Paragraph 90. Paragraph 90 also contains legal conclusions, to which no response is required.

91.    The allegations in Paragraph 91 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO admits the allegations in Paragraph 91, provided that the first sentence of Paragraph 91 is intended to cite to 42 C.F.R. § 460.30 rather than 42 U.S.C. § 460.30.

92.    The allegations in Paragraph 92 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO admits the allegations in Paragraph 92.

93.    The allegations in the first sentence of Paragraph 93 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO admits the allegations in the first sentence of Paragraph 93.  The second, third and fourth sentences of Paragraph 93 purport to quote from and characterize the CMS PACE Manual, which is a document that speaks

for itself. TCO respectfully refers the Court to that document for a complete and accurate statement of its contents, and otherwise denies the allegations in the second, third and fourth sentences of Paragraph 93. The remaining allegations in Paragraph 93 purport to characterize a graphic, which is a document that speaks for itself. TCO respectfully refers the Court to that document for a complete and accurate statement of its contents, and otherwise denies the remaining allegations in Paragraph 93.

94. The allegations in Paragraph 94 constitute legal conclusions, to which no response is required. To the extent a response is required, TCO admits the allegations in Paragraph 94.

95. TCO admits that Paragraph 95 purports to quote from and characterize the CMS PACE Manual and respectfully refers the Court to that document for a complete and accurate statement of its contents, and otherwise denies the allegations in Paragraph 95 to the extent they do not present a fair and complete description of the matters described therein.

96. TCO admits that Paragraph 96 appears to characterize the CMS PACE Manual and respectfully refers the Court to that document for a complete and accurate statement of its contents, and otherwise denies the allegations in Paragraph 96 to the extent they do not present a fair and complete description of the matters described therein.

97. TCO admits that Paragraph 97 appears to characterize the CMS PACE Manual and respectfully refers the Court to that document for a complete and accurate statement of its contents, and otherwise denies the allegations in Paragraph 97 to the extent they do not present a fair and complete description of the matters described therein.

98. TCO admits that Paragraph 98 appears to characterize the CMS PACE Manual and respectfully refers the Court to that document for a complete and accurate statement of its contents,

and otherwise denies the allegations in Paragraph 98 to the extent they do not present a fair and complete description of the matters described therein.

99.    The allegations in the first and second sentences of Paragraph 99 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO admits the allegations in the first and second sentences of Paragraph 99.  TCO admits that the allegations in the third sentence of Paragraph 99 appear to characterize the CMS PACE Manual.

100.    TCO admits the allegations in the first sentence of Paragraph 100.  TCO admits that the second sentence of Paragraph 100 appears to characterize the CMS PACE Manual and respectfully refers the Court to that document for a complete and accurate statement of its contents, and otherwise denies the allegations in Paragraph 100 to the extent they do not present a fair and complete description of the matters described therein.

101.    TCO admits that Paragraph 101 appears to characterize the CMS PACE Manual and respectfully refers the Court to that document for a complete and accurate statement of its contents, and otherwise denies the allegations in Paragraph 101 to the extent they do not present a fair and complete description of the matters described therein.

102.    TCO admits that Paragraph 102 appears to characterize the CMS PACE Manual and respectfully refers the Court to that document for a complete and accurate statement of its contents, and otherwise denies the allegations in Paragraph 102 to the extent they do not present a fair and complete description of the matters described therein.

103.    TCO admits that (a) the State Administrating Agency ("SAA") and CMS have primary responsibility to ensure PACE organizations maintain compliance with state and federal requirements, and (b) the remainder of the first sentence of Paragraph 103 appears to characterize

the CMS PACE Manual, and respectfully refers the Court to the PACE manual for a complete and accurate statement of its contents, and otherwise denies the allegations in the first sentence in Paragraph 103 to the extent they do not present a fair and complete description of the matters described therein. TCO admits that the CMS PACE Manual provides that PACE organizations must have annual audits during their first three contract years and audits at least every two years following a successful completion of the three year trial period, and lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 103, and on that basis denies them.

a)    The allegations in Paragraph 103(a) constitute legal conclusions, to which no response is required. To the extent a response is required, TCO respectfully refers the Court to 42 CFR § 460.190(a) for a complete and accurate statement of its contents.

b)    TCO admits that Paragraph 103(b) appears to characterize the CMS PACE Manual and respectfully refers the Court to that document for a complete and accurate statement of its contents, and otherwise lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 103(b) and on that basis denies them.

c)    TCO admits that Paragraph 103(c) appears to characterize the CMS PACE Manual and respectfully refers the Court to that document for a complete and accurate statement of its contents, and otherwise lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 103(c) and on that basis denies them.

104.    TCO admits that the first sentence of Paragraph 104 appears to characterize the CMS PACE Manual and respectfully refers the Court to that document for a complete and accurate statement of its contents, and otherwise denies the allegations in the first sentence of Paragraph 104

-34-

to the extent they do not present a fair and complete description of the matters described therein. TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of Paragraph 104, and on that basis denies them.

105.    TCO admits that CMS published a bulletin addressed to All Medicare Advantage Organizations, Part D Sponsors, Medicare-Medicaid Plans, and All Programs of All-Inclusive Care for the Elderly (PACE) Organizations dated March 30, 2020, and respectfully refers the Court to that document for a complete and accurate statement of its contents, and otherwise lacks the knowledge or information sufficient for form a belief as to the truth of the allegations in Paragraph 105 and on that basis denies them.

106.    TCO admits that (a) CMS may take enforcement action and impose sanctions on PACE organizations, and (b) Paragraph 106 purports to characterize the CMS PACE Manual and respectfully refers the Court to that document for a complete and accurate statement of its contents, and otherwise denies the allegations in Paragraph 106 to the extent they do not present a fair and complete description of the matters described therein.

107.    TCO admits that Paragraph 107 appears to characterize the CMS PACE Manual and respectfully refers the Court to that document for a complete and accurate statement of its contents, and otherwise denies the allegations in Paragraph 107 to the extent they do not present a fair and complete description of the matters described therein.

108.    TCO admits that Paragraph 108 appears to characterize the CMS PACE Manual and respectfully refers the Court to that document for a complete and accurate statement of its contents, and otherwise lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 108, and on that basis denies them.

109.    The allegations in Paragraph 109 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies that 42 C.F.R. § 40 sets forth specific violations for which CMS may impose sanctions on the PACE organization, however, by way of further response, TCO states that 42 C.F.R. § 460.40 sets forth violations for which CMS may impose sanctions and respectfully refers the Court to that section for a complete and accurate statement of its contents.

a)    The allegation in Paragraph 109(a) constitutes a legal conclusion, to which no response is required.  To the extent a response is required, TCO respectfully refers the Court to 42 C.F.R. § 460.40 for a statement of the violations for which CMS may impose sanctions.

b)    The allegation in Paragraph 109(b) constitutes a legal conclusion, to which no response is required.  To the extent a response is required, TCO respectfully refers the Court to 42 C.F.R. § 460.40 for a statement of the violations for which CMS may impose sanctions.

c)    The allegation in Paragraph 109(c) constitutes a legal conclusion, to which no response is required.  To the extent a response is required, TCO respectfully refers the Court to 42 C.F.R. § 460.40 for a statement of the violations for which CMS may impose sanctions.

d)    The allegation in Paragraph 109(d) constitutes a legal conclusion, to which no response is required.  To the extent a response is required, TCO respectfully refers the Court to 42 C.F.R. § 460.40 for a statement of the violations for which CMS may impose sanctions.

e)    The allegation in Paragraph 109(e) constitutes a legal conclusion, to which no response is required.  To the extent a response is required, TCO respectfully refers the Court to 42 C.F.R. § 460.40 for a statement of the violations for which CMS may impose sanctions.

-36-

f)	The allegation in Paragraph 109(f) constitutes a legal conclusion, to which no response is required.  To the extent a response is required, TCO respectfully refers the Court to 42 C.F.R. § 460.40 for a statement of the violations for which CMS may impose sanctions.

g)	The allegation in Paragraph 109(g) constitutes a legal conclusion, to which no response is required.  To the extent a response is required, TCO respectfully refers the Court to 42 C.F.R. § 460.40 for a statement of the violations for which CMS may impose sanctions.

h)	The allegation in Paragraph 109(h) constitutes a legal conclusion, to which no response is required.  To the extent a response is required, TCO respectfully refers the Court to 42 C.F.R. § 460.40 for a statement of the violations for which CMS may impose sanctions.

i)	The allegation in Paragraph 109(i) constitutes a legal conclusion, to which no response is required.  To the extent a response is required, TCO respectfully refers the Court to 42 C.F.R. § 460.40 for a statement of the violations for which CMS may impose sanctions.

110.	The allegation in Paragraph 110 constitutes a legal conclusion, to which no response is required.  To the extent a response is required, TCO respectfully refers the Court to 42 C.F.R. § 460.42 for a description of CMS's authority to suspend enrollment or payment.

111.	The allegation in Paragraph 111 constitutes a legal conclusion, to which no response is required.  To the extent a response is required, TCO respectfully refers the Court to 42 C.F.R. §§ 460.40 and 460.46 for a list of violations for which CMS may impose sanctions and a description of CMS's authority to impose civil monetary penalties.

112.	The allegations in Paragraph 112 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO respectfully refers the Court to 42 C.F.R. § 460.48 for a statement of additional actions by CMS or the State "if CMS determines that the

-37-

-38-

PACE organization is not in substantial compliance with" the requirements in Part 60, and

§ 460.50 for a statement of circumstances under which CMS or an SAA may terminate a PACE

program agreement.

113.    Paragraph 113 purports to quote from and characterize the Articles of Incorporation

of Total Community Options, Inc., which is a document that speaks for itself.  TCO respectfully

refers the Court to that document for a complete and accurate statement of its contents, and

otherwise lacks the knowledge or information sufficient to form a belief as to the truth or falsity

of the allegations in Paragraph 113, and on that basis denies them.

114.    The first sentence of Paragraph 114 is too vague to permit a response and TCO

therefore denies it on that basis.  TCO lacks the knowledge or information sufficient to form a

belief as to the truth or falsity of the remaining allegations of Paragraph 114, which do not present

a fair and complete description of the matters described therein, and on that basis denies them,

except admits that a *MarketWatch* article dated November 11, 2021, contains quotes attributed to

Dr. Lazaroff, and respectfully refers the Court to that document for a complete and accurate

statement of its contents.

115.    TCO admits that the first sentence of Paragraph 115 appears to characterize a

*MarketWatch* article dated November 11, 2021.  As to the remainder of Paragraph 103, TCO

admits that (a) Scully served as Administrator of CMS under President George W. Bush, (b) Scully

was a General Partner of TCO Management Corporation when he met Hewitt, and (c) a

*MarketWatch* article dated November 11, 2021, purports to quote Scully.  TCO refers the Court to

that document for its true and correct contents, and otherwise denies the allegations in

Paragraph 115, which do not present a fair and complete description of the matters described therein.

116.    TCO admits that (a) Tavenner served as chief operating officer and acting administrator for CMS from 2010-2013 and (b) a *MarketWatch* article dated November 11, 2021, purports to quote Scully.  TCO refers the Court to that document for a complete and accurate statement of its contents, and otherwise denies the allegations in Paragraph 116, which do not present a fair and complete description of the matters described therein.

117.    The first sentence of Paragraph 117 is too vague to permit a response and TCO therefore denies it on that basis.  TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second and third sentences of Paragraph 117, and on that basis denies them.  The fourth, fifth, sixth, seventh and eighth sentences of Paragraph 117 purport to quote from and characterize an article published by *The Denver Post* dated December 6, 2015 and an opinion of the Colorado Attorney General, *In the Matter of the InnovAge Master Plan of Conversion*, dated March 24, 2016, which are documents that speaks for themselves.  TCO respectfully refers the Court to those documents for a complete and accurate statement of their contents, and otherwise denies the allegations in the fourth, fifth, sixth, seventh and eighth sentences of Paragraph 117, which do not present a fair and complete description of the matters described therein.

118.    TCO admits that InnovAge and certain wholly owned subsidiaries were formed as for-profit corporations effective May 13, 2016, but otherwise lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of Paragraph 118, and on that basis denies them.  The second sentence of Paragraph 118 purports to

quote from and characterize an article published by *The New York Times* on August 20, 2016, which is a document that speaks for itself.  TCO respectfully refers the Court to that document for a complete and accurate statement of its contents, and otherwise denies the allegations in the second sentence of Paragraph 106.

119.    The first and second sentences of Paragraph 119 are too vague to permit a response and do not contain a fair and complete description of the matters described therein, and TCO therefore denies them on those bases, except TCO admits that a *MarketWatch* article dated November 11, 2021, contains quotes attributed to Scully and respectfully refers the Court to that article for a complete and accurate statement of its contents, and otherwise denies the remaining allegations in Paragraph 119, which do not contain a fair and complete description of the matters described therein.

120.    TCO denies the allegations in Paragraph 120, which do not contain a fair and complete description of the matters described therein, except admits that (a) a *Modern Healthcare* article dated January 6, 2017, contains quotes attributed to Scully, and (b) Paragraph 120 purports to characterize and quote from a *MarketWatch* article dated November 11, 2021, and respectfully refers the Court to those articles for a complete and accurate statement of their contents.

121.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding Hewitt's and Scully's growth strategy in the first sentence of Paragraph 121, and on that basis denies them.  TCO denies the remaining allegations in the first sentence of Paragraph 121.  TCO admits that InnovAge's Form 10-K, filed with the SEC on September 23, 2021, and InnovAge's Form 10-K, filed with the SEC on September 12, 2023, report that approximately 99.5% of InnovAge's revenue for the fiscal years ended June 30, 2020

-40-

and 2021, and approximately 99.7% and 99.8% of its revenue for the fiscal years ended June 30, 2022 and 2023, respectively, was derived from capitation agreements with government payors in which it received fixed PMPM fees, but otherwise denies the allegations in the second and third sentences of Paragraph 121, which are too vague to permit a response. TCO denies the allegations in the fourth sentence of Paragraph 121.

122. TCO lacks the knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 122 and on that basis denies them.

123. TCO denies the allegations in the first sentence of Paragraph 123, which do not present a fair and complete description of the matters described therein. TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of Paragraph 123, and on that basis denies them. TCO admits that the allegations in the third sentence of Paragraph 123 appear to characterize InnovAge's 2016 Annual Report. TCO admits that InnovAge reported increases in participants and revenue for fiscal years 2018, 2019, 2020 and 2021, but otherwise lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in the fourth sentence of Paragraph 111, and on that basis denies them. The fifth sentence of Paragraph 123 purports to quote from and characterize InnovAge's 2017 Annual Report, which is a document that speaks for itself. TCO respectfully refers the Court to that document for a complete and accurate statement of its contents, and otherwise denies the allegations in the fifth sentence of Paragraph 123. As to the sixth sentence of Paragraph 123, TCO admits that InnovAge expanded its network of centers by developing de novo centers and acquiring others, but otherwise denies the remaining allegations in the sixth sentence of Paragraph 123. The seventh sentence of Paragraph 123 purports to characterize

InnovAge's 2018 Annual Report, which is a document that speaks for itself.  TCO respectfully

refers the Court to that document for a complete and accurate statement of its contents, and

otherwise denies the allegations in the seventh sentence of Paragraph 123.

124.    Paragraph 124 purports to quote from and characterize InnovAge's 2019 Annual

Report, including an image, which is a document that speaks for itself.  TCO respectfully refers

the Court to that document for a complete and accurate statement of its contents, and otherwise

denies the allegations in Paragraph 124, which do not present a fair and complete description of

the matters described therein.

125.    TCO denies the allegations in the first sentence of Paragraph 125.  TCO admits that

(a) InnovAge paid dividends to shareholders in 2019, (b) the second sentence of Paragraph 125

purports to characterize information in InnovAge's Third Amended Registration Statement, filed

with the SEC on March 3, 2021, and (c) that a *MarketWatch* article dated November 11, 2021

contains a quote attributed to Scully, but otherwise denies the allegations in Paragraph 125, which

do not present a fair and complete description of the matters described therein, and respectfully

refers the Court to InnovAge's Third Amended Registration Statement, and the *MarketWatch*

article dated November 11, 2021, for a complete and accurate statement of their contents.

126.    TCO admits that in 2020, one or more entities affiliated with TCO solicited bids

for a full or partial sale of InnovAge and otherwise denies the allegations in the first sentence of

Paragraph 126, which do not present a fair and complete description of the matters described

therein.  The second sentence of Paragraph 126 purports to characterize an article published by *PE*

*Hub* on July 3, 2020, which is a document that speaks for itself.  TCO respectfully refers the Court

to that document for a complete and accurate statement of its contents, and otherwise denies the

allegations in the second sentence of Paragraph 126. TCO denies the allegations in the third and fourth sentences of Paragraph 126; however, by way of further response, TCO states that in June 2020, Ignite Aggregator LP, TCO Group Holdings, Inc. and the equity holders of TCO Group Holdings, Inc. entered into a Securities Purchase Agreement pursuant to which the equity holders of TCO Group Holdings, Inc. sold a portion of their equity interest in InnovAge to Ignite Aggregator LP and respectfully refers the Court to InnovAge's Third Amended Registration Statement, filed with the SEC on March 3, 3021, for a complete description of Ignite Aggregator LP, TCO Group Holdings, L.P. and their respective affiliations with Apax and TCO.

127.    TCO denies the allegations in Paragraph 127, which are too vague to permit a response and pertain to matters of which TCO lacks knowledge. TCO further states that the allegations in the second sentence of Paragraph 127 constitute legal conclusions, to which no response is required.

128.    TCO denies the allegations in Paragraph 128, which do not present a fair and complete description of the matters described therein and pertain to statements by unnamed former employees of which TCO lacks knowledge, except admits that a *Capitol Forum* article dated March 29, 2021, contains quotes attributed to unnamed former employees and respectfully refers the Court to that article for a complete and accurate statement of its contents.

129.    TCO denies the allegations of Paragraph 129, which do not present a fair and complete description of the matters described therein and pertain to statements by unnamed former employees of which TCO lacks knowledge, except admits that a *Capitol Forum* article dated March 29, 2021, contains quotes attributed to unnamed former employees and respectfully refers the Court to that article for a complete and accurate statement of its contents.

-43-

130.    TCO denies the allegations of Paragraph 130, which do not present a fair and complete description of the matters described therein and pertain to statements by unnamed former employees of which TCO lacks knowledge, except admits that a *Capitol Forum* article dated March 29, 2021, contains quotes attributed to unnamed former employees and respectfully refers the Court to that article and the *Capitol Forum* article dated July 9, 2021, referenced in Paragraph 130 for a complete and accurate statement of their contents.

131.    TCO denies the allegations in the first sentence of Paragraph 131, which do not present a fair and complete description of the matters described therein.  TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 131, and on that basis denies them.

132.    The allegations in the first sentence of Paragraph 132 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO admits the allegations in the first sentence of Paragraph 132.  TCO denies the second, third and fourth sentences of Paragraph 132, which do not present a fair and complete description of the matters described therein and pertain to statements by unnamed former and current employees of which TCO lacks knowledge, except admits that a *Capitol Forum* article dated May 10, 2021, contains quotes attributed to unnamed former and current employees and respectfully refers the Court to that article for a complete and accurate statement of its contents.

133.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 133, and on that basis denies them.

134.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 134, and on that basis denies them.

135.    Paragraph 135 purports to quote from and characterize an article published by *MarketWatch* on November 11, 2021, which is a document that speaks for itself.  TCO respectfully refers the Court to that document for a complete and accurate statement of its contents, and otherwise denies the allegations in Paragraph 135, which do not present a fair and complete description of the matters described therein.

136.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of Paragraph 136, and on that basis denies them. TCO denies the remaining allegations of Paragraph 136, which do not present a fair and complete description of the matters described therein and pertain to statements by an unnamed former business development representative of which TCO lacks knowledge, except respectfully refers the Court to the *Capitol Forum* article dated July 9, 2021, that is cited in Paragraph 136 for a complete and accurate statement of its contents.

137.    TCO denies the allegations in the first and third sentences of Paragraph 137.  TCO further states that the allegations in the third sentence of Paragraph 137 constitute legal conclusions, to which no response is required.  The second sentence of Paragraph 137 purports to quote from and characterize InnovAge's Offering Documents, which are documents that speak for themselves.  TCO respectfully refers the Court to the Offering Documents for a complete and accurate statement of their contents, and otherwise denies the allegations in the second sentence of Paragraph 125.  TCO denies the remaining allegations of Paragraph 137, which do not present a fair and complete description of the matters described therein and pertain to statements by unnamed former social workers of which TCO lacks knowledge, except respectfully refers the

-45-

Court to the *Capitol Forum* article dated July 9, 2021, that is referenced in Paragraph 137 for a complete and accurate statement of its contents.

138.    The first sentence of Paragraph 138 includes a legal conclusion, to which no response is required, and purports to quote from and characterize the CMS PACE Marketing Guidelines, which is a document that speaks for itself.  TCO respectfully refers the Court to that document for a complete and accurate statement of its contents.  The allegations in the second sentence of Paragraph 138 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO admits the allegations in the second sentence of Paragraph 138.

139.    TCO denies the allegations of Paragraph 139, which do not present a fair and complete description of the matters described therein and pertain to statements by unnamed former employees of which TCO lacks knowledge, except admits that a *Capitol Forum* article dated May 10, 2021, contains quotes attributed to unnamed former employees and respectfully refers the Court to that article for a complete and accurate statement of its contents.

140.    TCO denies the allegations of Paragraph 140, which do not present a fair and complete description of the matters described therein.

141.    TCO denies the allegations of Paragraph 141, which do not present a fair and complete description of the matters described therein and pertain to statements by an unnamed former Denver social worker and unnamed current and former employees of which TCO lacks knowledge, except admits that *Capitol Forum* articles dated March 29, 2021, and May 10, 2021, contain quotes attributed to an unnamed Denver social worker and unnamed current and former employees, and respectfully refers the Court to those articles for a complete and accurate statement of their contents.

-46-

142.    TCO denies the allegations of Paragraph 142, which do not present a fair and complete description of the matters described therein and pertain to statements by unnamed current and former employees of which TCO lacks knowledge, except admits that *Capitol Forum* articles dated March 29, 2021, and May 10, 2021, contain quotes attributed to unnamed current and former employees and respectfully refers the Court to those articles for a complete and accurate statement of their contents.

143.    TCO denies the allegations of Paragraph 143, which do not present a fair and complete description of the matters described therein and pertain to statements by Shelbie Engelking ("Engelking") and current and former employees of which TCO lacks knowledge, except admits that (a) Engelking has served as the State of Colorado's PACE Ombudsman, and (b) *Capitol Forum* articles dated March 29, 2021, and May 10, 2021, contain quotes attributed to Engelking and current and former employees and respectfully refers the Court to those articles for a complete and accurate statement of their contents.

144.    TCO denies the allegations of Paragraph 144, which do not present a fair and complete description of the matters described therein and pertain to statements by an unnamed former InnovAge social worker of which TCO lacks knowledge, except respectfully refers the Court to the article published by *The Capitol Forum* on May 10, 2021, for its complete and accurate contents.

145.    TCO denies the allegations of Paragraph 145, which do not present a fair and complete description of the matters described therein and pertain to statements by an unnamed former social worker of which TCO lacks knowledge, except admits that (a) PACE organizations must establish interdisciplinary teams and assign each participant an interdisciplinary team, and

-47-

(b) a *Capitol Forum* article dated to the article dated May 10, 2021, contains quotes attributed to an unnamed former social worker, and respectfully refers the Court to Title 42, Chapter IV, Subchapter E, Part 460 and the PACE Manual for a complete and accurate description of the interdisciplinary team requirements and the May 10, 2021 *Capitol Forum* article for a complete and accurate statement of its contents.

146.    TCO denies the allegations of Paragraph 146, which do not present a fair and complete description of the matters described therein and pertain to statements by an unnamed former doctor of which TCO lacks knowledge, except admits that a *Capitol Forum* article dated May 10, 2021, contains a quote attributed to an unnamed former doctor and respectfully refers the Court to that article for a complete and accurate statement of its contents.

147.    The allegations in the first sentence of Paragraph 147 constitute legal conclusions, to which no response is required.  To the extent a response in required, TCO denies the allegations in the first sentence of Paragraph 147, which are too vague to permit a response.  The allegations in the second sentence of Paragraph 147 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO admits the allegations in the second sentence of Paragraph 147.  TCO admits that home care services may include assisting a patient with cooking and using the bathroom and providing medications and physical therapy.  The remainder of the allegations in the third sentence of Paragraph 147 are too vague to respond to and TCO therefore denies them on that basis.  The fourth sentence of Paragraph 147 purports to quote from and characterize InnovAge's Offering Documents, which are documents that speak for themselves. TCO respectfully refers the Court to the Offering Documents for a complete and accurate statement of their contents, and otherwise denies the allegations in the fourth sentence of Paragraph 147.

-48-

148.    TCO denies the allegations of Paragraph 148, which do not present a fair and complete description of the matters described therein and pertain to statements by an unnamed current employee and an unnamed former InnovAge enrollment representative of which TCO lacks knowledge, except respectfully refers the Court to the *Capitol Forum* article dated June 23, 2021, that purportedly is characterized and quoted in Paragraph 148 for a complete and accurate statement of its contents.

149.    TCO admits that InnovAge's Third Amended Registration Statement, filed with the SEC on March 3, 2021, states that "[a]s a result of the COVID-19 pandemic, [InnovAge has] transitioned much of [its] care to in-home and telehealth services," but otherwise lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 149, and on that basis denies them.

150.    TCO denies the allegations of Paragraph 150, which do not present a fair and complete description of the matters described therein and pertain to statements by an unnamed former social worker and unnamed former employee of which TCO lacks knowledge, except respectfully refers the Court to the *Capitol Forum* article dated June 23, 2021, that purportedly is characterized and quoted in Paragraph 150 for a complete and accurate statement of its contents.

151.    TCO denies the allegations of Paragraph 151, which do not present a fair and complete description of the matters described therein and pertain to statements by unnamed current and former employees of which TCO lacks knowledge, except respectfully refers the Court to the *Capitol Forum* article dated June 23, 2021, that purportedly is characterized and quoted in Paragraph 151 for a complete and accurate statement of its contents.

-49-

152.    TCO denies the allegations of Paragraph 152, which do not present a fair and complete description of the matters described therein and pertain to statements by an unnamed former representative of which TCO lacks knowledge, except respectfully refers the Court to the *Capitol Forum* article dated June 23, 2021, that purportedly is characterized and quoted in Paragraph 152 for a complete and accurate statement of its contents.

153.    TCO denies the allegations of Paragraph 153, which do not present a fair and complete description of the matters described therein and pertain to statements by an unnamed former vice president of which TCO lacks knowledge, except respectfully refers the Court to the *Capitol Forum* articles dated June 23, 2021, and July 9, 2021, that purportedly are characterized and quoted in Paragraph 153 for a complete and accurate statement of their contents.

154.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 154, and on that basis denies them.

155.    TCO admits that a complaint asserting claims under the False Claims Act was filed by a former InnovAge employee on July 25, 2019, and by way of further response, states that the complaint was initially filed under seal but on April 2, 2020, the complaint was dismissed and the seal was lifted from the action, making the complaint publicly available.  TCO denies the remaining allegations of Paragraph 155, which do not present a fair and complete description of the matters described therein, except admits that the complaint and accompanying exhibits filed in *Karen Lapchewich ex rel. United States* v. *Total Community Options, Inc.*, 19-cv-01370-DMG-SP (C.D. Cal. July 25, 2019), which was dismissed on April 2, 2020, contain allegations that "mock audits" in 2016 and 2017 found deficiencies and respectfully refers the Court to those documents for a complete and accurate statement of their contents.

156.     TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 156, and on that basis denies them.

157.     TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 157, and on that basis denies them.  TCO respectfully refers the Court to the complaint and accompanying exhibits filed in *Karen Lapchewich ex rel. United States* v. *Total Community Options, Inc.*, 19-cv-01370-DMG-SP (C.D. Cal. July 25, 2019), which was dismissed on April 2, 2020, for a complete and accurate statement of their contents.

158.     TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 158, and on that basis denies them.  TCO respectfully refers the Court to the complaint and accompanying exhibits filed in *Karen Lapchewich ex rel. United States* v. *Total Community Options, Inc.*, 19-cv-01370-DMG-SP (C.D. Cal. July 25, 2019), which was dismissed on April 2, 2020, for a complete and accurate statement of their contents.

159.     TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 159, and on that basis denies them.

160.     TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 160, and on that basis denies them, except respectfully refers the Court to the Participant Advisory Committee minutes, attached as Exhibit 7 to the complaint filed in *Karen Lapchewich ex rel. United States* v. *Total Community Options, Inc.*, 19-cv-01370-DMG-SP (C.D. Cal. July 25, 2019), for a complete and accurate statement of their contents.

161.     TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 161, and on that basis denies them.  TCO respectfully

refers the Court to the complaint and accompanying exhibits filed in *Karen Lapchewich ex rel. United States* v. *Total Community Options, Inc.*, 19-cv-01370-DMG-SP (C.D. Cal. July 25, 2019), which was dismissed on April 2, 2020, for a complete and accurate statement of their contents.

162. TCO denies the allegations in Paragraph 162, which do not present a fair and complete description of the matters described therein and of which TCO lacks knowledge, except admits (a) that CMS audited InnovAge's California and Colorado centers in 2017, 2018 and 2019, and (b) those audit results are CMS public records, and respectfully refers the Court to the PACE audit results published by CMS for a complete and accurate statement of their contents.

163. TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first and second sentences of Paragraph 163, and on that basis denies them, except admits that CMS has assigned audit scores for InnovAge's audited programs. TCO admits that CMS's published audit scores state that InnovAge's programs in California and Colorado received audit scores of 4 and 5.2, and otherwise lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in the third sentence of Paragraph 163, and on that basis denies them, and respectfully refers the Court to CMS's published audit scores for 2017 for a complete and accurate statement of their contents.

164. TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 164, and on that basis denies them, and respectfully refers the Court to the August 2017 PACE audit results published by CMS for a complete and accurate statement of its contents.

165. TCO denies the allegations in the first sentence of Paragraph 165, which do not present a fair and complete description of the matters described therein. TCO lacks the knowledge

or information sufficient to form a belief as to the truth or falsity of the allegations in the second and third sentences of Paragraph 165 regarding FE-1's alleged role as a social worker at the San Bernardino center from March 2019 to August 2019 or FE-1's subjective views and assessments as alleged in Paragraph 165, and on that basis denies them.

166.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 166, and on that basis denies them, except admits that Paragraph 154 purports to characterize an email sent by an unidentified former employee on August 9, 2019, and respectfully refers the Court to a copy of that email for a complete and accurate statement of its contents.

167.    TCO denies the allegations in Paragraph 167.

168.    TCO admits that CMS issued an audit report dated November 9, 2017, but otherwise denies the allegations in Paragraph 168, which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to the audit report for a complete and accurate statement of its contents.

169.    TCO admits that CMS issued an audit report reflecting results of an audit on InnovAge's Colorado centers dated September 30, 2019, and that the audit identified certain CARs and ICARs, but denies the remaining allegations of Paragraph 169, which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to the CMS audit report, dated September 30, 2019, for a complete and accurate statement of its contents.

170.    TCO admits (a) InnovAge's Third Amended Registration Statement, filed with the SEC on March 3, 2021, states that InnovAge is subject to audits by state agencies and faces "inspections, reviews, audits and investigations under federal and state government programs and

contracts," (b) that the Colorado Department of Public Health & Environment's ("CDPHE") public audit dashboard states that CDPHE conducted an inspection of InnovAge Home Care North, operating under facility ID 04J693 in or around approximately January 2019, and (c) that CDPHE's public audit dashboard states that the CDPHE inspection identified certain deficiencies, and, by way of further answer, states that the results of the CDPHE inspection were made available to the public on CDPHE's website, but denies the remaining allegations in Paragraph 170, which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to the CDPHE's dashboard of inspection results for a complete and accurate statement of its contents.

171. TCO admits that InnovAge's 2021 Annual Report states that HCPF audited InnovAge's Colorado PACE centers. TCO lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations in the second, third and fourth sentences in Paragraph 171, and on that basis denies them, except respectfully refers the Court to the March 1, 2021 letter from HCPF for a complete and accurate statement of its contents. The allegations in the fifth sentence of Paragraph 171 constitute legal conclusions to which no response is required. To the extent a response is required, TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the fifth sentence of Paragraph 171, and on that basis denies them.

172. TCO denies the allegations in Paragraph 172, which do not present a fair and complete description of the matters described therein, except admits that (a) CDPHE's public audit dashboard indicates that CDPHE inspected InnovAge's home care programs, (b) CDPHE's public audit dashboard indicates that the CDPHE issued citations to InnovAge in the three years before

the IPO, and (c) by way of further answer, TCO states that information concerning those citations is published on CDPHE's website, and respectfully refers the Court to CDPHE's public dashboard of inspection results for a complete and accurate statement of its contents.

173.    TCO denies the allegations in Paragraph 173, which do not present a fair and complete description of the matters described therein, except admits that CDPHE inspections of InnovAge Home Care North, Facility ID 04J693, exit date February 21, 2019, and InnovAge Pace Home Care, Facility ID 04N711, exit date July 21, 2020, resulted in the issuance of citations to InnovAge, and by way of further answer, states that information concerning those citations is published on CDPHE's website, and respectfully refers the Court to CDPHE's public dashboard of inspection results for a complete and accurate statement of its contents.

174.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 174 concerning statements allegedly made by former employees, and on that basis denies them.

175.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 175 concerning statements allegedly made by FE-4, and on that basis denies them.  TCO denies the remaining allegations in Paragraph 175, which do not present a fair and complete description of the matters described therein.

176.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 176 concerning statements allegedly made by FE-2, and on that basis denies them.  TCO denies the remaining allegations in Paragraph 176, which do not present a fair and complete description of the matters described therein.

-55-

177.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 177, and on that basis denies them.

178.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 178, and on that basis denies them.

179.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 179, and on that basis denies them.

180.    TCO admits that the allegations in Paragraph 180 appear to characterize InnovAge's Offering Documents.

181.    TCO denies the allegations in Paragraph 181, which do not present a fair and complete description of the matters described therein, except admits that a *Home Health Care News* article dated March 4, 2021, contains quotes attributed to Hewitt, and respectfully refers the Court to that document for a complete and accurate statement of its contents.

182.    TCO denies the allegations in Paragraph 182, which do not present a fair and complete description of the matters described therein, except admits that the Offering Documents include the quoted statements set forth in Paragraph 182 and respectfully refers the Court to the Offering Documents for a complete and accurate statement of their contents.

183.    TCO denies the allegations in Paragraph 183, which do not present a fair and complete description of the matters described therein, except admits that the Offering Documents contain the quoted statements set forth in Paragraph 183 and respectfully refers the Court to the Offering Documents for a complete and accurate statement of their contents.

184.    TCO denies the allegations in Paragraph 184, which do not present a fair and complete description of the matters described therein, except admits that the Offering Documents

refer to InnovAge's "patient-centered" business model and the InnovAge Platform, and respectfully refers the Court to the Offering Documents for a complete and accurate statement of their contents.

185.    TCO denies the allegations in Paragraph 185, which do not present a fair and complete description of the matters described therein, except admits that InnovAge's Offering Documents state that IDTs are a core component of InnovAge's model and respectfully refers the Court to the Offering Documents for a complete and accurate statement of their contents.

186.    TCO denies the allegations in Paragraph 186, which do not present a fair and complete description of the matters described therein, except admits that the Offering Documents discuss InnovAge's care model and respectfully refers the Court to the Offering Documents for a complete and accurate statement of their contents.

187.    TCO denies the allegations in Paragraph 187, which do not present a fair and complete description of the matters described therein, except admits that the Offering Documents discuss InnovAge's business model and respectfully refers the Court to the Offering Documents for a complete and accurate statement of their contents.

188.    TCO denies the allegations in Paragraph 188, which do not present a fair and complete description of the matters described therein, except admits that the Offering Documents discuss InnovAge's growth and sales and marketing capabilities and respectfully refers the Court to the Offering Documents for a complete and accurate statement of their contents.

189.    TCO denies the allegations in Paragraph 189, which do not present a fair and complete description of the matters described therein, except admits that the Offering Documents

discuss InnovAge's growth and respectfully refers the Court to the Offering Documents for a complete and accurate statement of their contents.

190. The allegation in the first sentence of Paragraph 190 is too vague to respond to and TCO therefore denies it on that basis. TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second and fifth sentences of Paragraph 190, and on that basis denies them. TCO admits that the allegations in the third sentence of Paragraph 190 appear to characterize InnovAge's Form 10-Q, filed with the SEC on May 11, 2021. TCO lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations in the fourth sentence of Paragraph 190, and on that basis denies them. The sixth sentence of Paragraph 190 purports to characterize InnovAge's Offering Documents, which are documents that speak for themselves. TCO respectfully refers the Court to the Offering Documents for a complete and accurate statement of their contents, and otherwise denies the allegations in the sixth sentence of Paragraph 190.

191. TCO denies the allegations in Paragraph 191, which do not present a fair and complete description of the matters described therein, except admits that InnovAge reported in its Form 8-K, filed with the SEC on May 10, 2021, increased year-over-year revenue for the third quarter of Fiscal Year 2021 and that a transcript of the May 10, 2021 InnovAge earnings conference call contains a reference to a "multi-pronged strategy" and respectfully refers the Court to that document for a complete and accurate statement of its contents.

192. TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 192, and on that basis denies them, and respectfully refers

-59-

the Court to the March 10, 2021 letter from HCPF for a complete and accurate statement of its contents.

193.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 193, and on that basis denies them, and respectfully refers the Court to the March 10, 2021 letter from HCPF for a complete and accurate statement of its contents.

194.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 194, and on that basis denies them, and respectfully refers the Court to the March 2021 letter to Thornton participants and caregivers for a complete and accurate statement of its contents.

195.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 195, and on that basis denies them, except respectfully refers the Court to the National PACE Association document referred to in Paragraph 195 for a complete and accurate statement of its contents.

196.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 196, and on that basis denies them, except admits that a *Capitol Forum* article dated April 23, 2021, contains quotes attributed to unnamed operators of assisted living homes and respectfully refers the Court to that article for a complete and accurate statement of its contents.

197.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 197, and on that basis denies them, except admits that a *Capitol Forum* article dated April 23, 2021, contains quotes attributed to unnamed operators of

assisted living homes and respectfully refers the Court to that article for a complete and accurate statement of its contents.

198.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 198, and on that basis denies them, except admits that a *Capitol Forum* article dated April 23, 2021, contains quotes attributed to unnamed operators of assisted living homes and respectfully refers the Court to that article for a complete and accurate statement of its contents.

199.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 199, and on that basis denies them, except admits that a *Capitol Forum* article dated April 23, 2021, contains quotes attributed to unnamed operators of assisted living homes and respectfully refers the Court to that article for a complete and accurate statement of its contents.

200.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 200, and on that basis denies them, except admits that a *Capitol Forum* article dated April 23, 2021, contains quotes attributed to unnamed operators of assisted living homes and respectfully refers the Court to that article for a complete and accurate statement of its contents.

201.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 201, and on that basis denies them, except admits that a *Capitol Forum* article dated April 23, 2021, contains quotes attributed to unnamed operators of assisted living homes and respectfully refers the Court to that article for a complete and accurate statement of its contents.

-60-

202.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 202, and on that basis denies them.

203.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 203, and on that basis denies them, except respectfully refers the Court to the *Capitol Forum* article dated May 10, 2021, and unidentified email that are referenced and characterized in Paragraph 203 for a complete and accurate statement of their contents.

204.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 204, and on that basis denies them, except admits that a *Capitol Forum* article dated May 10, 2021, contains quotes attributed to unnamed current employees at InnovAge's centers other than InnovAge's Pueblo center and respectfully refers the Court to that article for a complete and accurate statement of its contents.

205.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 205, and on that basis denies them.

206.    TCO admits that the allegations in the second sentence of Paragraph 206 appear to characterize notices from CMS dated September 17, 2021, and December 22, 2021, respectively. TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 206, and on that basis denies them.

207.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 207, and on that basis denies them, except admits that (a) Hewitt was interviewed by *Home Health Care News* and (b) a *Home Health Care News* article

dated March 4, 2021, includes quotes attributed to Hewitt, and respectfully refers the Court to the March 4, 2021 article for a complete and accurate statement of its contents.

208. TCO denies the allegations in Paragraph 208, which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to the transcript of the May 10, 2021 InnovAge earnings conference call for a complete and accurate statement of its contents.

209. TCO denies the allegations in Paragraph 209, which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to the transcript of the May 10, 2021 InnovAge earnings conference call for a complete and accurate statement of its contents.

210. TCO denies the allegations in Paragraph 210, which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to the transcript of the May 10, 2021 InnovAge earnings conference call for a complete and accurate statement of its contents.

211. TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of Paragraph 211, and on that basis denies them. TCO denies the remaining allegations in Paragraph 211, which do not present a fair and complete description of the matters described therein, except respectfully refers the Court to reports published by William Blair, Piper Sandler and Barclays on May 11, 2021, for a complete and accurate statement of their contents.

212. TCO admits that (a) a letter from CMS dated September 17, 2021, states that CMS completed its onsite fieldwork for the Sacramento audit on approximately May 21, 2021, (b) a

letter from HCPF dated December 23, 2021 states that on May 26, 2021, HCPF and CDPHE initiated a joint audit of InnovAge's Colorado centers, and (c) a letter from CMS dated December 22, 2021, states that on June 21, 2021, CMS initiated a separate focused desk audit of InnovAge's Colorado PACE program, but otherwise denies the allegations in the first and third sentences of Paragraph 212. The second sentence of Paragraph 212 appears to characterize the CMS PACE Manual, which is a document that speaks for itself. TCO respectfully refers the Court to that document for a complete and accurate statement of its contents, and otherwise lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of Paragraph 212, and on that basis denies them. TCO admits that the allegations in the third sentence of Paragraph 212 appear to characterize a letter from HCPF dated December 23, 2021.

213. TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 213 and on that basis denies them, except admits that (a) Welch was InnovAge's Chief Medical Officer as of May 27, 2021, and (b) a *Capitol Forum* article dated May 27, 2021, includes quotes attributed to Welch, and respectfully refers the Court to that article for a complete and accurate statement of its contents.

214. TCO denies the allegations in Paragraph 214, which do not present a fair and complete description of the matters described therein and pertain to statements by unnamed former employees of which TCO lacks knowledge, and respectfully refers the Court to the *Capitol Forum* article dated July 15, 2021, for a complete and accurate statement of its contents.

215. TCO denies the allegations in Paragraph 215, which do not present a fair and complete description of the matters described therein and pertain to matters of which TCO lacks

-63-

knowledge, except admits that (a) Welch served as InnovAge's Chief Medical Officer as of July 15, 2021, and (b) a *Capitol Forum* article dated July 15, 2021, includes quotes attributed to Welch and unnamed InnovAge employees and respectfully refers the Court to that article for a complete and accurate statement of its contents.

216.    TCO denies the allegations in Paragraph 216, which do not present a fair and complete description of the matters described therein and pertain to matters of which TCO lacks knowledge, except respectfully refers the Court to the *Capitol Forum* article dated August 26, 2021, for a complete and accurate statement of its contents.

217.    TCO denies the allegations in Paragraph 217, which do not present a fair and complete description of the matters described therein and pertain to statements by an unnamed owner of an assisted living facility of which TCO lacks knowledge, except admits that a *Capitol Forum* article dated August 26, 2021, includes a quote attributed to the unnamed owner and respectfully refers the Court to that article for a complete and accurate statement of its contents.

218.    TCO admits that *The Capitol Forum* published an article concerning InnovAge dated September 2, 2021, and that as of that date CMS was conducting an audit of InnovAge's Colorado and Sacramento centers.  TCO denies the remaining allegations in Paragraph 218, which do not present a fair and complete description of the matters described therein and pertain to statements by unnamed current employees of which TCO lacks knowledge, except respectfully refers the Court to the *Capitol Forum* article dated September 2, 2021, for a complete and accurate statement of its contents, and otherwise denies the allegations in Paragraph 218.

219.    TCO denies the allegations in Paragraph 219, which do not present a fair and complete description of the matters described therein and pertain to statements by an unnamed

employee of which TCO lacks knowledge, except admits that a *Capitol Forum* article dated September 2, 2021, includes quotes attributed to the unnamed employee and respectfully refers the Court to that article for a complete and accurate statement of its contents.

220.    Paragraph 220 purports to quote from and characterize an article published by *The Capitol Forum* on September 10, 2021, which is a document that speaks for itself.   TCO respectfully refers the Court to that document for its complete and accurate contents, and otherwise lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 220, and on that basis denies them.

221.    Paragraph 221 purports to quote from and characterize an article published by *The Capitol Forum* on September 10, 2021, which is a document that speaks for itself.   TCO respectfully refers the Court to that document for its complete and accurate contents, and otherwise denies the allegations in Paragraph 221, which do not present a fair and complete description of the matters described therein, are too vague to permit a response, and pertain to matters of which TCO lacks knowledge.

222.    Paragraph 222 purports to characterize a September 17, 2021 letter from CMS, which is a document that speaks for itself.  TCO respectfully refers the Court to that document for its complete and accurate contents, and otherwise denies the allegations in Paragraph 222, which do not present a fair and complete description of the matters described therein.

223.    TCO denies the allegations in Paragraph 223, which do not present a fair and complete description of the matters described therein, however, by way of further answer, states that InnovAge filed its 2021 Annual Report with the SEC on Form 10-K on September 23, 2021,

and respectfully refers the Court to InnovAge's Form 10-K, for a complete and accurate statement of its contents.

224.    TCO denies the allegations in Paragraph 224, except admits that (a) InnovAge held an earnings conference call on September 21, 2021, and (b) Paragraph 224 purports to quote from statements made during that call, and respectfully refers the Court to the transcript of the September 21, 2021 InnovAge earnings conference call for a complete and accurate statement of its contents.

225.    TCO denies the allegations in Paragraph 225, except admits that (a) InnovAge held an earnings conference call on September 21, 2021, and (b) Paragraph 225 purports to quote from statements made during that call, and respectfully refers the Court to the transcript of the September 21, 2021 InnovAge earnings conference call for a complete and accurate statement of its contents.

226.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first and fourth sentences of Paragraph 226, and on that basis denies them.  TCO denies the second and third sentences of Paragraph 226, which do not reflect a fair and complete description of the matters described therein, except admits that InnovAge's stock price closed at $11.65 on September 21, 2021, and respectfully refers the Court to the September 22, 2021 report published by Barclays for a complete and accurate statement of its contents.  TCO denies the allegations in the fifth and sixth sentences of Paragraph 226, which do not reflect a fair and complete description of the matters described therein, except respectfully refers the Court to the September 22, 2021 report published by Piper Sandler for a true and correct statement of its contents.

-66-

227.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 227, and on that basis denies them, except admits that an article in *The Gazette* dated October 9, 2021, contains quotes attributed to Mark Corbae and a person claimed to be a former executive of InnovAge, and respectfully refers the Court to the article published by *The Gazette* on October 9, 2021, for a complete and accurate statement of its contents.

228.    TCO admits the allegations in the first sentence of Paragraph 228.  TCO denies the remaining allegations in Paragraph 228, which do not present a fair and complete description of the matters described therein, except admits that Paragraph 216 purports to characterize and quote from InnovAge's Form 10-Q and a transcript of the November 9, 2021 InnovAge earnings conference call and respectfully refers the Court to those documents for a complete and accurate statement of their contents.

229.    TCO denies the allegations in Paragraph 229, which do not present a fair and complete description of the matters described therein, except admits that Paragraph 229 purports to quote statements made during a November 9, 2021 earnings conference call and respectfully refers the Court to a transcript of the November 9, 2021 earnings conference call for a complete and accurate statement of its contents.

230.    TCO denies the allegations in Paragraph 230, which do not present a fair and complete description of the matters described therein, except admits that Paragraph 230 purports to quote statements made during a November 9, 2021 earnings conference call and respectfully refers the Court to a transcript of the November 9, 2021 earnings conference call for a complete and accurate statement of its contents.

231.    TCO denies the allegations in Paragraph 231, which do not present a fair and complete description of the matters described therein, except admits that Paragraph 231 purports to characterize and quote statements made during a November 9, 2021 earnings conference call and respectfully refers the Court to a transcript of the November 9, 2021 earnings conference call for a complete and accurate statement of its contents.

232.    TCO denies the allegations in Paragraph 232, which do not present a fair and complete description of the matters described therein, except admits that (a) Piper Sandler published an analyst report concerning InnovAge dated November 9, 2021, (b) InnovAge's closing price on November 9, 2021, was $7.06 per share (c) Barclays published an analyst report concerning InnovAge dated November 10, 2021 and (d) William Blair published an analyst report concerning InnovAge dated November 10, 2021, and respectfully refers the Court to the reports published by Piper Sandler, William Blair and Barclays for a complete and accurate statement of their contents.

233.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 233, and on that basis denies them.

234.    TCO denies the allegations in Paragraph 234, which do not present a fair and complete description of the matters described therein, except respectfully refers the Court to the *MarketWatch* article dated November 13, 2021, for a complete and accurate statement of its contents.

235.    TCO denies the allegations in Paragraph 235, which do not present a fair and complete description of the matters described therein, except admits that a *MarketWatch* article

dated November 13, 2021, includes quotes attributed to Scully, and respectfully refers the Court to the *MarketWatch* article for a complete and accurate statement of its contents.

236.    TCO denies the allegations in Paragraph 236, which do not present a fair and complete description of the matters described therein, except admits that (a) on December 22, 2021, CMS notified InnovAge that effective December 23, 2021, CMS was suspending InnovAge's enrollment of new Medicare beneficiaries at its Colorado centers, (b) by way of further answer, states that on December 23, 2021, HCPF notified InnovAge that it was suspending enrollments of new Medicaid beneficiaries at InnovAge's Colorado centers and (c) respectfully refers the Court to the letter from CMS dated December 22, 2021, and the letter from HCPF dated December 23, 2021, for a complete and accurate statement of their contents.

237.    TCO denies the allegations in Paragraph 237, which do not present a fair and complete description of the matters described therein, except admits that the letter from CMS dated December 22, 2021, states that CMS conducted an audit of InnovAge's Colorado operations from June 21 to July 8, 2021, and respectfully refers the Court to the December 22, 2021 letter from CMS for a complete and accurate statement of its contents.

238.    TCO admits that (a) InnovAge filed a Form 8-K on December 23, 2021, attaching a press release announcing that HCPF had verbally communicated to InnovAge that it was issuing sanctions in conjunction with CMS regarding deficiencies specific to Medicaid, and (b) letters from CMS state that CMS identified deficiencies in InnovAge's Sacramento and Colorado locations as a result of audits in 2021 and respectfully refers the Court to InnovAge's Form 8-K dated December 23, 2021, and letters from CMS dated September 17, 2021, and December 22, 2021, for a complete and accurate statement of their contents.   TCO denies the remaining

-69-

allegations in Paragraph 238, which do not present a fair and complete description of the matters described therein.

239. TCO admits that the allegations in Paragraph 239 appear to characterize InnovAge's press release dated December 23, 2021.

240. TCO denies the allegations in Paragraph 240, which do not present a fair and complete description of the matters described therein, except admits that (a) Barclays issued an analyst report dated December 23, 2021, that stated that it was downgrading InnovAge to "Equal Weight," and (b) Cowen, Piper Sandler and William Blair also issued analyst reports concerning InnovAge dated December 23, 2021, and respectfully refers the Court to those documents for a complete and accurate statement of their contents.

241. TCO admits that InnovAge's stock price closed at $8.25 per share on December 22, 2021, $5.31 per share on December 23, 2021, and $4.71 per share on December 27, 2021, but otherwise lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 241, and on that basis denies them.

242. TCO denies the allegations in Paragraph 242, which are too vague to permit a response.

243. TCO denies the allegations in Paragraph 243, which do not present a fair and complete description of the matters described therein, except admits that (a) CMS announced its suspension of enrollments at InnovAge Colorado on December 22, 2021, (b) Hewitt served as CEO of InnovAge for approximately 15 years, (c) Hewitt resigned effective January 1, 2022, and (d) the Board of Directors elevated Patrick Blair ("Blair") to the position of President and CEO,

effective January 1, 2022, and by way of further response, states that InnovAge announced on November 12, 2021, that Blair had been appointed as President of InnovAge.

244.    TCO admits the allegations in the first sentence of Paragraph 244.  TCO admits the remaining allegations in Paragraph 244 and respectfully refers the Court to InnovAge's Form 10- Q, filed with the SEC on February 9, 2022, for a complete and accurate statement of its contents.

a)    TCO admits that the allegations in Paragraph 244(a) purport to quote from and characterize InnovAge's Form 10-Q, filed with the SEC on February 9, 2022, and respectfully refers the Court to that document for a complete and accurate statement of its contents.

b)    TCO denies the allegations in Paragraph 244(b), which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to InnovAge's Form 10-Q, filed with the SEC on February 9, 2022, for a complete and accurate statement of its contents.

c)    TCO denies the allegations in Paragraph 244(c), which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to InnovAge's Form 10-Q, filed with the SEC on February 9, 2022, for a complete and accurate statement of its contents.

d)    TCO admits that the allegations in Paragraph 244(d) purport to quote from and characterize InnovAge's Form 10-Q, filed with the SEC on February 9, 2022, and respectfully refers the Court to that document for a complete and accurate statement of its contents.

e)     TCO admits that the allegations in Paragraph 244(e) purport to quote from and characterize InnovAge's Form 10-Q, filed with the SEC on February 9, 2022, and respectfully refers the Court to that document for a complete and accurate statement of its contents.

245.     TCO admits the allegations in the first sentence of Paragraph 245.  The remaining allegations in Paragraph 245 purport to quote from and characterize InnovAge's press release dated May 10, 2022, which is a document that speaks for itself.  TCO respectfully refers the Court to that document for a complete and accurate statement of its contents, and otherwise denies the allegations in Paragraph 245, which do not present a fair and complete description of the matters described therein.

246.     TCO admits the allegations in Paragraph 246 and respectfully refers the Court to InnovAge's Form 10-Q, filed with the SEC on May 10, 2022, for a complete and accurate statement of its contents.

a)     TCO admits that the allegations in Paragraph 246(a) purport to quote from and characterize InnovAge's Form 10-Q, filed with the SEC on May 10, 2022, and respectfully refers the Court to that document for a complete and accurate statement of its contents.

b)     TCO admits that the allegations in Paragraph 246(b) purport to quote from and characterize InnovAge's Form 10-Q, filed with the SEC on May 10, 2022, and respectfully refers the Court to that document for a complete and accurate statement of its contents.

c)     TCO admits that the allegations in Paragraph 246(c) purport to quote from and characterize InnovAge's Form 10-Q, filed with the SEC on May 10, 2022, and respectfully refers the Court to that document for a complete and accurate statement of its contents.

d)      TCO admits that the allegations in Paragraph 246(d) purport to quote from and characterize InnovAge's Form 10-Q, filed with the SEC on May 10, 2022, and respectfully refers the Court to that document for a complete and accurate statement of its contents.

247.    TCO admits (a) the first sentence of Paragraph 247, and (b) that Paragraph 247 purports to quote from a May 10, 2022 earnings conference call, and otherwise denies the allegations in Paragraph 247, which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to a transcript of the May 10, 2022 earnings conference call for a complete and accurate statement of its contents.

248.    TCO admits that Paragraph 248 purports to characterize and quote from a May 10, 2022 earnings conference call and otherwise denies the allegations in Paragraph 248, which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to a transcript of the May 10, 2022 InnovAge earnings conference call for a complete and accurate statement of its contents.

249.    TCO admits that Paragraph 249 purports to characterize and quote from a May 10, 2022 earnings conference call and otherwise denies the allegations in Paragraph 249, which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to a transcript of the May 10, 2022 InnovAge earnings conference call for a complete and accurate statement of its contents.

250.    TCO admits that Paragraph 250 purports to characterize and quote from a May 10, 2022 earnings conference call and otherwise denies the allegations in Paragraph 250, which do not present a fair and complete description of the matters described therein, and respectfully refers the

Court to a transcript of the May 10, 2022 InnovAge earnings conference call for a complete and accurate statement of its contents.

251.    TCO admits that Paragraph 251 purports to characterize and quote from a May 10, 2022 earnings conference call and otherwise denies the allegations in Paragraph 251, which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to a transcript of the May 10, 2022 InnovAge earnings conference call for a complete and accurate statement of its contents.

252.    The allegations in Paragraph 252 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 252.

253.    TCO admits the allegations in the first sentence of Paragraph 253.  The allegations in the second sentence of Paragraph 253 and in subparagraphs (a) through (l) constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in the second sentence of Paragraph 253 and in subparagraphs (a) through (l), as further answered below.

(a)    Paragraph 253(a) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations of Paragraph 253(a), which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to the Offering Documents for a complete and accurate statement of their contents.

(b)    TCO denies the allegations of Paragraph 253(b), which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to the Offering Documents for a complete and accurate statement of their contents.

-74-

(c)     Paragraph 253(c) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations of Paragraph 253(c), which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to the Offering Documents for a complete and accurate statement of their contents.

(d)     Paragraph 253(d) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations of Paragraph 253(d), which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to the Offering Documents for a complete and accurate statement of their contents.

(e)     Paragraph 253(e) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations of Paragraph 253(e), which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to the Offering Documents for a complete and accurate statement of their contents.

(f)     TCO denies the allegations in Paragraph 253(f), which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to the Offering Documents for a complete and accurate statement of their contents.

(g)     Paragraph 253(g) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations of Paragraph 253(g), which do not present a fair and complete description of the matters described

-75-

therein, and respectfully refers the Court to the Offering Documents for a complete and accurate statement of their contents.

(h)    TCO denies the allegations in Paragraph 253(h), which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to the Offering Documents for a complete and accurate statement of their contents.

(i)    Paragraph 253(i) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations of Paragraph 253(i), which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to the Offering Documents for a complete and accurate statement of their contents.

(j)    Paragraph 253(j) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations of Paragraph 253(j), which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to the Offering Documents for a complete and accurate statement of their contents.

(k)    Paragraph 253(k) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations of Paragraph 253(k), which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to the Offering Documents for a complete and accurate statement of their contents.

(l)    Paragraph 253(l) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations

-76-

of Paragraph 253(l), which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to the Offering Documents for a complete and accurate statement of their contents.

254.    The allegations in Paragraph 254 and its subparagraphs constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 254 and its subparagraphs, as further answered below.

(a)    Paragraph 254(a) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 254(a).

(b)    TCO denies the allegations in Paragraph 254(b).

(c)    Paragraph 254(c) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 254(c).

(d)    Paragraph 254(d) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 254(d).

(e)    Paragraph 254(e) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 254(e).

(f)    TCO denies the allegations in Paragraph 24254(f).

(g)    Paragraph 254(g) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 254(g).

(h)    TCO denies the allegations in Paragraph 254(h).

(i)    Paragraph 254(i) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 254(i).

(j)    Paragraph 254(j) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 254(j).

(k)    Paragraph 254(k) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 254(k).

(l)    Paragraph 254(l) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 254(l).

255.    Paragraph 255 includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, the allegations in Paragraph 255 constitute legal conclusions, to which no response is required.  To the extent any further response is required, TCO denies the allegations in Paragraph 255.

256.    Paragraph 256 includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, the allegations in Paragraph 256

constitute legal conclusions, to which no response is required.  To the extent any further response is required, TCO states that Paragraph 256 purports to quote from and characterize sections of the Code of Federal Regulations and respectfully refers the Court to those sections for a complete and accurate statement of their contents.

257.    Paragraph 257 includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, the allegations in Paragraph 257 constitute legal conclusions, to which no response is required.  To the extent any further response is required, TCO denies the allegations in Paragraph 257.

258.    Paragraph 258 includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO admits the allegations in the first and second sentences of Paragraph 258.  TCO denies the remaining allegations in Paragraph 258, which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to InnovAge's press release, dated May 10, 2021, for a complete and accurate statement of its contents.

259.    Paragraph 259 includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, the allegations in Paragraph 259 constitute legal conclusions, to which no response is required.  To the extent a further response is required, TCO denies the allegations in Paragraph 259.

260.    Paragraph 260 includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO admits the allegations in the first sentence of Paragraph 260.  The allegations in the second sentence of Paragraph 260 and its subparagraphs constitute legal conclusions, to which no response is required.  To the extent any

-79-

further response is required, TCO denies the allegations in the second sentence of Paragraph 260 and its subparagraphs, as further answered below.

(a)     Paragraph 260(a) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 260(a), which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to a transcript of the May 10, 2021 InnovAge earnings conference call for a complete and accurate statement of its contents.

(b)     Paragraph 260(b) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 260(b), which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to the Offering Documents for a complete and accurate statement of their contents.

261.     Paragraph 261 includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, the allegations in Paragraph 261 and its subparagraphs constitute legal conclusions, to which no response is required.  To the extent a further response is required, TCO denies the allegations in Paragraph 261 and its subparagraphs, as further answered below.

(a)     Paragraph 261(a) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 261(a).

-80-

(b)     Paragraph 261(b) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 261(b).

262.    TCO admits that InnovAge filed a Form 10-Q, signed by Hewitt and Gutierrez, with the SEC on May 11, 2021.  The remaining allegations in Paragraph 262 and its subparagraphs constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the remaining allegations in Paragraph 262 and its subparagraphs.

(a)     Paragraph 262(a) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 262(a), which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to InnovAge's Form 10-Q, filed with the SEC on May 11, 2021, for a complete and accurate statement of its contents.

(b)     TCO denies the allegations in Paragraph 262(b), which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to InnovAge's Form 10-Q, filed with the SEC on May 11, 2021, for a complete and accurate statement of its contents.

(c)     Paragraph 262(c) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 262(c), which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to InnovAge's Form 10-Q, filed with the SEC on May 11, 2021, for a complete and accurate statement of its contents.

(d)    Paragraph 262(d) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 262(d), which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to InnovAge's Form 10-Q, filed with the SEC on May 11, 2021, for a complete and accurate statement of its contents.

(e)    Paragraph 262(e) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 262(e), which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to InnovAge's Form 10-Q, filed with the SEC on May 11, 2021, for a complete and accurate statement of its contents.

263.    The allegations in Paragraph 263 and its subparagraphs constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 263 and its subparagraphs, as further answered below.

(a)    Paragraph 263(a) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 263(a).

(b)    TCO denies the allegations in Paragraph 263(b).

(c)    Paragraph 263(c) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 263(c).

(d)     Paragraph 263(d) includes allegations pertaining to the Dismissed Claims, to which no response is required. To the extent a response is required, TCO denies the allegations in Paragraph 263(d).

(e)     Paragraph 263(e) includes allegations pertaining to the Dismissed Claims, to which no response is required. To the extent a response is required, TCO denies the allegations in Paragraph 263(e).

264.     Paragraph 264 includes allegations pertaining to the Dismissed Claims, to which no response is required. To the extent a response is required, TCO admits the allegations in the first and second sentences of Paragraph 264. TCO denies the remaining allegations in Paragraph 264, which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to InnovAge's press release, dated September 21, 2021, for a complete and accurate statement of its contents.

265.     Paragraph 265 includes allegations pertaining to the Dismissed Claims, to which no response is required. To the extent a response is required, the allegations in Paragraph 265 constitute legal conclusions to which no response is required. To the extent a further response is required, TCO denies the allegations in Paragraph 265.

266.     Paragraph 266 includes allegations pertaining to the Dismissed Claims, to which no response is required. To the extent a response is required, TCO admits the allegations in the first sentence of Paragraph 266 and otherwise denies the remaining allegations in Paragraph 266, which do not present a fair and complete description of the matters described therein, and respectfully refers the Court a transcript of the September 21, 2021 earnings conference call for a complete and accurate statement of its contents.

(a)    TCO denies the allegations in Paragraph 266(a), which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to a transcript of the September 21, 2021 InnovAge earnings conference call for a complete and accurate statement of its contents.

(b)    Paragraph 266(b) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 266(b), which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to a transcript of the September 21, 2021 InnovAge earnings conference call for a complete and accurate statement of its contents.

267.    The allegations in Paragraph 267 and its subparagraphs constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 267 and its subparagraphs, as further answered below.

(a)    TCO denies the allegations in Paragraph 267(a).

(b)    Paragraph 267(b) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 267(b).

268.    Paragraph 268 includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, the allegations in the second sentence of Paragraph 268 and Paragraph 268's subparts constitute legal conclusions to which no response is required.  To the extent a further response is required, TCO admits that (a) InnovAge filed a Form 10-K, for the fiscal year ended June 30, 2021, with the SEC on September 23, 2021, and (b) the Form 10-K was signed by Hewitt, Gutierrez,  Bush, Cavanna, Dechert, Kennedy, Mahesh,

-84-

Scully, Tavenner, Traynor, and Zoretic, but otherwise denies the remaining allegations in Paragraph 268, which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to InnovAge's Form 10-K, filed with the SEC on September 23, 2021, for a complete and accurate statement of its contents.

(a)      Paragraph 268(a) includes allegations pertaining to the Dismissed Claims, to which no response is required. To the extent a response is required, TCO denies the allegations in Paragraph 268(a), which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to InnovAge's Form 10-K, filed with the SEC on September 23, 2021, for a complete and accurate statement of its contents.

(b)      Paragraph 268(b) includes allegations pertaining to the Dismissed Claims, to which no response is required. To the extent a response is required, TCO denies the allegations in Paragraph 268(b), which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to InnovAge's Form 10-K, filed with the SEC on September 23, 2021, for a complete and accurate statement of its contents.

269.     Paragraph 269 includes allegations pertaining to the Dismissed Claims, to which no response is required. To the extent a response is required, the allegations in Paragraph 269 constitute legal conclusions to which no response is required. To the extent a further response is required, TCO denies the allegations in Paragraph 269.

(a)      Paragraph 269(a) includes allegations pertaining to the Dismissed Claims, to which no response is required. To the extent a response is required, TCO denies the allegations in Paragraph 269(a).

-85-

(b)    Paragraph 269(b) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 269(b).

270.    Paragraph 270 includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO admits the allegations in the first and second sentences of Paragraph 270, but denies the remaining allegations in Paragraph 270, which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to InnovAge's Form 10-K, filed with the SEC on September 23, 2021, for a complete and accurate statement of its contents.

271.    TCO admits the allegations in the first sentence of Paragraph 271.  The allegations in the second sentence of Paragraph 271 and its subparagraphs constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in the second sentence of Paragraph 271 and its subparagraphs, as further answered below.

(a)    TCO denies the allegations in Paragraph 271(a), which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to a transcript of the November 9, 2021 InnovAge earnings conference call for a complete and accurate statement of its contents.

(b)    Paragraph 271(b) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 271(b), which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to a transcript of the November 9, 2021 InnovAge earnings conference call, for a true and correct statement of its contents.

(c)    Paragraph 271(c) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 271(c), which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to a transcript of the November 9, 2021 InnovAge earnings conference call for a true and correct statement of its contents.

272.    The allegations in Paragraph 272 and its subparagraphs constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 272 and its subparagraphs, as further answered below.

(a)    TCO denies the allegations in Paragraph 272(a).

(b)    Paragraph 272(b) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 272(b).

(c)    Paragraph 272(c) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 272(c).

273.    Paragraph 273 includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, the allegations in Paragraph 273 and its subparagraphs constitute legal conclusions, to which no response is required.  To the extent a further response is required, TCO admits that InnovAge filed a Form 10-Q, signed by Hewitt and Gutierrez, with the SEC on November 9, 2021, but otherwise denies the allegations in Paragraph 273.

(a)    Paragraph 273(a) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 273(a), which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to InnovAge's Form 10-K, filed with the SEC on November 9, 2021, for a complete and accurate statement of its contents.

(b)    Paragraph 273(b) includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 273(b), which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to InnovAge's Form 10-K, filed with the SEC on November 9, 2021, for a complete and accurate statement of its contents.

274.    The allegations of Paragraph 274 are not directed to TCO, and TCO is not required to answer such allegations.  To the extent a response is required, the allegations in Paragraph 262 constitute legal conclusions, to which no response is required.  To the extent a further response is required, TCO denies the allegations in Paragraph 274.

275.    The allegations of Paragraph 275 are not directed to TCO, and TCO is not required to answer such allegations.  To the extent a response is required, TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 275, and on that basis denies them, except admits that InnovAge's Offering Documents and press releases indicate that Hewitt served as InnovAge's CEO from 2006-2021 and Gutierrez served as its CFO from 2017-2023.

276.    The allegations of Paragraph 276 are not directed to TCO, and TCO is not required to answer such allegations.  To the extent a response is required, TCO admits that (a) Hewitt served

as InnovAge's CEO and Gutierrez served as InnovAge's CFO, (b) Gutierrez signed and certified InnovAge's annual and quarterly reports filed with the SEC, (c) Hewitt certified InnovAge's annual and quarterly reports filed with the SEC and (d) Hewitt and Gutierrez attended and spoke on earnings conference calls, and otherwise denies the remaining allegations of Paragraph 276, which do not present a complete and accurate description of the matters described therein, and respectfully refers the Court to InnovAge's SEC filings and transcripts of InnovAge earnings conference calls for their complete and accurate contents.

277.    The allegations of Paragraph 277 are not directed to TCO, and TCO is not required to answer such allegations.  To the extent a response is required, TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 277, and on that basis denies them, except admits that (a) InnovAge's SEC filings during the alleged Class Period indicate that they were signed by Hewitt and/or Gutierrez and (b) Hewitt and Gutierrez participated in certain conference calls with investors during the alleged Class Period. TCO further states that the allegations in the third sentence of Paragraph 277 constitute legal conclusions, to which no response is required.

278.    The allegations of Paragraph 278 are not directed to TCO, and TCO is not required to answer such allegations.  To the extent a response is required, the allegations in Paragraph 278 are too vague to permit a response and TCO therefore denies them on that basis, except admits that Hewitt and Gutierrez (a) had access to certain confidential and proprietary information concerning InnovAge while serving in their respective roles as CEO and CFO and (b) attended certain management and Board meetings and meetings of committees thereof.

-89-

279.     The allegations of Paragraph 279 are not directed to TCO, and TCO is not required to answer such allegations.  To the extent a response is required, TCO denies the allegations in Paragraph 279, which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to a transcript of the May 10, 2022 InnovAge earnings conference call that is purportedly quoted in Paragraph 279 for a complete and accurate statement of its contents.

280.     The allegations of Paragraph 280 are not directed to TCO, and TCO is not required to answer such allegations.  To the extent a response is required, TCO denies the allegations in Paragraph 280, which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to a transcript of the May 10, 2022 InnovAge earnings conference call that is purportedly quoted in Paragraph 280 for a complete and accurate statement of its contents.

281.     The allegations of Paragraph 281 are not directed to TCO, and TCO is not required to answer such allegations.  To the extent a response is required, Paragraph 281 includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a further response is required, the allegations in the first sentence of Paragraph 281 constitute legal conclusions, to which no response is required.  To the extent any further response is required, TCO denies the allegations in the first sentence of Paragraph 281.  TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of Paragraph 281, and on that basis denies them.

282.     The allegations of Paragraph 282 are not directed to TCO, and TCO is not required to answer such allegations.  To the extent a response is required, Paragraph 282 includes

allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a further response is required, TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 282, and on that basis denies them, and respectfully refers the Court to a report published by Barclays on March 29, 2021, for a complete and accurate statement of its contents.

283.    The allegations of Paragraph 283 are not directed to TCO, and TCO is not required to answer such allegations.  To the extent a response is required, Paragraph 283 includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a further response is required, TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 283, and on that basis denies them, and respectfully refers the Court to reports published by Piper Sandler and William Blair on March 29, 2021, for a complete and accurate statement of their contents.

284.    The allegations of Paragraph 284 are not directed to TCO, and TCO is not required to answer such allegations.  To the extent a response is required, Paragraph 284 includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a further response is required, the allegations in Paragraph 284 constitute legal conclusions, to which no response is required.  To the extent any further response is required, TCO denies the allegations in Paragraph 284.

285.    The allegations of Paragraph 285 are not directed to TCO, and TCO is not required to answer such allegations.  To the extent a response is required, the allegations in Paragraph 285 constitute legal conclusions, to which no response is required.  To the extent a further response is

required, TCO denies the allegations in Paragraph 285, which do not present a fair and complete description of the matters described therein.

286.    The allegations of Paragraph 286 are not directed to TCO, and TCO is not required to answer such allegations.  To the extent a response is required, Paragraph 286 includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a further response is required, TCO admits that InnovAge's Form 10-K, filed with the SEC on September 23, 2021, and InnovAge's Annual Reports state that InnovAge's business strategy was to grow by expanding its network of centers and that the majority of its revenue for the fiscal years ended in June 2020, 2021, 2022 and 2023 was derived from capitation agreements with government payors, but otherwise denies the allegations in Paragraph 286, which do not present a fair and complete description of the matters contained therein.

287.    The allegations of Paragraph 287 are not directed to TCO, and TCO is not required to answer such allegations.  To the extent a response is required, Paragraph 287 includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a further response is required, TCO admits that InnovAge's Offering Documents and press releases indicate that Hewitt served as InnovAge's CEO from approximately 2006 to 2021 and Gutierrez served as InnovAge's CFO from approximately 2017 to 2022 and otherwise lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 287, and on that basis denies them.

288.    The allegations of Paragraph 288 are not directed to TCO, and TCO is not required to answer such allegations.  To the extent a response is required, Paragraph 288 includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a

-92-

further response is required, TCO admits that Michelle Blanton served as Vice President of Clinical Operations at InnovAge and later served as Vice President of Compliance at InnovAge, but otherwise denies the allegations in Paragraph 288, which do not present a fair and complete description of the matters described therein, and as to some of which TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 288.

289. The allegations of Paragraph 289 are not directed to TCO, and TCO is not required to answer such allegations. To the extent a response is required, Paragraph 289 includes allegations pertaining to the Dismissed Claims, to which no response is required. To the extent a further response is required, TCO admits that between March 4, 2021, and December 22, 2021, InnovAge filed reports with the SEC, and otherwise lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 289, and on that basis denies them, but respectfully refers the Court to InnovAge's SEC filings and conference call transcripts for a complete and accurate statement of their contents.

156. The allegations of Paragraph 156 are not directed to TCO, and TCO is not required to answer such allegations. To the extent a response is required, Paragraph 156 includes allegations pertaining to the Dismissed Claims, to which no response is required. To the extent a further response is required, TCO denies the allegations in Paragraph 156, which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to a transcript of the September 21, 2021 InnovAge earnings conference call and a transcript of the November 9, 2021 InnovAge earnings conference call, for a complete and accurate statement of their contents.

290.    The allegations of Paragraph 290 are not directed to TCO, and TCO is not required to answer such allegations.  To the extent a response is required, Paragraph 290 includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a further response is required, the allegations in the first and fifth sentences of Paragraph 290 constitute legal conclusions, to which no response is required.  To the extent any further response is required, TCO admits that (a) InnovAge's press release dated November 12, 2021, states that Blair was appointed to serve as President of InnovAge on November 12, 2021, and (b) InnovAge's press release dated January 3, 2022, states that InnovAge announced Hewitt's resignation, and otherwise denies the remaining allegations of Paragraph 290, which do not present a fair and complete description of the matters described therein.

291.    The allegations of Paragraph 291 are not directed to TCO, and TCO is not required to answer such allegations.  To the extent a response is required, TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of Paragraph 291, and on that basis denies them.  The remaining allegations in Paragraph 291 purport to characterize InnovAge's Form 10-K/A, filed with the SEC on October 28, 2021, which is a document that speaks for itself.  TCO respectfully refers the Court to that document for its complete and accurate contents, and otherwise denies the remaining allegations in Paragraph 291.

292.    The allegations of Paragraph 292 are not directed to TCO, and TCO is not required to answer such allegations.  To the extent a response is required, the allegations in Paragraph 292 constitute legal conclusions, to which no response is required.  To the extent a further response is required, TCO denies the allegations in Paragraph 292.

-94-

293.    The allegations in Paragraph 293 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 293.

294.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 294, and on that basis denies them, except respectfully refers the Court to a transcript of a discussion during the June 9, 2021 Goldman Sachs 42nd Annual Global Healthcare Conference for a complete and accurate statement of its contents.

295.    TCO admits that InnovAge's stock price closed at $20.49 per share on June 9, 2021, and $20.98 per share on June 10, 2021.  TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the third sentence of Paragraph 295, and on that basis denies them.  TCO denies the remaining allegations in Paragraph 295, which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to a transcript of a discussion during the June 9, 2021 Goldman Sachs 42nd Annual Global Healthcare Conference for a complete and accurate statement of its contents.

296.    TCO admits that InnovAge held its Q4 2021 earnings call on September 21, 2021. TCO denies the remaining allegations in Paragraph 296, which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to a transcript of the September 21, 2021 InnovAge earnings conference call for a complete and accurate statement of its contents.

297.    TCO admits that InnovAge's stock price closed at $11.65 per share on September 21, 2021, $8.75 per share on September 22, 2021, and $6.76 per share on September 23, 2021, but otherwise lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first and third sentences of Paragraph 297, and on that basis

denies them.  The allegations in the second sentence of Paragraph 297 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in the second sentence of Paragraph 297.  TCO denies the remaining allegations in Paragraph 297, which do not present a fair and complete description of the matters described therein, except admits that Piper Sandler and Cowen published research reports concerning InnovAge dated September 22, 2021, and respectfully refers the Court to those documents for a complete and accurate statement of their contents.

298.    TCO denies the allegations in Paragraph 298, which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to a transcript of the September 21, 2021 InnovAge earnings conference call for a complete and accurate statement of its contents.

299.    TCO admits the allegations of Paragraph 299.

300.    TCO denies the allegations of Paragraph 300, which do not present a fair and complete description of the matters described therein, except admits that William Blair, J.P. Morgan, Cowen and Barclays published research reports concerning InnovAge dated December 23, 2021, and respectfully refers the Court to those documents for a complete and accurate statement of their contents.

301.    TCO admits that InnovAge's stock price closed at $8.25 per share on December 22, 2021, and $5.31 per share on December 23, 2021, with a volume of 14,188,300 shares, but otherwise denies the allegations in the first sentence of Paragraph 301, which do not present a fair and complete description of the matters described therein.  The allegations in the second sentence

-96-

of Paragraph 301 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in the second sentence of Paragraph 301.

302.    The allegations in Paragraph 302 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 302.

303.    TCO denies the allegations in Paragraph 303, including subparagraphs (a)-(d), except admits that (a) InnovAge stock was listed and traded on the Nasdaq Stock Market, (b) InnovAge filed periodic reports with the SEC, (c) InnovAge issued communications to public investors and (d) external securities analysts published publicly available reports about InnovAge.

304.    The allegations in Paragraph 304 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 304.

305.    The allegations in Paragraph 305 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 305.

306.    TCO admits that Plaintiffs seek to bring this putative class action on behalf of all of those who purchased or otherwise acquired the common stock of InnovAge between March 4, 2021, and December 22, 2021, excluding Defendants; the officers and directors of InnovAge at all relevant times; members of their immediate families and their legal representatives, heirs, agents, affiliates, successors or assigns; Defendants' liability insurance carriers and any affiliates or subsidiaries thereof; and any entity in which Defendants or their immediate families have or had a controlling interest, but otherwise denies the allegations in Paragraph 306.

307.    The allegations in Paragraph 307 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO admits that InnovAge's stock is listed on the Nasdaq Stock Market, but otherwise denies the allegations in Paragraph 307.

308.    As to the allegations in the first sentence of Paragraph 308, TCO admits that InnovAge's 2022 Annual Report states that as of September 12, 2022, there were 135,565,699 shares of InnovAge's common stock outstanding.  The remaining allegations in Paragraph 308 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 308.

309.    The allegations in Paragraph 309 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 309.

310.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 310, and on that basis denies them.

311.    The allegations in Paragraph 311 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 311.

312.    The allegations in Paragraph 312 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 312.

313.    The allegations in Paragraph 313 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 313.

314.    The allegations in Paragraph 314 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 314.

315.    The allegations in Paragraph 315 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 315.

316.    As to the allegations in Paragraph 316, TCO incorporates each response set forth above as if it were fully set forth herein.

-98-

317.    The allegations in Paragraph 317 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 317.

318.    The allegations in Paragraph 318 are not directed at TCO and constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 318.

319.    The allegations in Paragraph 319 are not directed at TCO and constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 319.

320.    The allegations in Paragraph 320 are not directed at TCO and constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 320.

321.    The allegations in Paragraph 321 are not directed at TCO and constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 321.

322.    The allegations in Paragraph 322 are not directed at TCO and constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 322.

323.    The allegations in Paragraph 323 are not directed at TCO and constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 323.

324.    The allegations in Paragraph 324 are not directed at TCO and constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 324.

325.    As to the allegations in Paragraph 325, TCO incorporates each response set forth above as if it were fully set forth herein.

326.    The allegations in Paragraph 326 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 326.

327.    The allegations in Paragraph 327 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 327.

328.    The allegations in Paragraph 328 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 328.

329.    The allegations in Paragraph 329 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO admits that Hewitt and Gutierrez spoke to investors during their respective tenures as CEO and CFO, but otherwise denies the allegations in Paragraph 329.

330.    The allegations in Paragraph 330 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 330, which do not present a fair and complete description of the matters described therein, except admits that InnovAge could not take certain actions, nor could its Board put to shareholder vote certain actions, without the written consent of the Sponsors so long as the Sponsors retained certain ownership percentages of InnovAge stock.  TCO further admits that voting and dispositive power with respect to the common stock held by TCO Group Holdings, L.P. is exercised by the LP Board,

which at the time of the IPO was composed of six persons, including Maureen Hewitt, Caroline Dechert, Thomas Scully, Sean Traynor, Andrew Cavanna, and Pavithra Mahesh, all of whom served as directors of InnovAge following the IPO. TCO respectfully refers the Court to InnovAge's Director Nomination Agreement attached as Exhibit 10.3 to InnovAge's Third Amended Registration Statement, filed with the SEC on March 3, 3021, for a full description of consent matters requiring written consent of the Sponsors.

331. The allegations in Paragraph 331 constitute legal conclusions, to which no response is required. To the extent a response is required, TCO denies the allegations in Paragraph 331.

332. The allegations in Paragraph 332 constitute legal conclusions, to which no response is required. To the extent a response is required, TCO denies the allegations in Paragraph 332.

333. The allegations in Paragraph 333 constitute legal conclusions, to which no response is required. To the extent a response is required, TCO denies the allegations in Paragraph 333.

334. The allegations in Paragraph 334 constitute legal conclusions, to which no response is required. To the extent a response is required, TCO denies the allegations in Paragraph 334.

335. The allegations in Paragraph 335 constitute legal conclusions, to which no response is required. To the extent a response is required, TCO denies the allegations in Paragraph 335.

336. TCO admits that Plaintiffs purports to assert Securities Act claims based on statements in InnovAge's Offering Documents and further admits the allegations in the second sentence of Paragraph 336.

337. The allegations in Paragraph 337 constitute legal conclusions, to which no response is required. To the extent a response is required, TCO denies the allegations in Paragraph 337.

338. The allegations in Paragraph 338 constitute legal conclusions, to which no response is required. To the extent a response is required, TCO denies the allegations in Paragraph 338.

339. The allegations in Paragraph 339 constitute legal conclusions, to which no response is required. To the extent a response is required, TCO denies the allegations in Paragraph 339.

340. Paragraph 340 and its subparagraphs include allegations pertaining to the Dismissed Claims, to which no response is required. To the extent a response is required, the allegations in Paragraph 340 and its subparagraphs constitute legal conclusions, to which no response is required. To the extent a further response is required, TCO denies the allegations in Paragraph 340 and its subparagraphs.

341. Paragraph 341 and its subparagraphs include allegations pertaining to the Dismissed Claims, to which no response is required. To the extent a response is required, the allegations in Paragraph 341 and its subparagraphs constitute legal conclusions, to which no response is required. To the extent a further response is required, TCO denies the allegations in Paragraph 341 and its subparagraphs.

342. The allegations in Paragraph 342 constitute legal conclusions, to which no response is required. To the extent a response is required, TCO denies the allegations in Paragraph 342.

343. Paragraph 343 includes allegations pertaining to the Dismissed Claims, to which no response is required. To the extent a response is required, the allegations in Paragraph 343 are not directed at TCO and constitute legal conclusions, to which no response is required. To the extent any further response is required, TCO denies the allegations in Paragraph 343.

344. Paragraph 344 includes allegations pertaining to the Dismissed Claims, to which no response is required. To the extent a response is required, the allegations in Paragraph 344 are

not directed to TCO and constitute legal conclusions, to which no response is required.  To the extent any further response is required, TCO denies the allegations in Paragraph 344.

345.    Paragraph 345 includes allegations purporting to characterize Plaintiffs' legal claims and theories in this action to which no response is required.  To the extent a response is required, TCO admits that the Officer Defendants served as officers or directors of InnovAge at certain times, but otherwise denies the allegations in Paragraph 345.

346.    The allegations in the first, fourth and fifth sentences of Paragraph 346 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in the first, fourth and fifth sentences of Paragraph 346.  TCO admits the allegations in the second sentence of Paragraph 346.  As to the third sentence of Paragraph 346, TCO admits that InnovAge's 2021 Annual Report states that as of September 20, 2021, there were 135,516,513 shares of InnovAge common stock outstanding.

347.    The allegations in Paragraph 347 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 347.

348.    TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 348, and on that basis denies them.

349.    The allegations in Paragraph 349 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 349.

350.    The allegations in Paragraph 350 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 350.

351.    TCO denies the allegations in Paragraph 351.

-103-

352.     The allegations in Paragraph 352 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 352.

353.     The allegations in Paragraph 353 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 353.

354.     TCO denies the allegations of Paragraph 354, which do not present a fair and complete description of the matters described therein, except respectfully refers the Court to correspondence between InnovAge and federal and state regulators, including audit reports, for a complete and accurate statement of their contents.  TCO further states that the allegations in the first sentence of Paragraph 354 constitute legal conclusions, to which no response is required.

355.     The allegations in Paragraph 355 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 355.

356.     The allegations in Paragraph 356 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 356.

357.     The allegations in Paragraph 357 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 357.

358.     The allegations in Paragraph 358 are not directed at TCO, and TCO is not required to answer such allegations.  To the extent a response is required, the allegations in the first sentence of Paragraph 358 constitute legal conclusions, to which no response is required.  To the extent a further response is required, TCO admits that InnovAge's Offering Documents state that, as an emerging growth company, InnovAge was required to present only two years of audited financial statements, plus unaudited condensed consolidated financial statements for applicable interim periods, in the Offering Documents, but otherwise denies the remaining allegations in

-104-

Paragraph 358, which do not present a fair and complete description of the matters described therein, and as to some of which TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations, and on that basis denies them.

359. The allegations in Paragraph 359 are not directed at TCO, and TCO is not required to answer such allegations. To the extent a response is required, the allegations in Paragraph 359 constitute legal conclusions, to which no response is required. To the extent a further response is required, TCO denies the allegations in Paragraph 359.

360. The allegations in Paragraph 359 constitute legal conclusions, to which no response is required. To the extent a response is required, TCO denies the allegations in Paragraph 359.

361. The allegations in Paragraph 359 constitute legal conclusions, to which no response is required. To the extent a response is required, TCO denies the allegations in Paragraph 359, which are too vague to permit a response.

362. As to the allegations in Paragraph 362, TCO incorporates each response set forth above as if it were fully set forth herein.

363. The allegations in Paragraph 363 are not directed to TCO and constitute legal conclusions, to which no response is required. To the extent a response is required, TCO denies the allegations in Paragraph 363.

364. The allegations in Paragraph 364 are not directed to TCO and constitute legal conclusions, to which no response is required. To the extent a response is required, TCO denies the allegations in Paragraph 364.

365. The allegations in Paragraph 365 are not directed to TCO and constitute legal conclusions, to which no response is required. To the extent a response is required, TCO denies the allegations in Paragraph 365.

366. The allegations in Paragraph 366 are not directed to TCO and constitute legal conclusions, to which no response is required. To the extent a response is required, TCO denies the allegations in Paragraph 366.

367. The allegations in Paragraph 367 are not directed to TCO and constitute legal conclusions, to which no response is required. To the extent a response is required, TCO admits that the Underwriter Defendants served as underwriters for InnovAge's IPO, but otherwise denies the allegations in Paragraph 367.

368. The allegations in Paragraph 368 are not directed to TCO and constitute legal conclusions, to which no response is required. To the extent a response is required, TCO denies the allegations in Paragraph 368.

369. The allegations in Paragraph 369 are not directed to TCO and constitute legal conclusions, to which no response is required. To the extent a response is required, TCO denies the allegations in Paragraph 369.

370. TCO lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 370, and on that basis denies them.

371. The allegations in Paragraph 371 are not directed to TCO and constitute legal conclusions, to which no response is required. To the extent a response is required, TCO denies the allegations in Paragraph 371.

372.    The allegations in Paragraph 372 are not directed to TCO and constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 372.

373.    The allegations in Paragraph 373 are not directed to TCO and constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 373.

374.    As to the allegations in Paragraph 374, TCO incorporates each response set forth above as if it were fully set forth herein.

375.    The allegations in Paragraph 375 are not directed to TCO and constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 375.

376.    The allegations in Paragraph 376 are not directed to TCO and therefore no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 376.

377.    The allegations in Paragraph 377 are not directed to TCO and constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 377.

378.    The allegations in Paragraph 378 are not directed to TCO and constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 378.

379.    The allegations in Paragraph 379 are not directed to TCO and constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO lacks the

knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 379, and on that basis denies them.

380.    The allegations in Paragraph 380 are not directed at TCO, and TCO is not required to answer such allegations.  To the extent a response is required, TCO states that no response to Plaintiffs' offer to tender their shares of InnovAge stock is required.

381.    The allegations in Paragraph 381 are not directed at TCO, and TCO is not required to answer such allegations.  To the extent a response is required, the allegations in Paragraph 381 constitute legal conclusions, to which no response is required.  To the extent a further response is required, TCO denies the allegations in Paragraph 381.

382.    The allegations in Paragraph 382 are not directed to TCO, and therefore no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 382.

383.    As to the allegations in Paragraph 383, TCO incorporates each response set forth above as if it were fully set forth herein.

384.    The allegations in Paragraph 384 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 384.

385.    The allegations in Paragraph 385 constitute legal conclusions, to which no response is required.  To the extent any further response is required, TCO denies the allegations in Paragraph 385.

386.    Paragraph 386 includes allegations pertaining to the Dismissed Claims, to which no response is required.  To the extent a response is required, the allegations in Paragraph 386 constitute legal conclusions, to which no response is required.  To the extent any further response

is required, TCO denies the allegations in Paragraph 386, which do not present a fair and complete description of the matters described therein.

387.    The allegations in Paragraph 387 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 387, which do not present a fair and complete description of the matters described therein.

388.    The allegations in Paragraph 388 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 388, which do not present a fair and complete description of the matters described therein.

389.    The allegations in Paragraph 389 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 389, which do not present a fair and complete description of the matters described therein.

390.    The allegations in Paragraph 390 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 390.

391.    TCO denies the allegations of Paragraph 391, which do not present a fair and complete description of the matters described therein, and respectfully refers the Court to InnovAge's Form 10-K, filed with the SEC on September 23, 2021, and other quarterly and annual SEC filings, for a complete and accurate statement of their contents.

392.    TCO denies the allegations of Paragraph 392, which do not present a fair and complete description of the matters described therein, except admits that InnovAge entered into a Director Nomination Agreement and respectfully refers the Court to the Director Nomination Agreement, attached as Exhibit 10.3 to InnovAge's Form S-1 filed with the SEC on February 8,

2021, for a complete and accurate description of the parties to the agreement and a statement of its contents.

393.    The allegations in Paragraph 393 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 393, which do not present a complete and accurate statement of the matters described therein.

394.    The allegations in Paragraph 394 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 394, except admits that in June 2020, Ignite Aggregator LP, TCO Group Holdings, Inc. and the equity holders of TCO Group Holdings, Inc. entered into a Securities Purchase Agreement pursuant to which the equity holders of TCO Group Holdings, Inc. sold a portion of their equity interest in InnovAge to Ignite Aggregator LP.  TCO further admits that Ignite Aggregator LP and the equity holders of TCO Group Holdings, Inc. contributed their equity interests in InnovAge Holding Corp. to a newly formed Limited Partnership, TCO Group Holdings, L.P.  TCO admits that voting and dispositive power with respect to the common stock held by TCO Group Holdings, L.P. is exercised by the LP Board.  TCO respectfully refers the Court to InnovAge's Third Amended Registration Statement, filed with the SEC on March 3, 3021, for a complete description of Ignite Aggregator LP, TCO and their respective affiliations with Apax and WCAS.

395.    The allegations in Paragraph 395 constitute legal conclusions, to which no response is required.  To the extent a response is required, TCO denies the allegations in Paragraph 395.

396.    Paragraph 396 subparts (a) through (d) contains a prayer for relief, to which no response is required.  To the extent a response is required, TCO denies that Plaintiffs are entitled to any relief in this action.

**AFFIRMATIVE DEFENSES**

As separate defenses to the Amended Complaint and the causes of actions asserted against TCO therein (the "Causes of Action"), and without assuming the burden of proof on matters as to which it has no such burden, TCO states as follows:

**FIRST DEFENSE**

**(Dismissed Claims)**

By its December 21, 2023 Order Granting in Part and Denying in Part Defendants' Joint Motion to Dismiss Amended Class Action Complaint, the Court dismissed claims based on (1) the Patient-Centered Care Statement, (2) the Standardized and Well-Staffed Operations Statement, (3) the Robust Compliance Statement, (4) the Successful Risk Management Statement, (5) the Technology Statement, (6) the Expansion Model Statement, (7) the Scalability Statement, (8) the Virtuous Cycle Statement, (9) the Government Relationships Statement, (10) Items 105 and 303 of Regulation S-K, (11) Hewitt's alleged statements on May 10, 2021, concerning organic growth and staffing, (12) the Deficient Participant Assessments Statement, (13) the Alignment with Government Payors Statement, (14) Hewitt and Gutierrez's May 2021 SOX certifications, (15) the alleged September 21, 2021 Organic Growth Statement, (16), the September 21, 2021 Earnings Call Audit Statement, (17) Hewitt and Gutierrez's September 2021 SOX certifications, (18) Hewitt's alleged November 9, 2021 Audit Update Statements, (19) the Government Relationship Statement, and (20) Hewitt and Gutierrez's November 2021 SOX certifications. The Court also found that Plaintiffs failed to allege control person liability against the Director Defendants.

-111-

## SECOND DEFENSE

### (Failure to State a Cause of Action Upon Which Relief May Be Granted)

The Amended Complaint fails to state any claim against TCO upon which relief may be granted.

## THIRD DEFENSE

### (Failure to Comply with Pleading Requirements)

The Amended Complaint failed to plead fraud with the requisite particularity required by Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4.

## FOURTH DEFENSE

### (Barred by Statutory Safe Harbor)

Plaintiffs' claims are barred by the PSLRA's statutory safe harbor. *See* 15 U.S.C. § 78u-5(c). The alleged misstatements and omissions are forward-looking, were accompanied by sufficient cautionary language and were not made with actual knowledge that they were false or misleading.

## FIFTH DEFENSE

### (Reasonable Care and Due Diligence)

Plaintiffs and putative class members are not entitled to any recovery because TCO exercised reasonable care; TCO had, after reasonable and diligent investigation, reasonable grounds to believe and did believe that the statements at issue herein were true and that they omitted no material fact necessary to make those statements not misleading.

## SIXTH DEFENSE

### (No Reliance)

Plaintiffs' and putative class members' claims are barred in whole or in part because Plaintiffs and putative class members did not and could not have reasonably and/or justifiably relied on the alleged misstatements or omissions alleged in the Amended Complaint.

## SEVENTH DEFENSE

### (Knowledge)

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs had knowledge of the alleged untruths or omissions at the time they acquired the securities in question.

## EIGHTH DEFENSE

### (Assumption of Risks)

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs purchased the securities at issue with knowledge of the risks involved and assumed those risks, and any alleged losses were caused by those risks coming to fruition.

## NINTH DEFENSE

### (Lead Plaintiffs Not Adequate or Typical)

The claims and Causes of Action brought on behalf of a putative class are barred in whole or in part because the named Lead Plaintiffs do not meet the adequacy or typicality requirements of Rule 23.

## TENTH DEFENSE

### (Lead Plaintiffs Improper under Rule 23)

Lead Plaintiffs' claims are improperly brought, and cannot be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## ELEVENTH DEFENSE

### (Lack of Standing)

-113-

Lead Plaintiffs' and putative class members' claims are barred, in whole or in part, because Lead Plaintiffs and putative class members lack standing to pursue some or all of their claims against TCO.

## TWELFTH DEFENSE

### (No Duty)

Plaintiffs' and putative class members' claims are barred in whole or in part because TCO neither owed nor breached any duty to Plaintiffs or putative class members to disclose information allegedly omitted from any statement alleged in the Amended Complaint, and had no duty to verify, opine upon, audit, review or correct such information.

## THIRTEENTH DEFENSE

### (Loss Causation)

Plaintiffs' claims are barred in whole or in part because of the lack of loss causation. Any damages or injuries allegedly suffered by Plaintiffs or any putative class members were not legally caused by the alleged misstatements on which Plaintiffs base their claims or any omission by TCO.

## FOURTEENTH DEFENSE

### (Failure to Mitigate)

Plaintiffs' and putative class members' claims are barred in whole or in part because Plaintiffs and putative class members failed to make reasonable efforts to mitigate their alleged injury or damage, which efforts would have prevented all or part of any such alleged injury or damage.

## FIFTEENTH DEFENSE

### (Equitable Defenses)

Plaintiffs' and putative class members' claims are barred, in whole or in part, by the doctrine of laches, equitable estoppel, waiver or other equitable defenses.

## SIXTEENTH DEFENSE

### (Class Action)

The putative class alleged in the Complaint cannot be certified under Rule 23 of the Federal Rules of Civil Procedure

## SEVENTEENTH DEFENSE

### (Good Faith)

TCO is not subject to control person liability under Section 20(a) of the Exchange Act or Section 15 of the Securities Act because it acted in good faith and did not directly or indirectly induce any of the alleged acts that would constitute a violation of the Exchange Act or the Securities Act.

## EIGHTEENTH DEFENSE

### (Contributory Negligence)

Plaintiffs' and putative class members' damages, if any, are due to the negligence, or other acts or omissions, of persons or entities other than the TCO; however, in the event that a finding is made that negligence exists on the part of TCO, TCO's liability, if any, should be reduced, at least, by an amount proportionate to the amount by which the comparative negligence, or other acts or omissions, of such other persons or entities contributed to the alleged damages upon which Plaintiffs or putative class members seek recovery.

## NINETEENTH DEFENSE

### (No Fees or Costs)

Plaintiffs and putative class members are not entitled to attorney's fees, or expert fees, as a matter of law.

-115-

## TWENTIETH DEFENSE

### (Ratification)

The Amended Complaint is barred, in whole or in part, by the doctrine of ratification.

## TWENTY-FIRST DEFENSE

### (Proportionate Liability)

Any recovery for alleged damages, if any, is limited to the percentage of responsibility of each Defendant in proportion to the total fault of all persons, named as parties to this action or not, who caused or contributed to Plaintiffs' alleged damages, in accordance with the proportionate liability provisions of the PSLRA, 15 U.S.C. § 78u-4(f).

## TWENTY-SECOND DEFENSE

### (Reservation of Rights)

TCO reserves the right to raise any additional defenses, counterclaims, cross claims and third-party claims not asserted herein of which it may become aware through discovery or other investigation, and will amend or modify its answer accordingly.  TCO further reserves the right to withdraw defenses that it determines are not applicable during the course of discovery and other proceedings in this action.

-116-

PRAYER FOR RELIEF

WHEREFORE, TCO prays for relief and judgment, as follows:

**A.**    **That judgment be entered in favor of TCO;**

**B.**    **That Plaintiffs take nothing by reason of the claims and Causes of Action asserted herein;**

**C.**    **That the Amended Complaint, and the Causes of Action against TCO, be dismissed with prejudice;**

**D.**    **For TCO's costs of suit, including attorneys' fees incurred in defense of this action; and**

**E.**    **For such other and further relief as the Court may deem just and proper.**

Dated:         November 15, 2024

SULLIVAN & CROMWELL LLP

By:  /s/ *Diane L. McGimsey*
Karen Patton Seymour
125 Broad Street
New York, NY 10004-2498
Telephone: (212) 558-4000
Facsimile: (212) 291-9307
seymourk@sullcrom.com

Diane L. McGimsey
1888 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 712-6600
Facsimile: (310) 712-8800
mcgimseyd@sullcrom.com

*Counsel for InnovAge Holding Corp.,*
*Maureen Hewitt, Barbara Gutierrez, John*
*Ellis Bush, Andrew Cavanna, Caroline*
*Dechert, Edward Kennedy, Jr., Pavithra*
*Mahesh, Thomas Scully, Marilyn Tavenner,*
*Sean Traynor, Richard Zoretic, WCAS*
*Management Corporation, WCAS*

WILMER CUTLER PICKERING HALE
AND DORR LLP

Peter Kurtz
1225 17th Street, Suite 2600
Denver, Colorado  80202
Telephone: (720) 274-3135
Peter.Kurtz@wilmerhale.com

Matthew D. Benedetto
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5323
Facsimile: (213) 443-5400
matthew.benedetto@wilmerhale.com

*Counsel for InnovAge Holding Corp.*

-117-

-118-

*Management, L.P., WCAS Management, LLC,*
*Apax Partners US, LLC, and TCO Group*
*Holdings, L.P.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of November, 2024, I electronically filed a true and

correct copy of the foregoing **DEFENDANT TCO GROUP HOLDING L.P.'S ANSWER TO**

**SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE**

**FEDERAL SECURITIES LAWS** with the Clerk of the Court using the CM/ECF system which

will send notification of such filing to all parties via the CM/ECF system.


/s/ Diane L. McGimsey
Diane L. McGimsey


-119-