**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-02770-WJM-SKC

EL PASO FIREMEN & POLICEMEN'S PENSION FUND, SAN ANTONIO FIRE & POLICE PENSION FUND, and INDIANA PUBLIC RETIREMENT SYSTEM, individually and on behalf of all others similarly situated,

        Plaintiffs,

v.

INNOVAGE HOLDING CORP.,
MAUREEN HEWITT,
BARBARA GUTIERREZ,
JOHN ELLIS BUSH,
ANDREW CAVANNA,
CAROLINE DECHERT,
EDWARD KENNEDY, JR.,
PAVITHRA MAHESH,
THOMAS SCULLY,
MARILYN TAVENNER,
SEAN TRAYNOR,
RICHARD ZORETIC,
WCAS MANAGEMENT CORPORATION,
WCAS MANAGEMENT, L.P.,
WCAS MANAGEMENT, LLC,
APAX PARTNERS US LLC,
TCO GROUP HOLDINGS, L.P.,
J.P. MORGAN SECURITIES LLC,
BARCLAYS CAPITAL INC.,
GOLDMAN SACHS & CO. LLC,
CITIGROUP GLOBAL MARKETS INC.,
ROBERT W. BAIRD & CO. INCORPORATED,
WILLIAM BLAIR & COMPANY, L.L.C.,
PIPER SANDLER & CO.,
CAPITAL ONE SECURITIES, INC.,
LOOP CAPITAL MARKETS LLC,
SIEBERT WILLIAMS SHANK & CO., LLC, and
ROBERTS & RYAN INVESTMENTS, INC.,

        Defendants.

---

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' JOINT MOTION TO DISMISS**

---

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................................1

II.     BACKGROUND ...................................................................................................................2
        A.      Court Sustains Control Claims Against the Private Equity Firms WCAS and
                Apax Limited Partners, L.P.....................................................................................3
        B.      Plaintiffs Amend Complaint to Reflect Apax's Name Change and Identify
                Specific WCAS Entities ..........................................................................................4

III.    LEGAL ARGUMENT...........................................................................................................5
        A.      Like Apax, the WCAS Management Entities Facilitated the IPO and Possess
                the Power to Direct or Cause the Direction of InnovAge's Management and
                Policies.....................................................................................................................6
        B.      A Ruling in Defendants' Favor Would Upend the Prior Ruling and Create a
                Wholly Inconsistent Result .....................................................................................8
        C.      Defendants Ignore Controlling Precedent.............................................................10

IV.     CONCLUSION ...................................................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Kinder-Morgan, Inc.*,
 340 F.3d 1083 (10th Cir. 2003) ...............................................................................................10

*Alpha Capital Anstalt v. Schwell Wimpfheimer & Assocs. LLP*,
 2018 WL 1627266 (S.D.N.Y. Mar. 30, 2018)...........................................................................11

*Ayco Co., L.P. v. Frisch*,
 2012 WL 42134 (N.D.N.Y. Jan. 9, 2012) ................................................................................10

*BASF Corp. v. POSM II Props. P'ship, L.P.*,
 2009 WL 522721 (Del. Ch. Mar. 3, 2009) ..............................................................................10

*Correa v. Liberty Oilfield Servs., Inc.*,
 548 F. Supp. 3d 1069 (D. Colo. 2021) ....................................................................................5, 6

*Furlong Fund LLC v. VBI Vaccines, Inc.*,
 2016 WL 1181710 (S.D.N.Y. Mar. 25, 2016)............................................................................9

*In re Galena Biopharma, Inc. Sec. Litig.*,
 117 F. Supp. 3d 1145 (D. Or. 2015).........................................................................................9

*Kingston Dry Dock Co. v. Lake Champlain Transp. Co.*,
 31 F.2d 265 (2d Cir. 1929) ......................................................................................................10

*Konopasek v. Ten Assocs., LLC*,
 2018 WL 6177249 (C.D. Cal. 2018) .........................................................................................8

*In re Kosmos Energy Ltd. Sec. Litig.*,
 955 F. Supp. 2d 658 (N.D. Tex. 2013).......................................................................................9

*In re Lernout & Hauspie Sec. Litig.*,
 230 F. Supp. 2d 152 (D. Mass. 2002) .....................................................................................10

*In re Oppenheimer Rochester Funds Grp. Sec. Litig.*,
 838 F. Supp. 2d 1148 (D. Colo. 2012) .....................................................................................5

*Pearson v. Component Tech. Corp.*
 247 F.3d 471 (3d Cir. 2001) ....................................................................................................10

*United States v. Bestfoods*,
 524 U.S. 51 (1998)....................................................................................................................10

*Xodus Med., Inc. v. Allen Med. Sys., Inc.*,
 2018 WL 2338763 (W.D. Pa. May 22, 2018)...........................................................................10

Lead Plaintiffs El Paso Firemen & Policemen's Pension Fund, San Antonio Fire & Police Pension Fund, and Indiana Public Retirement System's (collectively, "Plaintiffs") respectfully submit this memorandum of law in opposition to Defendants WCAS Management Corporation, WCAS Management L.P., and WCAS Management, LLC's (together, the "WCAS Management Entities") motion to dismiss the Second Amended Class Action Complaint for Violations of the Federal Securities Laws (ECF No. 171 (Second Amended Complaint or "SAC").[1]

## I.    INTRODUCTION

Defendants' motion is nothing more than an improper request for reconsideration of the Court's prior order. A year ago, this Court found, "without significant effort," that Plaintiffs stated a claim for control person liability against the two private equity firms that invested in InnovAge (the "Company")—Welsh Carson Anderson and Stowe ("WCAS") and Apax Partners—finding that Plaintiffs showed that those two firms controlled InnovAge, its board of directors, and its business decisions, including the decision to take the Company public. That decision, along with InnovAge's statements that misled investors, led to InnovAge becoming one of the five worst-performing IPOs of 2021. ¶ 2. Despite the private equity firms' "complex ownership structures," the Court held that they "controlled" InnovAge through their collective ownership of 86% of InnovAge's common stock and control of a majority of InnovAge's board, which allowed them to direct management and policies at the Company. ECF No. 102 (Motion to Dismiss Order or "MTD Order") at 86-87. That well-reasoned opinion stands and is the law of the case.

Following the MTD Order, two developments occurred that led Plaintiffs to amend the Complaint as to the control claims: one of the private equity firms, Apax Partners, L.P., changed its name to Apax Partners US LLC ("Apax"), and Defendants suddenly started claiming that the other private

---

[1] References to the SAC are denoted as "¶ ##".

equity firm, WCAS, did not actually exist and was simply a trade name (despite having entered appearances, signed pleadings, and presented argument on behalf of WCAS for years). Accordingly, Plaintiffs obtained leave to amend the Complaint as to the control claims only. Specifically, Plaintiffs (1) updated Apax's name; (2) named as defendants the three subsidiaries through which WCAS performs its work, the WCAS Management Entities; and (3) added as a defendant TCO Group Holdings, L.P. ("TCO"), the investment vehicle jointly owned by WCAS and Apax. ¶ 1. Apax and TCO answered the SAC. ECF No. 179. Only the WCAS Management Entities moved to dismiss, and only on the basis of arguments this Court already considered and rejected. *See* ECF No. 175 (the "Motion").

Plaintiffs have met the standard for "control" set forth by this Court and the Tenth Circuit, alleging that the WCAS Management Entities facilitated InnovAge's IPO and have control over InnovAge's management and policies. The WCAS Management Entities fail to grapple with the law of this case and the law of this Circuit, citing instead to inapposite cases from other jurisdictions. Granting Defendants' motion would upend the Court's MTD Order and create inconsistent results; despite Apax and WCAS having identical relationships to InnovAge and abilities to influence its management and policies, one would be a defendant and the other would evade liability. The WCAS Management Entities offer no justification for disrupting the Court's prior opinion or reaching such an illogical result. Accordingly, the Motion should be denied.

## II.    BACKGROUND

InnovAge provides healthcare to vulnerable seniors under the federal Program of All-Inclusive Care for the Elderly ("PACE"). ¶ 3. In the span of only a few years, and backed by Apax and WCAS, InnovAge converted from a non-profit to a for-profit entity, lobbied regulators to change the rules governing PACE providers, grew rapidly, and went public to help the private equity companies cash out a portion of their investment. ¶¶ 5-7. In the IPO's Offering Documents and throughout the Class Period, InnovAge assured investors that it was delivering compliant healthcare to its participants

2

and had sufficient staff to provide necessary, government-mandated care (¶¶ 252-73), but the revelation of InnovAge's substandard care and inadequate staffing resulted in multiple state and federal regulators sanctioning InnovAge and suspending patient enrollment (¶¶ 212-41). After a series of corrective disclosures, InnovAge's stock price plummeted by 78%. ¶ 12. Defendants' false or misleading statements concerning InnovAge's care model and regulatory compliance gave rise to claims under the Securities Act and Exchange Acts after InnovAge earned notoriety as one of the five worst-performing IPOs of 2021. ¶ 2. InnovAge's then-CEO resigned, effective immediately. ¶ 243.

**A. Court Sustains Control Claims Against the Private Equity Firms WCAS and Apax Limited Partners, L.P.**

Plaintiffs brought Section 11 and 10(b) claims against InnovAge, certain current and former officers and directors, and the underwriters in InnovAge's IPO; they also brought control claims against WCAS and Apax Partners, L.P., the private equity firms who were 98% owners of InnovAge prior to the IPO. All Defendants moved to dismiss in September 2022. ECF Nos. 73, 83. As to the control claims, they argued that WCAS and Apax do not control InnovAge because they did not directly own InnovAge stock—instead, they pointed to TCO, the investment vehicle jointly owned by Apax and WCAS that holds their InnovAge common stock. ECF No. 73 at 44; *see also* MTD Order at 86.

The Court wholly rejected that argument, denying Defendants' motion to dismiss and sustaining the control liability claims against Apax Partners, L.P., and WCAS. MTD Order at 87. Noting that "control" is defined as the "possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise," *id.* at 82, the Court concluded that Apax Partners, L.P., and WCAS's control of TCO, the entity that held 86% of InnovAge's common stock, allowed the two private equity firms to direct InnovAge's management and policies and exercise veto power over decisions at InnovAge, *id.* at 86-87. The Court also noted that the "Director Nomination Agreement . . . provides . . . WCAS

3

. . . the right to designate nominees proportional to [its] ownership stake, even if [it is] reduce[d] to less than 40%, in addition to certain consent rights related to Board composition and size, so long as [it] retain[s] at least 5% of [its] original ownership stake[].” *Id.* at 4. The Court rejected Defendants’ arguments that the various funds, LLCs, and LPs through which the private equity firms effectuate their work created some obstacle to finding control, ruling instead that the definition of control “is capacious enough to embrace even the complex ownership structures employed by well-heeled investors, provided those ownership structures allow for control.” *Id.* at 85.

### B. Plaintiffs Amend Complaint to Reflect Apax’s Name Change and Identify Specific WCAS Entities

Soon after, two developments occurred that led to Plaintiffs’ amendment of the Complaint. First, Apax Partners, L.P., changed its name to Apax Partners US LLC. ¶ 34. Second, although Defendants had been litigating on behalf of WCAS since the commencement of the case, they advised Plaintiffs that WCAS was merely a trade name and not a corporate entity, and so that named defendant was not proper. ¶¶ 28-33. Accordingly, Plaintiffs obtained leave to amend the Complaint to identify specific WCAS subsidiaries, among other updates. *See generally* SAC.

WCAS, like many private equity firms (including Apax), operates through a byzantine structure that includes multiple limited partnerships, limited liability corporations, and investment vehicles called “funds.” ¶ 28. The SAC names three WCAS corporate subsidiaries that employ the people and perform the work to control InnovAge, referred to collectively as the WCAS Management Entities:

- **WCAS Management Corporation** is a registered investment adviser that employs and compensates investment professionals, including WCAS’s “partners,” who serve as the officers, directors, and managers of WCAS Management Corporation, as well as more junior investment professionals, whom the partners supervise and direct. ¶ 28(a). WCAS Management Corporation is a party to the Director Nomination Agreement which allows WCAS to designate InnovAge’s board directors. *Id.*

- **WCAS Management, L.P.** performs back-office and administrative services for WCAS and is controlled by the WCAS Management Corporation. ¶ 28(b).

4

- **WCAS Management, LLC** runs WCAS Management, L.P. in its role as the sole general partner of that entity. ¶ 28(c).

Additionally, the WCAS Management Entities control the funds that own WCAS's InnovAge stock, including TCO. ¶¶ 30-33.

Plaintiffs also named TCO, a shell entity jointly formed by WCAS and Apax to hold their investments in InnovAge common stock and exercise their voting power with respect to that stock. ¶¶ 36-37.

Apax and TCO did not move to dismiss, presumably recognizing that the Court's prior decision squarely addressed the adequacy of the pleadings on control. By contrast, the WCAS Management Entities moved to dismiss, recycling arguments previously rejected by the Court. *See generally* Motion.

## III.    LEGAL ARGUMENT

"[C]ontrol person liability under the 1933 and 1934 Acts in the Tenth Circuit is 'remedial' in nature and to be 'liberally construed,' requiring only 'some indirect means of discipline or influence short of actual direction to hold a "controlling person" liable.'" *In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, 838 F. Supp. 2d 1148, 1180 (D. Colo. 2012) (quoting *Richardson v. MacArthur*, 451 F.2d 35, 41-42 (10th Cir. 1971)). While Defendants maintain, as they did in their previous motion to dismiss, that the Court should focus exclusively on stock ownership, Motion at 5, this Court has already made clear that that is not the legal standard for control. Rather, "control" is defined as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." MTD Order at 85. *See also Correa v. Liberty Oilfield Servs., Inc.*, 548 F. Supp. 3d 1069, 1084 (D. Colo. 2021) ("facilitating the IPO process" supports finding of control). Plaintiffs have met that standard as to the WCAS Management Entities, and Defendants' arguments to the contrary should be rejected.

5

**A. Like Apax, the WCAS Management Entities Facilitated the IPO and Possess the Power to Direct or Cause the Direction of InnovAge's Management and Policies**

The SAC more than sufficiently alleges that the WCAS Management Entities control InnovAge. First, WCAS Management Corporation, on behalf of the WCAS funds and other WCAS entities, facilitated the IPO process because it is a signatory to the Director Nomination Agreement by which the private equity firms gained the power to place board members in exchange for effectuating the IPO. ¶ 28(a). Effectuating an IPO is sufficient to satisfy control. *See Correa,* 548 F. Supp. 3d at 1084 (holding liable as control person a director who consented to being named as a Director Nominee or "*participated in facilitating the IPO process*") (emphasis added).[2]

Second, there is no real dispute that WCAS controls InnovAge. Indeed, InnovAge discloses this degree of control to investors.  According to the Offering Documents, Apax and WCAS "beneficially own . . . 86% of InnovAge's outstanding common stock" and "together control the vote of all matters submitted to a vote of our shareholders, which enables them to control the election of the members of the Board and all other corporate decisions." ¶ 391. The Offering Documents state that Apax and WCAS's ownership makes InnovAge a "controlled company," ECF No. 74-1 (InnovAge Holding Corp. Form S-1) (Mar. 3, 2021) at 3, and they will "*have significant influence with respect to our management, business plans and policies*, including the appointment and removal of [its] officers, decisions on whether to raise future capital and amending [its] charter and bylaws, which govern the rights attached to [its] common stock," ¶ 391 (emphasis added).

Further, evidence obtained through discovery has only strengthened those allegations. While these materials were not available at the time the SAC was filed,[3] recently produced documents show

---

[2] WCAS Management LLC and LP are not signatories to the Director Nomination Agreement, but that is not dispositive. Defendants already made that argument as to Apax, and the Court correctly rejected it. *See* ECF 73 at 43-44.

[3] Plaintiffs are amenable to amending the SAC to include these allegations, should the Court so desire.

6

that WCAS is deeply involved in InnovAge's day-to-day management, including: (i) "reviewing and commenting" on earnings scripts; (ii) being heavily involved in editing the content of investor presentations; (iii) discussing earnings presentations with InnovAge's leadership; and even (iv) directly fielding calls from reporters regarding allegations of InnovAge's substandard patient care. *See* Bowen Decl., Exs. A-D.

Third, as the Court noted in the MTD Order, a majority of InnovAge's board members are representatives from WCAS and Apax, and those firms have veto power over the board. MTD Order at 87.

Defendants do not—and cannot—challenge any of this. Rather, they rely on the same arguments that the Court already correctly rejected. The rest of Defendants' arguments have no more merit and are similarly just straw men to avoid liability.

First, Defendants argue that none of the WCAS Management Entities owns InnovAge stock. Motion at 5. But that is no different than the argument that WCAS raised in its first motion to dismiss. ECF No. 73 at 44. The Court correctly rejected that argument already because that is not the legal standard. MTD Order at 85.

Second, Defendants suggest that only TCO has power over InnovAge. Motion at 4 (focusing on stock ownership). But the Court already found that WCAS and Apax control TCO, and thus InnovAge. MTD Order at 86-87. Indeed, it is telling that Apax (who is represented by the same counsel) is *not* moving to dismiss for a second time. WCAS fails to explain why the formalities of TCO's "control" would be dispositive for WCAS but not Apax.

Third, Defendants argue that the WCAS Management Entities are distinct corporate entities unrelated to InnovAge. Motion at 5. But Plaintiffs' allegations in the SAC are clearly sufficient, as the Court already found with respect to WCAS generally, to allege control liability for the WCAS Management Entities specifically. That the WCAS Management Entities are formally incorporated as

7

distinct bodies does not overcome the Tenth Circuit's "capacious" understanding of control, that can "embrace even the complex ownership structures employed by well-heeled investors[.]" *Id.* at 85.

As the SAC makes clear, WCAS is directing management and policies at InnovAge—and the WCAS Management Entities are the corporate entities that employ the people and provide the services that do this work. ¶¶ 27-33. They are, therefore, InnovAge's controllers.

### B. A Ruling in Defendants' Favor Would Upend the Prior Ruling and Create a Wholly Inconsistent Result

The Court already held that WCAS and Apax control InnovAge—and it reached that ruling with full recognition of the complex corporate structure the firms utilized, wherein 86% of InnovAge's voting stock was owned by TCO and the "[v]oting and dispositive power with respect to the common stock held by [TCO] is exercised by a committee of limited partners" of seven persons of which "three were designated by WCAS and two by Apax." MTD Order at 86-87. The Court further found that because TCO's leadership committee, known as the "LP Board[,] 'exercises the voting and dispositive power [of TCO] by majority vote,' WCAS and Apax acting together could 'cause the direction of the management and policies' of InnovAge without input from anyone else" and "should either WCAS or Apax disagree … each wielded veto power." *Id.*

Those conclusions remain unaltered. All that has changed is that Plaintiffs have now named the specific entities through which WCAS does its work. The WCAS Management Entities *are* WCAS, operating under a common identity and purpose, using common trademarks, operating from the same principal place of business, and sharing the same website. ¶ 33.[4]

---

[4] Plaintiffs' specific allegations with respect to each of the WCAS Management Entities render meritless Defendants' argument that Plaintiffs are simply "lump[ing] all of the Defendants together," Motion at 6, and Defendants' out-of-circuit authorities do not warrant a different outcome. The quoted language from *Konopasek v. Ten Assocs., LLC*, 2018 WL 6177249, at *4 (C.D. Cal. 2018), discussed whether the allegations of the fraud itself had been adequately pled and, unlike here, the plaintiffs in *In re Galena Biopharma, Inc. Sec. Litig.* and *Furlong Fund LLC v. VBI Vaccines, Inc.* only summarily asserted that defendants had control and thus were "presumed to have had . . . control," with no

As shown above, the Court has already and correctly rejected Defendants' arguments. Dismissing the WCAS Management Entities would upend that prior ruling and create significant inconsistencies between both that prior ruling and the treatment of the other parties in the case.

First, as noted above, the Court already held that WCAS and Apax control InnovAge—and it reached that ruling with full recognition of the complex corporate structure the firms utilized. MTD Order at 85.

Second, granting Defendants' motion would create inconsistencies between Apax and WCAS. Apax has not moved to dismiss the SAC. To side with Defendants on this motion would mean that, despite the two firms' having identical relationships to and control over InnovAge, one would be a defendant and one would evade liability.

Third, granting Defendants' motion would create an inconsistency as to TCO. TCO was formed by WCAS and Apax in July 2020 to be the investment vehicle through which the two firms hold their investment in InnovAge common stock and exercise their voting and dispositive power with respect to that stock. TCO is the product of both firms; it uses both Apax's and WCAS's business addresses, submits SEC filings signed by both Apax and WCAS general partners, and is run via a committee of limited partners, the LP Board, comprised of Apax and WCAS designees. Like Apax, TCO did not move to dismiss. To grant the motion would mean that TCO is a defendant along with only one of the two private equity firms that runs it, even though the two private equity firms jointly created and run TCO.

---

specificity as to how that was effectuated. *See* 117 F. Supp. 3d 1145, 1202 (D. Or. 2015); 2016 WL 1181710, at *7 (S.D.N.Y. Mar. 25, 2016) ("The simple allegation that each was an officer or director of PCC is an insufficient allegation of control or of culpable participation in the alleged Section 14(a) violation."). Finally, the exact language Defendants cite from *In re Kosmos Energy Ltd. Sec. Litig.*, 955 F. Supp. 2d 658, 676 (N.D. Tex. 2013), was already considered and rejected by this Court. *See* ECF 73 at 45; MTD Order at 84.

9

Defendants fail to raise a plausible justification for these illogical, inconsistent rulings, which only underscores that the Motion is nothing more than a veiled request for reconsideration of this Court's prior order that already carefully considered and rejected the private equity firms' request to choose form over substance. MTD Order at 85.

### C. Defendants Ignore Controlling Precedent

Finally, Defendants' motion should be rejected because they wholly fail to grapple with applicable precedent. In sustaining the control claims, this Court invoked *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083 (10th Cir. 2003), as "demonstrat[ing] that the necessary allegations [to assert control person liability] depend on the context of the alleged fraud and the alleged controller's role." MTD Order at 86 (citing 340 F.3d at 1108-09). *Adams* still governs this issue—indeed, Defendants do not suggest otherwise—but Defendants do not grapple with it at all, whether by embracing it or distinguishing it. Their failure to engage with controlling precedent from this Circuit and relied on in the Court's prior decision reveals the lack of legal basis for Defendants' motion.

Indeed, rather than engage with the relevant cases, Defendants cite inapposite, out-of-circuit opinions, the overwhelming majority of which do not analyze control under the Securities or Exchange Acts.[5] The few securities cases cited are out-of-circuit and readily distinguishable. Defendants cite language from *In re Lernout & Hauspie Sec. Litig.*, 230 F. Supp. 2d 152, 170 (D. Mass. 2002), that was not discussing control person liability and where the entities at issue clearly advertised themselves

---

[5] *See, e.g.*, *Pearson v. Component Tech. Corp.* 247 F.3d 471, 485-86 (3d Cir. 2001) (applying "integrated enterprise" test to question of piercing the corporate veil); *BASF Corp. v. POSM II Props. P'ship, L.P.*, 2009 WL 522721, at *8 (Del. Ch. Mar. 3, 2009) (partnership withdrawal case); *United States v. Bestfoods*, 524 U.S. 51, 55 (1998) (CERCLA case applying the "actual control" test); *Kingston Dry Dock Co. v. Lake Champlain Transp. Co.*, 31 F.2d 265, 267 (2d Cir. 1929) (95-year-old libel case noting that "[o]ne corporation may . . . become an actor in a given transaction, or in part of a business, or in a whole business, and, when it has, will be legally responsible"); *Ayco Co., L.P. v. Frisch*, 2012 WL 42134, at *8 (N.D.N.Y. Jan. 9, 2012) (employment dispute deciding whether to pierce the corporate veil); *Xodus Med., Inc. v. Allen Med. Sys., Inc.*, 2018 WL 2338763, at *3 (W.D. Pa. May 22, 2018) (patent case deciding defendant's "physical place" for purposes of venue).

10

as distinct and unrelated, *id.*, whereas here the WCAS Management Entities use common trademarks, operate from the same principal place of business, and share the same website, ¶ 33. In *Alpha Capital Anstalt v. Schwell Wimpfheimer & Assocs. LLP*, the dispositive issue was not whether the allegation made out a control claim, but simply whether plaintiffs stated a claim for a primary violation; and, even there, the court emphasized that control "is 'a fact-intensive inquiry that generally should not be resolved on a motion to dismiss[.]" 2018 WL 1627266, at *20 (S.D.N.Y. Mar. 30, 2018) (quoting *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 741 (S.D.N.Y. 2015)).

## IV.     CONCLUSION

At bottom, the SAC is a ministerial addition of parties that WCAS tried to obscure through a series of investment vehicles, LLPs, and LLCs, notwithstanding that the entities share the same address, officers, and ultimately control over InnovAge. This effort to evade liability should be rejected and, just as before, the Court can "without significant effort conclude[] the Amended Complaint adequately alleges control person liability[.]" MTD Order at 87.

Dated: December 3, 2024                          Respectfully submitted,

                                                 */s/ Molly J. Bowen*
                                                 COHEN MILSTEIN SELLERS & TOLL PLLC
                                                 Molly J. Bowen
                                                 Julie Goldsmith Reiser
                                                 Jan E. Messerschmidt
                                                 Brendan R. Schneiderman
                                                 1100 New York Avenue, N.W., Eighth Floor
                                                 Washington, D.C. 20005
                                                 Tel.: (202) 408-4600
                                                 Fax.: (202) 408-4699
                                                 mbowen@cohenmilstein.com
                                                 jreiser@cohenmilstein.com
                                                 jmesserschmidt@cohenmilstein.com
                                                 bschneiderman@cohenmilstein.com

                                                 Carol V. Gilden
                                                 190 South LaSalle Street, Suite 1705

11

Chicago, IL 60603
Tel.: (312) 357-0370
Fax.: (312) 357-0369
cgilden@cohenmilstein.com

Manuel J. Dominguez
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Tel.: (561) 515-1400
Fax.: (561) 515-1401
jdominguez@cohenmilstein.com

*Lead Counsel for Lead Plaintiffs*

FAIRFIELD AND WOODS, P.C.
Cecil E. Morris
Adrian P. Castro
1801 California Street, Suite 2600
Denver, CO 80202
Tel.: (303) 830-2400
Fax.: (303) 830-1033
cmorris@fwlaw.com
acastro@fwlaw.com

*Liaison Counsel for Lead Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 3, 2024, I electronically filed the foregoing with the Clerk of the

Court via ECF, which in turn served notice on all counsel of record.


Dated:    December 3, 2024                    */s/ Molly J. Bowen*
                                              Molly J. Bowen