**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 21-cv-02770-WJM-SKC

EL PASO FIREMEN & POLICEMEN'S PENSION FUND, SAN ANTONIO FIRE & POLICE PENSION FUND, AND INDIANA PUBLIC RETIREMENT SYSTEM, individually and on behalf of all others similarly situated,

Plaintiffs,

  v.

INNOVAGE HOLDING CORP.,
MAUREEN HEWITT,
BARBARA GUTIERREZ,
JOHN ELLIS BUSH,
ANDREW CAVANNA,
CAROLINE DECHERT,
EDWARD KENNEDY, JR.,
PAVITHRA MAHESH,
THOMAS SCULLY,
MARILYN TAVENNER,
SEAN TRAYNOR,
RICHARD ZORETIC,
WCAS MANAGEMENT CORPORATION,
WCAS MANAGEMENT, L.P.,
WCAS MANAGEMENT, LLC,
APAX PARTNERS US LLC,
TCO GROUP HOLDINGS, L.P.,
J.P. MORGAN SECURITIES LLC,
BARCLAYS CAPITAL INC.,
GOLDMAN SACHS & CO. LLC,
CITIGROUP GLOBAL MARKETS INC.,
ROBERT W. BAIRD & CO. INCORPORATED,
WILLIAM BLAIR & COMPANY, L.L.C.,
PIPER SANDLER & CO.,
CAPITAL ONE SECURITIES, INC.,
LOOP CAPITAL MARKETS LLC,
SIEBERT WILLIAMS SHANK & CO., LLC, and
ROBERTS & RYAN INVESTMENTS, INC.,

Defendants.

---

**DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION
TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT
FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

---

-i-

**TABLE OF CONTENTS**

**Page**

I.    ARGUMENT ................................................................................................................1

    A.    The Control Arguments Are Premised on Inadequate Alter Ego
        Allegations .....................................................................................................2

    B.    The SAC Does Not Allege Control Person Liability.................................................4

    C.    Granting the Joint Motion Will Not Result in Inconsistencies, Which Are
        Not Relevant to the Court's Resolution of the Joint Motion ..................................8

    D.    The Court Should Disregard Plaintiffs' Exhibits.....................................................10

II.    CONCLUSION.............................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams* v. *Kinder-Morgan, Inc.*,
340 F.3d 1083 (10th Cir. 2003) ........................................................................5, 6, 7

*Ashcroft* v. *Iqbal*,
556 U.S. 662 (2009)................................................................................................10

*Correa* v. *Liberty Oilfield Services, Inc.*,
548 F. Supp. 3d 1069 (D. Colo. 2021)......................................................................6

*Furlong Fund LLC* v. *VBI Vaccines, Inc.*,
2016 WL 1181710 (S.D.N.Y. Mar. 25, 2016) ......................................................2, 9

*In re Galena Biopharma, Inc. Sec. Litig.*,
117 F. Supp. 3d 1145 (D. Or. 2015) .........................................................................2

*Genesee Cnty. Employees' Ret. Sys.* v. *Thornburg Mortg. Sec. Tr.*
*2006-3*, 825 F. Supp. 2d 1082 (D.N.M. 2011)..........................................................2

*GFF Corp.* v. *Associated Wholesale Grocers, Inc.*,
130 F.3d 1381 (10th Cir. 1997) ..............................................................................10

*Jojola* v. *Chavez*,
55 F.3d 488 (10th Cir. 1995) ..................................................................................10

*In re Kosmos Energy Ltd. Sec. Litig.*,
955 F. Supp. 2d 658 (N.D. Tex. 2013) ..................................................................5, 8

*In re Lernout & Hauspie Sec. Litig.*,
230 F. Supp. 2d 152 (D. Mass. 2002) .......................................................................4

*Maher* v. *Durango Metals, Inc.*,
144 F.3d 1302 (10th Cir. 1998) .............................................................................1, 7

*Medina* v. *Clovis Oncology, Inc.*,
215 F. Supp. 3d 1094 (D. Colo. 2017)......................................................................8

*In re Molycorp, Inc. Sec. Litig.*,
157 F. Supp. 3d 987 (D. Colo. 2016)........................................................................5

*N.L.R.B.* v. *Greater Kansas City Roofing*,
   2 F.3d 1047 (10th Cir. 1993) ................................................................................................2, 3

*Pearson* v. *Component Tech. Corp.*,
   247 F.3d 471 (3d Cir. 2001)....................................................................................................4

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
   387 F. Supp. 2d 1130 (D. Colo. 2005)....................................................................................2

*Teamsters Loc. 617 Pension & Welfare Funds* v. *Apollo Grp., Inc.*,
   690 F. Supp. 2d 959 (D. Ariz. 2010) ......................................................................................2

Defendants WCAS Management Corporation, WCAS Management L.P., and WCAS Management, LLC (the "WCAS Defendants") respectfully submit this Joint Reply in Support of Defendants' Joint Motion to Dismiss (the "Joint Motion") Plaintiffs' Second Amended Class Action Complaint (the "Second Amended Complaint" or "Compl.").

I.      ARGUMENT

Plaintiffs' Opposition seeks to keep the WCAS Defendants in this litigation as purported "control persons" based on a handful of conclusory allegations and unsupported (and incorrect) factual assertions that lump together the three WCAS Defendants.  The Opposition fails to identify any non-conclusory allegations in the Second Amended Complaint that show that any WCAS Defendant exercised control over InnovAge's management and policies — as is required for control person liability.  Plaintiffs try to gloss over this issue by arguing that granting the Joint Motion would result in inconsistent treatment of defendants.  But they cite no authorities to support the argument that the Court should simply ignore the factual allegations against the new WCAS Defendants to ensure consistency of treatment with other corporate defendants.  As set forth in the Motion, Plaintiffs have not adequately alleged any facts to support control person liability as to the WCAS Defendants; "dismissal is appropriate when, as in this case, a plaintiff does not plead any facts from which it can reasonably be inferred the defendant was a control person." *Maher* v. *Durango Metals, Inc.*, 144 F.3d 1302, 1306 (10th Cir. 1998).[1]

---

[1]      Plaintiffs argue that "[t]he Court already held that WCAS and Apax control InnovAge." (Lead Plaintiffs' Opposition to Defendants' Joint Motion to Dismiss ("Opp'n") (ECF No. 181) at 8-9.)  Being an order on a motion to dismiss, however, the Court's prior order merely addressed the adequacy of Plaintiffs' pleading.

**A.      The Control Arguments Are Premised on Inadequate Alter Ego Allegations**

Like the Second Amended Complaint, the Opposition attempts to establish control person liability as to each of the three WCAS Defendants by lumping them together as a single entity and urging the Court to treat them as synonymous with a fictitious non-party, "WCAS."  (*See* Opp'n at 8-9.)  This is impermissible.  *See Genesee Cnty. Employees' Ret. Sys.* v. *Thornburg Mortg. Sec. Tr. 2006-3*, 825 F. Supp. 2d 1082, 1221 (D.N.M. 2011) ("some factual allegations regarding each individual defendant are necessary" to adequately allege control person liability); *Teamsters Loc. 617 Pension & Welfare Funds* v. *Apollo Grp., Inc.*, 690 F. Supp. 2d 959, 972, 973-80 (D. Ariz. 2010) (examining complaint's control person allegations "as to each of the defendants"); *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1199-1202 (D. Or. 2015) (same).  It is Plaintiffs' burden to allege plausible facts demonstrating that *each* of the separate WCAS Defendants controlled InnovAge.  *See In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 387 F. Supp. 2d 1130, 1148-49 (D. Colo. 2005); *Furlong Fund LLC* v. *VBI Vaccines, Inc.*, 2016 WL 1181710, at *7 (S.D.N.Y. Mar. 25, 2016) (no control person liability where complaint "utterly failed to identify the role of each individual defendant").

Plaintiffs attempt to sidestep this requirement by contending that the WCAS Defendants are, in effect, the alter ego of the fictitious "WCAS" entity.  Plaintiffs' alter ego arguments fail for at least three reasons.  *First*, the corporate form may only be disregarded in "extreme circumstances" and where there is some element of "unfairness, injustice, fraud, or other inequitable conduct."  *N.L.R.B.* v. *Greater Kansas City Roofing*, 2 F.3d 1047, 1051-52 (10th Cir. 1993).  Here, as the Opposition acknowledges, the WCAS Defendants "are formally incorporated as distinct bodies."  (Opp'n at 8.)  And the Second Amended Complaint contains no

allegations whatsoever that any of the WCAS Defendants engaged in inequitable conduct that would justify disregarding their corporate separateness.  That alone defeats Plaintiffs' attempt to establish control liability as to the WCAS Defendants through an alter ego theory.

*Second*, Plaintiffs have failed to plead any facts to show that the WCAS Defendants acted as alter egos for a fictitious "WCAS" entity, either individually or when viewed as a group.  The First Amended Complaint alleged that "WCAS" was a single corporate entity.  (FAC ¶ 27.)  The Court relied on that factually incorrect allegation in concluding that "WCAS," which purportedly had the ability to designate directors to TCO Group Holdings, L.P.'s board (the "LP Board") and held veto power over the LP Board's decisions, was adequately alleged to be a control person of InnovAge.  (*See* Order Granting in Part and Denying in Part Defendants' Joint Motion to Dismiss (the "Prior MTD Order") (ECF No. 102) at 87.)  The WCAS Defendants, by contrast, are three separate entities, and none of them is alleged to have had the ability individually to designate directors to the LP Board.  Instead, Plaintiffs simply assert, without factual support, that "[t]he WCAS Management Entities *are* WCAS, operating under a common identity and purpose, using common trademarks, operating from the same principal place of business, and sharing the same website."  (Opp'n at 8; *see also* Compl. ¶ 33.)  Not only are such allegations irrelevant to Plaintiffs' control person claims, they are insufficient to establish that the WCAS Defendants are the alter ego of the nonexistent WCAS, such that any control allegedly possessed by the nonexistent WCAS could be imputed to the WCAS Defendants.  *See Greater Kansas City Roofing*, 2 F.3d at 1052 (piercing corporate veil requires demonstrating (a) "unity of interest and lack of respect given to the separate identity of the corporation" and (b) adherence to corporate form would "sanction a fraud, promote injustice, or lead to an evasion of legal obligations");

-3-

*Pearson* v. *Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001) ("[C]ourts have refused to pierce the veil even when subsidiary corporations use the trade name of the parent, accept administrative support from the parent, and have a significant economic relationship with the parent.").   Plaintiffs' argument also is inconsistent with its other pleadings, which allege that each WCAS Defendant has a different structure and purpose.  (Compl. ¶¶ 28(a)-(c).)

*Third*, the Prior MTD Order did not hold or imply that control person liability could automatically be imputed to other, separate corporate entities affiliated with a controlling entity. The Court's Order merely clarified that the Tenth Circuit's definition of control "is capacious enough to embrace even the complex ownership structures employed by well-heeled investors, *provided those ownership structures allow for control*."  (Prior MTD Order at 85 (emphasis added).)  As set forth above, apart from improperly asking the Court to simply treat the WCAS Defendants as an alter ego of the fictitious "WCAS" entity, Plaintiffs have pleaded no facts to show that the WCAS Defendants exercised any control as to InnovAge.  There are dozens of independent legal entities that share the WCAS name.  Plaintiffs cannot simply pull any or all of them into this case as purported control persons without adequately alleging that they each had *actual* control over InnovAge.  *See In re Lernout & Hauspie Sec. Litig.*, 230 F. Supp. 2d 152, 170 (D. Mass. 2002) ("Several courts have declined to treat different firms as a single entity . . . simply because they shared an associational name and/or collaborated on certain aspects of the relevant transaction.").

**B.     The SAC Does Not Allege Control Person Liability**

To establish control person liability for a violation of the Exchange Act, a plaintiff "must point to facts which indicate that the defendants had possession, direct or indirect, of the power

-4-

to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." *Adams* v. *Kinder-Morgan, Inc.*, 340 F.3d 1083, 1108 (10th Cir. 2003) (internal citation omitted); *In re Molycorp, Inc. Sec. Litig.*, 157 F. Supp. 3d 987, 1014 (D. Colo. 2016). The Second Amended Complaint does not come close to plausibly alleging that the WCAS Defendants possessed power to direct InnovAge's operations.

Neither WCAS Management, L.P—which performs "back-office and administrative services for WCAS" (Compl. ¶ 28(b))—nor WCAS Management, LLC—which "runs" WCAS Management, L.P.'s "back-office and administrative" operations as general partner (Compl. ¶ 28(c))—is alleged to hold any InnovAge stock, be a party to any relevant transactions or agreements, or have had any involvement in the enterprise-level or day-to-day operations of InnovAge. Indeed, the Second Amended Complaint lacks any allegations about how either of these entities supposedly exerts any influence over InnovAge whatsoever. The remaining entity—WCAS Management Corporation—is an "investment adviser" that, together with six other entities (collectively, the "<u>WCAS Investors</u>"), has the right to designate a certain number of nominees to the LP Board and InnovAge's board. (Compl. ¶¶ 28-32, 37, Ex. A; Prior MTD Order at 86-87.) The Opposition does not explain how WCAS Management Corporation's right to nominate some directors to the boards of TCO and InnovAge—which it shares with the six other WCAS Investors—shows that WCAS Management Corporation has power of its own to direct the management and policies of InnovAge. *See In re Kosmos Energy Ltd. Sec. Litig.*, 955 F. Supp. 2d 658, 676 (N.D. Tex. 2013) (no control liability where plaintiffs alleged no facts regarding control besides "stock ownership and the fact that they designated their own employees as directors"). Plaintiffs' arguments to the contrary are unavailing.

-5-

*First*, Plaintiffs' allegations that WCAS Management Corporation was involved in InnovAge's IPO are insufficient to establish control person liability.  (*See* Opp'n at 6.)  Whether an individual or entity "facilitat[es] the IPO process" says nothing about that individual or entity's ability to control the "management and policies of a person."  *Adams*, 340 F.3d at 1108.  This Court has already determined that the Tenth Circuit's holding in *Adams* v. *Kinder-Morgan, Inc.* "specifically undercuts the argument that . . . 'facilitat[ing] the IPO process' alone is enough to be subject to joint and several liability under the securities laws."  (Prior MTD Order at 83-84.)  Plaintiffs provide no authority to the contrary.  Plaintiffs rely on *Correa* v. *Liberty Oilfield Services, Inc.*, 548 F. Supp. 3d 1069 (D. Colo. 2021), but in that case the alleged control person defendants were each a "director, senior officer, or major shareholder" that "signed or authorized the signing of the registration statement, consented to being named in it as a Director Nominee, or otherwise participated in facilitating the IPO process."  *Id.* at 1084.  Here, unlike in *Correa*, none of the WCAS Defendants are directors, senior officers, or major shareholders.

Plaintiffs also incorrectly assert that WCAS Management Corporation facilitated the IPO process "on behalf of the WCAS funds *and other entities*" by signing the Director Nomination Agreement.  (Opp'n at 6 (emphasis added).)  But the Second Amended Complaint nowhere alleges that WCAS Management acted "on behalf of" (a) the "WCAS funds" (all of which signed the Director Nomination Agreement on their own behalf (*see* Compl. Ex. A)) or (b) any "other WCAS entities" (none of which is identified in either the Opposition or the Second Amended Complaint).  Thus, WCAS Management Corporation's purported facilitation of the IPO fails to establish that it had control over InnovAge.

-6-

*Second*, Plaintiffs again misconstrue InnovAge's public filings to argue that Apax and the WCAS Defendants together control a majority of InnovAge's stock and therefore "the vote of all matters submitted to a vote of our shareholders."[2] (Opp'n at 6.)  But Plaintiffs do not allege that any of the WCAS Defendants actually hold any InnovAge stock.  Rather, as explained in the Offering Documents, TCO Group Holdings, L.P. is an investment vehicle that owns a majority of InnovAge common stock.  (Compl. ¶ 36; Prior MTD Order at 86; ECF No. 74-1 at 29.)

Moreover, TCO exercises voting and dispositive power with respect to that stock through the LP Board.  (*See* ECF No. 74-1 at 29.)  Neither WCAS Management L.P. nor WCAS Management LLC is alleged to have any power over appointments to the LP Board.

Only WCAS Management Corporation, in conjunction with the six other WCAS Investors, is alleged to have the shared ability to nominate directors to the LP Board.  This allegation is still insufficient because the Complaint fails to allege that WCAS Management Corporation's individual voting power is sufficient to control the makeup of the LP Board.  Further, despite speculating about the possibility that Apax and the WCAS Defendants together "*could* cause the direction and management and policies of InnovAge" through their nomination of LP Board members (Compl. ¶ 42 (emphasis added)), the Second Amended Complaint fails to allege any facts plausibly showing that the WCAS Defendants actually exercised nomination rights as to the LP Board to cause the direction of InnovAge's management or policies.  *See*

---

[2]    Plaintiffs at the same time argue that the Court's Order rejected the relevancy of stock ownership to the question of control.  (*See* Prior MTD Order at 82-87.)  Plaintiffs misconstrue the Court's holding.  The definition of "control" expressly references "the ownership of voting securities" as a possible means of exercising control.  *Adams*, 340 F.3d at 1108; *Maher*, 144 F.3d at 1305.  That none of the WCAS Defendants holds InnovAge stock or exercises voting rights with respect to InnovAge stock supports a finding that they lack control over InnovAge.

*Medina* v. *Clovis Oncology, Inc.*, 215 F. Supp. 3d 1094, 1133 (D. Colo. 2017) (control liability not sufficiently alleged against defendants who lacked "significant stock holdings or voting power").

*Third*, Plaintiffs argue that control person liability is established because "a majority of InnovAge's board members are representatives from WCAS and Apax, and those firms have veto power over the board." (Opp'n at 7.) Plaintiffs cite to no authority for the incorrect proposition that the number of board seats held by an *affiliated* entity (here, the nonexistent entity "WCAS") can support a finding of control person liability with respect to said corporate entity. To the contrary, other courts have concluded that even the direct ability to designate board members is insufficient to establish control. *See In re Kosmos Energy Ltd. Sec. Litig.*, 955 F. Supp. 2d at 676. Moreover, it is simply wrong, and the Second Amended Complaint does not allege, that during the relevant time period a "majority" of InnovAge's board was composed of "representatives from WCAS and Apax." The board was evenly split between (a) directors nominated by the WCAS Investors and Ignite Aggregator LP (together, the "Investors") and (b) other directors. (*See* Compl. ¶¶ 44, 48-56.) None of the WCAS Defendants' alleged nomination rights granted them veto power over InnovAge's board. While the Director Nomination Agreement requires InnovAge to secure the written consent of the Investors prior to undertaking certain actions, the agreement does not permit WCAS Management Corporation to interfere with the management and policy decisions of InnovAge's board. (*See* Compl. Ex. A.)

**C.**    **Granting the Joint Motion Will Not Result in Inconsistencies, Which Are Not Relevant to the Court's Resolution of the Joint Motion**

Plaintiffs argue that "dismissing the WCAS Management Entities would upend [the Court's] prior ruling and create significant inconsistencies between both that prior ruling and the

treatment of the other parties in the case." (Opp'n at 9.) Neither assertion is accurate or relevant to the Court's analysis of the Joint Motion.

*First*, the Court's Prior MTD Order does not speak to whether Plaintiffs have adequately alleged control person liability as to the WCAS Defendants, which were not named in the First Amended Complaint. As discussed above, the Second Amended Complaint removes the fictitious "WCAS" entity and replaces it with three separate corporate entities alleged to have distinct functions and connections (such as they are) to InnovAge. The Court must assess Plaintiffs' control person liability claims with respect to each WCAS Defendant individually and based on the allegations in the Second Amended Complaint. *See Furlong Fund LLC*, 2016 WL 1181710, at *7. Accordingly, the Court's prior order regarding the adequacy of the pleading against "WCAS" do not control the outcome here.

*Second*, even if granting the Joint Motion were somehow to create some purported and unidentified "inconsistency" as to the defendants remaining in this case, that consideration is not relevant to the Court's analysis of the Joint Motion. The Court must determine the Motion before it on its merits. That Apax (an existing defendant whose change of name preceded the commencement of proceedings against it) did not move to dismiss the SAC says nothing about the adequacy of the pleadings against either it or the WCAS defendants; this Court's stipulated order *exempted* Apax from responding to the Second Amended Complaint, expressly preserving its appeal rights flowing from the Prior MTD Order. (ECF No. 170 at 5.) And, in its answer to the First Amended Complaint, Apax denied the control person allegations (ECF No. 127), leaving the burden with Plaintiffs to prove the allegations. Likewise, TCO Group Holdings denied the control person allegations in its answer (ECF No. 179). At the Rule 12(b)(6) stage on

a motion filed only by the WCAS Defendants, the Court is limited to determining whether Plaintiffs have pleaded sufficient factual matter that, if accepted as true, would state a claim for relief that is plausible on its face as to *those defendants*. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). Here, Plaintiffs named as defendants three distinct corporate entities that are several degrees removed from the enterprise-level and day-to-day operations, management, and policies of InnovAge. Accordingly, the control person claims against the WCAS Defendants should be dismissed.

### D.    The Court Should Disregard Plaintiffs' Exhibits

The Court should not consider the four exhibits attached to Plaintiffs' Opposition. "[I]n determining whether to grant a motion to dismiss, the district court . . . [is] limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint." *Jojola* v. *Chavez*, 55 F.3d 488, 494 (10th Cir. 1995). While there are certain exceptions to this rule, none apply here. These exhibits (a) were not submitted for judicial notice, (b) were not attached to the Second Amended Complaint, and (c) were not incorporated by reference. Nor are these documents "referred to in the complaint" and "central" to Plaintiffs' claims. *GFF Corp.* v. *Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997). Even if the Court were to consider Plaintiffs' exhibits, none bears on whether the WCAS Defendants controlled the management or policies of InnovAge. Instead, the documents consist of isolated communications of certain Director Defendants whom the Court already has determined are not adequately alleged to be control persons. (*See* Prior MTD Order at 82–84.)

## II.    CONCLUSION

For the foregoing reasons, the WCAS Defendants should be dismissed with prejudice.

-10-

Dated:        December 24, 2024

SULLIVAN & CROMWELL LLP

By:  /s/ *Diane L. McGimsey*
Karen Patton Seymour
125 Broad Street
New York, NY 10004-2498
Telephone: (212) 558-4000
Facsimile: (212) 291-9307
seymourk@sullcrom.com

Diane L. McGimsey
1888 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 712-6600
Facsimile: (310) 712-8800
mcgimseyd@sullcrom.com

*Counsel for WCAS Management Corporation,*
*WCAS Management, L.P., WCAS*
*Management, LLC, and TCO Group*
*Holdings, L.P.*

-11-

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of December, 2024, I electronically filed a true and correct copy of the foregoing **DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties via the CM/ECF system.

*/s/ Diane L. McGimsey*
Diane L. McGimsey

-12-