## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 21-cv-02770-WJM-SBP

EL PASO FIREMEN & POLICEMEN'S PENSION FUND, SAN ANTONIO FIRE & POLICE
PENSION FUND, AND INDIANA PUBLIC RETIREMENT SYSTEM, individually and on
behalf of all others similarly situated,

       Plaintiffs,

v.

INNOVAGE HOLDING CORP.,
MAUREEN HEWITT,
BARBARA GUTIERREZ,
JOHN ELLIS BUSH,
ANDREW CAVANNA,
CAROLINE DECHERT,
EDWARD KENNEDY, JR.,
PAVITHRA MAHESH,
THOMAS SCULLY,
MARILYN TAVENNER,
SEAN TRAYNOR,
RICHARD ZORETIC,
WCAS MANAGEMENT CORPORATION,
WCAS MANAGEMENT, L.P.,
WCAS MANAGEMENT, LLC,
APAX PARTNERS US LLC,
TCO GROUP HOLDINGS, L.P.,
J.P. MORGAN SECURITIES LLC,
BARCLAYS CAPITAL INC.,
GOLDMAN SACHS & CO. LLC,
CITIGROUP GLOBAL MARKETS INC.,
ROBERT W. BAIRD & CO. INCORPORATED,
WILLIAM BLAIR & COMPANY, L.L.C.,
PIPER SANDLER & CO.,
CAPITAL ONE SECURITIES, INC.,
LOOP CAPITAL MARKETS LLC,
SIEBERT WILLIAMS SHANK & CO., LLC, and
ROBERTS & RYAN INVESTMENTS, INC.,

       Defendants.

---

## LEAD PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
## SETTLEMENT AND APPROVAL OF NOTICE TO THE CLASS, AND
## MEMORANDUM OF LAW IN SUPPORT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  PRELIMINARY STATEMENT ................................................................................. 1

II.  BACKGROUND OF THE LITIGATION ............................................................... 3

    A.  The Commencement and Nature of the Action ........................................... 3

    B.  Fact Discovery ........................................................................................... 5

    C.  Class Certification ...................................................................................... 6

    D.  The Mediation/Settlement Process ............................................................ 6

    E.  Terms of the Settlement ............................................................................. 6

III.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL .................................. 7

    A.  The Settlement Is the Product of Good-Faith, Arm's-Length Negotiations Among Experienced Counsel and a Mediator .......................... 8

    B.  The Relief Provided Is Adequate and Well Within the Range of Approval ............ 9

    C.  The Settlement Treats All Class Members Equitably ............................... 12

    D.  The Settlement Does Not Excessively Compensate Lead Counsel ...................... 13

IV.  THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE CLASS ................................................... 14

V.  PROPOSED SCHEDULE OF SETTLEMENT EVENTS ............................................ 15

VI.  CONCLUSION ................................................................................................ 15

Appendix A ................................................................................................. 17

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Beasley v. TTEC Servs. Corp.*,
    No. 22-CV-00097-PAB-STV, 2023 WL 3323311 (D. Colo. May 9, 2023) ....................................15

*Bilinsky v. Gatos Silver, Inc.*,
    No. 22-cv-00453-PAB-KAS, 2024 WL 4494290 (D. Colo. Oct. 15, 2024) ......................................9

*Bristol Cnty. Ret. Sys. V. Ourate Retail, Inc.*,
    No. 18-cv-02300-MEH, (D. Colo. Sept. 23, 2019) ..............................................................13

*Chavez Rodriguez v. Hermes Landscaping, Inc.*,
    No. 17-2142-JWB-KGG, 2020 WL 3288059 (D. Kan. June 18, 2020) ...........................................8

*In re Crocs, Inc. Sec. Litig.*,
    306 F.R.D. 672 (D. Colo. 2014)...............................................................................................11

*In re Crocs, Inc. Sec. Litig.*,
    No. 07-cv-02351-PAB-KLM, 2013 WL 4547404, (D. Colo. Aug. 28, 2013)....................................8

*Davis v. Crilly*,
    292 F. Supp. 3d 1167 (D. Colo. 2018) ........................................................................................13

*DeJulius v. N.E. Health Care Emps. Pension Fund*,
    429 F.3d 935 (10th Cir. 2005) ..................................................................................................15

*Ehrheart v. Verizon Wireless*,
    609 F.3d 590 (3d Cir. 2010) .......................................................................................................7

*Gottlieb v. Wiles*,
    11 F.3d 1004 (10th Cir. 1993) ..................................................................................................11

*Hefler v. Wells Fargo & Co.*,
    No. 4:16-cv-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)............................................7

*In re Home Point Cap. Inc. Sec. Litig.*,
    No. 21-11457, 2024 WL 3273275 (E.D. Mich. June 28, 2024) ....................................................11

*Indiana Pub. Ret. Sys. v. Pluralsight*,
    No. 19-cv-00128, (D. Utah Feb. 5, 2025)...................................................................................14

*Lane v. Page*,
    862 F. Supp. 2d 1182 (D.N.M. 2012)........................................................................................11

*Lowery v. City of Albuquerque*,
    No. CIV 09-0457 JB/WDS, 2013 WL 1010384 (D.N.M. Feb. 27, 2013) ......................................11

*McFadden v. Sprint Commc'ns, LLC,*
  No. 22-2464-DDC-GEB, 2024 WL 1533897 (D. Kan. Apr. 9, 2024) ................................9

*In re Omega Healthcare Investors, Inc. Sec. Litig.,*
  No. 17-cv-08983-NRB, (S.D.N.Y. Apr. 25, 2023) ....................................................13

*Oregon Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.,*
  No. 19-cv-0124-WJM-SKC, 2024 WL 98387 (D. Colo. Jan. 1, 2024) ..........................7

*In re Patriot Nat'l, Inc. Sec. Litig.,*
  828 F. App'x 760 (2d Cir. 2020) ...........................................................................11

*Paulson v. McKowen,*
  No. 19-CV-02639-PAB-NYW, 2023 WL 2528783 (D. Colo. Mar. 15, 2023) ...............10

*Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.,*
  No. 17-cv-0304-WJM-NRN, 2021 WL 1387110 (D. Colo. Apr. 13, 2021) .........8, 13, 14

*In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prods. Liab. Litig.,*
  997 F.3d 1077 (10th Cir. 2021) ...........................................................................13

*In re Signet Jewelers Ltd. Sec. Litig.,*
  No. 1:16-cv-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) .................7

*Sinaathurai v. Novavax, Inc.,*
  No. 8:21-cv-02910-TDC, (D. Md. May 24, 2024) .....................................................13

*Suaverdez v. Circle K Stores, Inc.,*
  No. 20-CV-01035-RM-NYW, 2021 WL 4947238 (D. Colo. June 28, 2021) .................15

*In re Syngenta Ag Mir 162 Corn Litig.,*
  No. 14-md-2591-JWL, 2018 WL 1726345 (D. Kan. Apr. 10, 2018) ............................7

*In re Wells Fargo & Co. Sec. Litig.,*
  No. 1:20-cv-04494-JLR-SN, (S.D.N.Y. Sept. 9, 2023) .............................................11

*Woodard v. Labrada,*
  No. EDCV 16-189 JGB, 2022 WL 18397633 (C.D. Cal. July 7, 2022) ......................10

## STATUTES

15 U.S.C. § 78u-4 .............................................................................................1, 12, 15

## OTHER AUTHORITIES

*About Us*, JAMS, https://www.jamsadr.com/about (last visited May 30, 2024) ...................9

Federal Rule of Civil Procedure 23(e) ..................................................................7, 8

*Law360 Names Practice Groups of the Year* (Jan. 21, 2024),
   https://www.law360.com/articles/1781974/law360-names-practice-groups-of-
   the-year; .................................................................................................................................. 12

*Robert A. Meyer*, JAMS, https://www.jamsadr.com/meyer/ (last visited May 30,
   2025) ....................................................................................................................................... 9

Court appointed Lead Plaintiffs and Class Representatives El Paso Firemen & Policemen's Pension Fund ("El Paso"), San Antonio Fire & Police Pension Fund ("San Antonio"), and Indiana Public Retirement System ("Indiana") (collectively, "Lead Plaintiffs") hereby move this Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an order: (i) preliminarily approving the proposed Settlement;[1] (ii) approving the form and manner of notice of the same to the Class; and (iii) scheduling a hearing to consider approval of the Settlement and approval of the Plan of Allocation, and Cohen Milstein Sellers & Toll PLLC's ("Cohen Milstein's" or "Lead Counsel's") motion for attorneys' fees, plus actual expenses for litigating the case and for reasonable costs, which may include an application for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiffs directly related to their representation of the Class pursuant to the PSLRA (15 U.S.C. § 78u-4(a)(4)). Pursuant to D.C. Colo. L. Civ R 7.1(a), Lead Plaintiffs certify that Defendants do not oppose the relief sought herein. *See* Stipulation ¶ 2.

## I.    PRELIMINARY STATEMENT

Lead Plaintiffs are pleased to report that, after more than three years of hard-fought litigation, they have negotiated an agreement to settle this securities class action (the "Action") in exchange for $27,000,000 in cash. If approved, the Settlement will result in a significant payment to Class Members and will resolve this class action in its entirety. Lead Plaintiffs now move, unopposed, for preliminary approval so that notice of the Settlement can be disseminated and a final hearing scheduled.

The Settlement is the product of arms'-length negotiations supervised by Robert A. Meyer, a preeminent mediator of complex securities class actions from the Judicial Arbitration and Mediation Services ("JAMS"). The mediation process included the exchange of detailed mediation statements addressing liability and damages, a full-day mediation, and additional negotiations conducted through

---

[1] All terms not otherwise defined herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated June 2, 2025 (the "Stipulation"), filed herewith. ECF No. 199-1.

Mr. Meyer. Only after extensive negotiation did the Parties agree to the Settlement.

Throughout this Action, Lead Plaintiffs and Lead Counsel zealously represented Class Members' interests and, through vigorous litigation, gained a thorough understanding of the strengths and weaknesses of the case. Indeed, prior to reaching the Settlement, Lead Plaintiffs investigated, drafted, and filed a detailed amended complaint; defeated, in large part, Defendants' repeated motions to dismiss; and engaged in substantial fact discovery, including exchange of document requests and interrogatories, production of documents, service of subpoenas on fourteen third parties, and Rule 30(b)(6) depositions of the Lead Plaintiffs and their three investment managers, consisting of eight individuals representing six different entities. Lead Plaintiffs also successfully moved for class certification, supported by an expert report on market efficiency and damages. As a result, Lead Plaintiffs—institutional investors who fully endorse the settlement—and Lead Counsel had a well-developed understanding of the merits and risks of the claims when they agreed to the Settlement.

The very significant benefit the proposed Settlement will provide to the Class represents a substantial percentage of the maximum realistically recoverable damages that could be established at trial. The Settlement is particularly meaningful when considered against the considerable risk that the Class might recover less (or even nothing) if the Action were litigated through further dispositive motions, trial, and any appeals that would likely follow—a process that could last years.

There were many risks to continued litigation, including hurdles to proving falsity, scienter, and loss causation. Notably, the Court's rulings on Defendants' motions to dismiss narrowed Lead Plaintiffs' claims to six statements. Lead Plaintiffs faced challenges in establishing these statements were false and misleading and, in the case of the Exchange Act statements, that Defendants had the requisite state of mind when making them. Defendants have contended—and would have contended at summary judgment or trial—that their statements accurately described InnovAge's expectations for how their business would operate and that, while InnovAge did not operate perfectly, its statements

were neither false nor misleading, and the severity of the sanctions was unexpected. Lead Plaintiffs also faced risks relating to loss causation, as Defendants argued that Lead Plaintiffs could not establish a causal link between the alleged misstatements and stock price movement, given other confounding factors. Considering these and other risks, as well as the costs and delays of further litigation, the $27,000,000 recovery is an extremely favorable result for the Class.

Lead Plaintiffs respectfully request that this Court enter the proposed Preliminary Approval Order attached as Exhibit A, which would, among other things: (i) approve the form and method of disseminating notice of the Settlement to the Class and authorize dissemination of the same; (ii) schedule a final approval hearing (the "Settlement Hearing") for the Parties and Class members to present arguments regarding the Settlement, and for the Court to make a final determination as to whether the Settlement is fair, reasonable, and adequate; (iii) preliminarily approve the Settlement as fair, reasonable, and adequate to the Class, pending the Settlement Hearing; and (iv) establish procedures and deadlines for Class Members to submit Claim Forms (Exhibit A-2) for payments from the Net Settlement Fund and object to the Settlement, Plan of Allocation, and/or the requested fees, which may include an application for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiffs directly related to their representation of the Class. Lead Plaintiffs respectfully propose the Proposed Schedule of Settlement Events set forth in Appendix A.

## II.    BACKGROUND OF THE LITIGATION

### A.    The Commencement and Nature of the Action

On October 14, 2021, a class action complaint was filed in the U.S. District Court for the District of Colorado, styled *Randy McLeod v. InnovAge Holding Corp., et al.*, Case No. 1:21-cv-02770-SKC, alleging violations of the federal securities laws. ECF No. 1. On December 13, 2021, Lead Plaintiffs moved to be appointed Lead Plaintiff and have their counsel appointed Lead Counsel. ECF No. 6. On April 11, 2022, the Court granted the motion, appointing El Paso, San Antonio, and Indiana

as Lead Plaintiffs, and approving their selection of Cohen Milstein as Lead Counsel and Fairfield and Woods, P.C. ("Fairfield") as Liaison Counsel. ECF No. 44.

On June 21, 2022, Lead Plaintiffs filed their Amended Class Action Complaint (the "CAC") asserting claims under the Exchange Act and Rule 10b-5 promulgated thereunder, including against InnovAge, CEO Maureen Hewitt, and CFO Barbara Gutierrez (the "Officer Defendants") under Section 10(b); and against the Officer Defendants and private equity firms Welsh Carson, Anderson & Stowe, and Apax Partners, L.P., under Section 20(a). Lead Plaintiffs also asserted claims under the Securities Act against InnovAge, the Officer Defendants, the Director Defendants,[2] and the Underwriter Defendants[3] under Section 11; against InnovAge and the Underwriter Defendants under Section 12(a)(2); and against the Officer Defendants, the Director Defendants, Welsh, Carson, Anderson & Stowe, and Apax Partners, L.P., under Section 15. ECF No. 54. The CAC alleged that Defendants made false and misleading statements and omissions regarding, *inter alia*, InnovAge's ability to provide individualized care plans, maintain continuity of care, enable participants to live independently at home, and maintain staffing levels, all of which caused the price of InnovAge common stock to be artificially inflated during the Class Period, thereby damaging investors when the truth was revealed.

On September 13, 2022, InnovAge, the Officer Defendants, the Director Defendants, Welsh, Carson, Anderson & Stowe, and Apax Partners, L.P., moved to dismiss the CAC (the "Company's Motion to Dismiss"), as did the Underwriter Defendants (the "Underwriters' Motion to Dismiss"). ECF Nos. 73–76. Lead Plaintiffs opposed those motions (ECF Nos. 79–81), and Defendants replied

---

[2] The Director Defendants include John Ellis Bush, Andrew Cavanna, Caroline Dechert, Edward Kennedy, Jr., Pavithra Mahesh, Thomas Scully, Marilyn Tavenner, Sean Traynor, and Richard Zoretic.
[3] The Underwriter Defendants include J.P. Morgan Securities LLC, Barclays Capital Inc., Goldman Sachs & Co. LLC, Citigroup Global Markets Inc., Robert W. Baird & Co. Incorporated, William Blair & Company, L.L.C., Piper Sandler & Co., Capital One Securities, Inc., Loop Capital Markets LLC, Siebert Williams Shank & Co., LLC, and Roberts & Ryan Investments, Inc.

(ECF Nos. 82–84). On December 21, 2023, the Court granted in part and denied in part the Company's Motion to Dismiss, dismissing certain alleged misstatements but sustaining three as to Lead Plaintiffs' Exchange Act claims and three as to Lead Plaintiffs' Securities Act claims. ECF No. 102. On January 18, 2024, the Court granted in part and denied in part the Underwriters' Motion to Dismiss, dismissing the Section 12(a)(2) claims except as to J.P. Morgan, and otherwise denying the motion. ECF No. 108. On March 4, Defendants filed and served their Answers to the CAC. ECF No. 125.

On September 11, 2024, Lead Plaintiffs filed a Second Amended Class Action Complaint (the "SAC") for the limited purpose of renaming and identifying certain private equity defendants and adding one additional defendant. ECF No. 171. WCAS Management Corporation, WCAS Management, L.P., and WCAS Management, LLC (the "WCAS Defendants") moved to dismiss the SAC (ECF No. 175); Lead Plaintiffs opposed (ECF No. 181) and the WCAS Defendants replied (ECF No. 185). TCO Group Holdings, L.P. answered the SAC (ECF No. 179). On March 31, 2025, the Court denied the motion. ECF No. 195.

**B.    Fact Discovery**

Lead Plaintiffs and Defendants propounded discovery, including document requests on one another, with Lead Plaintiffs serving interrogatories on Defendants and document subpoenas on fourteen third parties, including state and federal regulators, InnovAge's consultants, and a former InnovAge employee. Extensive negotiations concerning responses and objections followed, including scores of detailed letters concerning discovery disputes and dozens of "meet and confer" conferences. Lead Plaintiffs, Defendants, and third parties produced documents totaling over six hundred thousand pages. Depositions transpired of each Lead Plaintiff and their investment managers, a total of six entities, resulting in eight Rule 30(b)(6) depositions. Two third-party deposition notices served by Lead Plaintiffs were pending at the time the case was resolved—one of a former state official, and another

of a third-party consultant to InnovAge. Additionally, extensive negotiations took place regarding the case schedule, protective order, and electronic discovery protocol. ECF Nos. 123, 142, 145.

### C.    Class Certification

While discovery was ongoing, Lead Plaintiffs moved for class certification on May 8, 2024, supported by an expert report on market efficiency and damages. ECF No. 140–141. On August 23, 2024, Defendants opposed, citing a rebuttal expert report and other evidence. ECF Nos. 160–161. On October 9, 2024, Lead Plaintiffs replied. ECF Nos. 172–173. On January 9, 2025, the Court granted the motion, certifying a Class as defined under ¶ 1(g) of the Stipulation; appointing El Paso, San Antonio, and Indiana as Class Representatives; and appointing Cohen Milstein as Class Counsel and Fairfield as Liaison Class Counsel. ECF No. 187 ("Class Certification Order").

### D.    The Mediation/Settlement Process

On October 29, 2024, the Parties mediated before Robert A. Meyer, a nationally recognized JAMS mediator. In advance, the Parties submitted detailed mediation statements on liability and damages with numerous exhibits. Lead Counsel, Lead Plaintiffs, Defendants' counsel, a representative of InnovAge, and Defendants' insurers participated in a full-day mediation that ended without resolution. After extensive further negotiation, in early April 2025, the Parties agreed to the Settlement Amount, namely $27,000,000 in cash, as the result of a proposal by Mr. Meyer. The Parties thereafter negotiated a term sheet, executed on April 25, 2025.

### E.    Terms of the Settlement

The Stipulation provides that InnovAge will pay or cause to be paid $27,000,000 in cash (the "Settlement Amount") into the Escrow Account within twenty-one (21) days after the later of: (i) the Court having entered an order preliminarily approving the Settlement, and (ii) InnovAge and/or its insurers having received customary written instructions for payment of the Settlement Amount by check or wire into the Escrow Account and a Form W-9 for the Escrow Account. Stipulation ¶ 7. The

Settlement Amount, plus accrued interest, after deducting attorneys' fees and Litigation Expenses awarded by the Court, Taxes, Notice and Administration Costs, and any other Court-approved costs or fees (the "Net Settlement Fund"), will be distributed among Authorized Claimants in accordance with an approved plan of allocation. *Id.* ¶ 8. Class Members will release the "Released Plaintiffs' Claims" in exchange for the Settlement Amount. *Id.* ¶ 7. The release's scope is reasonable as it is limited to claims that both were or could have been asserted by Lead Plaintiffs in the Action and arise out of, are based upon, or relate to either the allegations set forth in the complaints filed in the Action or the purchase or other acquisition of InnovAge common stock during the Class Period. *Id.* ¶ 1(pp).[4]

## III.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23(e)(2) calls for approval of a settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The presumption favoring voluntary settlement agreements "is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation . . . because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Oregon Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*, No. 19-cv-0124-WJM-SKC, 2024 WL 98387, at *4 (D. Colo. Jan. 1, 2024) (Martínez, J.) (quoting *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010)).

Judicial approval of a class action settlement is a two-step process—*first*, the court performs a

---

[4] The Parties also agreed that Defendants may terminate the Settlement if the number of claimants who request exclusion from the Class reaches a certain threshold. *See* Stipulation ¶ 36. This agreement (known as a "blow provision") is standard in securities class action settlements; it is maintained as confidential to prevent potential opt-outs from threatening to trigger the provision to leverage payment from settling parties. The agreement is available for review *in camera* at the Court's request. *See, e.g.*, *In re Syngenta Ag Mir 162 Corn Litig.*, No. 14-md-2591-JWL, 2018 WL 1726345, at *9 (D. Kan. Apr. 10, 2018) (approving settlement with blow provision); *see also In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-cv-06728-CM-SDA, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020) (noting this type of agreement is standard); *Hefler v. Wells Fargo & Co.*, No. 4:16-cv-05479-JST, 2018 WL 4207245, at *7 (N.D. Cal. Sept. 4, 2018) (finding "compelling reasons to keep [the opt-out threshold] confidential").

preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class, *see* Fed. R. Civ. P. 23(e)(1); *second*, after notice has been provided, the court determines whether to grant final approval of the settlement, *see* Fed. R. Civ. P. 23(e)(2). Courts grant preliminary approval when they "will likely be able" to finally approve the settlement under Rule 23(e)(2). *See* Fed. R. Civ. P. 23(e)(1)(B); *see also In re Crocs, Inc. Sec. Litig.*, Nos. 07-cv-02351-PAB-KLM, 2013 WL 4547404, at *3 (D. Colo. Aug. 28, 2013) ("Preliminary approval . . . is at most a determination that there is … 'probable cause'" to give notice and hold a final fairness hearing).

> In considering *final* approval of a settlement, under Rule 23, the court considers whether:
>
> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief . . . including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably . . . .

Fed. R. Civ. P. 23(e)(2).[5] These factors are satisfied here, and preliminary approval is appropriate.

### A.    The Settlement Is the Product of Good-Faith, Arm's-Length Negotiations Among Experienced Counsel and a Mediator

The Settlement was achieved after extensive negotiations between well-informed, experienced counsel following over three years of hard-fought litigation giving Lead Plaintiffs and Lead Counsel a clear view of the strengths and weaknesses of the case.

The Settlement is endorsed by Lead Plaintiffs. Lead Plaintiffs are sophisticated institutional investors "of the type favored by Congress when passing the PSLRA . . . ." *DaVita Inc.*, 2021 WL

---

[5] These factors, which became effective on December 1, 2018, "were not meant to displace any circuit's unique factors, but rather to focus courts on the core concerns in deciding whether to approve a proposed settlement." *Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*, No. 17-cv-0304-WJM-NRN, 2021 WL 1387110, at *3 (D. Colo. Apr. 13, 2021) (Martínez, J.) (citing *Chavez Rodríguez v. Hermes Landscaping, Inc.*, No. 17-2142-JWB-KGG, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020)). The Tenth Circuit's additional factors that predate 2018 "largely overlap" Rule 23, and so courts consider the Rule 23(e)(2) factors as the "main tool" in evaluating the propriety of a settlement. *Id.*

1387110, at *4. Each diligently monitored the litigation, was well informed of the strengths and weaknesses of the claims, and actively participated in the mediation and settlement negotiations. *See, e.g.*, Class Certification Order at 10 (describing Lead Plaintiffs as "sophisticated institutional investors" who have "capably demonstrated their understanding of this action").

The Settlement was also reached only after arm's-length negotiations between experienced counsel with the assistance of Mr. Meyer. Mr. Meyer has served as a mediator for more than twelve years and is ranked on the exclusive "National Mediators" List, published by *Chambers USA. Robert A. Meyer*, JAMS, https://www.jamsadr.com/meyer/ (last visited May 30, 2025). JAMS is "the world's largest private alternative dispute resolution (ADR) provider." *About Us*, JAMS, https://www.jamsadr.com/about (last visited May 30, 2024). Courts regularly approve settlements mediated by Mr. Meyer. *See, e.g., Bilinsky v. Gatos Silver, Inc.*, No. 22-cv-00453-PAB-KAS, 2024 WL 4494290, at *1 (D. Colo. Oct. 15, 2024); *McFadden v. Sprint Commc'ns, LLC*, No. 22-2464-DDC-GEB, 2024 WL 1533897, at *6 (D. Kan. Apr. 9, 2024).

### B.    The Relief Provided Is Adequate and Well Within the Range of Approval

The Settlement amount of $27,000,000 in cash is an excellent result that accounts for the real and substantial risks to establishing liability and damages, which Lead Plaintiffs and Lead Counsel fully recognize while continuing to believe in the merits of the claims.

First, Lead Plaintiffs faced challenges establishing that each misstatement was false and misleading. The statements that survived motion to dismiss involved InnovAge's: (i) ability to provide individualized care plans (SAC ¶¶ 253(b), 254(b)); (ii) ability to maintain continuity of care (*id.* ¶¶ 253(f), 254(f)); (iii) ability to enable participants to live independently at home (*id.* ¶¶ 253(h), 254(h)); and (iv) staffing levels and the reasons for any staffing shortages (*id.* ¶¶ 262(b), 263(b); 266(a), 267(a); 271(a), 272(b)). As to statements in categories (i)-(iii), Defendants would argue that these statements could not be taken as assurances that InnovAge would operate perfectly and are not false

simply because InnovAge encountered operational challenges, and that any issues were isolated. As to the staffing statements, Defendants would argue that they disclosed the fact of staffing shortages and that such shortages were the result of the COVID-19 pandemic and were well-known to investors. Further, Lead Plaintiffs faced challenges establishing materiality: in the motion to dismiss order, the Court noted that the materiality inquiry is an "intensely fact-specific" one on which Defendants may be able to prevail once the Court had a "full record." ECF No. 102 at 53–55.

Second, the Underwriter Defendants would raise the affirmative defense that they conducted reasonable due diligence in underwriting the IPO of InnovAge. In support, Lead Plaintiffs anticipate that Defendants would point to an extensive record developed through the underwriting process, including emails, earnings projections, and conversations with industry insiders.

Third, as to scienter, Defendants would argue that the nature and severity of the sanctions was unexpected, particularly in light of the complications of operating during COVID-19, Company's Motion to Dismiss at 40; that Hewitt's knowledge of complaints about staffing issues at certain centers was not sufficiently particularized, *id.* at 35; that the timing of Hewitt's resignation does not support a finding of scienter, *id.* at 38; and that the timing of Hewitt and Gutierrez's compensation awards did not support a motive to inflate InnovAge's stock price, *id.* at 39.

Fourth, as to loss causation and damages, the Parties would have contested whether and to what extent InnovAge's stock price drops were attributable to the alleged fraud versus other confounding factors (including statements dismissed from the case). This issue would have boiled down to a "battle-of-the-experts," which creates significant uncertainty and risks to recovery. *See, e.g.*, *Woodard v. Labrada*, No. EDCV 16-189 JGB (SPX), 2022 WL 18397633, at *5 (C.D. Cal. July 7, 2022).

Fifth, the potential risks to recoverability of an award at a later stage of litigation favor approval, in light of InnovAge's limited insurance and significant decline in InnovAge's stock price over the course of the litigation. *See Paulson v. McKowen*, No. 19-CV-02639-PAB-NYW, 2023 WL

-10-

2528783, at *6 (D. Colo. Mar. 15, 2023) ("The value of immediate recovery outweighs the mere possibility of future relief because further litigation would deplete the insurance fund that the class now will obtain recovery from"). During the Action, InnovAge's stock price fell from around $6.50 per share to as low as $2.75 per share, creating a risk that InnovAge, which indemnified the other Defendants, could face issues funding a settlement. *See Gottlieb v. Wiles*, 11 F.3d 1004 (10th Cir. 1993) (considering defendants' financial condition in approving settlement); *Lowery v. City of Albuquerque*, No. CIV 09-0457 JB/WDS, 2013 WL 1010384, at *30 (D.N.M. Feb. 27, 2013); *Lane v. Page*, 862 F. Supp. 2d 1182, 1247 (D.N.M. 2012).

Finally, even if Lead Plaintiffs ultimately prevailed at trial, they would likely face appeals—a process that could extend for years and might lead to a smaller recovery or no recovery at all.

The $27,000,000 Settlement is therefore an excellent result, especially relative to estimated damages, which Lead Plaintiffs' expert calculates to be no more than $290 million, $273 million of which is attributable to Lead Plaintiffs' Securities Act claims. The recovery of 9.3% of maximum recoverable damages and just under 10% of Lead Plaintiffs' Securities Act damages exceeds the typical recovery in securities class actions. *See, e.g., In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 691 (D. Colo. 2014) (approving $10 million settlement reflecting 1.3% of recoverable damages and noting this "is in line with the median ratio of settlement size to investor losses"); *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 762, 764 (2d Cir. 2020) (affirming approval of settlement of 6.1% of maximum potentially recoverable damages, and noting that 3.3% would have been in average range); *In re Home Point Cap. Inc. Sec. Litig.*, No. 21-11457, 2024 WL 3273275, at *7 (E.D. Mich. June 28, 2024) (noting 7.5% is the median percentage recovery for Securities Act-only cases between 2014 and 2023).

Lead Counsel's assessment of the reasonableness of the Settlement is informed by their extensive experience in securities class action litigation, including recovering billions of dollars for investors. *E.g.*, Judgment Approving Settlement, *In re Wells Fargo & Co. Sec. Litig.*, No. 1:20-cv-04494-

JLR-SN (S.D.N.Y. Sept. 9, 2023) (ECF No. 207) ($1 billion settlement); Law360, *Law360 Names Practice Groups of the Year* (Jan. 21, 2024), https://www.law360.com/articles/1781974/law360-names-practice-groups-of-the-year; ECF No. 141-3 (Cohen Milstein resume).

### C.    The Settlement Treats All Class Members Equitably

The Settlement treats all Class Members fairly and does not improperly grant preferential treatment to Lead Plaintiffs or any segment of the Class. At the final Settlement Hearing, Lead Plaintiffs will ask the Court to approve the proposed Plan of Allocation for the Net Settlement Fund (the "Plan"), which is set forth in the Notice (Exhibit A-1) and was developed by Lead Plaintiffs' damages expert, in consultation with Lead Counsel. The Plan is based on Lead Plaintiffs' allegations that Defendants' materially false and misleading statements and omissions caused artificial inflation in the price of InnovAge common stock during the Class Period, and that a series of partial corrective disclosures removed that inflation. The Plan calculates a "Recognized Loss Amount" for each purchase or acquisition of InnovAge common stock during the Class Period for which adequate documentation is provided by the Claimant. The calculation of Recognized Loss Amounts will depend on when the Claimant purchased and/or sold their shares, whether the Claimant held their shares through the statutory 90-day look-back period, *see* 15 U.S.C. § 78u-4(e), and the value of their shares when the Claimant purchased, sold, or held them. Under the Plan, the sum of a Claimant's Recognized Loss Amounts is the Claimant's "Recognized Claim";[6] the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims.

Lead Plaintiffs request that the Court approve the retention of Strategic Claims Services ("SCS") as the claims administrator for this case. SCS has successfully administered numerous

---

[6] This is subject to a limitation on total market gains and losses. If a Claimant has a market gain on all his, her, or its Class Period purchases, the Claimant's Recognized Claim is zero. If a Claimant has a market loss on all his, her, or its Class Period purchases, the Recognized Claim is set to the lower of his, her or its total Recognized Loss Amount and market loss.

complex securities class action settlements in this District and elsewhere. *See, e.g.*, *Sinaathurai v. Novavax, Inc.*, TDC-21-2910 (D. Md. May 24, 2024) ($47 million); *In re Omega Healthcare Investors, Inc. Sec. Litig.*, 17-cv-08983-NRB (S.D.N.Y. Apr. 25, 2023) ($30.75 million); *Bristol Cnty. Ret. Sys. v. Qurate Retail, Inc.*, 18-cv-02300-MEH (D. Colo. Sept. 23, 2019) ($5.75 million). SCS will calculate Claimants' Recognized Loss Amounts using the transaction information that Claimants provide to the Claims Administrator in their Postcard Notices (Exhibit A-4). Once SCS has processed all submitted claims, notified Claimants of deficiencies or ineligibility, processed responses, and made claim determinations, SCS will make distributions in the form of checks and wire transfers. SCS will conduct additional re-distributions with any remaining monies until it is no longer cost-effective to do so. Any remaining balance will be contributed to non-sectarian, non-profit, 501(c)(3) organizations, to be recommended by Lead Counsel and approved by the Court.

### D. The Settlement Does Not Excessively Compensate Lead Counsel

The proposed Settlement does not excessively compensate Lead Counsel. The Settlement does not contemplate any specific award to Lead Counsel, and Lead Counsel will be compensated solely out of the Settlement Fund with the Court's approval. Lead Counsel will seek a fee of no more than 20% of the Settlement Fund, which has been approved by all three Lead Plaintiffs and is well below percentages that courts regularly approve in securities class actions. *See, e.g.*, *DaVita*, 2021 WL 2981970, at *3 (courts in Tenth Circuit have repeatedly found 30% fee award reasonable); *Davis v. Crilly*, 292 F. Supp. 3d 1167, 1174 (D. Colo. 2018) (finding 37% fee is "well within the normal range"); *In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 997 F.3d 1077, 1095 (10th Cir. 2021) (33% award "well within the range" of reasonable). Lead Counsel will also seek payment of actual expenses for litigating the case, in an amount not to exceed $800,000, which may include an application for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiffs directly related to their representation of the Class. When considering reimbursement of reasonable

-13-

costs and expenses incurred by plaintiffs, courts consider: "(1) the actions the class representative took to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation." Order Granting Final Approval of Class Action Settlement at 14, ECF No. 118, *Davita, Inc.*, No. 17-00304 (D. Colo. Apr. 13, 2021) (Martínez, J.) (granting award for lead plaintiffs who had "devoted considerable time and effort" to supervising the litigation). Here, Lead Plaintiffs collected and produced documents, sat for depositions, and participated in a full-day mediation session. Accordingly, such an award would be appropriate here. *See, e.g.,* Order Awarding Attorneys' Fees and Litigation Expenses at 4, ECF No. 293, *Indiana Pub. Ret. Sys. v. Pluralsight*, No. 19-cv-00128 (D. Utah Feb. 5, 2025) (granting lead plaintiffs $15,750 and $23,870.66, respectively, for reasonable costs and expenses related to representation of class).

Lead Counsel's request for fees, plus actual expenses, will be fully briefed in a motion filed in accordance with the Final Approval Order (Exhibit B), and granting preliminary approval of the proposed Settlement does not represent a judgment as to the reasonableness of the fee or expense applications.

## IV. THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE CLASS

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval, SCS will mail the Postcard Notice to all reasonably identifiable Class Members and post the Notice on a website developed for the Settlement. SCS will utilize a list of the largest and most common U.S. banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners to facilitate the dissemination of notice. The Notice will advise Class Members of: (i) the pendency of the Action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's request for fees and expenses. The Notice will also provide specifics on the Settlement

Hearing and set forth procedures for objecting to the Settlement, the proposed Plan of Allocation, and/or the request for fees and expenses, and the procedure for requesting exclusion from the Class. In addition, the Summary Notice (Exhibit A-3) will be published in *Investor's Business Daily* and transmitted over the *Globe Newswire*.

The form and manner of providing notice to the Class satisfies due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7). The Notice contains all information required by Rule 23(c)(2)(B) and the PSLRA, and is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Suaverdez v. Circle K Stores, Inc.*, No. 20-CV-01035-RM-NYW, 2021 WL 4947238, at *12 (D. Colo. June 28, 2021) (citing *DeJulius v. N.E. Health Care Emps. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005)). The manner of providing notice, which includes individual notice by first-class mail to all Class Members who can be reasonably identified, supplemented by additional publication and internet notice, represents the best notice practicable under the circumstances. *See, e.g.*, *Suaverdez*, 2021 WL 4947238, at *12 ("It is beyond dispute that notice by first class mail ordinarily satisfies [R]ule 23(c)(2)'s requirement"); *Beasley v. TTEC Servs. Corp.*, No. 22-CV-00097-PAB-STV, 2023 WL 3323311, at *4 (D. Colo. May 9, 2023) (granting preliminary approval proposing direct and individualized postcards via first class mail).

## V.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Lead Plaintiffs respectfully propose the Settlement-related schedule as set forth in Appendix A. Per that schedule, Lead Plaintiffs request a Settlement Hearing be set for 95 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience.

## VI.    CONCLUSION

For the foregoing reasons, preliminary approval of the Settlement should be granted.

Dated: June 2, 2025

/s/ Molly Bowen

COHEN MILSTEIN SELLERS & TOLL PLLC
Julie G. Reiser
Molly Bowen
Jan E. Messerschmidt
Brendan R. Schneiderman
1100 New York Avenue, N.W., Suite 800
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
jreiser@cohenmilstein.com
mbowen@cohenmilstein.com
jmesserschmidt@cohenmilstein.com
bschneiderman@cohenmilstein.com

Carol V. Gilden
200 S. Wacker Street, Suite 2375
Chicago, IL 60603
Telephone: (312) 357-0370
Facsimile: (312) 357-0369
cgilden@cohenmilstein.com

Manuel J. Dominguez
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 515-1400
Facsimile: (561) 515-1401
jdominguez@cohenmilstein.com

*Lead Counsel and Class Counsel*

FAIRFIELD AND WOODS, P.C.
Cecil E. Morris
Adrian P. Castro
1801 California Street, Suite 2600
Denver, CO 80202
Telephone: (303) 830-2400
Facsimile: (303) 830-1033
cmorris@fwlaw.com
acastro@fwlaw.com

*Liaison Counsel and Liaison Class Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of June, 2025, I electronically filed a true and correct copy of the foregoing **UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND APPROVAL OF NOTICE TO THE CLASS, AND MEMORANDUM OF LAW IN SUPPORT** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties via the CM/ECF system.

*/s/ Molly Bowen*
Molly Bowen

**Appendix A**

**Proposed Schedule of Settlement Events**

| Event | Proposed Timing | Example Date[7] |
|---|---|---|
| Deadline for mailing the Postcard Notice to Class Members (which date shall be the "Notice Date") (Preliminary Approval Order ¶ 4(b)) | No later than 15 business days after entry of Preliminary Approval Order | July 9, 2025 |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶ 4(d)) | No later than 10 business days after the Notice Date | July 23, 2025 |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, Lead Counsel's request for attorneys' fees, plus actual expenses, which may include an application for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiffs (Preliminary Approval Order ¶ 24) | 35 calendar days before the date set for the Settlement Hearing | August 15, 2025 |
| Deadline for receipt of requests for exclusion or objections (Preliminary Approval Order ¶¶ 11, 14) | 21 calendar days before the date set for the Settlement Hearing | August 29, 2025 |
| Deadline for filing reply papers (Preliminary Approval Order ¶ 24) | 7 calendar days before the Settlement Hearing | September 12, 2025 |
| Settlement Hearing (Preliminary Approval Order ¶ 2) | 95 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter | September 19, 2025 |

[7] The example dates provided are based on the assumptions that the Court enters the Preliminary Approval Order on June 16, 2025, and schedules the Settlement Hearing for September 19, 2025.