# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: 21-cv-02770-WJM-SBP

EL PASO FIREMEN & POLICEMEN'S PENSION FUND, SAN ANTONIO FIRE & POLICE
PENSION FUND, AND INDIANA PUBLIC RETIREMENT SYSTEM, individually and on
behalf of all others similarly situated,

      Plaintiffs,

v.

INNOVAGE HOLDING CORP.,
MAUREEN HEWITT,
BARBARA GUTIERREZ,
JOHN ELLIS BUSH,
ANDREW CAVANNA,
CAROLINE DECHERT,
EDWARD KENNEDY, JR.,
PAVITHRA MAHESH,
THOMAS SCULLY,
MARILYN TAVENNER,
SEAN TRAYNOR,
RICHARD ZORETIC,
WCAS MANAGEMENT CORPORATION,
WCAS MANAGEMENT, L.P.,
WCAS MANAGEMENT, LLC,
APAX PARTNERS US LLC,
TCO GROUP HOLDINGS, L.P.,
J.P. MORGAN SECURITIES LLC,
BARCLAYS CAPITAL INC.,
GOLDMAN SACHS & CO. LLC,
CITIGROUP GLOBAL MARKETS INC.,
ROBERT W. BAIRD & CO. INCORPORATED,
WILLIAM BLAIR & COMPANY, L.L.C.,
PIPER SANDLER & CO.,
CAPITAL ONE SECURITIES, INC.,
LOOP CAPITAL MARKETS LLC,
SIEBERT WILLIAMS SHANK & CO., LLC, and
ROBERTS & RYAN INVESTMENTS, INC.,

      Defendants.

---

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement, dated as of June 2, 2025 (the "Stipulation") is entered into between (a) Lead Plaintiffs El Paso Firemen & Policemen's Pension Fund ("El Paso"), San Antonio Fire & Police Pension Fund ("San Antonio"), and Indiana Public Retirement System ("Indiana") on behalf of themselves and the other members of the Class (as defined in ¶ 1(g) below); and (b) Defendants InnovAge Holding Corp. ("InnovAge"); Maureen Hewitt and Barbara Gutierrez, John Ellis Bush, Andrew Cavanna, Caroline Dechert, Edward Kennedy, Jr., Pavithra Mahesh, Thomas Scully, Marilyn Tavenner, Sean Traynor, Richard Zoretic, WCAS Management Corporation, WCAS Management, L.P., WCAS Management LLC, Apax Partners US, LLC, TCO Group Holdings, L.P., J.P. Morgan Securities LLC, Barclays Capital, Inc., Goldman Sachs & Co. LLC, Citigroup Global Markets Inc., Robert W. Baird & Co. Incorporated, William Blair & Company, L.L.C., Piper Sandler & Co., Capital One Securities, Inc., Loop Capital Markets LLC, Siebert Williams Shank & Co., LLC, and Roberts & Ryan Investments, Inc. (collectively, the "Defendants"), by and through their respective undersigned counsel, and embodies the terms and conditions of the settlement of the above-captioned action (the "Action"). Subject to the approval of the Court and the terms and conditions expressly provided herein, this Stipulation is intended to fully, finally, and forever compromise, settle, release, resolve, and dismiss with prejudice all claims that were or could have been asserted in the Action and all Released Claims (as defined below).

WHEREAS:

A.      By Order dated April 11, 2022, the Honorable William J. Martínez appointed El Paso, San Antonio, and Indiana as Lead Plaintiffs for the Action, and approved Lead Plaintiffs' selection of Cohen Milstein Sellers & Toll PLLC as Lead Counsel and Fairfield and Woods, P.C. as Liaison Counsel.

B.      On June 21, 2022, Lead Plaintiffs filed and served their First Amended Class Action Complaint (the "First Amended Complaint") asserting claims against InnovAge and the Officer Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder; against the Officer Defendants, Welsh, Carson, Anderson & Stowe, and Apax Partners, L.P. under Section 20(a) of the Exchange Act; against InnovAge, the Individual Defendants, and the Underwriter Defendants under Section 11 of the Securities Act of 1933 (the "Securities Act"); against InnovAge and the Underwriter Defendants under Section 12(a)(2) of the Securities Act; against the Individual Defendants, Welsh, Carson, Anderson & Stowe, and Apax Partners, L.P.[1]  under Section 15 of the Securities Act. Among other things, the First Amended Complaint alleged that Defendants made materially false and misleading statements and omissions in connection with InnovAge's initial public offering (the "IPO") and that the price of InnovAge's common stock was artificially inflated as a result of Defendants' allegedly false and misleading statements and omissions and declined when the truth was revealed.

C.      On September 13, 2022, InnovAge, the Individual Defendants, Welsh, Carson, Anderson & Stowe, and Apax Partners, L.P. served their motion to dismiss the First Amended Complaint. That same day, the Underwriter Defendants served their separate motion to dismiss the First Amended Complaint. On November 14, 2022, Lead Plaintiffs served their memorandum of law

---

[1] Now known as and named in the operative Second Amended Complaint as Apax Partners US, LLC.

in opposition to these motions and, on December 14, 2022, Defendants served their reply papers. Lead Plaintiffs submitted supplemental authority in support of their motion on February 21, 2023, April 10, 2023, and September 15, 2023. On December 21, 2023, the Court issued its Order granting in part and denying in part InnovAge's, the Individual Defendants', Welsh, Carson, Anderson & Stowe's, and Apax Partners, L.P.'s motion to dismiss the First Amended Complaint. On January 18, 2024, the Court issued its Order granting in part and denying in part the Underwriter Defendants' motion to dismiss the First Amended Complaint.

     D.     On March 4, 2024, Defendants filed and served their Answers to the First Amended Complaint, after which extensive discovery occurred.

     E.     On May 8, 2024, Lead Plaintiffs filed and served their motion for class certification, accompanied by the expert report of Matthew D. Cain, PhD. On August 23, 2024, Defendants filed their brief in opposition to this motion, and Lead Plaintiffs filed their reply in support of their motion for class certification on October 9, 2024. On January 9, 2025, the Court issued its Amended Order granting Lead Plaintiffs' motion for class certification.

     F.     On September 17, 2024, Lead Plaintiffs filed and served their Second Amended Class Action Complaint (ECF No. 171, the "Second Amended Complaint") clarifying and correcting the identity of certain private equity entities, including the WCAS Defendants, and naming TCO Group Holdings, L.P. as a Defendant.

     G.     On October 25, 2024, the recently named WCAS Defendants served their motion to dismiss the Second Amended Complaint. TCO Group Holdings, L.P. filed and served its Answer to the Second Amended Complaint on November 15, 2024. On December 3, 2024, Lead Plaintiffs served their memorandum of law in opposition to the WCAS Defendants' motion to dismiss the Second Amended Complaint and, on December 24, 2024, the WCAS Defendants served their reply

papers. On March 31, 2025, the Court issued its Order denying the WCAS Defendants' motion to dismiss the Second Amended Complaint.

H.     On May 7, 2025, the Parties jointly notified the court of an agreement in principle to settle the Action.

I.     This Stipulation (together with the exhibits attached hereto) has been duly executed by the undersigned signatories on behalf of their respective clients and reflects the final and binding agreement between the Parties.

J.     Lead Plaintiffs and Lead Counsel have concluded that the terms and conditions of this Stipulation are fair, reasonable, and adequate to Lead Plaintiffs and the other members of the Class, and in their best interests. Based on Lead Plaintiffs' direct oversight of the prosecution of this matter and with the advice of their counsel, each of the Lead Plaintiffs has agreed to settle and release the Released Plaintiffs' Claims (as defined below) pursuant to the terms and provisions of this Stipulation, after considering, among other things: (a) the financial benefit that Lead Plaintiffs and the other members of the Class will receive under the proposed Settlement; and (b) the significant risks of continued litigation and trial.

K.     Defendants are entering into this Stipulation solely to avoid the cost, disruption, and uncertainty of further litigation. Each of the Defendants denies any wrongdoing, and this Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any of the Defendants with respect to any claim or allegation of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that Defendants have, or could have, asserted. Defendants expressly deny that Lead Plaintiffs have asserted any valid claims, and expressly deny any and all allegations of fault, liability, wrongdoing, or damages.  Similarly, this Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of Lead Plaintiffs of any infirmity in any of the claims asserted in the Action, or an admission or concession

that any of the Defendants' defenses to liability had any merit. Each of the Parties recognizes and acknowledges that the Action has been initiated, filed, and prosecuted by Lead Plaintiffs in good faith and defended by Defendants in good faith, and that the Action is being voluntarily settled with the advice of counsel.

NOW THEREFORE, without any admission or concession on the part of Lead Plaintiffs of any lack of merit to the Action whatsoever, and without any admission or concession on the part of Defendants of any liability or wrongdoing or any lack of merit to the defenses whatsoever, it is hereby STIPULATED AND AGREED, by and among Lead Plaintiffs (together and on behalf of all other members of the Class) and Defendants, by and through their respective undersigned attorneys and subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that, in consideration of the benefits flowing to the Parties from the Settlement, all Released Plaintiffs' Claims as against the Defendants' Releasees and all Released Defendants' Claims as against the Plaintiffs' Releasees shall be fully, finally, and forever compromised, settled, released, discharged and dismissed with prejudice, upon and subject to the terms and conditions set forth below.

## DEFINITIONS

1.    As used in this Stipulation and any exhibits attached hereto and made a part hereof, the following capitalized terms shall have the following meanings:

(a)    "Action" means the securities class action captioned *El Paso Firemen & Policemen's Pension Fund v. InnovAge Holding Corp.*, No. 1:21-cv-2770-WJM-SBP (D. Colo.).

(b)    "Authorized Claimant" means a Class Member who submits a Claim to the Claims Administrator for payment from the Net Settlement Fund that is approved by the Court.

(c)    "Claim" means a paper claim submitted on a Proof of Claim Form or an electronic claim that is submitted to the Claims Administrator.

(d)    "Claim Form" or "Proof of Claim Form" means the form, substantially in the

form attached hereto as Exhibit A-2, that a Claimant must complete and submit should that Claimant seek to share in a distribution of the Net Settlement Fund.

(e) "Claimant" means a person or entity who submits a Claim to the Claims Administrator seeking to be eligible to share in the proceeds of the Net Settlement Fund.

(f) "Claims Administrator" means the firm retained by Lead Counsel, subject to approval of the Court, to provide all notices approved by the Court to potential Class Members and to administer the Settlement.

(g) "Class" means all persons or entities who: "(i) purchased or otherwise acquired the publicly traded common stock of InnovAge between May 11, 2021, and December 22, 2021, inclusive; and/or (ii) purchased or otherwise acquired publicly traded InnovAge common stock either in or traceable to InnovAge's March 4, 2021, IPO and were damaged thereby." ECF No. 140 at 2. Excluded from the Class are Defendants; the officers and directors of InnovAge at all relevant times and their Immediate Family Members, legal representatives, heirs, successors or assigns; Defendants' liability insurance carriers and any affiliates or subsidiaries thereof; and any entity in which Defendants or the Individual Defendants' Immediate Family Members have or had a controlling interest, *id.* at 2 n.2, provided, however, that any Investment Vehicle shall not be excluded from the Class. Any persons and entities who or which submit a valid request from exclusion from the Class in connection with a Notice shall also be excluded from the Class.

(h) "Class Distribution Order" means an order entered by the Court authorizing and directing that the Net Settlement Fund be distributed, in whole or in part, to Authorized Claimants.

(i) "Class Member" means each person and entity that is a member of the Class.

(j) "Class Period" means the period from March 4, 2021, through December 22, 2021, inclusive.

(k)  "Complaint" means the Second Amended Class Action Complaint filed on September 17, 2024.

(l)  "Court" means the United States District Court for the District of Colorado.

(m)  "Defendants' Counsel" means Sullivan & Cromwell LLP, Wilmer Cutler Pickering Hale and Dorr LLP, and Freshfields US LLP.

(n)  "Defendants' Releasees" means Defendants and any of their related parties, including, without limitation, any and all of their past, present, and future parents, subsidiaries, predecessors, successors, divisions, investment funds, joint ventures and general or limited partnerships, and each of their respective current or former officers, directors, trustees, partners, members, contractors, auditors, principals, agents, shareholders, equity holders, joint venturers, managers, managing directors, supervisors, consultants, servants, experts, auditors, financial advisors, indemnitors, receivers, managing agents, employees, attorneys, accountants, investment bankers, underwriters, insurers or reinsurers in their capacities as such, as well as each of the Individual Defendants' immediate family members, heirs, executors, personal or legal representatives, estates, beneficiaries, legatees, devisees, spouses, predecessors, successors, and assigns.

(o)  "Director Defendants" means John Ellis Bush, Andrew Cavanna, Caroline Dechert, Edward Kennedy, Jr., Pavithra Mahesh, Thomas Scully, Marilyn Tavenner, Sean Traynor and Richard Zoretic.

(p)  "Effective Date" with respect to the Settlement means the first date by which all of the events and conditions specified in ¶ 31 of this Stipulation have been met and have occurred or have been waived.

(q)  "Escrow Account" means an account maintained at The Huntington National Bank wherein the Settlement Amount shall be deposited and held in escrow under the control of Lead Counsel.

(r)  "Escrow Agent" means The Huntington Bank.

(s)  "Escrow Agreement" means the agreement between Lead Counsel and the Escrow Agent setting forth the terms under which the Escrow Agent shall maintain the Escrow Account.

(t)  "Final," with respect to the Judgment or any other court order, means the later of: (i) if no appeal is filed, the expiration date of the time provided for filing or noticing any appeal under the applicable Federal Rules of Civil Procedure and Appellate Procedure, *i.e.*, thirty (30) days after entry of the judgment or order; or (ii) if there is an appeal from the judgment or order, (a) the date of final dismissal of all such appeals, or the final dismissal of any proceeding on *certiorari* or otherwise, or (b) the date the judgment or order is finally affirmed on an appeal, the expiration of the time to file a petition for a writ of *certiorari* or other form of review, or the denial of a writ of *certiorari* or other form of review, and, if *certiorari* or other form of review is granted, the date of final affirmance following review pursuant to that grant.  However, any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to (i) attorneys' fees, costs or expenses, or (ii) the plan of allocation of Settlement proceeds (as submitted or subsequently modified), shall not in any way delay or preclude a judgment from becoming Final.

(u)  "Immediate Family Member(s)" means children, stepchildren, parents, stepparents, spouses, siblings, mothers-in-law, fathers-in-law, sons-in-law, daughters-in-law, brothers-in-law, sisters-in-law and any persons (other than a tenant or employee) sharing the household.

(v)  "Individual Defendants" means Maureen Hewitt, Barbara Gutierrez, John Ellis Bush, Andrew Cavanna, Caroline Dechert, Edward Kennedy, Jr., Pavithra Mahesh, Thomas Scully, Marilyn Tavenner, Sean Traynor, and Richard Zoretic.

(w)  "InnovAge's Counsel" means Sullivan & Cromwell LLP and Wilmer Cutler Pickering Hale and Dorr LLP.

(x)  "Investment Vehicle" means any investment company or pooled investment fund, including but not limited to, mutual fund families, exchange traded funds, fund of funds and hedge funds, in which Defendants, or any of them, have, has or may have a direct or indirect interest, or as to which a Defendant's affiliates may act as an investment advisor, but in which any Defendant alone or together with its, his or her respective affiliates is not a majority owner or does not hold a majority beneficial interest.

(y)  "Judgment" means a final order of judgment and dismissal, substantially in the form attached hereto as Exhibit B, to be entered by the Court approving the Settlement.

(z)  "Lead Counsel" means the law firm of Cohen Milstein Sellers & Toll PLLC.

(aa)  "Lead Plaintiffs" means El Paso Firemen & Policemen's Pension Fund, San Antonio Fire & Police Pension Fund, and Indiana Public Retirement System.

(bb)  "Litigation Expenses" means the reasonable costs and expenses incurred in connection with commencing, prosecuting, and settling the Action (which may include the costs and expenses of Lead Plaintiffs directly related to their representation of the Class), for which Lead Counsel intends to apply to the Court for payment or reimbursement from the Settlement Fund.

(cc)  "Net Settlement Fund" means the Settlement Fund less: (i) any Taxes; (ii) any Notice and Administration Costs; (iii) any Litigation Expenses awarded by the Court; (iv) any attorneys' fees awarded by the Court; and (v) any other costs or fees approved by the Court.

(dd)  "Notice" means the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses, substantially in the form attached hereto as Exhibit A-1, which is to be made available to Class Members on a webpage developed for the Settlement.

(ee)  "Notice and Administration Costs" means the costs, fees, and expenses that are incurred by the Claims Administrator and/or Lead Counsel in connection with: (i) providing

-10-

notices to the Class; and (ii) administering the Settlement, including but not limited to the Claims

process, as well as the costs, fees, and expenses incurred in connection with the Escrow Account.

(ff) "Officer Defendants" means Maureen Hewitt and Barbara Gutierrez

(gg) "Parties" means Defendants and Lead Plaintiffs, on behalf of themselves and

the Class.

(hh) "Plaintiffs' Counsel" means the law firm of Lead Counsel Cohen Milstein

Sellers & Toll PLLC and the law firm of Fairfield and Woods, P.C., liaison counsel for Lead Plaintiffs.

(ii) "Plaintiffs' Releasees" means Plaintiffs and all other Class members, in his, her,

or its capacity as a purchaser or acquirer of InnovAge common stock, together with their attorneys or

any of their related parties, including, without limitation, any and all of their past, present, and future

parents, subsidiaries, predecessors, successors, divisions, investment funds, joint ventures and general

or limited partnerships, and each of their respective current or former officers, directors, trustees,

partners, members, contractors, auditors, principals, agents, shareholders, equity holders, joint

venturers, managers, managing directors, supervisors, consultants, servants, experts, auditors,

accountants, financial advisors, indemnitors, receivers, managing agents, employees, attorneys,

investment bankers, underwriters, insurers or reinsurers in their capacities as such, immediate family

members, heirs, executors, personal or legal representatives, estates, beneficiaries, legatees, devisees,

spouses, predecessors, successors, and assigns.

(jj) "Plan of Allocation" means the proposed plan of allocation of the Net

Settlement Fund set forth in the Notice.

(kk) "Postcard Notice" means the postcard, substantially in the form attached

hereto as Exhibit A-4, which is to be mailed to potential Class Members to inform them of the

Settlement.

(ll) "Preliminary Approval Order" means the order, substantially in the form

attached hereto as Exhibit A, to be entered by the Court preliminarily approving the Settlement and directing that notice of the Settlement be provided to the Class.

(mm)    "PSLRA" means the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended.

(nn)    "Released Claims" means all Released Defendants' Claims and all Released Plaintiffs' Claims.

(oo)    "Released Defendants' Claims" means any and all claims, rights and causes of action of every nature and description, duties, obligations, demands, actions, debts, sums of money, suits, contracts, agreements, promises, judgments, matters, issues, losses, damages and liabilities, whether known or unknown, suspected or unsuspected, contingent or non-contingent, mature or not mature, accrued or unaccrued, liquidated or unliquidated, concealed or hidden, direct or indirect, or suspected or unsuspected, including any claims arising under federal or state statutory or common law or any other law, rule, or regulation, whether foreign or domestic, that have been asserted, could have been asserted, or could be asserted in the future in any forum against Plaintiffs' Releasees that concern, are based upon, arise out of, or relate in any way to the institution, prosecution, or settlement of the claims in the Action against Defendants. The Released Defendants' Claims do not cover, include, or release: (i) any claims relating to the enforcement of the Settlement; (ii) any claims between Defendants' Releasees and their respective insurers; or (iii) any claims arising from the March 3, 2021, Underwriting Agreement between InnovAge and the Underwriter Defendants, including InnovAge's indemnification obligations pursuant to that agreement.

(pp)    "Released Plaintiffs' Claims" means any and all claims, rights and causes of action of every nature and description, duties, obligations, demands, actions, debts, sums of money, suits, contracts, agreements, promises, judgments, matters, issues, losses, damages and liabilities, whether known or unknown, suspected or unsuspected, contingent or non-contingent, mature or not

mature, accrued or unaccrued, liquidated or unliquidated, concealed or hidden, direct or indirect, or suspected or unsuspected, including any claims arising under federal or state statutory or common law or any other law, rule, or regulation, whether foreign or domestic, that have been asserted, could have been asserted, or could be asserted in the future in any forum against Defendants' Releasees that: (a) arise out of, concern, are based upon, or relate in any way to the claims, allegations, transactions, facts, matters or occurrences, representations, or omissions asserted, involved, set forth, or referred to in the Second Amended Complaint or in any prior complaints in the Action, or which could have been alleged in the Action; and (b) arise out of, concern, are based upon, or relate in any way to the purchase, acquisition, sale, holding, or disposition of InnovAge securities during the Class Period.  The Released Plaintiffs' Claims do not cover, include, or release any claims relating to the enforcement of the Settlement. This release also does not cover the derivative claims asserted in *Brian Hall, derivatively on behalf of InnovAge Holding Corp. v. Hewitt et al.*, No. 2023-0527, filed in the Court of Chancery of the State of Delaware. The Settlement Agreement shall also include provisions confirming the applicability of 15 U.S.C. § 78u-4(f)(7) to the Settlement.

(qq)    "Releasee(s)" means each and any of the Defendants' Releasees and each and any of the Plaintiffs' Releasees.

(rr)    "Releases" means the releases set forth in ¶¶ 4-5 of this Stipulation.

(ss)    "Settlement" means the resolution of the Action against Defendants in accordance with the terms and conditions set forth in this Stipulation.

(tt)    "Settlement Amount" means the total amount of $27,000,000.00 in cash.

(uu)    "Settlement Fund" means the Settlement Amount plus any and all interest earned thereon.

(vv)    "Settlement Hearing" means the hearing set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

-13-

(ww)   "Summary Notice" means the Summary Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses, substantially in the form attached hereto as Exhibit A-3, to be published as set forth in the Preliminary Approval Order.

(xx)   "Taxes" means: (i) all federal, state and/or local taxes of any kind (including any interest or penalties thereon) on any income earned by the Settlement Fund; and (ii) the reasonable expenses and costs incurred by Lead Counsel in connection with determining the amount of, and paying, any taxes owed by the Settlement Fund (including, without limitation, expenses of tax attorneys and accountants).

(yy)   "Underwriter Defendants" means J.P. Morgan Securities LLC, Barclays Capital, Inc., Goldman Sachs & Co. LLC, Citigroup Global Markets Inc., Robert W. Baird & Co. Incorporated, William Blair & Company, L.L.C., Piper Sandler & Co., Capital One Securities, Inc., Loop Capital Markets LLC, Siebert Williams Shank & Co., LLC, and Roberts & Ryan Investments, Inc.

(zz)   "Unknown Claims" means any Released Plaintiffs' Claims which any Lead Plaintiff or any other Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, and any Released Defendants' Claims which any Defendant does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, in each case which, if known by him, her, or it, might have affected his, her, or its decision(s) with respect to this Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, Lead Plaintiffs and Defendants shall expressly waive, and each of the other Class Members shall be deemed to have waived, and by operation of the Judgment shall have expressly waived, to the fullest extent permitted by law, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or foreign law, or principle of

-14-

common law or foreign law, which is similar, comparable, or equivalent to California Civil Code §

1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Lead Plaintiffs and Defendants acknowledge that they may hereafter discover facts, legal theories, or

authorities in addition to or different from those which he, she, or it or their counsel now knows or

believes to be true with respect to the subject matter of the Released Claims, but, upon the Effective

Date of the Settlement, Lead Plaintiff and Defendants shall expressly settle and release, and each of

the other Class Members shall be deemed to have, and by operation of the Judgment shall have, settled

and released, any and all Released Claims without regard to the subsequent discovery or existence of

such different or additional facts, legal theories, or authorities.   Lead Plaintiffs and Defendants

acknowledge, and each of the other Class Members shall be deemed by operation of the Judgment to

have acknowledged, that the foregoing waiver was separately bargained for and a material element of

the Settlement.

(aaa)   "WCAS Defendants" means WCAS Management Corporation, WCAS

Management, L.P. and WCAS Management LLC.

## PRELIMINARY APPROVAL OF SETTLEMENT

2.      Within five (5) days of execution of this Stipulation, but in no event later than

a date that the Court should designate as a deadline for the submission of a motion for preliminary

approval of the Settlement, Lead Plaintiffs will move for preliminary approval of the Settlement,

authorization to provide notice of the Settlement to the Class, and the scheduling of a hearing for

consideration of final approval of the Settlement, which motion shall be unopposed by Defendants.

Concurrently with the motion for preliminary approval, Lead Plaintiffs shall apply to the Court for, and Defendants shall agree to, entry of the Preliminary Approval Order.

## **RELEASE OF CLAIMS**

3.      The obligations incurred pursuant to this Stipulation are in consideration of: (a) the full and final disposition of the Action as against Defendants; and (b) the Releases provided for herein.

4.      Pursuant to the Judgment, without further action by anyone, upon the Effective Date of the Settlement, Lead Plaintiffs and each of the other Class Members, on behalf of themselves, in his, her, or its capacity as a purchaser or acquirer of InnovAge common stock, together with their successors, assigns, executors, administrators, representatives, attorneys, and agents, in their capacities as such, and any other person or entity legally entitled to bring Released Plaintiffs' Claims on behalf of a Class Member, in that capacity, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Plaintiffs' Claim against Defendants and the other Defendants' Releasees, including any Unknown Claims, and shall forever be barred and enjoined from prosecuting any or all of the Released Plaintiffs' Claims against any of the Defendants' Releasees.

5.      Pursuant to the Judgment, without further action by anyone, upon the Effective Date of the Settlement, Defendants, on behalf of themselves and their successors, assigns, executors, administrators, representatives, attorneys, and agents, in their capacities as such, and any other person or entity legally entitled to bring Released Defendants' Claims on behalf of a Defendant, in that capacity, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Defendants' Claim against Lead Plaintiffs and the other Plaintiffs'

Releasees, including any Unknown Claims, and shall forever be barred and enjoined from prosecuting any or all of the Released Defendants' Claims against any of the Plaintiffs' Releasees. This release shall not apply to any person or entity that submits a request for exclusion from the Class that is accepted by the Court.

6.    Notwithstanding ¶¶ 4-5 above, nothing in the Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of this Stipulation or the Judgment.

## THE SETTLEMENT CONSIDERATION

7.    In consideration of the settlement of the Released Plaintiffs' Claims against Defendants and the other Defendants' Releasees, InnovAge, on behalf of all Defendants' Releasees, shall cause the Settlement Amount to be deposited into the Escrow Account by the later of: (a) twenty-one (21) business days after the date of entry by the Court of an order preliminarily approving the Settlement; or (b) twenty-one (21) business days after Defendants' Counsel's receipt from Lead Counsel of the information necessary to effectuate a transfer of funds to the Escrow Account, including wiring instructions to include the bank name and ABA routing number, address, account name and number, a signed W-9 reflecting a valid taxpayer identification number for the qualified settlement fund in which the Settlement Amount is to be deposited, a contact person, phone number for oral verification of the payment instructions, and oral verification of the payment instructions by the contact provided.  Defendants' sole monetary obligation under the Settlement shall be for InnovAge to pay or cause to be paid the Settlement Amount.  No other Defendant shall pay, or be liable to pay, any part of the Settlement Amount and no Defendant shall pay any other amounts.

## USE OF SETTLEMENT FUND

8.    The Settlement Fund shall be used to pay: (a) any Taxes; (b) any Notice and Administration Costs; (c) any Litigation Expenses awarded by the Court; (d) any attorneys' fees awarded by the Court; and (e) any other costs and fees approved by the Court. The balance remaining

in the Settlement Fund, that is, the Net Settlement Fund, shall be distributed to Authorized Claimants as provided in ¶¶ 17-29 below. The Settlement Fund shall be the sole source for covering any settlement costs, and Lead Plaintiffs, Lead Counsel, and Class Members shall have no recourse against Defendants' Releasees for any settlement costs.

9.      Except as provided herein or pursuant to orders of the Court, the Net Settlement Fund shall remain in the Escrow Account prior to the Effective Date. All funds held by the Escrow Agent shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned pursuant to the terms of this Stipulation and/or further order of the Court. The Escrow Agent shall invest any funds in the Escrow Account exclusively in United States Treasury Bills (or a mutual fund invested solely in such instruments) and shall collect and reinvest all interest accrued thereon, except that any residual cash balances up to the amount that is insured by the FDIC may be deposited in any account that is fully insured by the FDIC. In the event that the yield on United States Treasury Bills is negative, in lieu of purchasing such Treasury Bills, all or any portion of the funds held by the Escrow Agent may be deposited in any account that is fully insured by the FDIC or backed by the full faith and credit of the United States. Additionally, if short-term placement of the funds is necessary, all or any portion of the funds held by the Escrow Agent may be deposited in any account that is fully insured by the FDIC or backed by the full faith and credit of the United States. All risks related to the investment of the Settlement Fund shall be borne by the Settlement Fund.

10.      The Parties agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1 and that Lead Counsel, as administrators of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation §

1.468B-2(k)) for the Settlement Fund. Lead Counsel shall also be responsible for causing payment to be made from the Settlement Fund of any Taxes owed with respect to the Settlement Fund. The Defendants' Releasees shall not have any liability or responsibility for any such Taxes. Upon written request, InnovAge will provide to Lead Counsel the statement described in Treasury Regulation § 1.468B-3(e).  Lead Counsel, as administrators of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation back election," as described in Treasury Regulation § 1.468B-1(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.

11.    All Taxes shall be paid out of the Settlement Fund, and shall be timely paid, or caused to be paid, by Lead Counsel and without further order of the Court. Any tax returns prepared for the Settlement Fund (as well as the election set forth therein) shall be consistent with the previous paragraph and in all events shall reflect that all Taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein. Defendants' Releasees shall have no responsibility or liability for the acts or omissions of Lead Counsel or its agents with respect to the payment of Taxes, as described herein. The Settlement Fund shall indemnify and hold harmless all Releasees for any Taxes (including, without limitation, taxes payable by reason of any such indemnification). Defendants shall notify Lead Counsel if they receive any notice of any claim for Taxes.

12.    The Settlement is not a claims-made settlement. Upon the occurrence of the Effective Date, no Defendant, Defendants' Releasee, or any other person or entity that paid any portion of the Settlement Amount shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever, including without limitation, the number of Claims

submitted, the collective amount of Recognized Claims of Authorized Claimants (as defined in the Plan of Allocation set forth in the Notice), the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund.

13.    Following entry of the Preliminary Approval Order, Lead Counsel may pay from the Settlement Fund, without further approval from Defendants or further order of the Court, all Notice and Administration Costs actually incurred and paid or payable. Such costs and expenses shall include, without limitation, the actual costs of printing and mailing the Postcard Notice, emailing notice, publishing the Summary Notice, reimbursements to nominee owners for forwarding the Postcard Notice to their beneficial owners, the administrative expenses actually incurred and fees reasonably charged by the Claims Administrator in connection with providing notice and administering the Settlement (including processing the submitted Claims), and the fees, if any, of the Escrow Agent. In the event that the Settlement is terminated pursuant to the terms of this Stipulation, all Notice and Administration Costs paid or incurred, including any related fees, shall not be returned or repaid to Defendants, any of the other Defendants' Releasees, or any other person or entity that paid any portion of the Settlement Amount. Except for InnovAge's obligation to cause the Settlement Amount to be deposited into the Escrow Account, Defendants shall not bear any cost or responsibility for notices to Class Members, administration of the Settlement, or the allocation of the Settlement Amount among Class members.

## ATTORNEYS' FEES AND LITIGATION EXPENSES

14.    Lead Counsel will apply to the Court for an award of attorneys' fees to Plaintiffs' Counsel to be paid solely from (and out of) the Settlement Fund. Lead Counsel will also apply to the Court for payment or reimbursement of Litigation Expenses, which may include a request for reimbursement of Lead Plaintiffs' costs and expenses directly related to their representation of the Class, to be paid solely from (and out of) the Settlement Fund. Lead Counsel's application for an

award of attorneys' fees and/or Litigation Expenses is not the subject of any agreement between Defendants and Lead Plaintiffs other than what is set forth in this Stipulation.

15.     Any attorneys' fees and Litigation Expenses that are awarded by the Court, plus accrued interest as earned by the Settlement Fund, shall be paid to Lead Counsel immediately upon award, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Plaintiffs' Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund, plus accrued interest at the same net rate as is earned by the Settlement Fund, if the Settlement is terminated pursuant to the terms of this Stipulation or if, as a result of any appeal or further proceedings on remand, or successful collateral attack, the award of attorneys' fees and/or Litigation Expenses is reduced or reversed and such order reducing or reversing the award has become Final. Plaintiffs' Counsel shall make the appropriate refund or repayment in full no later than thirty (30) days after: (a) receiving from Defendants' Counsel notice of the termination of the Settlement; or (b) any order reducing or reversing the award of attorneys' fees and/or Litigation Expenses has become Final. An award of attorneys' fees and/or Litigation Expenses is not a necessary term of this Stipulation and is not a condition of the Settlement embodied herein. Neither Lead Plaintiffs nor Lead Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees and/or Litigation Expenses. Defendants will take no position on Plaintiffs' Counsel's request for attorneys' fees and expenses and reimbursement of any costs and expenses incurred by Plaintiffs in accordance with 15 U.S.C. § 78u-4(a)(4); Plaintiffs and Plaintiffs' Counsel will not seek any additional fees, costs, expenses, or other monetary sum from Defendants' Releasees or Defendants' Counsel.

16.     Lead Counsel shall allocate the attorneys' fees among Plaintiffs' Counsel in a manner which Lead Counsel, in good faith, believe reflects the contributions of such counsel to the

institution, prosecution, and settlement of the Action. Defendants' Releasees shall have no responsibility for or liability whatsoever with respect to the award or payment of attorneys' fees or Litigation Expenses associated with the pursuit of the Action by Plaintiffs, and, except as provided in ¶ 19, Defendants' Releasees shall have no responsibility to pay any amount in excess of the Settlement Amount. The attorneys' fees and Litigation Expenses that are awarded to Plaintiffs' Counsel shall be payable solely from the Escrow Account.

**NOTICE AND SETTLEMENT ADMINISTRATION**

17.     As part of the Preliminary Approval Order, Lead Counsel shall seek appointment of a Claims Administrator. The Claims Administrator shall administer the Settlement, including but not limited to the process of receiving, reviewing, and approving or denying Claims, under Lead Counsel's supervision and subject to the jurisdiction of the Court. None of the Defendants, nor any other Defendants' Releasees, shall have any involvement in or any responsibility, authority, or liability whatsoever for the selection of the Claims Administrator, the Plan of Allocation, the administration of the Settlement, the Claims process, or disbursement of the Net Settlement Fund, and shall have no liability whatsoever to any person or entity, including, but not limited to, Lead Plaintiffs, any other Class Members, or Lead Counsel in connection with the foregoing.

18.     In accordance with the terms of the Preliminary Approval Order to be entered by the Court, Lead Counsel shall cause the Claims Administrator to mail the Postcard Notice or email a link to the Notice and Claim Form hosted on the webpage to be developed for the Settlement to those members of the Class as may be identified through reasonable effort. Lead Counsel shall also cause the Claims Administrator to have the Summary Notice published in accordance with the terms of the Preliminary Approval Order to be entered by the Court.

19.     No later than ten (10) calendar days following the filing of this Stipulation with the Court, InnovAge shall serve proper notice as required under Section 1715(b) of the Class Action

Fairness Act, 28 U.S.C. § 1715, *et seq.* ("CAFA"). InnovAge shall be solely responsible for the costs

of those CAFA notices. At least seven (7) calendar days before the Settlement Hearing, or as otherwise

ordered by the Court, InnovAge shall cause to be served on Lead Counsel and filed with the Court

proof, by affidavit or declaration, regarding compliance with CAFA § 1715(b).

20.     The Claims Administrator shall receive Claims and determine first, whether

the Claim is a valid Claim, in whole or part, and second, each Authorized Claimant's *pro rata* share of

the Net Settlement Fund based upon each Authorized Claimant's Recognized Claim compared to the

total Recognized Claims of all Authorized Claimants (as set forth in the Plan of Allocation set forth

in the Notice or in such other plan of allocation as the Court approves).

21.     The Plan of Allocation proposed in the Notice is not a necessary term of the

Settlement or of this Stipulation and it is not a condition of the Settlement or of this Stipulation that

any particular plan of allocation be approved by the Court. Lead Plaintiffs and Lead Counsel may not

cancel or terminate the Settlement (or this Stipulation) based on the Court's or any appellate court's

ruling with respect to the Plan of Allocation or any other plan of allocation in this Action. Defendants

and the other Defendants' Releasees shall not object in any way to the Plan of Allocation or any other

plan of allocation in this Action. No Defendant, nor any other Defendants' Releasees, shall have any

involvement with or liability, obligation, or responsibility whatsoever for the application of the Court-

approved plan of allocation.

22.     Any Class Member who does not submit a valid Claim will not be entitled to

receive any distribution from the Net Settlement Fund, but will otherwise be bound by all of the terms

of this Stipulation and the Settlement, including the terms of the Judgment, to be entered in the Action

and the Releases provided for herein and therein, and will be permanently barred and enjoined from

bringing any action, claim, or other proceeding of any kind against the Defendants' Releasees with

respect to the Released Plaintiffs' Claims in the event that the Effective Date occurs with respect to

the Settlement.

23.    Lead Counsel shall be responsible for supervising the administration of the Settlement and the disbursement of the Net Settlement Fund subject to Court approval. No Defendant, or any other Defendants' Releasees, shall be permitted to review, contest, or object to any Claim, or any decision of the Claims Administrator or Lead Counsel with respect to accepting or rejecting any Claim for payment. Lead Counsel shall have the right, but not the obligation, to waive what it deems to be formal or technical defects in any Claims submitted in the interests of achieving substantial justice.

24.    For purposes of determining the extent, if any, to which a Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

(a)    Each Claimant shall be required to submit a Claim in paper form, substantially in the form attached hereto as Exhibit A-2, or in electronic form, in accordance with the instructions for the submission of such Claims, and supported by such documents as are designated therein, including proof of the Claimant's loss, or such other documents or proof as the Claims Administrator or Lead Counsel, in their discretion, may deem acceptable;

(b)    All Claims must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice. Any Class Member who fails to submit a Claim by such date shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (unless by order of the Court such Class Member's Claim is accepted), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment, and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim or other proceeding of any kind against any Defendants' Releasees with respect to any Released Plaintiffs' Claim.  Provided that it is mailed by the claim-submission deadline, a Claim Form shall be deemed to be submitted when postmarked, if

received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon. In all other cases, the Claim Form shall be deemed to have been submitted on the date when actually received by the Claims Administrator;

(c)     Each Claim shall be submitted to and reviewed by the Claims Administrator who shall determine in accordance with this Stipulation and the Plan of Allocation the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below as necessary;

(d)     Claims that do not meet the submission requirements may be rejected. Prior to rejecting a Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing to give the Claimant the chance to remedy any curable deficiencies in the Claim submitted. The Claims Administrator shall notify, in a timely fashion and in writing, all Claimants whose Claim the Claims Administrator proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose Claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of subparagraph (e) below; and

(e)     If any Claimant whose Claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within fourteen (14) days after the date of mailing of the notice required in subparagraph (d) above or a lesser time period if the Claim was untimely, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a Claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court.

25.     Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, including, but not limited to, the releases provided in the

Judgment, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided, however, that such investigation and discovery shall be limited to that Claimant's status as a Class Member and the validity and amount of the Claimant's Claim. No discovery shall be allowed on the merits of this Action or of the Settlement in connection with the processing of Claims.

26.    Lead Counsel will apply to the Court, on notice to Defendants' Counsel, for a Class Distribution Order: (a) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (b) approving payment of any administration fees and expenses associated with the administration of the Settlement from the Escrow Account; and (c) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account.

27.    Payment pursuant to the Class Distribution Order shall be final and conclusive against all Claimants.  All Class Members whose Claims are not approved by the Court for payment shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment to be entered in this Action and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action against any and all Defendants' Releasees with respect to any and all of the Released Plaintiffs' Claims.

28.    No person or entity shall have any claim against Lead Plaintiffs, Plaintiffs' Counsel, the Claims Administrator, or any other agent designated by Lead Counsel, or Defendants' Releasees and/or their respective counsel, arising from distributions made substantially in accordance with the Stipulation, the plan of allocation approved by the Court, or any order of the Court. Lead Plaintiffs and Defendants, and their respective counsel, and Lead Plaintiffs' damages expert and all other Releasees shall have no liability whatsoever for the investment or distribution of the Settlement Fund or the Net Settlement Fund, the plan of allocation, or the determination, administration,

calculation, or payment of any claim or nonperformance of the Claims Administrator, the payment or withholding of taxes (including interest and penalties) owed by the Settlement Fund, or any losses incurred in connection therewith.

29.     All proceedings with respect to the administration, processing and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court. All Class Members, other Claimants, and parties to this Settlement expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.

## TERMS OF THE JUDGMENT

30.     If the Settlement contemplated by this Stipulation is approved by the Court, Lead Counsel and Defendants' Counsel shall request that the Court enter a Judgment, substantially in the form attached hereto as Exhibit B.

## CONDITIONS OF SETTLEMENT AND EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION

31.     The Effective Date of the Settlement shall be deemed to occur on the occurrence or waiver of all of the following events:

(a)   the Court has entered the Preliminary Approval Order;

(b)   the Settlement Amount has been deposited into the Escrow Account in accordance with the provisions of ¶ 7 above;

(c)   no Defendant has exercised its option to terminate the Settlement pursuant to the provisions of this Stipulation;

(d)   Lead Plaintiffs have not exercised their option to terminate the Settlement pursuant to the provisions of this Stipulation; and

(e)  the Court has approved the Settlement as described herein, following notice to the Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure, and entered the Judgment and the Judgment has become Final.

32.  Upon the occurrence or waiver of all of the events referenced in ¶ 31 above, any and all remaining interest or right of Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished and the Releases herein shall be effective.

33.  If (i) any Defendant exercises its right to terminate the Settlement as provided in this Stipulation; (ii) Lead Plaintiffs exercise their right to terminate the Settlement as provided in this Stipulation; (iii) the Court disapproves the Settlement; or (iv) the Effective Date as to the Settlement otherwise fails to occur, then:

(a)  The Settlement and the relevant portions of this Stipulation shall be canceled and terminated without prejudice and this Stipulation shall be null and void and shall have no further force or effect.

(b)  Lead Plaintiffs and Defendants shall revert to their respective positions as of April 3, 2025, and shall meet and confer regarding a new case schedule for the Action.

(c)  The terms and provisions of this Stipulation and the fact of this Settlement, with the exception of this ¶ 33 and ¶¶ 13, 15, and 56 herein, shall have no further force and effect with respect to the Parties and shall not be enforceable, or used in the Action or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc.*

(d)  Within five (5) business days after joint written notification of termination is sent by InnovAge's counsel and Lead Counsel to the Escrow Agent, the Settlement Fund (including accrued interest thereon, and change in value as a result of the investment of the Settlement Fund, and any funds received by Lead Counsel consistent with ¶ 15 above), less any Notice and

Administration Costs actually incurred, paid or payable, and less any Taxes paid, due or owing shall be refunded by the Escrow Agent to InnovAge (or such other persons or entities as InnovAge may direct) pursuant to written instructions from InnovAge's counsel.  In the event that the funds received by Lead Counsel consistent with ¶ 15 above have not been refunded to the Settlement Fund within the five (5) business days specified in this paragraph, those funds shall be refunded by the Escrow Agent to the Parties or entities that funded the Settlement Fund pursuant to written instructions from InnovAge's counsel immediately upon its deposit into the Escrow Account consistent with ¶ 15 above.

34.     It is further stipulated and agreed that each of the Defendants and Lead Plaintiffs shall have the right to terminate the Settlement and this Stipulation, by providing written notice of their election to do so ("Termination Notice") to the other Parties to this Stipulation within thirty (30) days of: (a) the Court's final refusal to enter the Preliminary Approval Order in any material respect; (b) the Court's final refusal to approve the Settlement or any material part thereof; (c) the Court's final refusal to enter the Judgment in any material respect as to the Settlement; or (d) the date upon which the Judgment is modified or reversed in any material respect by any United States Court of Appeals or the United States Supreme Court. However, any decision or proceeding, whether in this Court or any appellate court, with respect to an application for attorneys' fees or Litigation Expenses or with respect to any plan of allocation, shall not be considered material to the Settlement, shall not affect the finality of any Judgment, and shall not be grounds for termination of the Settlement.

35.     In addition to the grounds set forth in ¶ 34 above, Lead Plaintiffs shall also have the right to terminate the Settlement in the event that (i) the Settlement Amount has not been paid as provided for in ¶ 7 above; (ii) Lead Plaintiffs thereafter provide written notice of the election to terminate to Defendants' Counsel; and (iii) there is a failure to pay the Settlement Amount within fourteen (14) calendar days of such written notice.

36.     In addition to the grounds set forth in ¶ 34 above, InnovAge shall also have the right to terminate the Settlement in accordance with the requirements and procedures set forth in a separate Supplemental Agreement between the parties (the "Supplemental Agreement") if, prior to issuance of the Final Judgment, Opt-Outs in the aggregate purchased securities in an amount greater than the amount specified in the Supplemental Agreement.  The Parties undertake to keep the Supplemental Agreement confidential, and the Supplemental Agreement shall not be filed with or submitted to the Court unless and until a dispute among the Settling Parties arises concerning its interpretation or application, and then it shall be submitted to the Court *in camera* or filed under seal, unless otherwise ordered by the Court.

## NO ADMISSION OF WRONGDOING

37.     Neither this Stipulation (whether or not consummated), including the exhibits hereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of this Stipulation, nor  any proceedings taken pursuant to or in connection with this Stipulation, and/or approval of the Settlement (including any arguments proffered in connection therewith):

(a)    shall be offered against any of the Defendants' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendants' Releasees with respect to the truth of any fact alleged by Lead Plaintiffs or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendants' Releasees or in any way referred to for any other reason as against any of the Defendants' Releasees, in any arbitration proceeding or other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

(b)    shall be offered against any of the Plaintiffs' Releasees, as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Plaintiffs' Releasees that any of their claims are without merit, that any of the Defendants' Releasees had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault, or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Plaintiffs' Releasees, in any arbitration proceeding or other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; or

(c)    shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial;

*provided, however*, that if this Stipulation is approved by the Court, the Parties and the Releasees and their respective counsel may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement.

## **MISCELLANEOUS PROVISIONS**

38.    All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein. Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit attached hereto, the terms of the Stipulation shall prevail.

39.    InnovAge warrants that, as to the payments made or to be made on behalf of Defendants, at the time of entering into this Stipulation and at the time of such payment InnovAge, or to the best of its knowledge any persons or entities contributing to the payment of the Settlement Amount, is not insolvent, nor will the payment required to be made by or on behalf of Defendants render InnovAge insolvent, within the meaning of and/or for the purposes of the United States

Bankruptcy Code, including §§ 101 and 547 thereof. This representation is made by InnovAge and not by its counsel.

40.    In the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof by or on behalf of Defendants to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited into the Settlement Fund by others, then, at the election of Lead Plaintiffs, Lead Plaintiffs and Defendants shall jointly move the Court to vacate and set aside the Releases given and the Judgment entered in favor of Defendants and the other Releasees pursuant to this Stipulation, in which event the Releases and Judgment shall be null and void, and the Parties shall be restored to their respective positions in the litigation as provided in ¶ 33 above and any cash amounts in the Settlement Fund (less any Taxes paid, due or owing with respect to the Settlement Fund and less any Notice and Administration Costs actually incurred, paid or payable, shall be returned as provided in ¶ 33.

41.    The Parties intend this Stipulation and the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by Lead Plaintiffs and any other Class Members against the Defendants' Releasees with respect to the Released Plaintiffs' Claims. No Party shall assert any claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the institution, prosecution, defense, or settlement of this Action. The Parties agree that the amounts paid and the other terms of the Settlement were negotiated at arm's length and in good faith by the Parties, including through a mediation process supervised and conducted by Robert A. Meyer of JAMS, and reflect the Settlement that was reached voluntarily after extensive negotiations and consultation with experienced legal counsel, who were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses. In all events, Lead Plaintiffs and their counsel and Defendants and their counsel shall not make any accusations of wrongful or actionable conduct

by any Party concerning the prosecution, defense, and resolution of the Action, and shall not otherwise suggest that the Settlement constitutes an admission of any claim or defense alleged.

42.     The terms of the Settlement, as reflected in this Stipulation, may not be modified or amended, nor may any of its provisions be waived, except by a writing signed on behalf of both Lead Plaintiffs and Defendants (or their successors-in-interest).

43.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

44.     The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and Litigation Expenses to Plaintiffs' Counsel and enforcing the terms of this Stipulation, including the Plan of Allocation (or such other plan of allocation as may be approved by the Court) and the distribution of the Net Settlement Fund to Class Members.

45.     Any condition in this Stipulation may be waived by the Party entitled to enforce the condition in a writing signed by that Party or its counsel. The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation. Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation.

46.     This Stipulation and its exhibits constitute the entire agreement among Lead Plaintiffs and Defendants concerning the Settlement and this Stipulation and its exhibits.

47.     This Stipulation may be executed in one or more counterparts, including by signature transmitted via facsimile, or by a .pdf/.tif image of the signature transmitted via email. All executed counterparts and each of them shall be deemed to be one and the same instrument.

48.     This Stipulation shall be binding upon and inure to the benefit of the successors

and assigns of the Parties, including any and all Releasees and any corporation, partnership, or other entity into or with which any Party hereto may merge, consolidate, or reorganize.

49.     The construction, interpretation, operation, effect, and validity of this Stipulation and all documents necessary to effectuate it shall be governed by the internal laws of the State of Colorado without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

50.     Any action arising under or to enforce this Stipulation or any portion thereof, shall be commenced and maintained only in the Court.

51.     This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that this Stipulation is the result of arm's-length negotiations between the Parties and all Parties have contributed substantially and materially to the preparation of this Stipulation.

52.     All counsel and any other person executing this Stipulation and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

53.     Lead Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking Court approval of the Preliminary Approval Order and the Settlement, as embodied in this Stipulation, and to use best efforts to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.

54.     If any Party is required to give notice to another Party under this Stipulation, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery or facsimile or email transmission, with confirmation of receipt.  Notice shall be provided as

follows:

|                                    |                                          |
|------------------------------------|------------------------------------------|
| If to Lead Plaintiffs or Lead Counsel: | Cohen Milstein Sellers & Toll PLLC    |
|                                    | Attn: Julie Goldsmith Reiser             |
|                                    | 1100 New York Avenue, NW, Suite 800      |
|                                    | Washington, DC 20005                     |
|                                    | Tel.: (202) 408-4600                     |
|                                    | Fax: (202) 408-4699                      |
|                                    | Email: jreiser@cohenmilstein.com         |

If to InnovAge, the Officer Defendants, the Director Defendants, Apax Partners US, LLC, TCO Group Holdings, L.P., or the WCAS Defendants:

> Sullivan & Cromwell LLP
> Attn: Diane L. McGimsey
> 1888 Century Park East
> Suite 2100
> Los Angeles, CA 90067
> Tel.: (310) 712-6600
> Fax: (310) 712-8800
> Email: mcgimseyd@sullcrom.com

|                                    |                                          |
|------------------------------------|------------------------------------------|
| If to the Underwriter Defendants:  | Freshfields US LLP                       |
|                                    | Attn: Mary Eaton                         |
|                                    | 3 World Trade Center                     |
|                                    | 175 Greenwich Street, 51st Floor         |
|                                    | New York, NY 10007                       |
|                                    | Tel.: (212) 277-4000                     |
|                                    | Fax: (212) 277-4001                      |
|                                    | Email: mary.eaton@freshfields.com        |

55.     Except as otherwise provided herein, each Party shall bear its own costs.

56.     Whether or not the Stipulation is approved by the Court and whether or not the Stipulation is consummated, or the Effective Date occurs, the Parties and their counsel shall use their best efforts to keep all negotiations, discussions, acts performed, agreements, drafts, documents signed, and proceedings in connection with the Stipulation confidential, except where disclosure may be required by law or regulatory requirement. For avoidance of doubt, nothing in this provision or Stipulation is intended to or shall be construed to prohibit any person from communicating directly with SEC staff about possible violations of the securities laws or otherwise violate 17 C.F.R § 242.21f-17.

57.     All designations or agreements made and orders entered during the course of this Action relating to the confidentiality of documents or information shall survive this Settlement.

58.     No opinion or advice concerning the tax consequences of the proposed Settlement to individual Class Members is being given or will be given by the Parties or their counsel; nor is any representation or warranty in this regard made by virtue of this Stipulation. Each  Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Class Member.

**IN WITNESS WHEREOF,** the Parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys, as of June 2, 2025.

By: _[signature]_____

COHEN MILSTEIN SELLERS & TOLL PLLC
Julie G. Reiser
Molly Bowen
Jan E. Messerschmidt
Brendan R. Schneiderman
1100 New York Avenue, N.W., Suite 800
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
jreiser@cohenmilstein.com
mbowen@cohenmilstein.com
jmesserschmidt@cohenmilstein.com
bschneiderman@cohenmilstein.com

Carol V. Gilden
200 S. Wacker Drive, Suite 2375
Chicago, IL 60606
Telephone: (312) 629-3737
Facsimile: (312) 357-0369
cgilden@cohenmilstein.com

Manuel J. Dominguez
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 515-1400
Facsimile: (561) 515-1401
jdominguez@cohenmilstein.com

*Lead Counsel for the Lead Plaintiffs*

FAIRFIELD AND WOODS, P.C.
Cecil E. Morris
Adrian P. Castro
1801 California Street, Suite 2600
Denver, CO 80202
Telephone: (303) 830-2400
Facsimile: (303) 830-1033
cmorris@fwlaw.com
acastro@fwlaw.com

*Liaison Counsel for the Lead Plaintiffs*

By: _/s/_____
Karen P. Seymour
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
Telephone: (212) 558-4000
Facsimile: (212) 291-9307
seymourk@sullcrom.com

Diane L. McGimsey
SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 712-6600
Facsimile: (310) 712-8800
mcgimseyd@sullcrom.com

*Counsel for InnovAge Holding Corp., Maureen Hewitt, Barbara Gutierrez, John Ellis Bush, Andrew Cavanna, Caroline Dechert, Edward Kennedy, Jr., Pavithra Mahesh, Thomas Scully, Marilyn Tavenner, Sean Traynor, Richard Zoretic, Apax Partners US, LLC, TCO Group Holdings, L.P., WCAS Management Corporation, WCAS Management, L.P., and WCAS Management, LLC.*

Peter Kurtz
WILMER CUTLER PICKERING HALE AND
   DORR LLP
1225 17th Street, Suite 2600
Denver, CO 80202
Telephone: (720) 274-3135
Facsimile: (720) 274-3133
peter.kurtz@wilmerhale.com

*Counsel for InnovAge Holding Corp.*

By: _/s/_____
Mary Eaton
Nicholas A. Caselli
Abhinaya Swaminathan
FRESHFIELDS US LLP
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007

Telephone: (212) 277-4000
Facsimile: (212) 277-4001
mary.eaton@freshfields.com
nicholas.caselli@freshfields.com
abhinaya.swaminathan@freshfields.com

*Counsel for J.P. Morgan Securities LLC, Barclays
Capital Inc., Goldman Sachs & Co. LLC, Citigroup
Global Markets Inc., Robert W. Baird & Co.
Incorporated, William Blair & Company, L.L.C.,
Piper Sandler & Co., Capital One Securities, Inc.,
Loop Capital Markets LLC, Siebert Williams Shank
& Co., LLC, and Roberts & Ryan Investments, Inc.*

**IN WITNESS WHEREOF,** the Parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys, as of June 2, 2025.

By: /s/
COHEN MILSTEIN SELLERS & TOLL PLLC
Julie G. Reiser
Molly Bowen
Jan E. Messerschmidt
Brendan R. Schneiderman
1100 New York Avenue, N.W., Suite 800
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
jreiser@cohenmilstein.com
mbowen@cohenmilstein.com
jmesserschmidt@cohenmilstein.com
bschneiderman@cohenmilstein.com

Carol V. Gilden
200 S. Wacker Drive, Suite 2375
Chicago, IL 60606
Telephone: (312) 629-3737
Facsimile: (312) 357-0369
cgilden@cohenmilstein.com

Manuel J. Dominguez
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 515-1400
Facsimile: (561) 515-1401
jdominguez@cohenmilstein.com

*Lead Counsel for the Lead Plaintiffs*

FAIRFIELD AND WOODS, P.C.
Cecil E. Morris
Adrian P. Castro
1801 California Street, Suite 2600
Denver, CO 80202
Telephone: (303) 830-2400
Facsimile: (303) 830-1033
cmorris@fwlaw.com
acastro@fwlaw.com

*Liaison Counsel for the Lead Plaintiffs*

By:
Karen P. Seymour
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
Telephone: (212) 558-4000
Facsimile: (212) 291-9307
seymourk@sullcrom.com

Diane L. McGimsey
SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 712-6600
Facsimile: (310) 712-8800
mcgimseyd@sullcrom.com

*Counsel for InnovAge Holding Corp., Maureen Hewitt, Barbara Gutierrez, John Ellis Bush, Andrew Cavanna, Caroline Dechert, Edward Kennedy, Jr., Pavithra Mahesh, Thomas Scully, Marilyn Tavenner, Sean Traynor, Richard Zoretic, Apax Partners US, LLC, TCO Group Holdings, L.P., WCAS Management Corporation, WCAS Management, L.P., and WCAS Management, LLC.*

Peter Kurtz
WILMER CUTLER PICKERING HALE AND
    DORR LLP
1225 17th Street, Suite 2600
Denver, CO 80202
Telephone: (720) 274-3135
Facsimile: (720) 274-3133
peter.kurtz@wilmerhale.com

*Counsel for InnovAge Holding Corp.*

By: /s/
Mary Eaton
Nicholas A. Caselli
Abhinaya Swaminathan
FRESHFIELDS US LLP
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007

**IN WITNESS WHEREOF,** the Parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys, as of June 2, 2025.

By: _____

COHEN MILSTEIN SELLERS & TOLL PLLC
Julie G. Reiser
Molly Bowen
Jan E. Messerschmidt
Brendan R. Schneiderman
1100 New York Avenue, N.W., Suite 800
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
jreiser@cohenmilstein.com
mbowen@cohenmilstein.com
jmesserschmidt@cohenmilstein.com
bschneiderman@cohenmilstein.com

Carol V. Gilden
200 S. Wacker Drive, Suite 2375
Chicago, IL 60606
Telephone: (312) 629-3737
Facsimile: (312) 357-0369
cgilden@cohenmilstein.com

Manuel J. Dominguez
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 515-1400
Facsimile: (561) 515-1401
jdominguez@cohenmilstein.com

*Lead Counsel for the Lead Plaintiffs*

FAIRFIELD AND WOODS, P.C.
Cecil E. Morris
Adrian P. Castro
1801 California Street, Suite 2600
Denver, CO 80202
Telephone: (303) 830-2400
Facsimile: (303) 830-1033
cmorris@fwlaw.com
acastro@fwlaw.com

*Liaison Counsel for the Lead Plaintiffs*

By: _____

Karen P. Seymour
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
Telephone: (212) 558-4000
Facsimile: (212) 291-9307
seymourk@sullcrom.com

Diane L. McGimsey
SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 712-6600
Facsimile: (310) 712-8800
mcgimseyd@sullcrom.com

*Counsel for InnovAge Holding Corp., Maureen Hewitt, Barbara Gutierrez, John Ellis Bush, Andrew Cavanna, Caroline Dechert, Edward Kennedy, Jr., Pavithra Mahesh, Thomas Scully, Marilyn Tavenner, Sean Traynor, Richard Zoretic, Apax Partners US, LLC, TCO Group Holdings, L.P., WCAS Management Corporation, WCAS Management, L.P., and WCAS Management, LLC.*

Peter Kurtz
WILMER CUTLER PICKERING HALE AND DORR LLP
1225 17th Street, Suite 2600
Denver, CO 80202
Telephone: (720) 274-3135
Facsimile: (720) 274-3133
peter.kurtz@wilmerhale.com

*Counsel for InnovAge Holding Corp.*

By: _____

Mary Eaton
Nicholas A. Caselli
Abhinaya Swaminathan
FRESHFIELDS US LLP
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007

Telephone: (212) 277-4000
Facsimile: (212) 277-4001
mary.eaton@freshfields.com
nicholas.caselli@freshfields.com
abhinaya.swaminathan@freshfields.com

*Counsel for J.P. Morgan Securities LLC, Barclays
Capital Inc., Goldman Sachs & Co. LLC, Citigroup
Global Markets Inc., Robert W. Baird & Co.
Incorporated, William Blair & Company, L.L.C.,
Piper Sandler & Co., Capital One Securities, Inc.,
Loop Capital Markets LLC, Siebert Williams Shank
& Co., LLC, and Roberts & Ryan Investments, Inc.*