**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 21-cv-02770-WJM-SBP

EL PASO FIREMEN & POLICEMEN'S PENSION FUND, SAN ANTONIO FIRE & POLICE PENSION
FUND, and INDIANA PUBLIC RETIREMENT SYSTEM, individually and on behalf of all others
similarly situated,

       Plaintiffs,

v.

INNOVAGE HOLDING CORP.,
MAUREEN HEWITT,
BARBARA GUTIERREZ,
JOHN ELLIS BUSH,
ANDREW CAVANNA,
CAROLINE DECHERT,
EDWARD KENNEDY, JR.,
PAVITHRA MAHESH,
THOMAS SCULLY,
MARILYN TAVENNER,
SEAN TRAYNOR,
RICHARD ZORETIC,
WCAS MANAGEMENT CORPORATION,
WCAS MANAGEMENT, L.P.,
WCAS MANAGEMENT, LLC,
APAX PARTNERS US LLC,
TCO GROUP HOLDINGS, L.P.,
J.P. MORGAN SECURITIES LLC,
BARCLAYS CAPITAL INC.,
GOLDMAN SACHS & CO. LLC,
CITIGROUP GLOBAL MARKETS INC.,
ROBERT W. BAIRD & CO. INCORPORATED,
WILLIAM BLAIR & COMPANY LLC,
PIPER SANDLER & CO.,
CAPITAL ONE SECURITIES, INC.,
LOOP CAPITAL MARKETS LLC,
SIEBERT WILLIAMS SHANK & CO. LLC,
ROBERTS & RYAN INVESTMENTS, INC.

       Defendants.

---

**LEAD PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND
EXPENSES AND MEMORANDUM OF LAW IN SUPPORT**

---

**TABLE OF CONTENTS**

I.     INTRODUCTION ....................................................................................................................1

II.    ARGUMENT...........................................................................................................................4
       A.     Application of the *Johnson* Factors Makes Clear the Fee Request Is
              Reasonable..................................................................................................................4
              1.     Time and Labor Expended by Counsel and Preclusion of Other
                     Employment (Factors 1 and 4) ....................................................................5
              2.     Novelty and Difficulty of Questions Raised by the Litigation (Factor
                     2)...................................................................................................................6
              3.     Skill Required to Perform the Legal Service Properly and the
                     Experience, Reputation, and Ability of the Attorneys (Factors 3 and
                     9)...................................................................................................................7
              4.     Customary Fees and Awards in Similar Cases (Factors 5 & 12) ........................8
              5.     The Contingent Nature of the Fee (Factor 6) .....................................................9
              6.     Amount Involved and Results Obtained (Factor 8) ...........................................10
              7.     Undesirability of the Case (Factor 10) ................................................................11
              8.     The Positive Reaction to the Fee Request by Lead Plaintiffs and the
                     Class Supports its Reasonableness ......................................................11
       B.     Lead Counsel's Litigation Expenses Are Reasonable and Should Be Granted...........12
       C.     Lead Plaintiffs' Request for Reasonable Costs and Expenses Should Be
              Granted .....................................................................................................................12

III.   CONCLUSION .....................................................................................................................14

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Merit Energy Co.*,
No. 07-CV-00916, 2009 WL 3378526 (D. Colo. Oct. 20, 2009) ........................................................10

*Cook v. Rockwell Int'l Corp.*,
No. 90-CV-00181, 2017 WL 5076498 (D. Colo. Apr. 28, 2017) ..........................................................4

*In re Core Bond Fund*,
No. 09-CV-1186, 2011 WL 13223541 (D. Colo. Sep. 30, 2011)........................................................13

*In re Crocs, Inc. Sec. Litig.*,
306 F.R.D. 672 (D. Colo. 2014).......................................................................................................10

*In re Crocs, Inc. Sec. Litig.*,
No. 07-CV-02351, 2014 WL 4670886 (D. Colo. Sep. 18, 2014)....................................................*passim*

*Diaz v. Lost Dog Pizza, LLC*,
No. 17-CV-2228, 2019 WL 2189485 (D. Colo. May 21, 2019).......................................................5, 8

*Ferreira v. Funko, Inc.*,
No. 2:20-CV-02319, 2022 WL 22877154 (C.D. Cal. Dec. 13, 2022) ................................................13

*In re Genworth Fin. Sec. Litig.*,
No. 3:14-CV-682, 2016 WL 7187290, . (E.D. Va. Sep. 26, 2016) ....................................................11

*In re Home Point Cap. Inc. Sec. Litig.*,
No. 21-11457, 2024 WL 3273275 (E.D. Mich. June 28, 2024) ..........................................................13

*In re Illumina, Inc. Sec. Litig.*,
No. 3:16-CV-3044, 2021 WL 1017295 (S.D. Cal. Mar. 17, 2021)......................................................14

*Lanham v. Katz*,
No. 23-CV-00507, 2024 WL 1719454 (D. Colo. Apr. 22, 2024) ........................................................7

*Martinek v. Amtrust Financial Serv., Inc.*,
No. 19-CV-8030, 2022 WL 16960903 (S.D.N.Y. Nov. 16, 2022) .....................................................13

*McKeon v. Integrity Pizza LLC*,
No. 18-CV-0932, 2020 WL 6782238 (D. Colo. Nov. 18, 2020) ........................................................12

*In re Newbridge Networks Sec. Litig.*,
No. CIV. A. 94-1678, 1998 WL 765724 (D.D.C. Oct. 22, 1998) .......................................................7

*In re NU Skin Enterprises, Inc.*,
    No. 2:14-CV-00033, 2016 WL 6916486 (D. Utah Oct. 13, 2016) .......................................................7

*In re Oppenheimer Rochester Funds Grp. Sec. Litig.*,
    No. 09-MD-02063, 2014 WL 12768451 (D. Colo. July 31, 2014)......................................................3

*Or. Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*,
    No. 19-CV-0124, 2024 WL 98387 (D. Colo. Jan. 2024) ...............................................................*passim*

*Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*,
    No. 17-CV-0304, 2021 WL 1387110 (D. Colo. Apr. 13, 2021) ............................................... 8, 10, 11

*Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*,
    No. 17-CV-0304, 2021 WL 2981970 (D. Colo. July 15, 2021)..................................................... 3, 4, 9

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
    625 F. Supp. 2d 1143 (D. Colo. 2009) ......................................................................................10

*Ramos v. Banner Health*,
    No. 15-cv-2556, 2020 WL 6585849 ..........................................................................................9

*Shaw v. Interthinx, Inc.*,
    No. 13-CV-01229, 2015 WL 1867861 (D. Colo. Apr. 22, 2015) ........................................................10

*In re Spectranetics Corp. Sec. Litig.*,
    No. 08-CV-02048, 2011 WL 13238696 (D. Colo. Apr. 4, 2011) ........................................................11

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05-MD-1695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ........................................................11

*Voulgaris v. Array Biopharma, Inc.*,
    60 F.4th 1259 (10th Cir. 2023) ................................................................................................3

**Statutes**

15 U.S.C. § 78u-4(a)(4) ............................................................................................................12

Lead Plaintiffs, Lead Counsel, and Liaison Counsel respectfully move this Court pursuant to Fed. R. Civ. P. 23 for: (i) an award of attorneys' fees in the amount of 20% of the Settlement Fund; (ii) reimbursement of $339,100.07 in litigation expenses; and (iii) reimbursements of $15,000 for each of the three Lead Plaintiffs, as authorized by the PSLRA.[1] In light of the outstanding $27 million recovery for the Class, and because each of these requests is consistent with awards in this District, the motion should be granted.

## I.    **INTRODUCTION**

Following three years of vigorous litigation, Lead Counsel, on behalf of Lead Plaintiffs and the successfully certified Class, secured a $27 million cash recovery, which will immediately compensate InnovAge's shareholders for losses attributable to the alleged fraud. The Settlement represents an excellent result for the Class because it includes contributions from Defendants as well as their insurance carriers, and was achieved at a time when InnovAge's stock price was at an all-time low, such that any opportunity for a meaningful future recovery was highly uncertain. Drawing on its significant experience with complex securities class actions, Lead Counsel achieved this result through zealous prosecution in this complex case and the active oversight and deep involvement of three sophisticated institutional investor Lead Plaintiffs.

As courts around the country have recognized, prosecution of securities class actions is inherently complex and, accordingly, requires vigorous litigation and the input of significant time and resources, and is risky to plaintiffs and their attorneys. This Action was no exception. Lead Counsel

---

[1] Unless otherwise indicated, all capitalized terms have the meanings set forth in the Stipulation (ECF No. 199-1) and/or the Declaration of Molly Bowen in Support of (I) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Plaintiffs' Motion for Award of Attorneys' Fees and Expenses (ECF No. 203, the "Bowen Declaration" or "Bowen Decl."), and citations to "¶" or "Ex." are to paragraphs in, and exhibits to, the Bowen Declaration. Unless otherwise stated, all citations and internal quotations are omitted, and all emphasis is added. Pursuant to D.C.COLO.LCivR 7.1(a), Lead Counsel has conferred with Defendants, and Defendants take no position on the relief requested herein.

zealously litigated the case, starting with an exhaustive investigation culminating in a highly detailed 179-page amended complaint that included accounts from six confidential witnesses; overcoming three motions to dismiss; conducting intensive fact, expert, and third-party discovery, including multiple depositions; and successfully obtaining certification of the Class. The Settlement was finally reached as a product of arm's-length mediation and negotiation, which included a full-day mediation session before a sophisticated JAMS mediator, informed by detailed mediation statements and dozens of exhibits, followed by months of continued dialogue and advancements in the litigation before reaching the Settlement.

The case had real risk for Lead Plaintiffs and Lead Counsel. It involved 28 defendants, claims under both the Securities Act and the Exchange Act, factual questions regarding a complex and highly regulated industry, and novel legal issues related to private equity firms as alleged control persons. In light of that complexity, success was by no means a foregone conclusion. For example, while the Court sustained alleged misstatements as to both Lead Plaintiffs' Exchange Act and Securities Act claims, it also indicated that those statements might be vulnerable to later attack with the benefit of a full factual record, and Defendants had credible arguments that could have dramatically reduced or negated entirely the Class's recovery. Further, continued litigation would have been uniquely complex and, thus, costly, in light of the 28 different Defendants—all or most of whom would have been deposed— and their unique affirmative defenses, including a due diligence defense the Underwriter Defendants pled in their Answer. The case also presented uniquely complicated factual and legal questions of control person liability as to the private equity firms, which would have required untangling the relationship between multiple management entities, holding companies, and wholly owned subsidiaries. In the face of those challenges and risks—as well as concerns about Defendants' ability to pay a judgment at a later stage of litigation—Lead Counsel attained the proposed highly favorable Settlement for the Class.

Lead Plaintiffs seek a fee award of 20% of the Settlement for counsel. That request is well within fee awards in this District, in the Tenth Circuit, and around the country in securities class actions. *See, e.g.*, *Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*, No. 17-CV-0304-WJM-NRN, 2021 WL 2981970, at *1 (D. Colo. July 15, 2021) (award of 30% fee on $135 million settlement); *In re Crocs, Inc. Sec. Litig.*, No. 07-CV-02351, 2014 WL 4670886, at *3 (D. Colo. Sep. 18, 2014) ("Courts in the Tenth Circuit have noted that the typical fee award in complex cases is around one third of the common fund."); *In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, No. 09-MD-02063, 2014 WL 12768451, at *2 (D. Colo. July 31, 2014) (30% fee award in $89.5 million recovery). Further, the lodestar "cross-check" methodology further supports the reasonableness of the proposed fee award, as the requested fee equates to a lodestar "multiplier" of just 0.772, well below multipliers approved in this jurisdiction. *See, e.g.*, *Or. Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*, No. 19-CV-0124-WJM-SKC, 2024 WL 98387, at *7 (D. Colo. Jan. 9, 2024) (Martínez, J.) (granting award of 30% of $27 million settlement and noting "it is common in this District to approve contingency fees resulting in fee awards that are multiples of the lodestar amount."); *Voulgaris v. Array Biopharma, Inc.*, 60 F.4th 1259, 1266 (10th Cir. 2023) (in securities class action, finding that a multiple of 2.8 was consistent with typical range in the Tenth Circuit).

Lead Plaintiffs—institutional investors with deep securities litigation experience who, as this Court has already found, actively supervised this Action as class representatives—support the fee request, and not a single objection to the fees and expense request has been filed, despite the soon-approaching November 5, 2025, deadline. The Class's overwhelming endorsement weighs heavily in support of the requested fee award. *See, e.g.*, *Maxar*, 2024 WL 98387, at *5 ("[T]he Court has considered and gives great weight to the fact that no class member has objected to any aspect of the settlement . . . ."); *DaVita*, 2021 WL 2981970, at *4 (noting "none of the class members objected to the requested attorneys' fees, which weighs in favor of the requested award."); *Crocs*, 2014 WL 4670886, at *5 (same).

Finally, counsel for the Class requests reimbursement of $339,100.07 for standard litigation expenses. That amount falls well below amounts this and other courts have approved in complex class action settlements. *See, e.g.*, *Maxar*, 2024 WL 98387, at *6, *9 (granting over $800,000 in expenses for case in discovery with class certified); *Davita*, 2021 WL 2981970 at *1 (awarding over $547,000 in expenses for case in discovery before class certification was fully briefed). And the request for $15,000 as reimbursements for reasonable costs and expenses, pursuant to the PSLRA, for each Lead Plaintiff also falls well within the range typically approved by courts in the Tenth Circuit, and is reasonable here in light of Lead Plaintiffs' dedication of time and resources and significant contributions to the Action and the Settlement. *See, e.g.*, Order Awarding Attorneys' Fees and Litig. Expenses, *Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*, No. 1:19-CV-00128 (D. Utah Feb. 5, 2025), ECF No. 293 (granting a lead plaintiff's reimbursement award of $23,870).

## II.    **ARGUMENT**

### A.    Application of the *Johnson* Factors Makes Clear the Fee Request Is Reasonable

Courts have long recognized the need to align the interests of class counsel and class members "such that counsel are both compensated for risk and rewarded for success, where, as here, the Class receives significant benefit." *Cook v. Rockwell Int'l Corp.*, No. 90-CV-00181, 2017 WL 5076498, at *1 (D. Colo. Apr. 28, 2017). "In common fund cases, the Tenth Circuit has 'recognized the propriety of awarding attorneys' fees . . . on a percentage of the fund, rather than lodestar, basis.'" *DaVita*, 2021 WL 2981970, at *1 (quoting *Uselton v. Com. Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993)). In determining whether a proposed percentage is reasonable, courts look to the *Johnson* factors:

> (1) The time and labor required by counsel; (2) the novelty and difficulty of the legal question presented; (3) the skill required to represent the class appropriately; (4) the preclusion of other employment by the attorneys due to the acceptance of this case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and

> ability of the attorneys; (10) the 'undesirability' of the case; (11) the
> nature and length of the professional relationship with the client; and
> (12) awards in similar cases.

*Diaz v. Lost Dog Pizza, LLC*, No. 17-CV-2228, 2019 WL 2189485, at *5 (D. Colo. May 21, 2019)

(Martínez, J.) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1979)). Each

applicable factor supports the fee request.[2]

### 1. Time and Labor Expended by Counsel and Preclusion of Other Employment (Factors 1 and 4)

Counsel has invested significant time and labor into this Action. The over 8,700 hours devoted

to litigating this matter began with an extensive investigation (including witness statements from six

former employees, five of which were specifically credited by the Court in its first motion to dismiss

order), which resulted in a highly detailed 179-page amended complaint that survived three motions

to dismiss. Lead Counsel reviewed over 600,000 pages of documents, the vast majority of which were

produced by Defendants and eight third parties; collected and produced over 80,106 pages in response

to Defendants' document requests; exchanged over sixty letters and held at least thirty meet-and-

confer calls with opposing counsel; subpoenaed or requested public records of fourteen third parties;

and conducted extensive class certification-related briefing and discovery, including engaging a market

efficiency and damages expert, defending Lead Plaintiffs' depositions, and participating in fact

depositions, ultimately resulting in certification of the Class. Finally, counsel engaged in extended

settlement negotiations which involved submission of a detailed mediation statement and exhibits, a

full-day formal mediation, and multiple subsequent presentations and negotiations that ultimately

culminated in the Settlement.

---

[2] Two factors—first, time limitations imposed by either the client or the circumstances and, second, the nature and length of the professional relationship with the client (*Johnson* factors 7 and 11)—are not relevant here and, thus, are not discussed. *See Crocs*, 2014 WL 4670886, at *2, n.5 (in a fee order in a securities class action, holding that "[r]arely are all of the *Johnson* factors applicable" usDC declining to consider time limitation or length of professional relationship factors).

Overall, Lead Counsel and Liaison Counsel have invested a total of over 8,784 hours—translating to nearly $7 million—in attorney and staff time over the past three years. Lead Counsel will continue to expend additional time and out-of-pocket expenses in connection with settlement administration and implementation. Moreover, as "common sense indicates," counsel's focus on this case necessarily precluded work on other matters. *Crocs*, 2014 WL 4670886, at *3.

Lead Counsel's investment of time here was necessary and reasonable to advance this Action far enough to adequately evaluate and press for the proposed Settlement. Accordingly, this consideration counsels in favor of granting the fee request.

### 2.    Novelty and Difficulty of Questions Raised by the Litigation (Factor 2)

As courts in this District have recognized, litigation in a securities class action is an inherently complex project, especially in light of the heightened pleading standards imposed by the PSLRA. *See, e.g.*, *Crocs*, 2014 WL 4670886, at *3. And the facts of this Action added further complexity because they required familiarization with complex federal and state regulations regarding administration of the PACE program, analyzing internal and external audits of InnovAge across multiple states and their respective regulatory agencies, and conducting discovery from potentially 28 defendants including InnovAge, underwriters, private equity firm-controllers, and numerous individuals including executives and directors of InnovAge. The difficulty of these and other questions presented in this litigation is "evidenced by the filings in this case," including a 179-page amended complaint and the Court's combined 98-page orders on the first iteration of Defendants' motions to dismiss and 18-page order on the WCAS Defendants' motion to dismiss. ECF Nos. 102; 108; 195.

These complex issues created significant risk. Indeed, at the pleading stage, while the Court allowed statements under both the Securities Act and the Exchange Act to proceed, it indicated that those same misstatements might be vulnerable to more fact-intensive challenges pertaining to materiality and corporate control. Lead Plaintiffs also faced challenges to loss causation and damages

6

that further threatened the viability and value of their claims. Specifically, Defendants had credible arguments that the drop in InnovAge's stock price was partly or wholly attributable to factors unrelated to Lead Plaintiffs' fraud allegations. Absent the Settlement, these disputes would have likely resulted in a battle-of-the-experts, a highly uncertain posture which favors settlement. *Maxar*, 2024 WL 98387, at *4 ("serious questions of fact and law" related to loss causation "put the outcome in doubt"); *In re Newbridge Networks Sec. Litig.*, No. CIV. A. 94-1678, 1998 WL 765724, at *2 (D.D.C. Oct. 22, 1998) (finding that damages added uncertainty to plaintiffs' case because "invariably would become a battle of expert opinion concerning whether the diminished stock price was traceable to disclosure of alleged misrepresentations or to extrinsic market forces."). Notably, while the parties first mediated on October 29, 2024, the case did not reach a successful resolution until many months later, after litigating and resolving the third motion to dismiss which was specific to the private equity defendants, receiving additional documentary discovery from Defendants which helped further clarify the risks of continued litigation, and noticing fact depositions that created risk for Defendants.

Lead Counsel's adept navigation of these obstacles fully supports the requested fee award. *See Lanham v. Katz*, No. 23-CV-00507, 2024 WL 1719454, at *5 (D. Colo. Apr. 22, 2024) (fees should "compensate for risk and to reflect the quality of the work performed"); *In re NU Skin Enters., Inc.*, No. 2:14-CV-00033, 2016 WL 6916486, at *2 (D. Utah Oct. 13, 2016) (noting the risks presented by "Defendants' defenses concerning the falsity of their statement, scienter, loss causation, and damages" weighed in favor of fee award).

### 3. Skill Required to Perform the Legal Service Properly and the Experience, Reputation, and Ability of the Attorneys (Factors 3 and 9)

The third and ninth *Johnson* factors relate and so are frequently considered together. *See Crocs*, 2014 WL 4670886, at *3. The skill required to prosecute this complex class action was substantial. Lead Counsel is highly experienced in prosecuting securities class actions and other complex litigation, and has recovered historic awards for investors, including recently securing a $1 billion settlement in

7

a securities fraud action, Judgment Approving Class Action Settlement, *In re Wells Fargo & Co. Securities Litigation*, No. 1:20-cv-04494 (S.D.N.Y. Sept. 9, 2023), ECF No. 207. In light of that work, Lead Counsel's Securities & Investor Protection Group was named a practice group of the year by Law360. *Law360 Names Practice Groups of the Year*, Law360 (Jan. 21, 2024), https://www.law360.com/articles/ 1781974/law360-names-practice-groups-of-the-year; *see* ¶¶ 123; Cohen Milstein Decl. at Ex. 3 (Cohen Milstein firm resume). Liaison Counsel is also well-regarded in the district and ably supported the litigation and its compliance with local rules and norms, as well as navigating state regulatory issues in discovery. *See* Fairfield Decl. at Ex. 3 (Fairfield firm resume).

Here, that experience was critical to prosecuting and successfully resolving this Action, including in the vigorous mediation efforts, described by mediator Robert A. Meyer as "of the highest caliber" in his endorsement of the fee request. *See* ¶ 124; Meyer Decl. ¶ 19. That Defendants were represented by two highly respected defense firms—Sullivan & Cromwell LLP and Freshfields US LLP—further underscores that Lead Counsel demonstrated the requisite skill to support the fee award. *E.g.*, *Crocs*, 2014 WL 4670886, at *3 (noting fact that "Defendants' counsel is equally skilled" favored approval of 30% fee award); *Maxar*, 2024 WL 98387, at *6 (same).

### 4.    Customary Fees and Awards in Similar Cases (Factors 5 & 12)

Factors 5 and 12 are appropriately considered together, *Crocs*, 2014 WL 4670886, at *3, and warrant approval here as Lead Plaintiffs' 20% fee request falls well *below* the customary award in this and other Districts in the Tenth Circuit. Rather, "[c]ourts in the Tenth Circuit have noted that the typical fee award in complex cases is around **one third of the common fund**." *Id.* (emphasis added) (collecting cases); *see also Maxar*, 2024 WL 98387, at *7 (same); *Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*, No. 17-CV-0304, 2021 WL 1387110, at *3 (D. Colo. Apr. 13, 2021) (courts in Tenth Circuit have repeatedly found 30% fee award reasonable); *Diaz*, 2019 WL 2189485, at *5 ("33% fee award falls within the norm").

8

The request is also reasonable under a lodestar "cross-check" approach. Here, counsel spent 8,784.65 hours litigating this case at a total lodestar of $6,992,264.75, so the requested 20% fee equates to a multiplier of 0.772, which—at less than 1.0—is far lower than multipliers routinely approved by courts in this District and the Tenth Circuit. *See, e.g.*, *DaVita*, 2021 WL 2981970, at *5 (granting 30% in attorneys' fees which represented 2.75 times lodestar); *Crocs*, 2014 WL 4670886, at *4 (referencing District cases approving multipliers ranging from 2.5 to 4.6). Such a lodestar equates to a blended hourly rate of $795.96 per hour, which is in line with fees approved by this Court;[3] and which reflects firm rates that were approved as recently as last month.[4]

### 5.    The Contingent Nature of the Fee (Factor 6)

Contingency fee arrangements support approval of fee awards in securities class actions because they "require plaintiffs' counsel to expend substantial time and effort with no guarantee of success." *Crocs*, 2014 WL 4670886, at *5 ("The risk that Plaintiffs' Counsel would recover no compensation for their extensive efforts was 'not merely hypothetical,' especially where, as here, Plaintiffs were subject to the PSLRA's heightened pleading standard and faced the immediate possibility of an adverse decision by the Tenth Circuit."); *id.* at *4 (contingent fees "often weigh[] in favor of a greater fee because [s]uch a large investment of money [and time] place[s] incredible burdens upon law practices."). Here, Lead Counsel took on risky, complex, and protracted litigation requiring them to expend extensive funds and resources against formidable opposition with no guarantee of success, which heavily supports the requested fee. *See Maxar*, 2024 WL 98387, at *8 ("To date, Lead

---

[3] *See, e.g.,* *Maxar*, 2024 WL 98387, at *7 (approving fees with rates ranging from $450 to $1,250 for attorneys and noting counsel's low lodestar multiplier in doing so); *Ramos v. Banner Health*, No. 15-cv-2556, 2020 WL 6585849, at *5 (D. Colo. Nov. 10, 2020) (approving rates ranging from $490 to $1,060 per hour).

[4] *See* Order Granting Pl.'s Mot. for Attorney's Fees 37, *Pac. Steel Grp. v. Com. Metals Co.*, No. 20-cv-07683-HSG, (N.D. Cal. September 29, 2025), ECF No. 562 (finding Cohen Milstein's rates "reasonable and generally in line with prevailing hourly rates of comparable attorneys").

Counsel has received no compensation for its prosecution of this case, and the primary focus of this factor is to acknowledge this incongruence by permitting a higher recovery to compensate for the risk of recovering nothing."); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1143, 1153 (D. Colo. 2009) (financial risk counsel took in securities class action "carries significant weight and weighs in favor of a substantial fee award").

### 6.    Amount Involved and Results Obtained (Factor 8)

This District has repeatedly found that, when deciding whether to approve attorneys' fees, the "greatest weight should be given to the monetary results achieved for the benefits of the class." *Anderson v. Merit Energy Co.*, No. 07-CV-00916, 2009 WL 3378526, at *4 (D. Colo. Oct. 20, 2009); *see also Shaw v. Interthinx, Inc.*, No. 13-CV-01229, 2015 WL 1867861, at *7 (D. Colo. Apr. 22, 2015) ("[t]he degree of success" is "critical" in determining fees). The Settlement is comprised of proceeds from Defendants' insurers, plus a monetary contribution from Defendants, further underscoring the exceptional nature of the recovery. ¶ 131; *see DaVita*, 2021 WL 1387110, at *4 (noting recovery includes insurer and company contributions). And the Settlement was achieved at a time that InnovAge's stock price was trading at an all-time low of $2.60 per share (down from its offering price of $21 per share), creating serious concern about recoverability for the Class.

Beyond these contextual considerations, the Settlement represents a recovery that is more than double the median recovery in this Circuit of $13.4 million and is nearly double the median recovery, as a percent of likely recoverable damages, in similarly sized securities cases between 2015 and 2023 (*i.e.*, those alleging $250–$499 million in damages). *See* ¶ 130; *see also* Laarni T. Bulan and Eric Tam, *Securities Class Action Settlements 2024 Review and Analysis* 20, Cornerstone Research (2025) at 4, https://www.cornerstone.com/wp-content/uploads/2025/03/Securities-Class-Action-Settlements-2024-Review-and-Analysis.pdf; *In re Crocs, Inc. Sec. Litig*, 306 F.R.D. 672, 691 n.20 (D. Colo. 2014).

Accordingly, the Settlement supports Lead Plaintiffs' request for fees.

10

### 7.    Undesirability of the Case (Factor 10)

Complex securities class actions require significant time and expense expended without any guarantee of success, and so "are often seen as undesirable." *In re Spectranetics Corp. Sec. Litig.*, No. 08-CV-02048, 2011 WL 13238696, at \*2 (D. Colo. Apr. 4, 2011); *see also Maxar*, 2024 WL 98387 (noting actions with upfront costs, paid on a contingency basis, are inherently undesirable). Accordingly, "public policy supports granting attorneys' fees that are sufficient to encourage plaintiffs' counsel to bring" these cases. *Crocs*, 2014 WL 4670886, at \*5. As discussed at length herein and in Lead Plaintiffs' papers submitted herewith, the risk of little or no compensation in this matter was "not merely hypothetical," *id.*, and so this factor supports the requested award.

### 8.    The Positive Reaction to the Fee Request by Lead Plaintiffs and the Class Supports its Reasonableness

As this Court has already observed, Lead Plaintiffs are sophisticated institutional investors who have actively supervised Lead Counsel and participated in this Action. *See* ECF 44 at 4 (finding Lead Plaintiffs "meet the typicality and adequacy requirements of Rule 23(a)"); ECF 186 at 10 (certifying class and noting that "each Lead Plaintiff has thus far capably demonstrated their understanding of this action by testifying as to the occurrence of key events . . . ; the cause of their alleged losses . . . ; and the causes and effects of Defendants' alleged conduct . . . ."). Indeed, they are "institutional investors of the type favored by Congress when passing the PSLRA and have adequately represented the interests of the settlement class by closely monitoring and participating in this litigation from the outset through resolution." *DaVita*, 2021 WL 1387110, at \*4. Accordingly, their endorsement of the fee request heavily favors its approval. Ex. B ¶¶ 1, 7; Ex. C ¶¶ 1, 7; *see also In re Veeco Instruments Inc. Sec. Litig.*, No. 05-MD-1695, 2007 WL 4115808, at \*8 (S.D.N.Y. Nov. 7, 2007) (noting that endorsement by a sophisticated institutional investor justifies a presumption of its reasonableness); *In re Genworth Fin. Sec. Litig.*, No. 3:14-CV-682, 2016 WL 7187290, at \*2. (E.D. Va. Sep. 26, 2016) (noting fees and expense requests were approved by lead plaintiffs).

11

In addition to Lead Plaintiffs' endorsement, the reaction from the Class has been uniformly positive. Where, as here, "none of the class members objected to the requested attorneys' fees," that fact is significant and weighs in favor of the requested award. *Crocs*, 2014 WL 4670886, at *5; *see also McKeon v. Integrity Pizza LLC*, No. 18-CV-0932, 2020 WL 6782238, at *2 (D. Colo. Nov. 18, 2020) (Martínez, J.) (same); *Maxar*, 2024 WL 98387, at *8 (same). Here, the Notice informed Class members of the anticipated fees and expense request and no member of the Class has objected or requested exclusion from the Class, further supporting grant of the fee requested.

### B. Lead Counsel's Litigation Expenses Are Reasonable and Should Be Granted

Counsel also seeks reimbursement of $339,100.07 for litigation expenses. Those expenses—to cover the costs of litigating such as experts, mediation, document hosting platform, and investigatory services—are the sort which courts in this District regularly grant reimbursement. *E.g.*, *Maxar*, 2024 WL 98387, at *8 (granting $825,853.33 in expenses for "expert fees, mediation expenses, discovery-related costs, and investigation expenses"); *DaVita*, 2021 WL 2981970, at *5 (granting $547,409.27 in expenses in securities class action). The Cohen Milstein and Fairfield declarations contain a full breakdown of the litigation expenses. *See* Cohen Milstein Decl. ¶ 8; Fairfield Decl. ¶ 9. Notably, the requested expenses are significantly less than the $800,000 amount set forth in the Notice, and no objections have been lodged thereto—further supporting the expense reimbursement request. ¶ 139.

### C. Lead Plaintiffs' Request for Reasonable Costs and Expenses Should Be Granted

The PSLRA authorizes courts to grant an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class." *See* 15 U.S.C. § 78u-4(a)(4). Pursuant to that authority, the three Lead Plaintiffs seek an award of $15,000 each, as reimbursement for their diligent efforts on behalf of the Class. As described more extensively in each Lead Plaintiff's

12

declaration, Lead Plaintiffs invested significant staff time and expense in the prosecution of this Action

to the direct benefit of the Class,[5] including by:

- Reviewing and executing filings to be appointed lead plaintiff, including a joint declaration with the other Lead Plaintiffs;
- Reviewing and advising on key filings throughout the case including the complaint, multiple rounds of motion to dismiss briefing, class certification submissions, and related orders;
- Conferring with counsel regarding Rule 26(a) initial disclosures and discovery;
- Gathering and producing documents, including working with in-house IT personnel and outside vendors, a particularly time-consuming task in this case due to extended negotiations between with the many defendants over search terms and an accelerated timeline to gather and produce documents;
- Preparing and sitting for a 30(b)(6) deposition, including reviewing key documents, speaking with relevant individuals in the office, meeting with counsel, and participating in the deposition, each of which lasted between 4.5 and 7.5 hours (and for San Antonio involved two deponents);
- Advising trustees and other stakeholders on the state of the litigation; and
- Participating in, consulting on, and ultimately approving settlement negotiations. ¶¶ 105–07 (citing Lead Plaintiff Decls.).

These efforts support the requested award of $15,000 for each Lead Plaintiff, as recognized

by courts nationwide. *See In re Core Bond Fund*, No. 09-CV-1186-JLK-KMT, 2011 WL 13223541, at *3

(D. Colo. Sep. 30, 2011) (awarding $54,000 to Lead Plaintiff in securities class action); Order Awarding

Attorneys' Fees and Litig. Expenses, *Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*, No. 1:19-cv-00128 (D. Utah

Feb. 5, 2025), ECF No. 293 (awarding $23,870 in securities class action); *see also In re Home Point Cap.

Inc. Sec. Litig.*, No. 21-11457, 2024 WL 3273275, at *7 (E.D. Mich. June 28, 2024) (awarding $15,000

in securities class action); *Ferreira v. Funko, Inc.*, No. 2:20-CV-02319, 2022 WL 22877154, at *12 (C.D.

Cal. Dec. 13, 2022) (awarding $18,000 in securities class action); *Martinek v. Amtrust Fin. Servs., Inc.*,

No. 19-cv-8030(KPF), 2022 WL 16960903 at *1 (S.D.N.Y. Nov. 16, 2022) (awarding $15,000 in

---

[5] This work was performed by professional staff at each Lead Plaintiff including the General Counsel of Indiana, the Executive Director and General Counsel of San Antonio, and the Executive Director/Chief Investment Officer of El Paso, alongside their investment, IT, and administrative staff as appropriate.

securities class action); *In re Illumina, Inc. Sec. Litig.,* No. 3:16-CV-3044, 2021 WL 1017295, at *8 (S.D. Cal. Mar. 17, 2021) (awarding $25,000 in securities class action).

## III.     **CONCLUSION**

For the reasons stated herein, Lead Plaintiffs respectfully request the motion for attorneys' fees and expenses be granted.

Dated: October 22, 2025                    Respectfully submitted,

*/s/ Molly J. Bowen*

COHEN MILSTEIN SELLERS & TOLL PLLC
Molly J. Bowen
Julie G. Reiser
Jan E. Messerschmidt
1100 New York Avenue, N.W.
Suite 800
Washington, D.C. 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699
jreiser@cohenmilstein.com
mbowen@cohenmilstein.com
jmesserschmidt@cohenmilstein.com

Carol V. Gilden
200 South Wacker Drive
Suite 2375
Chicago, IL 60606
Tel.: (312) 357-0370
Fax: (312) 357-0369
cgilden@cohenmilstein.com

Manuel J. Dominguez
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Tel.: (561) 515-1400
Fax.: (561) 515-1401
jdominguez@cohenmilstein.com

Brendan R. Schneiderman
88 Pine Street, 14th Floor
New York, NY 10005
Tel.: (212) 838-7797

14

Fax.: (212) 838-7745
bschneiderman@cohenmilstein.com

*Lead Counsel for Lead Plaintiffs*

FAIRFIELD AND WOODS, P.C.
Cecil E. Morris
Adrian P. Castro
1801 California Street, Suite 2600
Denver, CO 80202
Tel.: (303) 830-2400
Fax: (303) 830-1033
cmorris@fwlaw.com
acastro@fwlaw.com

*Liaison Counsel for Lead Plaintiffs*

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 22, 2025, I caused to be electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all registered participants.

<u><em>/s/Molly J. Bowen</em></u><br>Molly J. Bowen