# EXHIBIT C

Case No. 1:21-cv-02770-WJM-SBP     Document 203-3     filed 10/22/25     USDC Colorado
pg 1 of 10

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 21-cv-02770-WJM-SBP

EL PASO FIREMEN & POLICEMEN'S PENSION FUND, SAN ANTONIO FIRE & POLICE PENSION FUND,
and INDIANA PUBLIC RETIREMENT SYSTEM, individually and on behalf of all others similarly situated,

        Plaintiffs,

v.

INNOVAGE HOLDING CORP.,
MAUREEN HEWITT,
BARBARA GUTIERREZ,
JOHN ELLIS BUSH,
ANDREW CAVANNA,
CAROLINE DECHERT,
EDWARD KENNEDY, JR.,
PAVITHRA MAHESH,
THOMAS SCULLY,
MARILYN TAVENNER,
SEAN TRAYNOR,
RICHARD ZORETIC,
WCAS MANAGEMENT CORPORATION,
WCAS MANAGEMENT, L.P.,
WCAS MANAGEMENT, LLC,
APAX PARTNERS US LLC,
TCO GROUP HOLDINGS, L.P.,
J.P. MORGAN SECURITIES LLC,
BARCLAYS CAPITAL INC.,
GOLDMAN SACHS & CO. LLC,
CITIGROUP GLOBAL MARKETS INC.,
ROBERT W. BAIRD & CO. INCORPORATED,
WILLIAM BLAIR & COMPANY LLC,
PIPER SANDLER & CO.,
CAPITAL ONE SECURITIES, INC.,
LOOP CAPITAL MARKETS LLC,
SIEBERT WILLIAMS SHANK & CO. LLC,
ROBERTS & RYAN INVESTMENTS, INC.

        Defendants.

---

**DECLARATION OF JEFFREY M. GILL IN SUPPORT OF (I) LEAD PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN
OF ALLOCATION; AND (II) LEAD PLAINTIFFS' MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND EXPENSES**

---

I, Jeffrey M. Gill, declare under penalty of perjury as follows:

1.  I am the Chief Legal, Compliance, and Procurement Officer of Indiana Public Retirement System ("INPRS"), which, along with El Paso Firemen and Policemen's Pension Fund ("EPFPPF") and San Antonio Fire & Police Pension Fund ("SAFPPF"), are the Court-appointed Lead Plaintiffs in the above-captioned action (the "Action").[1] I have served at INPRS since 2022. In that capacity, and on behalf of INPRS, I submit this declaration in support of: (i) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (ii) Lead Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses.

2.  INPRS is a $50 billion pension fund operated for the benefit of public employees in the State of Indiana. INPRS serves the needs of approximately 542,793 members and retirees, representing more than 1,333 employers, including public universities, schools, municipalities, and state agencies. *See* ECF No. 6-5 ("Lead Plaintiff Joint Declaration") ¶ 5.

3.  INPRS is familiar with and takes seriously the obligations and fiduciary responsibilities a lead plaintiff owes to a class. That understanding is informed by, among other things, INPRS's prior experience as a lead plaintiff and representative party in shareholder class actions, as well as conversations with counsel. *See id.*

4.  I have personal knowledge of the matters set forth in this Declaration, and I could and would testify competently thereto.

**I.  INPRS's Involvement in and Oversight of the Action**

5.  One of my responsibilities at INPRS is supervising securities litigation brought by INPRS.

6.  INPRS suffered significant losses in InnovAge securities it purchased during the Class Period and decided to seek appointment as Lead Plaintiff in this Action, and to be represented by Lead Counsel.

---

[1] Unless otherwise stated, all capitalized terms herein shall have the same meanings as in the Stipulation and Agreement of Settlement, dated June 2, 2025 (ECF No. 199-2).

1

7. INPRS's performance of its responsibilities as a lead plaintiff and class representative, described in detail below, required regular communications between me, on behalf of INPRS, and Court-appointed Lead Counsel Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein"). Those efforts included discussing overall case strategy, major filings, and discovery requests such as document requests, disputes, and productions, as well as administrative matters like case scheduling. In addition, INPRS received regular status reports from Cohen Milstein on case developments and participated in regular discussions with attorneys from Cohen Milstein concerning the prosecution of the Action, the strengths of and risks to the claims, and settlement.

8. In particular, throughout the course of this Action, I, on behalf of INPRS, coordinated with Lead Counsel about, and participated in, the following case events:

   a. **Lead Plaintiff Appointment Process.** As part of the lead plaintiff appointment process, I reviewed INPRS's lead plaintiff application, communicated with Cohen Milstein and co-Lead Plaintiffs regarding the other Lead Plaintiffs' applications, attended a conference call with Cohen Milstein and the other Lead Plaintiffs regarding the responsibilities and obligations of lead plaintiffs and class representatives, and executed a joint declaration memorializing the same. That joint declaration conveyed Lead Plaintiffs' understanding of the requirements for serving as lead plaintiff under the PSLRA, our incentives to maximize the recovery for the Class, and why the Class would benefit from SAFPPF, EPFPPF, and INPRS's leadership. Lead Plaintiff Joint Declaration. As part of the appointment process, INPRS's Executive Director, Steven R. Russo, also submitted a certification asserting INPRS's willingness and eligibility to serve as a class representative in this matter, and documenting INPRS's transactions in InnovAge common stock.

   b. **Review of and Feedback on Significant Case Filings.** On behalf of INPRS, I regularly reviewed and provided feedback on drafts of the key documents filed in this Action. Those

documents include, among others, drafts of the amended complaint; Lead Plaintiffs' opposition to Defendants' three motions to dismiss; briefing supporting Lead Plaintiffs' motion for class certification; and the motions for preliminary and final approval of the proposed Settlement. In addition, I, on behalf of INPRS, alongside SAFPPF and EPFPPF, submitted a joint declaration in support of Lead Plaintiffs' motion for class certification, in which Lead Plaintiffs affirmed their diligent supervision and monitoring of this Action's progress. *See* ECF No. 141-2.

c. **Rule 26(a) Initial Disclosures and Discovery.** I, along with investment staff and other pension fund staff, conferred with Cohen Milstein regarding the requisite Rule 26(a) initial disclosures, which I reviewed before they were served on Defendants. I and other INPRS staff were also heavily involved in the document collection, review, and production process. I also personally searched for documents as part of the response effort to Defendants' requests. Inevitably, this undertaking raised follow-up questions and issues that I and other INPRS representatives helped address. All of this work required regular conversation with and receipt of regular updates from Cohen Milstein regarding the overall discovery efforts in the litigation. In total, INPRS produced 65,989 pages spanning 544 documents in this matter, with many hundreds more having to be collected and reviewed.

d. **Rule 30(b)(6) Deposition.** On August 13, 2024, my colleague, David Stelsel, III, Director of Public Equity and Absolute Return, was deposed in connection with Lead Plaintiffs' motion for class certification. The 30(b)(6) deposition notice included eleven topics, spanning from INPRS's policies and procedures as to securities litigation and the facts underlying the merits of this Action, including the statements that survived Defendants' motions to dismiss and the regulatory environment in which PACE operates, to INPRS's trading activity; investment personnel, policies and procedures; INPRS's relationship with RhumbLine

3

Advisers LP and Times Square Capital Management LLC, INPRS's investment managers; InnovAge's IPO; and INPRS's evaluation process of its investment portfolios. Mr. Stelsel spent significant time preparing for the deposition, including by reviewing the deposition notice, key pleadings, including Lead Plaintiffs' 179-page complaint, Defendants' motions to dismiss, Lead Plaintiffs' motion for class certification and accompanying briefing and exhibits, and other key documents such as INPRS's investment management agreements, applicable policies, and other documents that govern that engagement and INPRS's securities litigation policy. Mr. Stelsel also participated in multiple many-hours-long preparation meetings with Lead Counsel, both via teleconference and in-person in Indiana.

e. **Settlement Negotiations.** INPRS was an active participant in the settlement process in this Action. INPRS reviewed Lead Plaintiffs' mediation statement and corresponding exhibits, as well as InnovAge's mediation statement. In addition, I, on behalf of INPRS, joined representatives from EPFPPF and SAFPPF, in participating in the October 29, 2024, mediation session before mediator Robert A. Meyer. During that session, INPRS participated in conversations regarding negotiation strategy and what offers and counteroffers were in the best interest of the Class. After the mediation session, I conferred at length with Cohen Milstein over the subsequent months regarding the Parties' respective positions, the likelihood of success on the merits, and other considerations such as Defendants' ability to pay a settlement, should the litigation continue. Upon receiving the mediator's proposal, INPRS evaluated and approved the proposed settlement.

4

## II.  **INPRS Endorses the Settlement**

9.  Based on its extensive experience litigating securities class actions,2 combined with its knowledge and involvement with this Action and its familiarity with Lead Counsel, INPRS believes that the proposed Settlement is fair, reasonable and adequate to the Class. The $27 million recovery is highly favorable, particularly in light of the risks of continued litigation and collectability. It provides an immediate meaningful result for the Class.

10.  Among other risks, continued litigation might have resulted in a reduced recovery for the Class due to: (i) Defendants' colorable arguments as to falsity, materiality, scienter, and control, some of which the Court indicated a willingness to revisit once a full factual record had been developed; (ii) possible challenges to loss causation and damages, which would result in a highly uncertain battle-of-the-experts; and (iii) concerns regarding Defendants' ability to pay a larger settlement or judgment, in light of being underinsured and the low price at which InnovAge stock was trading at the time of settlement. These risks made real the possibility of no, or at least a severely reduced, recovery for the Class.

11.  In light of these concerns, the successful resolution of this Action required extensive efforts on the part of Lead Plaintiffs and Lead Counsel, particularly given the complexity of the legal and factual issues—given the dozens of Defendants in this matter and the intricate regulatory nature of the facts of this case.

12.  INPRS accordingly believes that this is a favorable recovery and supports approval of the Settlement.

## III.  **INPRS's Reimbursement of Reasonable Costs and Expenses**

13.  The PSLRA, 15 U.S.C. § 78u-4(a)(4), provides for an "award of reasonable costs and expenses

---

2 *See, e.g.*, Order Awarding Attorneys' Fees and Litig. Expenses, *Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*, No. 1:19-cv-00128 (D. Utah Feb. 5, 2025), ECF No. 293 ($20 million settlement with Cohen Milstein as lead counsel).

(including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." Under that provision, INPRS seeks reimbursement for the costs and expenses incurred due to its representation of the Class in the Action in the amount of $15,000.

14. As described above, INPRS submits that its significant contributions to the successful prosecution and resolution of this Action and the time INPRS's representatives devoted to pursuing claims on behalf of the Class, helped to achieve this settlement and justifies this request.

15. Importantly, the time that I, Mr. Stelsel, and other staff members of INPRS devoted to pursuing the Class's interests in this Action was time we otherwise would have devoted to the other important work of the fund. Accordingly, the time devoted to this Action represents a direct cost to INPRS.

**IV. <u>Approval of the Attorneys' Fee Request and Reimbursement of Litigation Expenses</u>**

16. Finally, INPRS supports Lead Counsel's request for an award of attorneys' fees in the amount of 20% of the Settlement Fund. INPRS has evaluated and authorized the fee request by considering the substantial recovery obtained for the Class in this Action.

17. INPRS concludes that the request is fair and reasonable in light of Lead Counsel's exceptional work performed on behalf of the Class. A 20% award is particularly appropriate here because of the reasons stated above and in more detail in the accompanying brief, including the highly complex nature of the litigation; the impediments to recovery, including Defendants' arguments as to liability and Defendants' possible inability to pay; that the request is 10% lower than is customary in this District and represents a lodestar multiplier of less than one; counsel's investment of time and resources; and that amount of the Settlement is nearly double the median in the Tenth Circuit.

18. INPRS further believes that the reimbursement of litigation expenses sought by counsel is reasonable because it seeks only reasonable reimbursement for costs and expenses necessary for the initiation, prosecution, and resolution of the claims in the Action.

6

## V. **Conclusion**

19. In light of the foregoing facts, INPRS respectfully submits that the Court should grant Lead Plaintiffs' Motion for Final Approval of the Settlement and the Plan of Allocation, approve Lead Plaintiffs' request to award INPRS a reimbursement of $15,000 for reasonable costs and expenses for its substantial work in connection with the prosecution of this Action, and grant Lead Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses.

7

Docusign Envelope ID: E3C9A77C-5E65-42BF-A66F-14E91B707B7C

I declare under penalty of perjury that the foregoing is true and correct. Executed this 21 day of October, 2025, at Indianapolis, IN.

Jeffrey M. Gill
Chief Legal, Compliance, and Procurement Officer

*On behalf of Indiana Public Retirement System*