**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 21-cv-02770-WJM-SKC

EL PASO FIREMEN & POLICEMEN'S PENSION FUND, SAN ANTONIO FIRE & POLICE
PENSION FUND, AND INDIANA PUBLIC RETIREMENT SYSTEM, individually and on
behalf of all others similarly situated,

      Plaintiffs,

v.

INNOVAGE HOLDING CORP.,
MAUREEN HEWITT,
BARBARA GUTIERREZ,
JOHN ELLIS BUSH,
ANDREW CAVANNA,
CAROLINE DECHERT,
EDWARD KENNEDY, JR.,
PAVITHRA MAHESH,
THOMAS SCULLY,
MARILYN TAVENNER,
SEAN TRAYNOR,
RICHARD ZORETIC,
WCAS MANAGEMENT CORPORATION,
WCAS MANAGEMENT, L.P.,
WCAS MANAGEMENT, LLC,
APAX PARTNERS US LLC,
TCO GROUP HOLDINGS, L.P.,
J.P. MORGAN SECURITIES LLC,
BARCLAYS CAPITAL INC.,
GOLDMAN SACHS & CO. LLC,
CITIGROUP GLOBAL MARKETS INC.,
ROBERT W. BAIRD & CO. INCORPORATED,
WILLIAM BLAIR & COMPANY, L.L.C.,
PIPER SANDLER & CO.,
CAPITAL ONE SECURITIES, INC.,
LOOP CAPITAL MARKETS LLC,
SIEBERT WILLIAMS SHANK & CO., LLC, and
ROBERTS & RYAN INVESTMENTS, INC.,

      Defendants.

---

**LEAD PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF DISTRIBUTION
OF NET SETTLEMENT FUND AND MEMORANDUM OF LAW IN SUPPORT**

Pursuant to the Parties' Stipulation and Agreement of Settlement dated June 2, 2025 (ECF No. 199-1, the "Stipulation"), Lead Plaintiffs hereby respectfully move this Court for an order: (i) approving the Court-appointed Claims Administrator Strategic Claims Services' ("SCS") administrative determinations concerning the acceptance and rejection of Claims submitted in connection with the Settlement of the Action; (ii) directing distribution of the Net Settlement Fund, after deduction of the payments requested herein, to Authorized Claimants; (iii) authorizing the destruction of Claim Forms and supporting documents at an appropriate time; (iv) releasing claims related to the administration process; and (v) granting such other and further relief as this Court deems appropriate.

I.    **BACKGROUND**

On June 2, 2025, the Parties entered into the Stipulation and Agreement of Settlement. *See* Stipulation. SCS, a firm specializing in the administration of class action settlements, was retained to supervise and administer the notice procedure, process the Claim Forms submitted, and to effectuate the distribution of the Net Settlement Fund to Authorized Claimants. The Court approved the selection of SCS in the Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice of Settlement dated June 17, 2025 (ECF No. 200, the "Preliminary Approval Order").

The Court held a Settlement Fairness Hearing on December 5, 2025, and issued its Amended Order Granting Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Awarding Attorney Fees and Expenses on December 17, 2025 (ECF No. 208).

In accordance with the Preliminary Approval Order, SCS mailed or e-mailed 2,464 letters to the Nominee Account Holders and Institutional Groups contained on SCS's master mailing list. Ex. 1 ("Bravata Declaration" or "Bravata Decl.") ¶ 3. SCS mailed 4,272 Postcard Notices to potential Class Members or nominees, sent 5,485 emails with the Notice and Claim Form link, and was notified by a nominee that it emailed 1,633 of its customers to notify them of this Settlement. *Id.* The Court-

1

approved Notice program reached via mail or email at least 11,107 potential Class Members, as adjusted for undeliverable Postcard Notices. *Id.* SCS also sent the Depository Trust Company a Notice and Claim Form for publication on the Legal Notice System on June 30, 2025. *Id.* ¶ 4. The Summary Notice was published once in the *Investor's Business Daily* and transmitted once over *Globe Newswire* on July 21, 2025. *Id.* ¶ 6.

SCS established a Settlement Website at www.strategicclaims.net/InnovAge/ on June 30, 2025. The website contains the current status, key dates and deadlines, the link to the online claim form, important documents, and the representative filers section. To date, the Settlement Website has had 2,569 page views by 1,060 unique users. *Id.* ¶ 5.

As set forth in the accompanying Bravata Declaration, in addition to providing notice, SCS has processed the Claim Forms and calculated Recognized Claim amounts consistent with the Court-approved Plan of Allocation. SCS is now prepared to distribute the Net Settlement Fund to Authorized Claimants in accordance with the Plan of Allocation.

## II.    CLAIMS ADMINISTRATION

### A.    Claims Processing

There have been 4,276 Claim Forms submitted in connection with this Settlement. *Id.* ¶ 7. Under the terms of the Settlement Agreement and the Preliminary Approval Order, all Settlement Class Members wishing to participate in the Settlement Fund were required to submit Claim Forms postmarked no later than November 5, 2025. *See* Bravata Decl. ¶ 16 and Ex. A.

All Claims have been fully processed in accordance with the Settlement Agreement and the Court-approved Plan of Allocation included in the Notice. This includes SCS carefully reviewing, analyzing, and processing all claims and responding to all Claimant inquiries regarding the action, the Settlement, and the procedures for completing the Claim Forms. SCS has prepared detailed reports

listing: (i) all properly documented and timely submitted claims (Ex. B-1); (ii) the two late but properly documented claims (Ex. B-2); and (iii) rejected Claims with the rejection reasons (Exs. D, E).

SCS has identified 2,411 properly documented valid claims representing Recognized Claims totaling $250,400,967.09. *Id.* ¶ 15(a); Ex. A. Of these, 2,409 were submitted timely, representing $250,330,069.43 in Recognized Claims, and two were submitted after the November 5, 2025, deadline but on or before December 1, 2025, representing $70,897.66 in Recognized Claims. *Id.*; Exs. B-1, B-2.

SCS initially identified six inadequately documented claims. SCS sent deficiency notices to each of these claimants, advising them of the nature of their deficiency and providing them an opportunity to cure, but they either did not respond to the deficiency notice or responded with insufficient documentation and were then also sent a notice setting forth the reason for their rejection. *See, e.g.*, Ex. C. To date, none of the six deficient claimants has objected to or contested this determination. *See* Bravata Decl. ¶ 15(b); Ex. D.

Additionally, SCS has identified 1,859 claims which it recommends for rejection in their entirety. Included in this category are: (i) claims with no Recognized Claims; (ii) claims filed for shares purchased outside of the Class Period; (iii) duplicate claims filed; (iv) claims filed for shares that were received or transferred into an account, but not purchased; (v) claims with shares that were sold short; (vi) fraudulent claims filed; (vii) a claim filed for securities other than InnovAge Holding Corp. publicly traded common stock; and (viii) a claim which was withdrawn by the filing entity. SCS has communicated with these 1,859 claimants and advised them of its determination. To date, none of these ineligible claimants has contested SCS's determination. Bravata Decl. at ¶ 15(c); Exs. E, F.

### B.     Quality Assurance

Throughout the administration process, SCS's personnel worked to verify that claims were processed properly by ensuring that (i) information was entered correctly into SCS's database, (ii)

deficiency and/or rejection reasons were accurately assigned, and (iii) deficiency and/or rejection notification letters were appropriately sent. After all claims were processed, deficiency and/or rejection letters were mailed, and all Claimants' responses to the deficiency and/or rejection letters were reviewed and processed, SCS personnel performed additional quality assurance reviews. The Bravata Declaration further details SCS's extensive efforts to ensure quality control. *See* Bravata Decl. ¶¶ 12-13. This included SCS review and comparison of the database against a "watch list" of known questionable filers that SCS has developed throughout its years of experience as a claims administrator. *Id.* ¶ 13. SCS's fraud protection procedures identified five potentially fraudulent claimants, who were sent ineligibility notices to which they did not respond.

### C.    Disputed Claims

To date, no Claimant has objected to or contested SCS's determination to reject their Claim. *See id.* ¶ 15(b)-(c).

### D.    Late Claims and Final Cut-off-Date

To ensure a timely and orderly process and prevent delay in the finalization of the claims administration process, SCS accepted and processed claims received after the initial deadline but before December 1, 2025; two claims were received after December 1, 2025, but before February 3, 2026. Relatedly, SCS accepted additional information received or submitted up to February 3, 2026; additional information has been received or submitted after that time for two claims. *See id.* ¶ 14.

The two late claims have been found to be otherwise eligible in whole and represent $70,897.66 in Recognized Claims. Lead Counsel and SCS believe no delay has resulted from the provisional acceptance of these late but otherwise eligible claims. *See* Order, *In re Crocs, Inc. Sec. Litig.*, No. 1:07-cv-02351, ECF No. 236 ¶ 1 (D. Colo. Mar. 5, 2018) (approving late but otherwise authorized claims); Order, *Peace Officers' Annuity and Benefit Fund of Ga. v. DaVita Inc.*, No. 17-cv-00304, ECF No. 129 (Martínez, J.) ¶ 4(a) (D. Colo. March 28, 2022) (same).

However, there must be a final cut-off date after which no more Claims may be accepted so that there may be an efficient and proportional distribution of the Net Settlement Fund. *See id.* ¶ 4(i) (approving a cutoff date); *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977) ("in the distribution of a large class action settlement fund, 'a cutoff date is essential and at some point the matter must be terminated'") (quoting *Reports of the Conference for District Court Judges,* 63 F.R.D. 231, 262 (1973)). Acceptance of additional Claims received during the finalization of the administration would necessarily require a delay in the distribution. *See* Bravata Decl. ¶ 14. Accordingly, it is respectfully requested that the Court enter an Order directing that no Claims received after December 1, 2025, be included in the distribution, and that any responses to deficiency and/or rejection notices received after February 3, 2026, be rejected as untimely.

## III.    <u>DISTRIBUTION OF NET SETTLEMENT FUND</u>

Lead Plaintiffs now respectfully move the Court for an order approving SCS's determinations concerning the acceptance and rejection of the Claims included in this motion and approving the proposed Distribution Plan set forth in the Bravata Declaration.

Under the proposed Distribution Plan, SCS will make an initial distribution of the Net Settlement Fund, after deducting all payments previously allowed and after deducting the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees (the "Initial Distribution"). SCS will first determine each Authorized Claimant's *pro rata* share of the total Net Settlement Fund based on the Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants. *See id.* ¶ 17(a).

In accordance with the Court-approved Plan of Allocation, SCS will eliminate from the Distribution any Authorized Claimant whose *pro rata* share calculates to less than $10.00, as these Claimants will not receive any payment from the Net Settlement Fund and will be so notified by SCS. *See id.* ¶ 17(b).

5

To encourage Authorized Claimants to deposit their checks promptly, Lead Plaintiffs propose that the distribution checks bear the notation, "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION 180 DAYS AFTER ISSUE DATE." *Id.* ¶ 17(c).

After SCS has made reasonable and diligent efforts to have Authorized Claimants deposit their Initial Distribution checks, but not earlier than nine (9) months after the Initial Distribution, upon a determination that it is cost-effective to do so, SCS will conduct a re-distribution of the remaining funds, after payment of any unpaid fees and expenses incurred in administering the Settlement, including for such re-distribution, to Authorized Claimants who have cashed their initial distributions and who would receive at least $10.00 from such re-distribution. Additional re-distributions to Authorized Claimants who have cashed their prior checks and who would receive at least $10.00 on such additional re-distributions may occur thereafter if Lead Counsel, in consultation with the Claims Administrator, determines that additional re-distributions, after the deduction of any additional fees and expenses incurred in administering the Settlement, including for such re-distributions, would be cost effective. *Id.* ¶ 17(d); *see also* Order, *DaVita*, ECF No. 129 ¶ 4(c)(5) (approving similar procedure). Authorized Claimants who do not cash their checks within the time allotted will irrevocably forfeit all recovery from the Settlement unless good cause is shown, and the funds allocated to all stale-dated checks will be available to be redistributed to other Authorized Claimants in subsequent distributions. Bravata Decl. ¶ 17(e).

At such time as it is determined that the re-distribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance will be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s) related to the nature of Plaintiffs' claims, to be recommended by Lead Counsel and approved by the Court. *See id.* ¶ 17(d); Order *DaVita*, ECF No. 129 ¶ 4(h) (approving *cy pres* procedure).

IV.     **RELEASE OF CLAIMS**

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from all claims arising out of that involvement. *See* Order, *In re Crocs, Inc. Sec. Litig.*, ECF No. 236 ¶ 7 (ordering similar release); Order, *In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, No. 09-md-02063, ECF No. 541 ¶ 8 (D. Colo. Mar. 2, 2015) (same).

Accordingly, Lead Plaintiffs respectfully request that the Court enter the proposed Order Approving Distribution Plan (Ex. 2), which will release and discharge all such claims, and bar all Class Members and other Claimants, whether or not they are to receive payment from the Net Settlement Fund, from making any further claim against the Net Settlement Fund, Lead Plaintiffs, Lead Counsel, the Claims Administrator and its agents/employees, the Escrow Agent, or any other agent retained by Lead Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, beyond the amounts allocated to them pursuant to the terms of the distribution order, provided that such released persons acted in accordance with the Stipulation, the Final Judgment, and the proposed Order. Bravata Decl. ¶ 17(f).

V.      **RETENTION OF CLAIM FORMS AND OTHER DOCUMENTS**

Lead Plaintiffs also request that the Court permit SCS to destroy any paper and/or electronic copies of the Claim Forms and all supporting documentation no less than one (1) year after the final distribution of the Net Settlement Fund. *Id.* ¶ 17(g); *see also* Order, *Oppenheimer*, ECF No. 541 ¶ 9 (D. Colo. Mar. 2, 2015) (similar); Order, *DaVita*, ECF No. 129 ¶ 4(j) (similar).

**VI.    <u>CONCLUSION</u>**

Based on the foregoing reasons, and the Claims Administrator's declaration and accompanying materials submitted herewith, Lead Plaintiffs respectfully request that the Motion be granted. For the Court's convenience, a proposed Order Approving Distribution Plan accompanies this Motion (Ex. 2).

Dated: April 8, 2026                                      Respectfully submitted,

                                                          /s/ Molly J. Bowen

                                                          COHEN MILSTEIN SELLERS & TOLL
                                                          PLLC
                                                          Molly J. Bowen
                                                          Julie G. Reiser
                                                          Jan E. Messerschmidt
                                                          1100 New York Avenue, N.W.
                                                          Suite 800
                                                          Washington, D.C. 20005
                                                          Tel.: (202) 408-4600
                                                          Fax: (202) 408-4699
                                                          mbowen@cohenmilstein.com
                                                          jreiser@cohenmilstein.com
                                                          jmesserschmidt@cohenmilstein.com

                                                          Carol V. Gilden
                                                          200 South Wacker Drive
                                                          Suite 2375
                                                          Chicago, IL 60606
                                                          Tel.: (312) 357-0370
                                                          Fax: (312) 357-0369
                                                          cgilden@cohenmilstein.com

                                                          Manuel J. Dominguez
                                                          2925 PGA Boulevard, Suite 200
                                                          Palm Beach Gardens, FL 33410
                                                          Tel.: (561) 515-1400
                                                          Fax.: (561) 515-1401
                                                          jdominguez@cohenmilstein.com

                                                          Brendan R. Schneiderman
                                                          88 Pine Street, 14th Floor
                                                          New York, NY 10005
                                                          Tel.: (212) 838-7797
                                                          Fax.: (212) 838-7745
                                                          bschneiderman@cohenmilstein.com

                                                          *Lead Counsel for Lead Plaintiffs*

                                                          FAIRFIELD AND WOODS, P.C.
                                                          Cecil E. Morris
                                                          Adrian P. Castro
                                                          1801 California Street, Suite 2600

Denver, CO 80202
Tel.: (303) 830-2400
Fax: (303) 830-1033
cmorris@fwlaw.com
acastro@fwlaw.com

*Liaison Counsel for Lead Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2026, I caused to be electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all registered participants.

*/s/ Molly J. Bowen*
Molly J. Bowen